IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| BAE SYSTEMS ORDNANCE SYSTEMS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> FLUOR FEDERAL SOLUTIONS, LLC, <br><br> *Defendant*. | Case No. 7:20-cv-587-GEC |

**PLAINTIFF BAE-OSI'S REPLY TO DEFENDANT FLUOR FEDERAL SOLUTIONS, LLC'S OPPOSITION TO BAE-OSI'S MOTION TO CONSOLIDATE AND OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER**

BAE Systems Ordnance Systems, Inc. ("BAE-OSI"), by counsel, respectfully offers this Reply to Defendant Fluor Federal Solutions, LLC's ("Fluor") Opposition, ECF No. 12, to BAE-OSI's Motion to Consolidate, ECF No. 5 ("BAE-OSI's Motion").  For the reasons set forth herein, BAE-OSI's Motion should be granted and Fluor's Motion to Transfer denied.

**ARGUMENT**

The parties are before this Court on BAE-OSI's Motion to Consolidate only because Fluor deliberately ignored its compulsory counterclaim obligations under the Federal Rules of Civil Procedure ("Rules") in a transparent attempt to game the Court's processes to avoid being a defendant and "judge shop" *after* learning BAE-OSI's case was filed and assigned to this Court, and nearly a week *after* being served by BAE-OSI.[1]  Fluor admits that prior to filing its Complaint in Case No. 7:20-cv-596 (the "596 Case") it was aware of, and had in fact, reviewed BAE-OSI's Complaint in this case (the "587 Case").  Indeed, Fluor acknowledges that the causes of action in

---

[1] Affidavit of Service, ECF No. 4, at 1.

its 596 Case Complaint are compulsory counterclaims to BAE-OSI's 587 Case Complaint because they both arise out of the same contract to design and construct the nitrocellulose ("NC") manufacturing facility. Fluor Opp'n, ECF No. 12, at 15 (stating "should this Court designate Fluor's Complaint as a counterclaim, *it must* designate Fluor's Complaint *as a compulsory counterclaim under Fed. R. Civ. P. 13* because the complaint arises from the same facts and circumstances and the same contract as BAE's Complaint.") (emphasis added).

Instead of filing its Complaint in the ordinary course as a compulsory counterclaim under Rule 13, Fluor initiated the 596 Case and improperly designated an unrelated and entirely distinct action pending before Judge Dillon (Case No. 7:19-cv-698, the "Boiler Case") as a "related case" in a misguided attempt to game the system. Fluor even included allegations in its Complaint that falsely allege the two cases are related. 596 Case, ECF No. 1 ("Fluor Compl."), ¶¶ 137-38. The two cases plainly are not because: (1) they arise out of entirely different subcontracts; (2) relate to entirely different projects, timelines, facilities, and scopes of work; (3) involve different project teams and issues; and (4) have nothing in common other than standard terms and conditions that appear in BAE-OSI's contracts and the Federal Acquisition Regulations (and they are separate projects at the Radford Arsenal Army Ammunitions Plant). Indeed, Fluor's "relatedness" allegations are belied and disposed of by the simple fact that Fluor does not (and cannot) seek to consolidate the 587 and 596 Cases (the NC Facility Cases), with the Boiler Case because they do *not* involve common questions of law or fact. *See* Fluor Opp'n. at 1 (admitting "Fluor does not seek to consolidate the Boiler Case with the NC Facility Cases") (emphasis in original); *cf.* Fed. R. Civ. P. 42(a) (permitting consolidation only where there are common questions of law or fact).

In short, it appears that Fluor only filed its 596 Complaint because it did not want to proceed as defendant (even though BAE-OSI had both filed and served its Complaint on Fluor before the

2

596 Case was filed) and because Fluor, after seeing that this Court was assigned to preside over this case, wanted to steer the 596 Case to Judge Dillon by improperly designating the Boiler Case as related. Fluor's gamesmanship should not be rewarded.

### I. The Parties Concur that Consolidation of the NC Facility Cases is Proper and Appropriate

BAE-OSI and Fluor agree that the 587 Case and the 596 Case should be consolidated for all purposes. Fluor Opp'n at 13 ("Fluor is willing to consolidate the cases under the 587 Case, which was filed first."). The parties have previously set forth the reasons why the two cases meet the requirements for consolidation under Rules 42 and there is no need to discuss those reasons further here. Thus, BAE-OSI's Motion should be granted.

