IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| BAE SYSTEMS ORDNANCE SYSTEMS INC., <br><br> Plaintiff <br><br> v. <br><br> FLUOR FEDERAL SOLUTIONS, LLC., <br><br> Defendant. | Civil Action No. 7:20-CV-00587-MFU |

**AGREED ORDER REGARDING DISCOVERY, INCLUDING DISCOVERY OF ESI**

It is hereby ORDERED that the terms of this Agreed Order Regarding Discovery, Including Discovery of ESI, ("Protocol") shall apply to the collection and production of paper documents, things, and electronically stored information ("ESI") by Plaintiff BAE Systems Ordnance Systems Inc. ("BAE-OSI") and Defendant Fluor Federal Solutions, LLC ("Fluor") in the above-captioned action (the "Case").

1.  **Introduction**

    Each Party is in possession of information that may be relevant to the Case. The Parties agree to cooperate in identifying potentially relevant information that will assist the Parties in identifying potentially Discoverable Information. Further, each Party acknowledges an interest in a discovery process that is efficient, cost effective, flexible, and designed to allow for the required disclosure of relevant information in the Case. The Parties expect that by acting in good faith and in a cooperative manner regarding discovery in this action, the Parties will further these goals.

**2. Definitions**

For the purposes of this Protocol only:

2.1. <u>All/Each</u>: the terms "all" and "each" shall both be construed as "all" and "each."

2.2. <u>And/Or</u>: the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all documents, ESI and things that might otherwise be construed to be outside its scope.

2.3. <u>Bates number</u>: a page-level unique alpha-numeric identifier associated with every document produced, including physical sheets of paper or electronically stored TIFF images, or other tangible thing, consisting of (1) an alphabetic portion and (2) a numeric portion incremented according to a scheme defined at the Producing Party's discretion to ensure that the alphanumeric identifier for each page of physical sheets of paper or electronically stored TIFF images, or other tangible thing, is unique (e.g., "FLR_00000001-0001", "BAE0000001" or "DocID 00001_001"). Document-level Bates numbers may be appropriate in limited circumstances such as the production of native files.

2.4. <u>Communication</u>: the term 'communication' means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

2.5. <u>Concerning</u>: the term 'concerning' means relating to, referring to, describing, evidencing or constituting.

2.6. <u>Custodian</u>: the person from whom a Document is or was collected. For example, the Custodian of an email document is the person from whose email mailbox the email file was collected.

2.7. <u>Discoverable Information:</u> the term "Discoverable Information" shall mean all documents, ESI, and other information that is discoverable in the Case pursuant to Federal Rule of Civil Procedure 26.

2.8. <u>Document:</u> synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft or non-identical copy is a separate document within the meaning of this term.

2.9. <u>Electronically Stored Information or "ESI":</u> any information or data that is originally created, manipulated or used, communicated, or stored in a digital format.

2.10. <u>Extracted Text:</u> the text extracted from a document, and includes all header, footer, and document body information when available.

2.11. <u>Foreign Language Document:</u> any document in which a substantial portion of the unique substantive content is in a language other than English.

2.12. <u>Hard Copy Document:</u> any Document kept in physical, paper form, as opposed to electronic form, in the usual course of business.

2.13. <u>Load File:</u> an electronic file containing information identifying a set of scanned images or processed ESI and indicating where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends. A load file should also contain data relevant to the individual Documents, including extracted and user or system-created Metadata as addressed in Exhibit A attached hereto and incorporated herein by reference.

2.14. <u>Meet:</u> as used in this Protocol, to "meet" includes meeting in person or telephonically, or by other electronic means.

2.15. <u>Metadata</u>: the information as described in Exhibit A, which is incorporated herein by reference.

2.16. <u>Native Format or Native File:</u> means the associated file format defined by the original application with which an electronic file was created. For example, the Native Format associated with a Microsoft Word 2007 file is ".docx" and the Native Format associated with an Adobe Acrobat file is ".pdf".

2.17. <u>Non-Custodial Sources:</u> shared data repositories maintained in the ordinary course of business and not necessarily associated with any individual Custodian(s). Examples of Non-Custodial Sources may include, but are not limited to, shared file cabinets, shared network drives or fileservers, electronic document management systems, or databases.

