IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| **BAE SYSTEMS ORDNANCE SYSTEMS, INC.**<br><br>**Plaintiff,**<br><br>v.<br><br>**FLUOR FEDERAL SOLUTIONS, LLC**<br><br>**Defendant.** | Civil Action No. 7:20-CV-00587-MFU-RSB |

**FLUOR'S SUR-REPLY BRIEF IN FURTHER OPPOSITION
TO BAE'S MOTION TO STRIKE**

As authorized by this Court's Order of October 1, 2021 (ECF 58), Fluor respectfully submits this Sur-Reply to respond to <u>new</u> arguments raised by BAE in its Reply Brief (ECF 50). According to BAE, the Statute set forth at Virginia Code § 11-4.1:1 (the "Subcontractor Claim Statute" or the "Statute") addresses <u>only</u> mechanics' liens and payment bond claims and, as such, applies only to private projects (ECF 50 at 16). BAE's assertion is demonstrably false and is unsupported by the plain language of the Statute, the Statute's history, or the alleged authority cited by BAE. The interpretation of the Statute is a **matter of first impression**. Therefore, it is critical that Fluor correct BAE's misrepresentations regarding the Statute's scope and application.

Furthermore, after asserting that the inconsistent language in the Subcontract's three Limitation of Damages clauses ("LOD clauses") is "clear and unambiguous," BAE invites the Court to rely upon parol evidence to determine the intent of the Parties. BAE's very submission of parol evidence: (1) defeats its argument that the LOD clauses are unambiguous; (2) is inappropriate at this stage of motions practice; and (3) completely fails to clarify the Parties' intent regarding the inconsistent language of the LOD provisions.

1

Finally, BAE argues for the <u>first time</u> in its Reply brief that Fluor simply could have refused to perform any change in excess of $30 Million with "no liability for refusing to do so." (ECF at 13). BAE's incredible and self-serving claim is refuted by the plain language of the Subcontract. The Subcontract expressly requires Fluor to continue to perform the Subcontract work, **as modified**, even as BAE refused to compensate Fluor for valid changes to the work. For these reasons, and those set forth in Fluor's Opposition to BAE's Motion to Strike (ECF 44), Fluor respectfully requests that this Court deny BAE's Motion to Strike in its entirety.[1]

## I. ARGUMENT

### A. Virginia Code § 11-4.1:1 is Not Limited to Private Contracts

As an initial matter, the LOD clauses upon which BAE relies do <u>not</u> apply to changes caused or directed by BAE. As set forth in Fluor's Opposition Brief, BAE is responsible for paying Fluor for <u>all</u> costs incurred as a result of BAE's changes. Should this Court interpret the LOD provisions in accordance with BAE's proposal, however, then the $30 Million damages limitation in the LOD clauses is unenforceable under Virginia Code § 11-4.1:1. In its Reply Brief, BAE hopes to escape the Statute's application by asserting that the Statute applies only to private projects. In doing so, BAE grossly misrepresents the Statute's plain language, history, and application.

In a twisted interpretation of Virginia law, BAE asserts that the Subcontractor Claim Statute

---

[1] In its Reply, BAE also includes new assertions and repeats already disproved arguments regarding Fluor's claims. Without any support, BAE now argues that Fluor merely "elected" to use the Lauren Design provided by BAE (ECF 50, at p. 3). Yet Fluor's Counterclaim, and the Subcontract confirm that the Lauren Design was the "the minimum requirements" for the Project (ECF 46, at p. 5-7.) BAE also argues that every cost Fluor claims in this action relates to BAE's misrepresentations regarding the maturity of the Lauren Design (ECF 50, at fn. 3). Again, BAE is wrong. As set forth in Fluor's Counterclaim, in addition to the defective Lauren Design, Fluor's claims also arise from design changes caused by BAE's actions, BAE's constant modification to the Process Design, BAE delays, disruptions by BAE, and accelerations in Fluor's work, all of which were caused by BAE. (ECF 29, ¶¶ 158-185; 201-209). By filing this Sur-Reply to address limited new arguments raised by BAE, Fluor neither waives any of the arguments in its Opposition to BAE's Motion to Strike (ECF 44), nor concedes any argument or assertion offered by BAE in support of BAE's Motion to Strike (ECF 36).

2

"applies only to private projects, not government or public projects" like the NC Facility. (ECF 50, at 16). BAE's assertion is wholly unsupported. Unsurprisingly, BAE fails to cite to any language in the Subcontractor Claim Statute to support its argument. The reason is clear - the plain language of the Statute in no way limits its scope solely to private projects. See Johnson v. Windsor Ins. Co., 597 S.E.2d 31, 34 (Va. 2004) (stating Virginia's "firmly established" rule that, "in determining the meaning of a statute, [courts] must consider the plain language that the General Assembly used when the statute was enacted").

