# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |
|---|---|
| BAE SYSTEMS ORDNANCE SYSTEMS, INC.,<br><br>*Plaintiff/Counterclaim-Defendant,*<br><br>v.<br><br>FLUOR FEDERAL SOLUTIONS, LLC,<br><br>*Defendant/Counterclaim-Plaintiff.* | Case No. 7:20-cv-587 |

## MEMORANDUM IN SUPPORT OF MOTIONS TO STAY AND TO BIFURCATE

Plaintiff/Counterclaim-Defendant BAE Systems Ordnance Systems, Inc. ("BAE"), by counsel, provides the following Memorandum in Support of its Motions to Stay and to Bifurcate.

## PRELIMINARY STATEMENT

BAE and Defendant/Counterclaim-Plaintiff Fluor Federal Solutions, LLC ("Fluor") each filed motions to dismiss. (ECF 38, 30.)  BAE also filed a motion to strike. (ECF 36.)  The briefing on all three motions has been completed, and all three motions are scheduled for hearing in January 2022 (the Court's earliest available date).   BAE's Rule 12(b)(6) motion seeks dismissal of all claims filed by Fluor.  BAE's motion to strike, filed pursuant to Rule 12(f), seeks to strike allegations from Fluor's Counterclaim requesting damages in excess of the parties' $30M contractual damages cap which, if granted, would reduce the amount in dispute by roughly $150,000,000.  Fluor's Rule 12(b)(6) motion seeks dismissal of significant portions of BAE's one-count, breach-of-contract Complaint.  Because resolution of the outstanding motions would eliminate, or at a minimum, significantly reduce the need for discovery, staying discovery until the motions are decided is the most efficient and economical

path forward in this litigation.   Moreover, staying discovery would not negatively impact case management because the case is in its infancy and trial is not scheduled until March 2023.  *See, e.g.*, ECF 59.  Accordingly, BAE respectfully requests a short stay of discovery pending resolution of the parties' outstanding Rule 12(b)(6) motions and BAE's outstanding Rule 12(f) motion.

The motions hinge on two threshold contract interpretation issues that should be resolved before the parties expend inordinate resources on unnecessary, broad-sweeping fact discovery.  The two contract interpretation issues (collectively, the "Key Contract Interpretation Issues") are:

1.   The contract's assignment of design responsibility for the overall NC facility and whether any percentage-completion warranty existed for a preliminary concept developed by a prior subcontractor named Lauren (the "Lauren Design"); and

2.   Enforceability and application of the contract's $30M damages cap.

Resolving the Key Contract Interpretation Issues squarely presented by the motions would materially narrow the scope of the litigation, likely reduce the amount in dispute by over a hundred fifty million dollars, and encourage the parties to attempt to settle the remainder of the case.

Alternatively, if and to the extent the Court determines that the entire matter cannot be resolved through a ruling on the pending motions, BAE respectfully moves the Court to bifurcate the case so that the threshold Key Contract Interpretation Issues, on which so much of the case hinges, can be addressed first, with initial discovery focused on those key issues.  Whether through the pending motions or bifurcation, focusing first and separately on the Key Contract Interpretation Issues is the most practical and cost-effective approach.

## BACKGROUND ON PENDING DISPOSITIVE MOTIONS

In considering a motion to stay discovery pending a decision on an outstanding motion, "[i]t may be helpful to take a preliminary peek at the merits of the allegedly dispositive motion to see if on its face there appears to be an immediate and clear possibility that it will be granted." *Bennett v. Fastenal*

*Co.*, No. 7:15-cv-543, 2016 WL 10721816, at *1 (W.D. Va. Mar. 8, 2016) (quoting *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C. 1988)).

Here, BAE has filed a 12(b)(6) motion to dismiss and a 12(f) motion to strike—which, if granted, would eliminate or substantially reduce the need for discovery.  BAE's motion to dismiss focuses on assignment of design responsibility in the design/build contract for the overall NC facility, wherein Fluor agreed to accept design responsibility for a preliminary concept, develop the design to completion, correct any design issues, and then build the Project.  Because the design/build contract assigns design responsibility for the overall NC facility to Fluor, Fluor cannot cite problems with that design as justification for the additional compensation Fluor seeks in its Counterclaim.

Though the design/build contract contains a firm-fixed price, Fluor improperly attempts to evade its contractual design responsibility and pass its cost-overruns onto BAE in two ways.  First, Fluor argues that the design/build contract incorporates an alleged pre-contract representation that the Lauren Design for the overall facility was 85% complete.  Fluor argues that because it was difficult and costly to validate, correct, and complete the Lauren Design (despite its contractual obligation to do so), Fluor is entitled to change orders for the extra costs, irrespective of the design/build contract's firm-fixed price. (CC ¶¶ 234, 239–45).  But Fluor's argument, which is the primary pillar of its breach-of-contract action, fails because *the design/build contract requires that Fluor validate, correct, and complete the Lauren Design;* and nothing in the design/build contract contains or incorporates any 85% representation.  Instead, the contract expressly precludes reliance on any statement or representation not contained therein.  Further, due to the contractual assignment of pertinent design responsibility to Fluor, there is no implied design warranty (as Fluor contends) that could support Fluor's claims.