### II. The Consolidated Cases Should Remain in this Court

*A. The Procedure Suggested by Fluor Defeats the Purpose of Consolidation*

Fluor states that it "is willing to consolidate the cases under the 587 Case, which was filed first," *id.*, but then proposes a procedure that eliminates any advantages of consolidation and makes the matter more procedurally confused than it would be as two separate cases. The Court should ignore Fluor's invitation to litigation chaos.

Fluor argues that the cases should be "consolidated," but should then "proceed in parallel, with each Party's complaint moving forward equally, each Party having a right to amend their Complaint if needed, each Party filing a responsive pleading to the other's Complaint, and each Party having the right to file a compulsory counterclaim." Fluor's Opp'n at 14. In other words, the "consolidated" case should, in Fluor's view, proceed completely independently of one another. This simply makes no sense.

A consolidated case prevents relitigation of facts in multiple cases and allows cases to proceed in an orderly fashion. *See* 6 Fed. Prac. & Proc. Civ. ("Wright & Miller") at § 1418 (3d

3

ed.). Fluor's request *guarantees* relitigation of facts because it would require the Court to address two separate Complaints. The Complaints concern the same transaction, facts, and circumstances, but the factual allegations—and supporting documentation—are different and, in some instances, irreconcilable. Fluor's requested procedure would require the Court accept one set of facts to address one motion to dismiss and another set of facts for another motion to dismiss, and decide both at the same time. Then, according to Fluor, regardless of what is decided in the motions to dismiss, the parties would be allowed to raise the claims *again* as compulsory counterclaims and the cycle would begin again. Far from encouraging efficiency, Fluor's procedure would cause immense duplication of effort on behalf of the Court and the parties.[2] This bizarre procedure, necessitated by Fluor's failure to file its claims in due course as a counterclaim once it knew the 587 Case had been filed, should be rejected.

B. The Court Should Not Reward Fluor's Gamesmanship

"The scope of the district court's discretion to manage trials before it is and must be particularly broad. Accordingly, [the Fourth Circuit has] held, among other things, that district

---

[2] Fluor's Opposition to this Motion is a good example of why Fluor's approach will result in chaotic litigation. Fluor's Opposition, filed on October 22, 2020, triggered the deadline for BAE-OSI's reply on October 29, 2020. *See* Local Rule 11(c)(1). Yet, Fluor improperly embedded a motion in its Opposition brief. *See* Fluor's Opp'n at 1. The Court, noticing the error, required Fluor to file its motion properly, which Fluor attempted to do on October 26, 2020. *See* Fluor's Mot. Transfer, ECF No. 13. BAE-OSI's Opposition to Fluor's Motion is due on November 9, 2020. Yet, Fluor filed *the identical document* as its Motion and its Opposition. *Compare* ECF No. 12 *with* ECF No. 13. As a result, BAE-OSI must either forgo 50 percent of its time to respond to Fluor's Motion by filing an omnibus Reply and Opposition on October 29, 2020, or attempt to parse out the portions of Fluor's filing that are directed at BAE-OSI's Motion and are the proper subject of BAE-OSI's Reply, and then file a separate Opposition on November 9, 2020. Out of an abundance of caution, and because Fluor's Opposition and its Motion are inextricably intertwined in its identical briefs, BAE-OSI will file identical omnibus briefs on October 29 and November 9. Such duplication is absurd and a waste of the parties' and the Court's time but is inherent in the inefficient, parallel track approach Fluor requests in contravention of the federal policy embodied in Rule 13

courts have wide-ranging control over management of their dockets . . . ." *United States v. Janati*, 374 F.3d 263, 273-74 (4th Cir. 2004) (collecting cases and examples). As Fluor acknowledges in its Opposition, in the context of consolidation, courts in this District have designated a complaint as a compulsory counterclaim. Fluor Opp'n at 13. Specifically, Fluor cited to *WCC Cable, Inc. v. G4S Technology LLC*, No. 5:17-CV-00052, 2017 WL 6503142, at *4 (W.D. Va. Dec. 15, 2017), where the court noted that it was "cognizant that it can order consolidated pleadings and appoint one of the parties as plaintiff in the consolidated action." Fluor argues the discretion described in *WCC Cable* to designate one party the plaintiff and the other the defendant is limited to situations where one party is attempting to gain some litigation advantage. Fluor's Opp'n at 13. While BAE-OSI does not agree that *WCC Cable* should be read so narrowly, even if it is, Fluor engaged in the type of a gamesmanship here that concerned the *WCC Cable* court. Specifically, Fluor:

- Disregarded Rule 13 by filing a Complaint in the 596 Case after it had been served[3] with the 587 Case, despite knowing the causes of action in the 596 Case are compulsory counterclaims to BAE-OSI's Complaint in the 587 Case, apparently in an attempt to avoid the consequences of BAE OSI filing first – *i.e.*, avoid being the defendant; and

- Improperly designated another case pending before Judge Dillon (*i.e.*, the Boiler Case) as a related case in a misguided attempt to avoid having this Court preside over the NC facility cases once they are consolidated.

Here, because Fluor is apparently trying to game the Rules to be a plaintiff and the District's processes for judge assignment to choose its judge, the Court should exercise its power

---

[3] Fluor's repeated arguments as to whether Fluor's counsel was aware of service of the underlying Complaint are red herrings and immaterial. Fluor's counsel clearly knew that the 587 Case had been filed when Fluor filed the 596 Case and had reviewed it. Otherwise, Fluor would not have been able to designate the 596 Case as related to the 587 Case. Flour's Opp'n at 3. Moreover, even if it is true that Fluor failed to alert its counsel that Fluor had, in fact been served on October 1, 2020, Aff. of Serv., ECF No. 4, there is no reason why Fluor's counsel could not have first called BAE-OSI's counsel (or Fluor's registered agent) to determine if service had been effected.

to designate Fluor as the defendant in the consolidated action and require Fluor to proceed accordingly.

### III. Granting BAE-OSI's Motion Will Not Prejudice Fluor

Fluor asserts two reasons why it would allegedly be prejudiced if the Court grants BAE-OSI's Motion. It alleges, without evidence, that BAE-OSI's suggested approach "is clearly an attempt to prevent Fluor's Complaint from being timely filed." Fluor's Opp'n at 13. It further alleges that it "has a right to have its Complaint litigated promptly." *Id.* Neither argument is valid.

*A. Fluor Did Not Need to File a Complaint to Toll the Statute of Limitations*

Fluor's first argument is simply incorrect as a matter of law. It has been acknowledged in the Fourth Circuit for nearly 40 years that Rule 13(a) counterclaims relate back to the date the Plaintiff's Complaint is filed. *See, e.g.*, *Burlington Indus. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982); *see also Kilpatrick v. Lenoir County Bd. of Educ.*, 216 F.3d 380, 388 (4th Cir. 2000) (holding same and relying on *Burlington Indus.*); Virginia Code § 8.01–233(B) ("If the subject matter of the counterclaim or cross-claim arises out of the same transaction or occurrence upon which the plaintiff's claim is based, the statute of limitations with respect to such pleading shall be tolled by the commencement of the plaintiff's action.").

BAE-OSI's suggestion that Fluor's Complaint be deemed a counterclaim filed as of the date of a responsive pleading does not prejudice Fluor at all because the only operative date for statute of limitations purposes would be the date on which BAE-OSI's Complaint was filed. BAE-OSI was fully aware of this black-letter law and did not make its request for any purpose other than an attempt to streamline the docket and return order to what has already become chaotic litigation. Fluor's contention to the contrary is legally incorrect and imputes motives to BAE-OSI that simply do not exist. If anything, designating Fluor's Complaint as a compulsory counterclaim

6

*benefits* Fluor by tolling the statute of limitations *earlier than* would otherwise be the case because Fluor filed later than BAE-OSI.

    B. *Fluor's Complaint Will Be Heard in the Ordinary Course*

Fluor's second argument, that it has a "right to have its Complaint litigated promptly" is baseless. If Fluor's Complaint is treated as a counterclaim it will be litigated in the ordinary course as part of this case—as it should have been in the first instance. The litigation of Fluor's claim would be no different than the litigation of any defendant's counterclaim in federal court under the Rules, so it is inconceivable that simply being designated a defendant could or would prejudice Fluor. This is particularly true where, as here, the parties have waived their right to a jury trial. The mere passage of time will not prejudice Fluor.