2.18. <u>Number:</u> The use of the singular form of any word includes the plural and vice versa.

2.19. <u>OCR Text:</u> searchable text from a document generated by means of optical character recognition performed using appropriate software.

2.20. <u>Outside Counsel:</u> the attorneys and employees of any external law firm representing a Party to the Case, including vendors retained to assist in the performance of discovery obligations.

2.21. <u>Parties:</u> a Party's full or abbreviated name or a pronoun referring to a Party mean the Party and, where applicable, its officers, directors, employees, former employees working on the Project or partners. This definition is not intended to impose a discovery obligation on any person who is not a party to the disputes between the Parties.

2.22. <u>Person:</u> any natural person or any business, legal or governmental entity or association.

2.23. <u>Privileged Information:</u> all Documents, ESI, tangible objects, and other information or material of the Parties which may be protected from discovery as privileged information, attorney work product and/or any other privilege recognized by the laws of Virginia, or, with regard to documents, ESI, tangible objects, and other information or material owned or possessed by third parties that are not owned by the Parties, the privileges recognized by the laws of the state where such documents were created.

2.24. <u>Producing Party:</u> the Party producing Discoverable Information.

2.25. <u>Project Documents:</u> documents created, stored, or maintained by either Party relating to the Project. Examples of Project Documents may include, but are not limited to, reports, schedules, invoices, meeting minutes, tracking logs, and other routine project documentation, as well as official letter correspondence to the extent it is readily accessible from sources other than email.

2.26. <u>Receiving Party:</u> the Party receiving Discoverable Information.

2.27. <u>Requesting Party:</u> the Party requesting Discoverable Information.

2.28. <u>Responding Party:</u> the Party responding to a request for Discoverable Information.

**3.    Scope of Production of Discoverable Information including ESI and Limitations of Preservation**

3.1. Each Party represents that it has taken reasonable steps to preserve Documents, ESI, and other Discoverable Information.

3.2. <u>Accessible ESI.</u> Except as set forth in Paragraph 3.3 below, reasonably accessible sources of ESI include devices which store active data accessed in the regular course of business including e-mail servers, shared network drives, workstation or laptop hard drives, and storage devices and media. Subject to any limits negotiated by the Parties, including those set forth in this Protocol, each Party has conducted or will conduct a reasonably diligent search of those reasonably

accessible sources in which it has reason to believe relevant ESI responsive to the opposing Party's discovery requests will be found.

   3.3. <u>Not Reasonably Accessible ESI.</u> The Parties need not produce or identify on a privilege log the following categories of ESI for the Case, except for good cause shown:

    (a) Data stored in a backup system for the purpose of system recovery or information recovery, including but not limited to, disaster recovery backup tapes, continuity of operations systems, and data or system mirrors or shadows except to the extent that such sources are known to be the only sources of Discoverable Information;

    (b) Voicemail messages;

    (c) Instant messages;

    (d) ESI stored on mobile devices such as smart phones, but not including Party-owned laptops, tablets, or other Party-owned, non-smart phone electronic devices;

    (e) Logs of calls;

    (f) Deleted, erased, or overwritten computer files, whether fragmented or whole, which were deleted in the regular course of business before there was a duty to preserve ESI. However, the Parties acknowledge that nothing in this Protocol authorizes the deletion of relevant ESI after the duty to preserve arose;

    (g) Data stored in random access memory ("RAM"), cache memory, or in temporary or cache files, including internet history, web browser cache and cookie files, wherever located;

    (h) Data stored on photocopiers, scanners, and fax machines; and

    (i) Logs of server, system, or other network activity.

3.4. <u>Other Types of ESI May Not Be Reasonably Accessible.</u> Nothing in this Protocol prevents any Party from asserting that other categories of ESI are not reasonably accessible.

3.5. <u>Preservation Does Not Affect Discoverability or Claims of Privilege.</u> By preserving Documents or ESI for the purpose of the Case, the Parties do not concede that such material is discoverable, nor do they waive any claim of privilege.

4. **Identification and Production of Potentially Discoverable Information**

4.1. <u>Identification of Discoverable Information.</u> Except as otherwise provided below, the identification, collection, and production of Documents and ESI shall occur through identification of appropriate Custodians, Non-Custodial sources, date restrictions, and other methods reasonably designed by the Producing Party to identify and produce documents and ESI responsive to the Requesting Party's document requests.