Rather than cite to the Subcontractor Claim Statute, BAE cites to a wholly unrelated statute, VA Code § 11-4.1, to argue that the language therein should inform the Court on these proceedings. VA Code § 11-4.1, however, addresses indemnity and fails to provide any guidance to this Court on the application of the Subcontractor Claim Statute. The plain language of the Subcontract Claim Statute does not limit its application to a specific type of project. In fact, the type of claims to which the plain language of the Subcontractor Claim Statute refers – payment bond claims and claims for demonstrated additional costs – are made on both private and public projects. BAE's argument is, therefore, unsupported by the plain language of the Subcontractor Claim Statute and must be ignored.

BAE also misreads the legislative history of the Statute. BAE asserts that the Subcontractor Claim Statute is a "mechanics' lien statute" and, as such, does not apply to public projects "in the absence of express [statutory] provisions." (ECF 50, BAE Reply at 16) (quoting Jones v. Virginia, 591 S.E.2d 72, 75 (Va. 2004)). According to BAE, the Subcontractor Claim Statute applies only to mechanics' liens because it was introduced to the General Assembly as an Act relating to mechanics' liens and subcontractor waivers thereof. BAE, however, conveniently **omits** a key event in the Statute's legislative history.[2]

---

[2] Importantly, the plain language of the Subcontractor Claim Statute includes **no** mention of mechanic's liens.

After the General Assembly passed the original Act intended to protect subcontractor claim rights ("Bill 891") and presented it to Governor McAuliffe for his signature, the Governor returned Bill 891 to the legislature unsigned. Noting his approval of the legislature's intent to protect subcontractors, Governor McAuliffe recommended certain changes to Bill 891, including: (1) keeping the Bill's language that would modify the mechanic's liens statute set forth in Section **43**-3(C) of the Virginia Code; and (2) <u>moving</u> the language addressing a subcontractor's "right to assert claims for demonstrated additional costs" into a newly created Section **11**-4.1:1. <u>See</u> Exhibit A.[3] Notably, **Title 43** of the Virginia Code governs "Mechanics' and Certain Other Liens," while **Title 11** governs "Contracts" generally.

Confirming that the General Assembly placed the Statute in the "**<u>Contracts</u>**" section of the Virginia Code - and not the mechanic's lien section - the title given to the new Virginia Code § 11-4.1:1 was "Waiver of Payment Bond Claims **and Contract Claims**; Construction Contracts." Thus, the Statute itself is clear that it applies to "**Contract Claims**" and <u>not</u> to mechanic's lien claims. The General Assembly overwhelmingly adopted the governor's recommendation to protect subcontractors from waiving their "**Contract Claims.**"

The Governor and the General Assembly purposefully reorganized the operative language, which renders null and void any provision that waives or diminishes a subcontractor's right to claim for demonstrated additional costs. By creating a separate statute under Title 11, the legislature confirmed that: (1) the Statute is not a mechanics' lien statute; and (2) the Statute does not apply only to private projects. Accordingly, BAE's arguments are meritless.

To support its arguments, BAE cites to <u>Jones v. Commonwealth</u>, 267 Va. 218 (2004). Yet even a cursory review of that case reveals that the facts set forth therein are wholly irrelevant to those

---

[3] The legislative history of Bill 891 is available at: https://lis.virginia.gov/cgi-bin/legp604.exe?151+sum+SB891 .

in this matter. In Jones, a company (Waco, Inc.) was a prime contractor directly with the University of Virginia for asbestos abatement. Jones, who was a Waco employee, received an electrical shock while performing the work and sought damages from the University. The court in Jones was charged with evaluating whether the University was a government entity under the Worker's Compensation Act. In doing so, the court reviewed the University's treatment under mechanic's liens statutes. Other than that single reference to mechanic's liens, Jones has nothing to do with mechanic's liens, payment bond claims, contract waivers, subcontractor claim rights, or any other issue relevant to this matter. Thus, BAE's reliance on Jones is misguided.

BAE also argues that the Subcontractor Claim Statute does not apply to the LOD clauses because the Statute allegedly addresses payment bond claims on private contracts. See ECF 50 at 16. To state the obvious, the plain language of the Subcontractor Claim Statute addresses both payment bond claims **and** "claims for demonstrated additional costs." Fluor is not making a payment bond claim; Fluor asserts a breach of contract claim or a "claim for demonstrated additional costs." As mentioned above, the plain language of the Subcontractor Claim Statute does not limit its application to private projects. Thus, the reference to payment bond claims in the Statute does **not** affect Fluor's **contract claims** on the NC Facility project. Accordingly, BAE's arguments raised in its Reply Brief are simply in error, misinterpret the Statute, and must be rejected.