Moreover, Fluor's argument about BAE's alleged pre-contract representation that the Lauren Design was 85% complete is a red herring.  The design/build contract contains no representations, or even suggestions, that the Lauren Design for the overall facility was 85% complete (or any other

percentage).  Though the design/build contract contains all of the terms of the parties' agreement, Fluor erroneously alleges that a pre-contract representation created an 85%-complete warranty regarding the Lauren Design.  But there is no basis for referencing pre-contract discussions where the contract is clear on its face and there is no inducement claim (nor could there be).  Instead, analysis of the plain design/build language shows that Fluor was hired *for the very purpose* of completing the design, including verifying, validating, and correcting the Lauren Design to the extent used.  Fluor, therefore, holds the design responsibility pertinent to its Lauren Design/85% claims.

Fluor's second stratagem for evading its design-build responsibility is to deliberately confuse its responsibility for designing the overall NC facility with BAE's role in providing the requirements for a proprietary NC ***manufacturing process***, which relates to the process equipment – not the design of the overall NC facility at issue which would house this process.  BAE merely specified the process technology to be used by Fluor in its design.  Fluor's strategy is misguided and wholly refuted by the contract's clear assignment of pertinent design responsibility for the overall NC facility (the subject of the dispute) to Fluor.  As set forth in Subcontract Appendix F-2 (ECF 49-1), Fluor's design responsibility encompassed the entire NC facility, including, the *entire* civil design (with the exception of a geotechnical/topographical study), the *entire* architectural design, the *entire* structural design, the *entire* mechanical and plumbing design, the *entire* HVAC and fire protection design, the *entire* electrical design and the vast majority of the process design.  BAE's much narrower responsibility to specify the process design requirements, on the other hand, focused on discrete preparation of the vendor drawings for the process equipment and determination of the equipment's use in manufacturing NC (*e.g.*, throughput model).  In essence, BAE was responsible for specifying the process equipment to be used in the design; Fluor was responsible for implementing those requirements in its design and designing everything else –including completing and correcting the Lauren Design once it chose to use it.

BAE's second pending motion, a Rule 12(f) motion to strike, seeks to strike all allegations from Fluor's Counterclaim requesting damages in excess of the $30M damages cap in the design/build contract.  Fluor, however, alleges that it is entitled to "approximately $183,379,199.00 in additional costs" on the Project. (CC ¶ 223 (emphasis added)).  During contract negotiations, Fluor (not BAE) proposed to limit the parties' liability and impose a "maximum liability" cap of $30,000,000 for all damages, including "all changes" arising under or related to the Subcontract.  Specifically, Fluor proposed the following language which now appears in the design/build agreement.

### Limitation on Damages:

Except as otherwise provided in this Subcontract, in the event of either Party's failure to perform in accordance with this Subcontract, whether such failure is occasioned by the acts or omissions of either Party, its respective suppliers, or the BAE Parties, either Party may pursue any and all damages and remedies available under this Agreement and/or applicable law. *Except as otherwise provided in this Subcontract, damages and remedies that may be recovered by either Party shall be limited follows: For all claims*, regardless of the basis on which the claim is made, the applicable party's *liability for damages arising under or related to this Subcontract shall be limited to $30M, $30M being defined as the value including all changes and the maximum liability for damages*. Neither Party shall be liable for any indirect, special, incidental or consequential damages, including but not limited to lost profits or business interruption losses, whether arising under contract, warranty, express or implied tort, including negligence, or strict liability, arising at any time from any cause whatsoever in connection with this Subcontract or performance hereunder, even if caused by the sole or concurrent or active or passive negligence, strict liability or other legal fault of either of the Parties, their members, directors, officers, employees, agents, representatives, parent companies, subsidiaries, affiliates, joint venture partners, successors and assigns, and each of their respective owners, partners, members, shareholders, directors, managers, officers, employees, agents, representatives and subcontractors at any tier.

This limitation on damages provision, and the Court's interpretation thereof, is critical to early resolution and narrowing the scope of this case.  The parties and the Court will manage the case very differently if the case involves a maximum of $30M (instead of the roughly $200M believed to be purportedly in dispute based on additional change order requests submitted by Fluor since the action was filed).   Determination and enforcement of the $30M cap, therefore, will significantly enhance efficiency, likely will minimize the expenditure of Court resources (including the length of trial), and will encourage settlement.

Alternatively, to the extent the above issues are not resolved through the pending motions, bifurcated discovery targeting these Key Contract Interpretation Issues first will enable the Court and the parties effectively and efficiently to structure this litigation to resolve a majority of the issues in dispute.