If, as BAE-OSI respectfully suggests, BAE-OSI is designated the Plaintiff in this matter, Fluor may either move to dismiss BAE-OSI's Complaint or Answer. *See* Fed. R. Civ. P. 12. If Fluor answers the Complaint, its 596 Case Complaint would immediately be deemed filed[4] as a compulsory counterclaim and the litigation would proceed. If, however, Fluor files a motion to dismiss BAE-OSI's Complaint, the Court will rule on such motion and then the case would proceed accordingly under the normal course as governed by the Rules. BAE-OSI respectfully requests that the Court streamline the consolidated case in just such a manner that aligns with the policy set forth in Rule 13.

    **IV.    Fluor's Attempt at Judge Shopping Should Be Rejected**

After Fluor was served with the 587 Case, and saw that it was assigned to this Court, Fluor filed the 596 Case and identified it as a related case. Had Fluor stopped there, this matter would

---

[4] Fluor would, of course, be free to amend its counterclaim under the Rules or, indeed, could withdraw it.

have been assigned to this Court per the standard procedures of the Western District of Virginia. Yet, Fluor went on to improperly designate the Boiler Case as "related," guaranteeing, under the Court's procedure, that the 596 Case would go to Judge Dillon instead of this Court. These actions, which certainly appear to be an attempt to shift its case away from this Court, should not be approved.

### A. The Boiler Case is Not a Related Case

The Boiler Case has been pending for more than a year and has been the subject of extensive motions practice, including dispositive motions through which the Court rejected the majority of Fluor's claims against BAE-OSI. BAE-OSI has filed a Counterclaim in the Boiler Case, which is now awaiting a ruling by Judge Dillon. Yet, in the myriad briefs filed and hours of oral argument conducted on the voluminous Complaint and Counterclaim, the subject matter that forms the basis of the 587 Case and 596 Case (collectively, the "NC Facility Case") *has never come up.* This fact alone should put lie to Fluor's assertion that the NC Facility Case is related to the Boiler Case, but a closer look reveals even more dissimilarities.

Fluor's argument boils down to an assertion that because BAE-OSI standard subcontract terms and conditions are present, and standard Federal Acquisition Regulations ("FAR") apply, in the separate subcontracts at issue in the Boiler Case and the NC Facility Case, the two cases are "related." Fluor's Opp'n at 7-11. Fluor points to the fact that the facility at issue in the Boiler Case is also located on the Radford Army Ammunition Plant ("RFAAP") and that the two parties are using the same law firms (although somewhat different lawyers) in both cases as proof that the two cases must be related. Fluor Opp'n at 10. Yet, Fluor recognizes that the NC Facility Case and Boiler Case should not (and cannot) be consolidated. *See* Fluor Opp'n. at 1 (admitting "Fluor does not seek to consolidate the Boiler Case with the NC Facility Cases") (emphasis in original);

8

*cf.* Fed. R. Civ. P. 42(a) (permitting consolidation only where there are common questions of law or fact). Fluor's superficial argument that the Boiler Case and the NC Facility Case are similar enough that they should be deemed "related" for purposes of judicial assignment, Fluor Opp'n at 10, but not so similar that they should be consolidated is curious and contradictory, unless Fluor's true intent is to move the 596 Case away from this Court.

In some District Courts, a Local Rule governs whether a case is "related" to another. For instance, in the U.S. District Court for the District of Columbia ("D.D.C."), Local Rule 40.5 defines "related cases" and sets forth a procedure for 1) challenging such designations and 2) reassignment of such cases. Rules of the U.S. District Court for the District of Columbia (July 2019) ("D.C. LCvR") 40.5. Under D.D.C.'s rules, the party seeking reassignment has to show that the case to be reassigned relates to common property, involves common issues of fact, grows out of the same event or transaction, or involves the validity or infringement of the same patent. *Id.* at 40.5(a)(3).