4.2 <u>Custodians.</u> Each Party is limited to identifying twenty-two (22) Custodians of the other Party ("Party Custodians"). Each Party shall identify twenty (20) Party Custodians within fourteen (14) days of entry of this Order. At any time up to 180 days after the entry of this Order, each Party may identify not more than two (2) Party Custodians. Each Party reserves the right to seek the production of Documents, including ESI, from additional Party Custodians for good cause shown.

(a) At least seven (7) days prior to the identification of Party Custodians for the production of Documents, including ESI, referenced in Paragraph 4.2, each Party shall provide to the other a list of no fewer than fifteen (15) "Hub Custodians." Hub Custodians are those custodians who, in the good faith and reasonable judgment of the Producing Party, are most likely to have significant quantities of responsive materials and/or were most directly involved with the

facts at issue in this matter. For example, a custodian who was routinely cc'd on all project correspondence between the Parties would likely be considered a Hub Custodian.

(b) The identification of Hub Custodians is intended to assist the Requesting Party in its selection of Party Custodians by providing the Requesting Party information regarding those individuals most likely to have responsive materials and who may have a large amount of duplicative material. The identification of an individual as a Hub Custodian is a designation for the purposes of this Protocol only to assist the Parties in the efficient and proportional collection of discovery, and does not, nor is it intended to, assert or waive any rights or privileges as to that custodian or the custodian's documents that are otherwise available to a Producing Party at law or equity.

4.3. <u>Non-Custodial Documents and ESI</u>. Each Party will, in addition to the Custodians identified in Section 4.2 be required to conduct a reasonable search of those Non-Custodial sources of documents and/or ESI that can be reasonably expected to contain Discoverable Information and then produce, to the best of their ability after conducting such a reasonable search, such Documents and Discoverable Information that are responsive to the Requesting Party's document requests and not Privileged Information.

(a) Each Party shall, within fifteen (15) days of the entry of this Order, provide to the other a list and description of the Non-Custodial sources in that Party's possession, which may contain Discoverable Information, including ESI, to assist both Parties in the efficient and proportional issuance of discovery and production of documents. For example, if a Party used a shared network drive to store project documents, the Party shall list such drive by a name sufficient to allow the Parties to identify it in future requests and/or negotiations, together with a description

of its purpose and customary usage, the dates it was in use, and a summary of the types of documents stored on the drive (e.g., architectural drawings, draft RFIs, scheduling files).

        (b)   The identification of Non-Custodial sources does not waive or assert any rights or privileges with respect to said sources that are otherwise available at law or equity.

    4.4.   <u>Identification and Production of Documents.</u> The Producing Party shall conduct a reasonable search of the identified Custodians' documents and/or ESI and identified Non-Custodial sources, and then produce, to the best of their ability after conducting a reasonable and good faith search, all Documents, including ESI, that are responsive to the Requesting Party's document requests and not Privileged Information. The Producing Party shall bear its own costs of searching, reviewing formatting/preparing and producing its Documents, including ESI.

    4.5.   <u>Date Limitation.</u> For each Custodian, the identifying Party shall propose a limitation of the date range for production of such Custodian's ESI.

    4.6   <u>Search and Review Methodology.</u> The Parties shall, in good faith, negotiate the search terms to be used to identify documents responsive to requests for the production of documents. The Parties shall agree to search terms within 30 days of the date of the filing of a request for production of documents. In the event the Parties fail to agree to search terms, the Producing Party shall search any ESI using those terms it believes, in good faith, to be reasonable and proportional to the Request, including, without limitation, any search terms agreed to by the Parties. The Producing Party shall provide the search terms used, databases (including email databases/servers) searched, and date limitations employed for the search. In addition, the Producing Party shall identify the Non-Custodial sources and Party Custodians, if any, not searched in responding to a given Document Request.

4.7. <u>De-duplication.</u> To the extent reasonably practicable, each Party shall remove duplicate ESI on a family level, including without limitation electronic mail, in accordance with the Production Format described in Exhibit A.

4.8 <u>De-NISTing.</u> To the extent reasonably practicable, electronic file collections will be De-NISTed, the process by which non-user generated files are removed from review and production based on a hash value list maintained by the National Institute of Standards and Technology.