      **B.**    **BAE's Reference to Parol Evidence is an Admission That the LOD Clauses Are Ambiguous**

In its Reply, BAE presented parol evidence to this Court which is **not** cited in Fluor's Counterclaim or BAE's own Complaint. In fact, BAE attached a cherry-picked, single email string between BAE and Fluor in an effort to support BAE's interpretation of the Parties' intent and to litigate this matter at this early stage of the proceedings. BAE was certainly aware that its inclusion of parol evidence was improper. In fact, BAE acknowledges that the "email need not be considered by this Court . . . ." ECF 50 at 24 n.6. This Court should heed BAE's recommendation and ignore BAE's

submission.

Virginia law dictates that parol evidence is admissible only **after** a court has determined that a contract, or part thereof, is ambiguous. Nextel Wip Lease Corp. v. Saunders, 666 S.E.2d 317, 322-323 (Va. 2008). Here, the LOD clauses unambiguously defer to the Subcontract's Changes clauses, under which BAE **must pay** all of Fluor's costs. Nevertheless, should this Court interpret the LOD clauses as BAE requests, then they are unenforceable under Virginia Code § 11-4.1:1. BAE's presentation of parol evidence in support of its Motion to Strike is, therefore, premature and improper. First, BAE has submitted parol evidence **before** a determination by this Court that the language in the three LOD provisions is ambiguous. Second, BAE has included parol evidence in the form of a single, hand-picked email string, to support its theory that the three (3) LOD clauses are **not** ambiguous and support BAE's reading. Virginia law provides **no** support for BAE's arguments or for its premature submission of parol evidence.

Even if BAE's parol evidence was properly submitted (which it was not), the single email string fails to clarify the Parties' intent regarding the inconsistent language in the LOD clauses. The email exchange does not even **address** key questions in this dispute, let alone resolve them. For example, the email string sheds no light on the role of directed and constructive changes in the alleged $30 Million limitation. Indeed, the email seems to refer to claims that may be covered by insurance.[4] Additionally, BAE's email exchange was sent **four months** after Fluor allegedly proposed the LOD language, and **ten days before** the Parties executed the Subcontract. Yet, nowhere does the e-mail explain why General Provision § I.1D.46 contains different language than the other two LOD clauses. Put simply, Article 46 does **not** mention "changes" and BAE's alleged parol evidence fails to explain this difference or whether any discussions were held before or after this cherry-picked exchange.

---

[4] BAE concedes in its Reply that the Parties intended the LOD clauses to address tort-related claims that may be covered by insurance (ECF 50 at p. 14).

Finally, BAE simply cannot have it both ways. BAE cannot argue on the one hand that the three LOD clauses are clear and unambiguous, and then submit parol evidence to allegedly clarify an ambiguity between the same provisions. Rather, BAE's decision to include and rely upon parol evidence in its Reply Brief is a tacit admission that an ambiguity exists between the LOD clauses.

If this Court disagrees with Fluor on both the scope of the LOD clauses and the applicability of the Virginia Statute, BAE is nevertheless equitably estopped from reaping any benefit from the LOD provisions as set forth in Fluor's Opposition brief. If, however, the Court reaches the issue of an ambiguity within the LOD clauses, then this Court should find that an ambiguity does exist and order discovery of parol evidence to discern the Parties' complete intent.

Despite improperly introducing parol evidence, BAE attempts to avoid any further discussion of evidence of the Parties' intent behind the LOD clauses. In doing so, BAE repeats its allegation that Fluor drafted the LOD clauses. Restating that point does not resolve an ambiguity when the Parties clearly negotiated the LOD clauses. In fact, the provisions would not include inconsistent language if Fluor's alleged language were simply adopted into the Subcontract. For this reason, should the Court reach the question of ambiguity, Fluor respectfully requests that the Court authorize the Parties to conduct full discovery as to their intent. See Nextel, 666 S.E.2d at 323 (restating the well-established rule that "where the writing on its face is ambiguous . . . parol evidence is always admissible . . . to establish the real contract between the parties" (alterations in original) (quoting Prospect Dev. Co. v. Bershader, 515 S.E.2d 291, 296 (Va. 1999))). At a minimum, this Court should not consider BAE's parol evidence unless and until the Court finds that the LOD clauses are ambiguous and then provides Fluor an opportunity to respond following discovery.