## BAE'S MOTION TO STAY AND BIFRUCATE HAVE BEEN DISCUSSED WITH FLUOR SINCE THE OUTSET

In the parties' informal teleconference with the Court on December 1, Fluor incorrectly represented that the parties have not conferred with respect to bifurcation and argued that BAE's Motion to Stay and Bifurcate was raised at the "eleventh hour." Fluor is plainly mistaken on both counts. As Fluor is well-aware, BAE raised the issue of bifurcation with the Court during the parties' April 6, 2021 hearing with Judge Urbanski. Further, in numerous emails after the April 6 hearing and during the parties' initial Rule 26(f) conference on July 23, 2021, the parties conferred at length on *both* a stay and bifurcation pending resolution of the dispositive and Rule 12(f) motions. (Dkt. 55 at 4). Indeed, BAE expressly informed Fluor that "discovery could change substantially depending on the outcome of the parties' pending motions under Rule 12(b)(6) and 12(f)," and "BAE raised the possibility of … a motion to bifurcate and stay discovery during the [Rule 26(f)] conference." *Id.* At no time has BAE even suggested to Fluor that it was reconsidering its consistent and long held position that it would seek a stay and bifurcation.

With full knowledge of BAE's intent to move for both a stay and bifurcation, Fluor elected not to issue discovery requests to BAE until October 15, 2021. After receiving Fluor's requests, and consistent with BAE's long-standing representations to Fluor, BAE drafted its Motion to Stay and Bifurcate for filing. *See* (Dkt. 55). On November 11, 2021 (the week before its responses to Fluor's discovery requests were due), counsel for BAE emailed counsel for Fluor stating, *inter alia*:

> BAE is planning to file a Motion to stay discovery in Case 587 tomorrow, to (1) stay discovery pending resolution of the outstanding dispositive motions and Rule 12(f) Motion scheduled for a hearing in January 2022, and (2) in the

event the January 2022 hearing does not resolve the entire case, bifurcate the case to resolve the following key contract interpretation issues first:

> 1.   The contract's assignment of design responsibility and whether any percentage-completion warranty existed for a preliminary concept developed by a Lauren (the "Lauren Design"); and
>
> 2.   Enforceability and application of the contract's $30M damages cap.

*See* **Exhibit A**.

Fluor, however, sought to delay BAE's filing of its Motion, stating, *inter alia*: "Should BAE file a Motion to Stay or Bifurcate tomorrow, such Motion will be in direct violation of Paragraphs 6 and 7 of Judge Urbanski's procedures and Scheduling Order (ECF 48 and 57-1)…. We are attempting to schedule a call with Fluor tomorrow to discuss BAE's possible Motion and should be prepared to engage in 'meet and confer' discussions by Mon. Please let us know when you are available." *Id.* BAE responded stating:

> [W]e have already met and conferred on both the stay and bifurcation at length, and the same is reflected in our 26(f) Report. *See* (Dkt. 55) ("BAE raised the possibility of … a motion to bifurcate and stay discovery during the conference…. Fluor stated that it does not believe discovery should be stayed…. Fluor [stated it] would oppose the motion to bifurcate for separate trial and to stay discovery"). Thus, we have already fully conferred on these issues.
> …
> Although we fully met and conferred already, we are nonetheless available on Monday to discuss further, if you think that could somehow be beneficial. Let us know what time works. [We are] generally available.

On November 15, the parties *again* met and conferred on both the stay and bifurcation. As expected, Fluor's position did not change in any respect, and the meet and confer appeared to be little more than an attempt by Fluor to delay the filing of BAE's Motion to Stay and Bifurcate that Fluor has long anticipated. In light of the above, BAE was understandably taken-aback when Fluor represented to the Court on December 1, 2021 that the parties have *not* conferred on bifurcation and attempted to argue in connection with the hearing that BAE's Motion to Stay is somehow untimely.

Without question, BAE's motion is timely in all respects. BAE raised the motion at the outset, and there was no reason or basis for BAE to file a motion to stay when no requests had ever been issued to BAE. When Fluor ultimately decided to issue requests to BAE (three months after the parties' 26(f) conference), BAE prepared its Motion for filing, but delayed doing so based on Fluor's representation that they were speaking with their client and would like to further meet and confer on these issues on November 15, 2021.

During the November 15 meet and confer, BAE proposed, as a compromise, that the parties agree to a short stay until January 14, 2021, and BAE offered to hold off on moving for bifurcation before that time. This would allow the parties to revisit both issues following the dispositive motions hearing with Judge Urbanski. Fluor, however, was unwilling to agree or propose any compromise. Instead, Fluor insisted that BAE not file until the parties set an informal conference to discuss the matter with the Judge Ballou, which BAE was happy to do.