Although this District does not have a similar rule, the D.D.C. Rule's rationale makes intuitive sense and its stated goals are those the parties here seek to attain, namely, efficiency for the Court and the parties. D.D.C.'s Rule serves as a bulwark against "judge shopping," that is, attempting to avoid the District's random assignment protocol by designating a case as related to ensure the initial case is directed to the Judge who had the earliest case. The instances where such transfer is allowed are narrow, and none would apply here. Specifically, while Fluor alleges that there are certain commonalities between the Boiler Case and the NC Facility Case, the commonalities are superficial and do not involve common property, common issues of fact or grow out the same event or transaction.

9

While it is true that Fluor is a subcontractor to BAE-OSI on two separate projects at RFAAP with BAE-OSI as the prime contractor to the Army, and that the parties used certain BAE-OSI standard provisions in both subcontracts, that is where the similarities end. The Boiler Case involves the construction of a boiler facility on the RFAAP, *see* Fluor Opp'n at 3, while the NC Facility case involves the construction of a much larger, more complicated project including, *inter alia*, a Nitration Building, a Stabilization Building, a Dewater Packout Building, and an Acid Tank farm all connected by piping and duct work for the manufacture of nitrocellulose. BAE-OSI Complaint ("Compl.") ¶ 36, ECF No. 1.

Not surprisingly, given the two projects are completely different, each subcontract incorporated unique Statements of Work ("SOWs") setting forth Fluor's work responsibilities. Having two distinct and completely different SOW's is a critical, if not dispositive, factor demonstrating why the Boiler Case and NC Facility Case are not related in any material way.

For example, in the NC Facility Case, one of the key disputes is the meaning of language in the SOW that states that Fluor "shall be solely responsible for the design." Compl. ¶ 47(c). That issue is not in dispute in the Boiler Case. Moreover, in both cases Fluor's basis for recovery is premised on a large number of rejected "Potential Change Notices" ("PCNs") – *e.g.*, 36 separate PCNs in the Boiler Case and at least 52 separate PCNs in the NC Facility Case, *see* Fluor Compl. ¶ 213. The vast majority of these PCNs will turn on the unique SOWs – *i.e.*, whether the work in question is within the SOW and, therefore, not a change or whether it is outside the scope of the SOW and, therefore, a change for which Fluor is entitled to additional compensation. The standard language Fluor relies upon is not implicated.

Even if all the material terms of the subcontracts were nearly identical—which they are not—that alone would not be the basis to deem the cases "related." The government contracting

10

and construction industries routinely employ flow-down provisions and standardized form contracts. For instance, most, if not all, contracts involving projects for the federal government incorporate and/or flow down FAR provisions. Similarly, standardized American Institute of Architects ("AIA") contracts are ubiquitous in the construction industry. It would be absurd to argue, as Fluor attempts to do here, that simply because standard terms and conditions appear in different cases, on different projects, and/or in different fora that all such cases should be assigned to a single judge for "consistency." Indeed, it is the job of the parties' lawyers to inform the court, through pleading and briefs, of prior decisions interpreting standard terms and conditions to guide the court in making appropriate decisions under the unique facts at issue in each case.

It is also important to note that while much of the non-SOW portions of the two subcontracts are identical, there are other significant differences between the two subcontracts contrary to the impression left by Fluor. For example, the subcontract in the NC Facility Case limits each party's liability to the other at $30M.[5] That provision is not contained in the Package

---

[5] The NC Facility Case Subcontract's Limitation of Damages clause providing as follows:

> Except as otherwise provided in this Subcontract, in the event of either Party's failure to perform in accordance with this Subcontract, whether such failure is occasioned by the acts or omissions of either Party, its respective suppliers, or the BAE Parties, either Party may pursue any and all damages and remedies available under this Agreement and/or applicable law. Except as otherwise provided in this Subcontract, damages and remedies that may be recovered by either Party shall be limited as follows: **For all claims, regardless of the basis on which the claim is made, the applicable party's liability for damages arising under or related to this Subcontract shall be limited to $30M, $30M being defined as the value including all changes and the maximum liability for damages.** Neither Party shall be liable for any indirect, special, incidental or consequential damages, including but not limited to lost profits or business interruption losses, whether arising under contract, warranty, express or implied tort, including negligence, or strict liability, arising at any time from any cause whatsoever in connection with this Subcontract or performance hereunder, even if caused by the sole or concurrent or active or passive negligence, strict liability or other legal fault of either of the Parties, their members, directors, officers, employees, agents, representatives, parent companies, subsidiaries, affiliates, joint venture

Boiler subcontract. In addition, liability in the Boiler Case Subcontract turns on a modification in to the Subcontract that limits Fluor's ability to recover for base scope work that is not present in the NC Facility Case subcontract.