4.9. <u>ESI Production Format.</u> The Parties shall produce ESI according to the format specified in Exhibit A, attached hereto.

4.10. <u>Review and Production of Hard Copy Documents.</u> Each Producing Party is entitled to collect, scan, and review its hard copy documents before producing only those documents which are responsive and not Privileged Information in the document production format described in Exhibit A. The Producing Party shall bear its own costs of scanning and producing its hard copy documents.

4.11. <u>Schedule of Rolling Productions</u>. The Parties agree to provide rolling productions of Discoverable Information, which the Parties will provide on a schedule agreed to by both Parties for production of email and other Discoverable Information maintained by the Party Custodians, as well as other non-email Discoverable Information maintained in Non-Custodial Sources.

4.12. <u>Right to Conduct Document Review.</u> Nothing contained herein is intended to or shall serve to limit a Responding or Producing Party's right to conduct a review of Documents or ESI for relevance, responsiveness, and/or segregation of privileged information before production.

5. **Privilege Logs**

5.1. The following categories of documents are presumptively privileged, or protected work product and the Parties are not required to provide a log of such documents:

(a) Communications between a Party and its Outside Counsel;

(b) Attorney work product created by Outside Counsel;

(c) Internal communications within Outside Counsel; and

5.2. The Parties agree that, except as provided in paragraph 5.1 regarding presumptively privileged documents and ESI, they will produce privilege logs and will exchange information regarding claims of privilege and/or work product protection in an efficient manner. For Documents and ESI that have been withheld or redacted as privileged, the withholding or redacting Party shall provide a privilege log of such Documents and ESI.

5.3. To permit the Requesting Party to assess any claim of privilege, the Producing Party must provide a privilege log containing the Bates number or Document ID (if any) of each document withheld and the following information corresponding to the type of document withheld:

(a) For E-Mail

i. From: Lists the contents of the "From" field of the email, or the author/custodian field of a document;
ii. To: Lists the contents of the "To" field of the email;
iii CC: Lists the contents of the "CC" (carbon copy) field of the email;
iv. BCC: Lists the contents of the "BCC" (blank carbon copy) field of the email;
v. Date: Lists the date the email was sent;
vi. Custodian: Identifies the individual the document was obtained from;
vii. DocTitle/Email Subject: Sufficient information as to the nature of the document or email;
viii. Basis of the claimed privilege or other reason for withholding; and
ix. A unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents.

   (b)  For Other Documents

     i.  Date;
     ii.  Author;
     iii.  Recipients;
     iii.  Custodian;
     iv.  DocTitle/Email Subject;
     v.  Basis of the claimed privilege or other reason for withholding; and
     vi.  A unique document number/identifier, which need not be formatted as, or consecutive with, Bates numbers of produced documents.

  5.4.  Where a Party is asserting privilege on the same basis with respect to multiple documents, the description of that basis may be provided by group or category, provided that all substantive information required by Section 5.3 has been provided in a comprehensible format, such that a challenge to the assertion of privilege over the group or category will resolve any dispute as to the applicability of privilege as to all documents within the group or category.  The Producing Party shall identify the approximate number of Documents and/or ESI belonging to the group or category.  The Producing Party may include only a single privilege log entry for multiple email messages in the same email string to the extent such messages are contained in one individual email file and subject to the same claim of privilege.

  5.5.  Each Producing Party shall, as soon as practicable, but in no event more than thirty (30) days, after identification of a category or group of documents subject to the same assertion of privilege, as described in Section 5.4, provide to the Receiving Party the description of that assertion of privilege, provided that all substantive information required by Section 5.3 has been produced in a comprehensible format, such that a challenge to the assertion of privilege over the group or category will resolve any dispute as to the applicability of privilege as to all documents within the group or category.

  5.6.  The Receiving Party may, in its discretion, challenge the designation of a category or group of Documents, ESI, or things, as privileged within 30 days after receipt of the privilege

claim set forth in Section 5.5, provided that the challenge must be made no later than two (2) months prior to the close of fact discovery.