### C. Fluor Could Not Have Simply Stopped Performance of BAE's Changes

In its Reply Brief, BAE asserts the new and inconceivable claim that, "even if BAE had ordered a change over $30 Million . . . Fluor would have had no obligation to perform the change and

7

no liability for refusing to do so." (ECF at 13). BAE neglects to inform the Court, however, that the Subcontract, at Exh. A§ I.1A.3(a), unambiguously requires, in the event of a dispute as to whether certain work constitutes a change to the Subcontract, that Fluor <u>must</u> proceed with performance of the Subcontract, as modified, pending resolution of the dispute ("Pending any such adjustment, SELLER will diligently proceed with the contract as modified.").

Here, BAE conflates its obligation to compensate Fluor for <u>all</u> changes with Fluor's obligation to continue performing. BAE also argues that Fluor should not have continued performing unless and until it received written approval from BAE. As set forth in its Counterclaim, Fluor provided <u>timely</u> notice to BAE of <u>all</u> changes <u>before</u> proceeding with the work.[5] At no time did BAE reject Fluor's changes because notice was untimely. Rather, BAE rejected Fluor's costs because BAE <u>did not believe</u> the work constituted a change caused by BAE's actions. In such a case, under the Subcontract terms, Fluor was obligated to proceed with the work pending resolution of the dispute.

BAE's novel argument, i.e., that Fluor could have simply abandoned performance, was never presented by BAE during the Project. Nor did BAE <u>ever</u> raise the alleged $30 Million limitation **at all** during the Project. Instead, BAE refused to recognize Fluor's costs as arising from BAE's actions and simply accepted Fluor's performance. At <u>no time</u> did BAE inform Fluor that it believed that Fluor should ignore the terms of the Subcontract and refuse to perform directed and constructive changes that totaled more than $30 Million. Clearly, at this point, BAE is desperately reaching for any and all arguments to evade liability and to pay for performance it already has accepted, even arguments that contradict the Subcontract's plain language. For this reason, this Court should reject any new assertion by BAE that Fluor failed to provide timely notice (which Fluor did as set forth multiple times in Fluor's Counterclaim) or that Fluor had the "option" to simply refuse to perform BAE's changes.

---

[5] In no less than seven paragraphs in its Counterclaim, Fluor alleged it provided timely notice of all BAE caused changes. ( <u>See</u> (ECF 29, at ¶¶ 17, 191, 210, 218, 229, 237, and 243.)

## II. CONCLUSION

For the reasons set forth above, and for those set forth in Fluor's Opposition Brief, this Court should deny BAE's Motion to Strike in its entirety.

Dated: October 5, 2021

                Respectfully submitted,

                /s/ Gregory M. Wagner
                Scott P. Fitzsimmons, Esq. (VSB 68147)
                Kathleen O. Barnes, Esq. (VSB 30451)
                Edward J. Parrott, Esq. (VSB 29499)
                Sarah K. Bloom, Esq. (VSB 94406)
                Gregory M. Wagner, Esq. (VSB 96017)
                WATT, TIEDER, HOFFAR
                & FITZGERALD, LLP
                1765 Greensboro Station Place, Suite 1000
                McLean, Virginia 22102
                Tel: (703) 749-1000
                Fax: (703) 893-8029
                sfitzsimmons@watttieder.com
                kbarnes@watttieder.com
                eparrott@watttieder.com
                sbloom@watttieder.com
                gwagner@watttieder.com

                *Attorneys for Fluor Federal Solutions, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 5th day of October, 2021, a copy of the foregoing was delivered via the CM/ECF system to the following:

>Todd M. Conley
>Jeffrey J. Golimowski
>WOMBLE BOND DICKINSON (US) LLP
>8350 Broad Street, Suite 1500
>Tysons, Virginia 22102
>Telephone: (703) 394-2275
>Email: todd.conley@wbd-us.com
>Email: jeff.golimowski@wbd-us.com
>
>D. Stan Barnhill (VSB #22978)
>Joshua R. Treece (VSB #79149)
>Justin E. Simmons (VSB # 77319)
>WOODS ROGERS PLC
>10 South Jefferson Street, Suite 1400
>Roanoke, Virginia 24011
>Telephone: (540) 983-7600
>Facsimile: (540) 983-7711
>Email: barnhill@woodsrogers.com
>Email: jtreece@woodsrogers.com
>Email: jsimmons@woodsrogers.com
>
>Karen M. Stemland (VSB #47167)
>WOODS ROGERS PLC
>123 East Main Street, 5th Floor
>Charlottesville, Virginia 22902
>Telephone: (434) 220-6826
>Facsimile: (434) 566-0473
>Email: kstemland@woodsrogers.com
>
>*Attorneys for BAE Systems Ordnance Systems, Inc.*

Respectfully submitted,

/s/ Gregory M. Wagner
Gregory M. Wagner, Esq. (VSB 96017)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
gwagner@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*