During the parties' informal conference on December 1, the Court asked whether it was appropriate for any discovery to proceed on any issues prior to the hearing on and/or resolution of the pending dispositive and Rule 12(f) motions. As previously stated, BAE's dispositive motion seeks dismissal of Fluor's claims, in their entirety. Further, while it is conceivable that discovery could be limited to the Key Contract Interpretation Issues prior to the hearing, any such discovery would be inefficient and unnecessary because the contract language at issue is clear and unambiguous. Thus, the entire thrust of Fluor's argument that course of performance discovery may somehow be relevant to the Key Contract Interpretation Issues, is misguided. *See United States v. Snowden*, 2019 WL 8333546, at *5 (E.D. Va. Dec. 17, 2019) ("The contractual language here is clear, and this Court is therefore legally barred from accepting extrinsic evidence of course of performance, course of dealing, and common trade practices.").

## LEGAL STANDARD

1.      **Standard Applicable to Stay of Discovery.**

A trial court has the "inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Lismont v. Alexander Binzel Corp.,* No. 2:12-cv-592, 2014 WL 12515341, at *2 (E.D. Va. Mar. 12, 2014) (citation omitted). "[P]roper use of this authority 'calls for the exercise of judgment which must weigh competing interests and maintain an even balance.'" *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983) (citation omitted).

Federal Rule of Civil Procedure 26(c) provides that the "court may, for good cause shown, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense," including specifying timing, terms, and scope of discovery.  Fed. R. Civ. P. 26(c); *Rivers v. United States,* No. 6:18-cv-61, 2020 WL 1469475, at *1 (W.D. Va. Jan. 24, 2020), *reconsideration denied,* No. 6:18-CV-00061, 2020 WL 6021465 (W.D. Va. Oct. 9, 2020), *reconsideration denied*, No. 6:18-CV-00061, 2021 WL 3282148 (W.D. Va. July 30, 2021), *and reconsideration denied*, No. 6:18-CV-00061, 2021 WL 3282148 (W.D. Va. July 30, 2021) (evaluating motion to stay discovery under Fed. R. Civ. P. 26(c)(1); *see also Wymes v. Lustbader*, No. CIV. WDQ-10-1629, 2012 WL 1819836, at *3 (D. Md. May 16, 2012) ("motions to stay discovery" are "properly considered pursuant to Fed. R. Civ. P. 26(c)"). "Good cause" to support a motion to stay discovery entails a "specific factual showing that the interest of justice and considerations of prejudice and undue burden to the parties require a protective order and that the benefits of the stay outweigh the cost of delay." *Cognate BioServices, Inc. v. Smith,* No. CIV. WDQ-13-1797, 2015 WL 5673067, at *2 (D. Md. Sept. 23, 2015) (citation omitted).

In determining whether to grant a stay, courts "balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *Universal Elections, Inc.,* 729 F.3d 370, 375 (4th Cir. 2013).  Factors include: (1) the interests of judicial economy; (2) the hardship and equity to the moving party in the absence of a stay, and (3) the potential prejudice

to the non-moving party in the event of a stay.  *Buzzell v. JP Morgan Chase Bank,* No. 3:13-CV-668, 2015 WL 5254768, at *2 (E.D. Va. Sept. 9, 2015), aff'd, 642 F. App'x 267 (4th Cir. 2016); *Stinnie v. Holcomb*, 396 F. Supp. 3d 653, 658 (W.D. Va. 2019)(quoting *Crowell v. N.C.*, No. 1:17-cv-515, 2018 WL 6031190, at *4 (M.D.N.C. Nov. 16, 2018); *accord Guarantee Co. of N. Am. USA v. Ikhana, LLC*, No. 1:16-CV-1484, 2017 WL 1821106, at *2 (E.D. Va. May 4, 2017) (citation omitted).  The judicial economy factor favors preserving judicial resources, narrowing the issues in a case, and limiting unnecessary discovery.  *Orr v. Nat'l Rifle Ass'n of Am.*, No. 117CV00157GBLMSN, 2017 WL 11501503, at *2 (E.D. Va. May 19, 2017) (granting motion to stay in part to "narrow the issues" in the case and "limit unnecessary discovery").

Where there are pending dispositive motions, it is "not uncommon for courts to stay discovery pending resolution of dispositive motions," especially where the case is in its early stages.  *Wymes v. Lustbader*, No. CIV. WDQ-10-1629, 2012 WL 1819836, at *4 (D. Md. May 16, 2012); *Naef v. Wells Fargo Home Mortg.*, No. 7:10-CV-163-FL, 2010 WL 5055990, at *2 (E.D.N.C. Dec. 3, 2010) (staying discovery pending resolution of motion to dismiss); *Bragg v. United States,* No. CIV.A. 2:10-0683, 2010 WL 3835080, at *2 (S.D.W. Va. Sept. 29, 2010) (staying discovery pending ruling on motion to dismiss); *Thigpen v. U.S.,* 800 F.2d 393, 396-97 (4th Cir. 1986) (endorsing the trial court's decision to stay discovery pending ruling on Rule 12(b)(1) motion), *overruled on other grounds by Sheridan v. U.S.*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988); *Coastal States Gas Corp. v. Dep't of Energy*, 84 F.R.D. 278, 282 (D.C.Del. 1979) (stays are "an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources").