Finally, although there are similar standard provisions in the subcontracts at issue in the Boiler Case and the NC Facility Case, the supporting documentation, the witnesses, project teams, and, indeed, the projects themselves are entirely different with little to no overlap. The result of one case will have no impact on the other. Although this District does not formalize its requirements for a related case, the presence of common facts and issues is deemed by other Districts to be fundamental to a relatedness determination. Here, common facts and issues are entirely absent at all but the most superficial, standard terms and conditions level. Thus, the Boiler Case and the NC Facility Case are not related and there is no legal basis to have the consolidated NC Facility Case and the Boiler Case assigned to one judge.

### B. Keeping BAE OSI as the Plaintiff and the Case Before Judge Conrad is Proper

BAE-OSI filed its Complaint first on September 30, 2020 and served it the next day. Subject to this Court's normal procedures, the case was assigned to Senior Judge Conrad. Fluor, being fully aware of BAE-OSI's Complaint in this case, nonetheless filed its own Complaint and Civil Cover sheet designating the plainly unrelated Boiler Case as "related" in a successful attempt to have the 596 Case initially assigned to Judge Dillon. This kind of gamesmanship cannot be rewarded. BAE-OSI sees no reason why Judge Conrad is not eminently capable of deciding this matter and sees no reason to depart from this Court's established procedures for the random

---

partners, successors and assigns, and each of their respective owners, partners, members, shareholders, directors, managers, officers, employees, agents, representatives and subcontractors at any tier.

Compl. ¶ 70 n.10 (emphasis added).

assignment of cases. To find otherwise will only encourage future litigants to improperly file duplicative litigation in an effort to "re-draw" for judges and shop for a judge of their choosing.

Additionally, BAE-OSI, by filing first, has the right to remain the Plaintiff, regardless of which Court hears the matter. Fluor should not be permitted to flip the parties by seeking to transfer this case to Judge Dillon and have its Complaint proceed with Fluor as the Plaintiff.[6]

## CONCLUSION

For the foregoing reasons, BAE-OSI respectfully requests that this Court grant BAE-OSI's Motion to Consolidate and deny Fluor's Motion to Transfer.

<Signature Follows on Next Page>

---

[6] Beyond BAE-OSI's objections to Fluor's improper and manipulative litigation tactics—which should not be rewarded with a transfer—BAE-OSI does not object to Judge Dillon hearing the consolidated case. Nevertheless, if the consolidated case in transferred to Judge Dillon, BAE-OSI should remain the Plaintiff. Otherwise, Fluor's gamesmanship will be rewarded.

**Dated: November 9, 2020**

                        Respectfully submitted,

                        /s/ Todd M. Conley
Jeffrey J. Golimowski (Va. Bar No. 93525)
Todd M. Conley (Va. Bar No. 89839)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, VA 22102
Telephone: (703) 394-2245
Email: Todd.Conley@wbd-us.com
Email: Jeff.Golimowski@wbd-us.com

D. Stan Barnhill (Va. Bar No. 22978)
Joshua R. Treece (Va. Bar No. 79149)
Justin E. Simmons (Va. Bar No. 77319)
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Telephone: (540) 983-7600
Facsimile: (540) 983-7711
barnhill@woodsrogers.com
jtreece@woodsrogers.com
jsimmons@woodsrogers.com

Karen M. Stemland (Va. Bar No. 47167)
kstemland@woodsrogers.com
WOODS ROGERS PLC
123 East Main Street, 5th Floor
Charlottesville, Virginia 22902
Telephone: (434) 220-6826
Facsimile: 434-566-0473

*COUNSEL FOR PLAINTIFF, BAE SYSTEMS ORDNANCE SYSTEMS, INC.*