      5.7.    Each Party will provide a privilege log of documents withheld from or redacted in its production of Custodian and other Project Documents, on a rolling basis with each production, such that documents for which privilege is being asserted are identified on a privilege log within 30 calendar days of the production, but in no event later than two (2) months prior to the close of fact discovery. The purpose of this rolling privilege log is to avoid the production of a voluminous privilege log at the end of the discovery period, which delay could be prejudicial to the non-Producing Party.

      5.8.    <u>Inadvertent Disclosure</u>. No Party intends to produce Documents or information protected by the attorney-client privilege or the work product doctrine or any other recognized legal privilege protecting information from discovery. In the event that such Document(s) or information are produced, the parties shall follow the "Clawback Procedure" set forth in the Protective Order entered in this Case.

**6.    Third Party Discovery**

      The Parties have agreed to cooperate, to the extent feasible, with regard to the service of subpoenas for the production of documents and subpoenas for the depositions of third parties.

**7.    Modification**

      This Protocol may be modified by agreement of the Parties or by an Order of the Court. Any such agreement of the Parties shall be memorialized in writing by email or otherwise.

Agreed to: October 4, 2021.

| | |
|---|---|
| */s/ Scott P. Fitzsimmons* | */s/ Jeffrey J. Golimowski* |
| Scott P. Fitzsimmons, Esq. (VSB 68147)<br>Kathleen O. Barnes, Esq. (VSB 30451)<br>Edward J. Parrott, Esq. (VSB 29499)<br>WATT, TIEDER, HOFFAR<br>& FITZGERALD, LLP<br>1765 Greensboro Station Place, Suite 1000<br>McLean, Virginia 22102<br>Tel: (703) 749-1000<br>Fax: (703) 893-8029<br>sfitzsimmons@watttieder.com<br>kbarnes@watttieder.com<br>eparrott@watttieder.com<br><br>*COUNSEL FOR FLUOR FEDERAL SOLUTIONS, LLC* | Todd M. Conley (VSB 89839)<br>Jeffrey J. Golimowski (VSB 93525)<br>WOMBLE BOND DICKINSON (US) LLP<br>8350 Broad Street, Suite 1500<br>Tysons, Virginia 22102<br>Telephone: (703) 394-2275<br>Email: todd.conley@wbd-us.com<br>Email: jeff.golimowski@wbd-us.com<br><br>Joshua R. Treece (VSB #79149)<br>Justin E. Simmons (VSB # 77319)<br>WOODS ROGERS PLC<br>10 South Jefferson Street, Suite 1400<br>Roanoke, Virginia 24011<br>Telephone: (540) 983-7600<br>Facsimile: (540) 983-7711<br>Email: jtreece@woodsrogers.com<br>Email: jsimmons@woodsrogers.com<br><br>Karen M. Stemland (VSB #47167)<br>WOODS ROGERS PLC<br>123 East Main Street, 5th Floor<br>Charlottesville, Virginia 22902<br>Telephone: (434) 220-6826<br>Facsimile: (434) 566-0473<br>Email: kstemland@woodsrogers.com<br><br>*COUNSEL FOR BAE SYSTEMS ORDNANCE SYSTEMS, INC.* |

**Exhibit A**

**Document Production Format**

The Parties agree that non-privileged documents will be produced electronically, in a password-protected format, via file transfer protocol or other method mutually agreed to by the Parties. For productions that comply with this Exhibit A, each Party will pay for the scanning, processing, and producing of its own documents. The Parties further agree as follows:

- **All electronically stored information (ESI):** ESI will be produced as TIFF images, except for those documents that cannot be meaningfully produced as TIFF images, including but not limited to SmartPlant, Primavera, video and audio files and/or Excel files, which will be produced only in native file format in its original form (with the exception of accounting files or other proprietary file formats). For each native file produced, a Bates numbered TIFF placeholder indicating that the document was provided only in native format must accompany the Native file. The native documents shall be named to match their respective document production/Bates number and shall be referenced by the corresponding database metadata load file containing the relative path and file name of that native document. Accounting files, including job cost records, will be exported to Excel and produced as Excel files with bates numbering. The Parties agree to cooperate in good faith to identify a reasonable and usable format for the production of native documents that are maintained in the ordinary course of business in a format not easily accessible by the Receiving Party, i.e., documents maintained using proprietary software. Where extracted text is not available, best efforts shall be used to OCR the documents. OCR text is to be provided for all redacted documents, to include all text, except the redacted portion of the document.