B.     **Standard Alternatively Applicable to Bifurcation.**

Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims."  The court has the implicit authority

to limit discovery as to any segregated issues so as to minimize and defer "costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (4th Cir.1970).  The party requesting bifurcation must show that "bifurcation would '(1) promote greater convenience to the parties, witnesses, jurors, and the court, (2) be conducive to expedition and economy, and (3) not result in undue prejudice to any party.'" *Shire LLC v. Mickle, No.* 7:10-CV-00434, 2011 WL 2959461, at *2 (W.D. Va. July 15, 2011) (citation omitted).  The court has the implicit authority to limit discovery as to any segregated issues so as to minimize and defer "costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson*, 424 F.2d at 499.

## ARGUMENT

### I. Applicable Factors Weigh in Favor of Granting a Stay.

#### A.  Judicial Economy Favors a Stay of Discovery Pending Resolution of Motions to Dismiss.

Staying discovery will further the interests of judicial economy.  Here, if any portion of any of the motions is granted, such resolution would eliminate or vastly simplify the issues in question.  For example, BAE moves for dismissal of Fluor's breach of contract count because the design/build contract assigns to Fluor responsibility for the overall NC facility design and risk for verifying and completing the applicable portion of that design; the design/build contract contained no implied warranty; and Fluor's basis for the vast majority of its damages, therefore, fails.  Resolution of the critical issues, *i.e.* Fluor's design responsibility and the lack of any implied warranty, will eliminate the need for discovery on pivotal, yet far reaching, issues in the case and vastly simplify the litigation.  *See, e.g., Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No. 2:18CV94, 2019 WL 8888193, at *3 (E.D. Va. Feb. 25, 2019) ("the simplification factor weighs heavily in favor of the stay"), quoting *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15CV21, 2015 WL 7272199, at *3 (E.D. Va. Nov. 16, 2015); *Massachusetts Bay*

*Ins. Co. v. Decker, No.* 7:11-CV-00342, 2012 WL 43614, at *2 (W.D. Va. Jan. 9, 2012) (staying discovery

on the issue of bad faith where such a stay was "expedient" until contract issues were resolved); *Shire*

*LLC v. Mickle, No.* 7:10-CV-00434, 2011 WL 2959461, at *3 (W.D. Va. July 15, 2011) (granting motion

to stay discovery as to tortious interference, unfair competition, and Sherman Act counterclaims);

*Lismont v. Alexander Binzel Corp.,* No. 2:12CV592, 2014 WL 12515341, at *8 (E.D. Va. Mar. 12, 2014)

(partially granting stay of remaining discovery requests until Court has ruled on Defendants'

affirmative defense of laches).

      In fact, Courts often find good cause to stay discovery where, like here, outstanding dispositive

motions, if granted, would dispose of claims and eliminate the need for discovery all together.  *See,*

*e.g., Tilley v. United States,* 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003), *aff'd,* 85 Fed. App'x. 333 (4th Cir.

2004); *Rivers,* 2020 WL 1469475, at *1 (finding good cause to stay all discovery pursuant to Fed. R.

Civ. P. 26(c)(1), until the judge determines which of plaintiff's claims, if any, survive multiple

defendants' motions to dismiss); *Broad. Innovation, L.L.C. v. Charter Commc'n, Inc.,* No. CIV A03-

CV2223ABJBNB, 2006 WL 1897165, at *8 (D. Colo. July 11, 2006) ("a stay would further the interests

of judicial economy and the conservation of the parties' resources, as well as that of the court" if

determination of the pending petition would "either dispose of this litigation entirely or at least aid

the Court in adjudicating this case"); *Chavous v. District of Columbia Financial Resp. and Mgmt. Asst. Auth.,*

201 F.R.D. 1, 2 (D.D.C. 2001); *Chaudhry v. Mobil Oil Cop.,* 186 F.ed 502, 505 (4th Cir. 1999) (district

court did not abuse its discretion by staying discovery while a Rule 12(b)(6) motion to dismiss was

pending; *Cleveland Const., Inc.,* 2009 WL 903564, at *2 ("[f]ederal district courts often stay discovery

pending the outcome of dispositive motions that will terminate the case"); *Hope v. Bd. Of Directors of*

*Kanawha Pub. Serv. Dist.,* No. 2:12-cv-6559, 2012 WL 6045918, at *1 (S.D. W. Va. Dec. 5, 2012) (staying

discovery pending motion to dismiss); *Cognate,* 20152015 WL 5673067, at *2 (courts "commonly stay

discovery pending resolution of dispositive motions").

Because there are outstanding motions to dismiss and strike which will be heard soon (in just over one month), and will eliminate or substantially reduce the issues in the case, as well as related discovery disputes, a short stay is warranted to limit the wasting of resources by the Court and the parties. *See, e.g., Dye v. U.S. Bank Nat. Ass'n*, No. 315-CV-82, 2015 WL 5326210 at *1 (W.D.N.C. Sept. 11, 2015) (finding good cause to stay discovery where pending motions to dismiss, if granted, would dispose of case); *Chavous*, 201 F.R.D. at 2 (stay pending ruling on dispositive motion was "an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use of judicial resources") (citation omitted).