- Each TIFF image shall be accompanied by a single text file containing all extracted text for the specified TIFF image and bearing an identical filename but for the file extension.

- A Concordance load file (.DAT) will be provided containing attachment relationships, file path link to native and all available metadata fields, the path to extracted text/OCR text file as well as the below fields, and/or similar fields containing the same data, their mappings, and an image load file containing the same information, as applicable.

| Field Name | Field Description | Possible Values/Examples | Field Type |
|---|---|---|---|
| BatesBeg | Sequential incremental alpha-numeric document identifier. | ex: PROD0000001 | Text |
| BatesEnd | Sequential incremental alpha-numeric document identifier. | ex: PROD0000001 | Text |
| BegAttach | Displays ProdDocID of master parent record. | ex: PROD0000001 | Text |
| EndAttach | ProdDocID of last attached document in family. | ex: PROD0000002 | Text |
| Custodian | Displays textual value of custodian assigned by user in processing application. | ex: John Doe | Text |
| ApplicationName | Application Name field value pulled from metadata of the native file. | ex: Microsoft Office Word | Text |
| Author | Author field value pulled from metadata of the native file. | ex: John Doe | Text |
| To | Main recipient(s) of the e-mail message, including domain, when available. | ex: John Doe (jdoe@company.com); | Text - Multi-value, semicolon (;) delimiters. |
| From | Author of the e-mail message, including domain, when available. | ex: John Doe (jdoe@company.com); | Text |

| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message, including domain, when available. | ex: John Doe (jdoe@company.com); | Text - Multi-value, semicolon (;) delimiters. |
|---|---|---|---|
| CC | Recipient(s) of "Carbon Copies) of the e-mail message, including domain, when available.. | ex: John Doe (jdoe@company.com); | Text - Multi-value, semicolon (;) delimiters. |
| EMail_Subject | Subject of the e-mail message. | ex: FW: LAW PreDiscovery | Text |
| Title | Title field value extracted from the metadata of the native file. | ex: Document Title | Text |
| DateCreated | Creation date of the native file. | | Date |
| DateLastMod | Date the native file was last modified. | | Date |
| DateRcvd | Received date of an e-mail message. | | Date |
| DateSent | Sent date of an e-mail message. | | Date |
| TimeCreated | Creation time of the native file. | | Time |
| TimeLastMod | Time native file was last modified. | | Time |
| TimeRcvd | Time the e-mail message was received. | | Time |
| TimeSent | Time the e-mail message was sent. | | Time |
| Orig_Filename | Original filename of native file. Contains subject of e-mail message for e-mail records. | ex(1): Estimates.xls; ex(2): FW: Monday Meeting | Text |
| DocExt | File extension of native file. | ex: DOC | Text |
| Confidential | | | Text |
| Processing Time Zone | The time zone in which the documents were standardized during processing. | | Text |
| MD5Hash | Calculated MD5Hash value. | ex: D564668821C34200FF3E32C9BFDCCC80 | Numeric |

- 3 -

| | | | |
|---|---|---|---|
| TextFile | Export location of extracted text or OCR text file. | | Text |
| ATTACHMENTS | Number of total attachments per document | | |
| FOLDER PATH | Location within folder structure, including any containers files, for the original native file as it existed at the time of collection | | |
| REDACTIONS | Whether the document contains any redactions | | |
| PAGE COUNT | Item Page Count | | |

**Paper Files:** These documents will be scanned (at no less than 300 DPI black and white) and produced electronically. These scanned documents should be separated at a logical level where there are large groups of documents with no physical separations, using Logical Document Determination, with parent and child attachment relationships. At a minimum, box number, file drawer information, file folder tab, redweld tab information and binder tab will be captured during the scanning process. Scanned files will be created by the Parties in multi-page PDF files, if not possible to produce as TIFF images. A standard Concordance (.DAT) load file will be provided for scanned images with the following fields: BegDoc#, EndDoc#, BegAttach, EndAttach, BoxNum, Cabinet, Redweld, BinderTab, FileFolder. Oversized documents (greater than 11x17) may be reduced to 11x17. All scanned images will be produced with Bates numbering.