### 1.  The Subcontract is Clear and Unambiguous, Barring Extrinsic Evidence; the Key Contract Interpretation Issues Are Properly Resolved Prior to Discovery.

Virginia adopts the "plain meaning rule," whereby when language is unambiguous, "it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning."[1] *Great Falls Hardware Co. of Reston v. S. Lakes Vill. Ctr. Assocs., Ltd. P'ship*, 238 Va. 123, 125, 380 S.E.2d 642, 643 (1989) (it was "error for the trial court to consider extrinsic evidence" where the language was unambiguous); *see also United States v. Snowden*, No. 1:19-CV-1197, 2019 WL 8333546, at *4 (E.D. Va. Dec. 17, 2019) (when an agreement "is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself"); *Lerner v. Gudelsky Co.*, 230 Va. 124, 132, 334 S.E.2d 579 (1985) (adopting the "plain meaning rule"); *Schneider v. Cont'l Cas. Co.*, 989 F.2d 728, 731 (4th Cir. 1993) (the "court may not, where the contractual language is clear, invite or accept the submission of extrinsic evidence, 'find' ambiguity in the contractual text based upon that evidence, and resolve the found ambiguity by resort to extrinsic evidence").

---

[1]   It is well settled that "contractual language will not be rendered ambiguous merely because the parties disagree about the meaning of such language." *Wallace v. City of Hampton*, No. 2:15CV126, 2018 WL 10482902, at *3 (E.D. Va. Jan. 9, 2018).

When a contract is unambiguous, the "Court is … legally barred from accepting extrinsic evidence of course of performance, course of dealing, and common trade practices." *Snowden*, 2019 WL 8333546, at *5; *see also Warren v. Variety Wholesalers, Inc.,* 70 F.3d 1264, *2 (4th Cir. 1995) ("extrinsic evidence will not be considered to aid or alter the plain meaning of the contract terms"); *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, No. 7:16-CV-489, 2019 WL 3307850, at *5 (W.D. Va. July 22, 2019), order clarified, No. 7:16-CV-489, 2019 WL 4197221 (W.D. Va. Sept. 4, 2019) (barring evidence that "tended to vary and contradict the intention of the parties" as expressed in unambiguous language).

Because the Subcontract language is clear, the Court need only consider the four corners of the Subcontract to resolve the Key Contract Interpretation Issues. *See, e.g., Virginia Elec. & Power Co. v. N. Virginia Reg'l Park Auth.*, 270 Va. 309, 316, 618 S.E.2d 323, 326 (2005) (when language is clear and unambiguous, "a court interpreting it 'should look no further than the four corners of the instrument under review'") (citation omitted).  With reference to the Subcontract's four corners, the Key Contract Interpretation Issues are properly resolved early, fostering judicial economy.

**B.  The Hardship/Equity Factor Weighs in Favor of Stay.**

Absent a stay of discovery pending resolution of the outstanding motions to dismiss and strike, BAE would endure the unreasonable hardship and expense of conducting discovery into hundreds of millions of dollars' worth of claims that should and may no longer be at issue after the upcoming hearing. *See, e.g., Lewis v. Mercedes-Benz USA, LLC,* No. 19-CIV-81220-RAR, 2020 WL 4923640, at *4 (S.D. Fla. Mar. 25, 2020) (granting stay in part because otherwise a party would be "forced to incur significant costs if [it] must respond to discovery about claims and vehicles that are not properly part of this case"); *Harris v. United States*, No. 09-CV-02658-PAB-KLM, 2010 WL 1687915, at *1 (D. Colo. Apr. 27, 2010) (neither the court's "nor the parties' time is well-served by being involved in the

'struggle over the substance of the suit' when, as here, a dispositive motion is pending") (citation omitted).

In contrast, Fluor would endure no hardship from a short stay. The construction project is substantially complete and this case is just about money. Moreover, the case is still at its early inception, and Fluor, like BAE, would benefit from avoiding the time and cost of discovery into extraneous issues that should no longer be relevant after resolution of the pending motions. *See Wilt v. Household Life Ins. Co.*, No. 2:14-CV-31400, 2015 WL 5501751, at *2 (S.D.W. Va. Sept. 16, 2015) (a "relatively short stay in the potentially expensive discovery … will not cause Plaintiff to suffer any particular hardship"); *see also VirtualAgility Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1317 (Fed. Cir. 2014) (the timing factor weighed in favor of a stay where the litigation was "still at its infancy" and there remained eight months of fact discovery).

Each party expended significant time and resources fully briefing the pending motions. Each party, albeit for separate reasons, has vigorously argued that major portions (in the case of Fluor's partial motion to dismiss), or all (in the case of BAE's motion to dismiss), of pending claims should be dismissed and thereafter no longer constitute topics for discovery. Requiring the parties to commence discovery before the Court decides the pending motions would cause hardship on both parties and could very well result in the parties and the Court wasting resources by engaging in discovery on issues that will no longer remain in the case.

### C. A Short Stay Would Not Prejudice Fluor.

Given the procedural posture (infancy of litigation), with a trial date far off in March 2023, and the hearing on the motions to dismiss and strike just over one month away, there would be no material prejudice from a stay of just over a month. *Wilt,* 2015 WL 5501751, at *2 ("Plaintiff will face minimal prejudice by a short stay" where the case was "still early in the discovery process"); *IPVX Pat. Holdings, Inc. v. 8X8, Inc., No.* C 13-01707 SBA, 2013 WL 6000590, at *2 (N.D. Cal. Nov. 12, 2013)

(granting stay of discovery pending resolution of dispositive motion where plaintiff had "not shown that a limited stay of discovery will impose any unfair prejudice on it").  Further, the parties equally would benefit from avoiding the time and cost of discovery over issues that may no longer remain following resolution of the pending motion.

Fluor has shown no urgency to discovery thus far, which undercuts Fluor's likely arguments about speed (irrespective of efficiency).  The parties' filed their Rule 26(f) report on August 13. Accordingly, nothing prevented Fluor from submitting discovery requests as early as August 14 (and arguably much earlier).  Instead, Fluor waited two more months to submit its first set of interrogatories and requests for production of documents on October 15.  Clearly, pushing the commencement of discovery was not a priority for Fluor, so briefly postponing the commencement of discovery until after the pending motions are decided will not prejudice Fluor, especially given the March 2023 trial date.

## II.  Alternatively, Applicable Factors Weigh in Favor of Bifurcation.

If the pending motions are not dispositive of the Key Contract Interpretation Issues, bifurcation is appropriate, and would benefit all involved.  Here, bifurcation would (1) promote greater convenience to the parties and the Court; (2) foster judicial expedition and economy; and (3) not result in any undue prejudice to any party.  *See Shire LLC v. Mickle, No.* 7:10-CV-00434, 2011 WL 2959461, at *1 (W.D. Va. July 15, 2011) (bifurcating the claims was "more likely to expedite the resolution of the central, pivotal, and perhaps even dispositive question…"); *see also Jinro Am. Inc. v. Secure Invs., Inc.,* 266 F.3d 993, 998 (9th Cir.), *opinion amended on denial of reh'g,* 272 F.3d 1289 (9th Cir. 2001) (bifurcation was "a reasonable way to promote clarity and judicial economy, because the validity of the contract directly informed the resolution of the other claims"); *Engen v. Colorado Mills Mall Ltd. P'ship,* No. 09-CV-01281-REB-KLM, 2010 WL 2232422, at *1 (D. Colo. May 28, 2010) (bifurcating tort claims from contractual indemnity claims to avoid unnecessary complication and because "depending on the jury's

verdict, the indemnification claim may evanesce"); *see also Saint John's Afr. Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D. Va. 2012) (finding that bifurcation of request for fees and costs from breach of contract claim was appropriate); *Seneca Ins. Co. v. Shipping Boxes I. LLC*, 30 F.Supp.3d 506, 513 (E.D. Va. 2014) (granting motion to bifurcate and noting that "delaying discovery on issue of insurer's bad faith is 'expedient' where it may not even ultimately be necessary").

Bifurcating the Key Contract Interpretation Issues (design responsibility and the $30M damages cap) for separate discovery and early evaluation will expedite the resolution of the two central, pivotal, and far-reaching questions at issue.   Fluor is alleging that BAE Systems' alleged misrepresentations about the Lauren Design resulted in it incurring cost-overruns over a hundred fifty million dollars.[2]  Simply put, limiting discovery to which party was responsible for the design of this project, whether Fluor had to use the Lauren Design and having done so, who was responsible for resolving problems with it will go a long way toward resolving the primary thrust of the breach of contract actions and the vast majority of Fluor's disputed proposed changes.  Moreover, given the breadth of Fluor's responsibility for designing the overall NC facility, it is disingenuous for Fluor to even suggest that any significant portion of its costs overruns could have been due to BAE's limited process design role.  In fact, when pressed to explain how much of its alleged cost overruns were due to BAE's alleged changes to the "process design" unrelated to the Lauren Design, Fluor has

---

[2] Of the $183M in PCNs identified in its Counterclaim, at least $150M implicate the Lauren Design and Fluor's design responsibility under the contract.  *See, e.g., Compare* July 12, 2021 Letter (rejecting Fluor's Extended General Conditions and Related Change Order claims—including claims D00S3, D00U7 and D00Y0—based on Fluor's contractual design responsibilities); *with* Fluor's Counter Claim (Dkt. 29) at ¶ 223 (seeking $73,288,696 for claims D00S3, D00U7 and D00Y0); *see also* at January 25, 2019 Letter -Disposition of Fluor Change Proposals Relating to the Lauren Design (rejecting $14,868,549.57 in change proposals based on Fluor's contractual design responsibility);  and January 25, 2019 Letter - Disposition of Fluor Change Proposals Relating to SmartPlant Model (rejecting $7,318,412.45 in change proposals based on Fluor's contractual design responsibility).

deliberately and repeatedly avoided answering the question because the answer would refute Fluor's argument that the BAE "process design" changes are an issue the would make bifurcation futile.

Similarly, early resolution of the enforceability and applicability of the $30M cap on damages will promote rational and efficient resolution of the case. Fluor is seeking nearly $200M in its Counterclaim. Both parties will litigate a $200M claim much differently than a $30M claim. In a $200M claim between two large corporations, discovery will be very robust, expensive and contentious, as each party seeks to leave no stone left unturned, while going through extra hoops to protect military secrets. The parties are very likely to demand fewer documents, take fewer depositions, retain fewer experts, and have fewer discovery fights in a $30M case. In short, both sides would benefit from early resolution of the applicability and enforceability of the $30M liability cap.

Early resolution of the Key Contract Interpretation Issues will also foster judicial economy. These issues are largely, if not solely, a matter of contract interpretation. As such, bifurcating them from the rest of the litigation would involve minimal factual discovery and no expert discovery. Moreover, the Key Contract Interpretation Issues would be ready for judicial resolution within months, likely in the context of cross summary judgment motions, and, if an evidentiary hearing became necessary, it would require very few witnesses and much less of Court's time. Just as importantly, the Court's early decision on the Key Contract Interpretation Issues would remove the need for a three-week bench trial in March 2023 thus freeing the Court's very busy docket. Indeed, if the case does not settle as a result of the early resolution of these issues, a bench trial on the remaining issues could be conducted in much less than three-weeks' time if the Key Contract Interpretation Issues (which implicate more than $150M in alleged change orders) are already resolved.

Furthermore, bifurcation of the Key Contract Interpretation Issues from the rest of the case will not prejudice Fluor. The Key Contract Interpretation Issues have equal application to both BAE and Fluor's affirmative cases. The relatively limited costs associated with early discovery and

resolution of the Key Contract Interpretation Issues benefit Fluor just as much as BAE.  The same can be said for expert costs.  It does neither side any good to retain costs experts to support and rebut damages in excess of $30M dollars only to find out just prior to an "un-bifurcated" trial in March 2023 that damages will be capped at $30M.

Lastly, bifurcation in complicated cases where resolution of certain issues should be addressed separately and early is favored in the Western District of Virginia.  For example, in *Shire LLC v. Mickle, No.* 7:10-CV-00434, 2011 WL 2959461, at *1 (W.D. Va. July 15, 2011), the court held that because Plaintiffs' contract claims were "pivotal, if not dispositive" of the counterclaims, there were "significant efficiencies to be had in bifurcating these claims and staying discovery on them."  It reasoned that "given the rapidly increasing complexity of this case, it would be more efficient and convenient, less confusing and prejudicial, to bifurcate."  *Shire LLC*, 2011 WL 2959461, at *2.  That reasoning is particularly apt in this case.  The Court's early decision on the Key Contract Interpretation Issues will resolve the two key (and practically speaking, dispositive) issues in the case to the benefit of both parties and the Court.  Nothing is gained by delaying resolution of these issues until 2023 following a three-week trial.

## CONCLUSION

Given the outstanding 12(b)(6) and 12(f) motions which have been fully briefed and set for hearing in just over a month, BAE respectfully requests a short stay of discovery so the critical issues can be determined or substantially narrowed.  Such stays are not uncommon and would significantly improve judicial efficiency by clarifying or eliminating issues and limiting the waste of resources.  In addition, in the event any issues survive the dispositive motions, bifurcation of the Key Contract Interpretation Issues (design responsibility and $30M damages cap) would significantly clarify the nature and scope of the case and foster better opportunities for early resolution.

Dated: December 3, 2021

Respectfully submitted,

BAE SYSTEMS ORDNANCE SYSTEMS, INC.

By:   /s/ Joshua R. Treece
         Of Counsel

Todd M. Conley (VSB No. 89839)
Jeffrey J. Golimowski (VSB No. 93525)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, VA 22102
Telephone:  (703) 394-2245
todd.conley@wbd-us.com
jeff.golimowski@wbd-us.com

Joshua R. Treece (VSB No. 79149)
jtreece@woodsrogers.com
Justin E. Simmons (VSB No. 77319)
jsimmons@woodsrogers.com
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1800
Roanoke, Virginia 24011
Telephone:  (540) 983-7600
Facsimile: (540) 983-7711

Karen M. Stemland (VSB No. 47167)
WOODS ROGERS PLC
123 East Main Street, 5th Floor
Charlottesville, Virginia 22902
Telephone: (434) 220-6826
Facsimile: 434-566-0473
kstemland@woodsrogers.com