IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| **BAE SYSTEMS ORDNANCE SYSTEMS, INC.** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 7:20-CV-00587-MFU-RSB |
| **FLUOR FEDERAL SOLUTIONS, LLC** | ) ) ) | |
| Defendant. | ) ) ) | |

**BRIEF IN SUPPORT OF FLUOR'S MOTION TO COMPEL
BAE'S DISCOVERY RESPONSES AND FOR ATTORNEYS' FEES**

Respectfully submitted,

   s/ Scott P. Fitzsimmons
Scott P. Fitzsimmons (VSB 68147)
Kathleen O. Barnes (VSB 30451)
Edward J. Parrott (VSB 29499)
Sarah K. Bloom (VSB 94406)
Gregory M. Wagner (VSB 96017)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
sfitzsimmons@watttieder.com
kbarnes@watttieder.com
eparrott@watttieder.com
sbloom@watttieder.com
gwagner@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*

## I. INTRODUCTION

This Motion to Compel arises out of BAE's improper effort to delay this litigation. BAE, the Plaintiff in this action, seeks to avoid providing any response to Fluor's relevant and properly propounded Interrogatories and Requests for Production of Documents ("the Discovery Requests"). By refusing to respond to Fluor's Discovery Requests based on a yet-to-be-filed motion to stay discovery, BAE effectively achieved its desired objective to delay discovery without this Court's authorization. BAE's actions violate the Federal Rules of Civil Procedure. Indeed, BAE's untimely request for a stay reveals its desire to prevent Fluor from prosecuting its claims and to jeopardize the March 2023 trial date, to which the Parties agreed. BAE's unfair and improper tactics must not be permitted to stand.

For the reasons set forth below, this Honorable Court should reject BAE's improper attempt to unilaterally impose an unnecessary and untimely stay of discovery and order BAE to respond to Fluor's Interrogatories and Requests for Production of Documents. Accordingly, Fluor requests that the Court order BAE to respond to Fluor's discovery by December 20, 2021, or within five (5) business days of this Court's Order, whichever is earlier. Moreover, and to deter BAE from further dilatory delay tactics, Fluor also seeks an award of reasonable attorneys' fees and expenses. Accordingly, Fluor respectfully requests this Honorable Court to award Fluor its reasonable attorneys' fees associated with this Motion to Compel, as authorized under Federal Rule of Civil Procedure 37(a)(5).

## II. BACKGROUND

This case arises from the construction of a nitrocellulose manufacturing facility ("NC Facility") on the United States Army Ammunition Plant in Radford, Virginia. BAE was the prime contractor to the Government and Fluor was a subcontractor to BAE ("the Contract").

2

### A. This Matter Arises from BAE's Breach of the Contract and Substandard Performance of Its Design Responsibilities

As set forth in Fluor's Counterclaim, BAE was responsible for major aspects of the Project design. Specifically, the Contract's Statement of Work, Exhibit F-2 established that BAE was responsible for the NC Facility's "Process Design," which represents the central, major components of the NC Facility Project, including the Throughput Model. BAE also designed and procured all the proprietary equipment necessary for the facility to manufacture nitrocellulose. By contrast, Fluor's responsibility was to construct the facility around BAE's Process Design using the BAE provided Lauren Design, and to install the piping and equipment that connected each of BAE's process components. Fluor's work was performed in accordance with the detailed specifications provided by BAE. Hence, any change that BAE made to its Process Design significantly changed Fluor's work. And BAE consistently modified and changed the Process Design throughout the Project. Indeed, what the Court will see at trial are two completely different facilities: one embodied in BAE's Lauren Design and detailed specification and one that ultimately was built.

In this case, BAE has attempted to convince this Court to ignore BAE's contractual design responsibilities. For example, in its Complaint and in its most recent arguments before this Court, BAE asserted that Fluor was <u>solely</u> responsible for the Project design. Yet, BAE's own written statements belie this assertion. In its Reply Brief (ECF 49 at 5), BAE stated <u>unequivocally</u> that Fluor was <u>not</u> responsible for the entire design, asserting "**To be clear, BAE does not and has not argued that Fluor is responsible for all aspects of the design.** BAE acknowledges that it has limited process design responsibility related to overall plant operations, program management, and the BAE furnished equipment for the NC manufacturing process." (emphasis added).

By acknowledging and admitting its design responsibilities and providing detailed specifications for the work to be performed by Fluor (to include the Lauren Design), as a matter of law, BAE assumed responsibility for the adequacy of the Project design and for any costs arising from

3

a defective design. Again, the NC Facility's Process Design constitutes a significant, fundamental portion of the facility and BAE's constant changes to the Process Design have caused a substantial portion of Fluor's damages. Based upon BAE's unequivocal admission, no dispute can exist that BAE bore responsibility for the Project design.

BAE was also responsible for the "Lauren Design." The Lauren Design was a set of design specifications that were prepared by one of BAE's prior subcontractors and which BAE provided to Fluor for the Project. BAE directed Fluor to bid to the Lauren Design, BAE provided Fluor with material take offs to price the Project based on the Lauren Design, BAE included the Lauren Design as Appendix G to the Contract, and BAE required Fluor to comply with the Lauren Design during the Project. In fact, Fluor's Contract with BAE provides that the Lauren Design represented the Project's "minimum requirements." And the Contract's Statement of Work directs Fluor to adhere to the "requirements as identified in LEC [Lauren Engineers & Constructors] Specification[s]."

Notably, before _and after_ Contract execution, BAE represented that the Lauren Design was 85% complete. Specifically, during pre-contract execution meetings, BAE provided multiple presentations to Fluor and the Army in which BAE represented that the Lauren Design was 85% complete. Moreover, BAE represented that the Lauren Design was at a near-final stage of completion to convince Fluor to significantly reduce its bid for the Project. Specifically, BAE stated: "I'm concerned that the design portion of your proposal is really far out of whack with our expectations. As a reference point, the entire original design was around $15M, and that should be about 80-90% complete."

Two months _after_ contract execution, BAE _approved_ and _executed_ the Project's Design Configuration Management Plan (DCMP). The DCMP set forth the Parties' responsibilities regarding the Project design. The DCMP also confirmed two important facts: (1) that BAE consistently represented that the Lauren Design was 85% complete, and (2) that BAE was responsible for the

4

Process Design. Specifically, the DCMP stated "The Nitrocellulose Facility Project baseline design is based on information provided by BAE System as part of the original RFP and Industry Day. This includes a forecasted 85% detail design and Smart Plant Model developed by Laurens Engineering & Construction (LEC)." The DCMP also stated "The NC facility design build project is to provide the facility and support systems/utilities for housing the nitrocellulose process which is the responsibility of BAE Systems."

In a new and strained argument, BAE now asserts that Fluor "elected to use" the Lauren Design, as if Fluor was presented with a choice during the Project. Notably, this argument represents the reason BAE refuses to produce any document or respond to Fluor's discovery. BAE knows that the contemporaneous records in this matter reflect BAE's insistence that Fluor adhere to the Lauren Design. In fact, during the Project, BAE wrote several letters finding certain tasks completed by Fluor to be deficient because they did <u>not</u> adhere to the Lauren Design.

Based upon the clear contractual terms, BAE was responsible for the Process Design and the Lauren Design. And Fluor was obligated to adhere to the Lauren Design. Throughout the Project, BAE significantly modified the Process Design, which affected Fluor's costs. Fluor also discovered that the Lauren Design contained defects and clashes and was significantly less mature than represented by BAE in the Solicitation and in the Parties' executed and approved DCMP. These deficiencies resulted in substantial Project delays and unanticipated increased costs. Under the Contract, BAE is obligated to reimburse Fluor for these costs, but has refused to do so.

### B.  BAE Improperly Failed to Respond to Fluor's Valid Discovery Requests

Upon discovering that Fluor intended to file a lawsuit, BAE raced Fluor to the courthouse and filed a Complaint seeking more than $9 million in damages. In its Complaint, BAE asserts that Fluor caused significant Project delays, resulting in the damages claimed in BAE's Complaint. Fluor then filed a Counterclaim seeking over $183 million in damages incurred as a result of BAE's changes

5

to the Process Design, the defective specifications furnished by BAE, and other directed and constructive changes, delays, and acceleration ordered and/or caused by BAE's actions. In this case, the alleged delays asserted by BAE arose because of BAE's poor and ever-changing Process Design, the defective Lauren Design, and BAE's overall maladministration of the Contract.

On July 23, 2021, the Parties held a Rule 26 conference to discuss discovery issues. As an initial matter, the Parties agreed that discovery would be conducted on each fact in the Complaint and Counterclaim that had been denied, subject to specific objections, including on relevance grounds. See ECF 55 at 3. During the Rule 26 conference, BAE also raised the possibility of a motion to stay discovery and to seek early resolution of certain issues. The Parties' Joint Rule 26(f) report noted that BAE was "contemplating moving to stay discovery." ECF 55 at 4 (emphasis added). The Joint Rule 26 Report also describes Fluor's vehement opposition to BAE's position on those matters during the Rule 26 conference. See id.

After the Rule 26(f) Conference, BAE apparently abandoned its position regarding a stay, and over the subsequent months, the Parties participated in significant discovery efforts. BAE and Fluor exchanged Initial Disclosures, negotiated, and filed a detailed, joint ESI Protocol, and exchanged the names of e-mail custodians and non-custodial document locations. A full recitation of the Parties' discovery efforts to date is set forth in **Exhibit A**. Throughout this process, BAE never moved to stay discovery. BAE never even raised the issue of a stay of discovery.

On October 15, 2021, after the Parties agreed to an ESI protocol for document production, Fluor served its First Set of Interrogatories and First Set of Requests for Production of Documents on BAE. See **Exhibits B and C**. In accordance with FRCP 33(b)(2) and 34(b)(2), BAE's responses were due November 15, 2021. For a full 26 days after it was served with discovery, BAE remained silent. BAE did not request an extension of time to provide responses to Fluor's discovery. Nor did BAE mention its desire or intention to seek a stay of discovery. Indeed, had BAE moved for a stay in

July, or even the day after Fluor's discovery was served, the Motion would already be resolved, and if denied, BAE would have had no choice but to move forward with discovery. Yet, BAE <u>intentionally</u> stayed silent, hoping to delay this litigation as long as possible. In doing so, BAE <u>purposefully</u> manipulated the schedule in this case in the hope of achieving its desired effect – to prevent the production of any document and to avoid explaining its shifting arguments in responses to interrogatories.

BAE abruptly revived its desire for a stay on November 11, 2021, only four (4) days before its responses to Fluor's Interrogatories and document requests were due. On November 11, 2021, BAE announced its intent to file a Motion to Stay, ignoring the requirement of the local rules to "meet and confer" with Fluor and to seek leave to file the discovery-related motion from this Court.

When BAE did serve its discovery responses on November 15, BAE <u>refused</u> to answer <u>any</u> interrogatory or produce <u>any</u> document in response to Fluor's requests, in violation of Fed. R. Civ. P. 33(b)(2) and 34(b)(2). <u>See</u> **Exhibits D and E**. Instead, BAE unilaterally and without a court order or citation to any legal authority responded to each Interrogatory and document request as follows: "BAE objects to all discovery in this action until the Motions to Dismiss, Motion to Strike, and Motions to Stay and to Bifurcate are ruled upon by the Court." <u>Id</u>. Thus, before even consulting with this Court or <u>filing</u> a motion to stay discovery, BAE imposed its own stay of discovery, without this Court's authorization. Accordingly, Fluor moves to compel BAE's responses to Fluor's properly propounded discovery requests.

BAE does not want to produce any documents in this case because <u>none</u> of BAE's internal documents will support its newly contrived arguments. For example, not a single document in BAE's possession will support its bizarre assertion that Fluor "elected to use" the Lauren Design. To the contrary, during the Project, BAE often admonished Fluor for work that veered from the Lauren specifications. And, again, the Contract directed Fluor to follow the "requirements as identified in

7

LEC [Lauren Engineers & Constructors] Specification[s]." Nor does any document in BAE's possession support its position that Fluor was "solely responsible" for the design. Instead, the documents will reveal that BAE assumed <u>all</u> Process Design responsibility and prepared the Lauren Design. Finally, nothing in BAE's internal documents will support BAE's continual representations – including BAE's representations made in the contractual DCMP - that the Lauren Design was 85% complete. Instead, BAE most certainly <u>knew</u> that the design was not 85% complete. In fact, during this entire matter, BAE has never denied representing that the Lauren Design was 85% complete. By contrast, BAE also has never asserted that the Lauren Design actually **was** 85% complete.

  BAE also fears producing any document or responding to any interrogatory because BAE is <u>in litigation</u> with the Army related to the Radford facility. BAE currently has four (4) cases filed with the United States Armed Services Board of Contract Appeals related to its Radford Contract. <u>See</u> <u>BAE Systems Ordnance Systems, Inc. v. Army</u>, ASBCA Nos. 62419, 62416, 62630, 62631. The ASBCA does not have a public docket, and pleadings are not publicly available. Thus, the appropriate method of obtaining information related to claims that BAE may have against the Army is from BAE.[1] And BAE may be seeking costs from the Army which it currently seeks from Fluor. This dual approach is certainly the case in the other Radford matter before this Court (Case No. 19-698, the "Boiler Matter"), in which BAE requests the same damages from Fluor as it seeks from the Army. Obviously, BAE hopes to avoid producing information and records related to its claims against the Army, particularly where the information and documents will undermine BAE's claims or defenses in this case.

  In short, BAE fears producing its documents or responding to interrogatories because it does not want an accurate record to be available for use at the January 14 motion hearing. BAE, therefore, timed its stay to ensure maximum protection from producing any document or responding to any

---

[1] In its Document Requests, Fluor seeks communications between BAE and the Army. And in its proposed ESI search terms sent to BAE on October 22, 2021, Fluor sought documents that contained the terms "certified claim" and "request for equitable adjustment" – terms that would capture claims made by BAE against the Army.

interrogatory before the January hearing.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 26, Parties are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); see Doe v. Va. Polytechnic Inst. & State Univ., No. 19-cv-249, 2021 WL 719898, at *1 (W.D. Va. Feb. 24, 2021) (Ballou, J.) (noting that discovery is "broad in scope and freely permitted" (quoting Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003))). "When a party fails to make requested disclosures or discovery, the requesting party may file a motion to compel." Berry v. Town of Front Royal, No. 21-cv-1, 2021 WL 4895204, at *2 (W.D. Va. Oct. 20, 2021).

In a motion to compel discovery, the <u>party resisting discovery</u> bears the burden of persuasion. <u>Id.</u> Upon a "a prima facie showing of discoverability" by the movant, the resisting party bears the burden of showing why it should not comply with the discovery requests. <u>Id.</u> (quoting <u>Eramo v. Rolling Stone LLC</u>, 314 F.R.D. 205, 209 (W.D. Va. 2016)). The resisting party must show "either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought 'is of such marginal relevance that the potential harm . . . would outweigh the ordinary presumption of broad discovery.'" <u>Id.</u> (alteration in original; quoting <u>Eramo</u>, 314 F.R.D. at 209). Furthermore, where a Motion to Compel discovery is granted, the court <u>must</u>, award monetary sanctions to the movant, unless a delineated exception applies. Fed. R. Civ. P. 37(a)(5).

### IV. ARGUMENT

#### A. BAE Lacks a Legal Basis to Ignore Fluor's Discovery Requests.

Stays of discovery may not be self-imposed. The Federal Rules of Civil Procedure require parties to respond to proper discovery requests unless and until a court rules differently. See Fed. R. Civ. P. 33(b)(2) ("The responding party must serve **its answers** and any objections within 30 days after being served . . . ." (emphasis added)); <u>id.</u> 34(a)(2)(A) ("The party to whom the request is directed

10

must respond in writing within 30 days after being served . . . .").

This Court has granted a motion to compel where a Party, without a Court order, refused to respond to its opponent's discovery requests on grounds that an oral settlement agreement had been reached, and, thus, discovery was "no longer necessary." Innotec LLC v. Visiontech Sales, Inc., No. 3:17CV00007, 2018 WL 2293969, at *1, *7 (W.D. Va. May 18, 2018) (denying motion to stay discovery and granting motion to compel).

Nor are motions to stay discovery self-executing. Fed. R. Civ. P. 37 Advisory Committee's Note (relief from discovery requests "depends on obtaining a court order to that effect"). Other jurisdictions have rejected litigants' similar attempts to unilaterally stay discovery in absence of a Court order. See, e.g., Alston v. Becton, Dickinson & Co., No. 1:12CV452, 2014 WL 338804, at *2 (M.D.N.C. Jan. 30, 2014); Tinsley v. Kemp, 750 F. Supp. 1000, 1013 (E.D. Mo. 1990) ("[B]y refusing to comply with discovery merely because a motion to stay is pending, a party effectively is granting its own motion to stay—even before the court has ruled. Such a phenomenon would reduce a court's orders to useless and senseless formalities."); O'Hara v. Capouillez, No. 5:13-CV-119, 2013 WL 6672795, at *1 (N.D.W. Va. Dec. 18, 2013) (rejecting assertion that a "default stay" existed due to a pending motion to stay; finding "no authority . . . for the proposition that [Defendants] can hold discovery in abeyance in the absence of an order by the District Judge staying this case").

Discovery in this case opened on July 23, 2021, when the Parties held a Rule 26(f) conference. See Fed. R. Civ. P. 26(d) (limiting discovery until the parties hold a Rule 26(f) conference). To date, no stay has been issued. Most importantly, , on the date BAE's discovery responses were due, **no stay of discovery had been issued by this Court and no motion to stay discovery had even been filed**. Thus, no valid grounds exist for BAE's refusal to respond to Fluor's discovery requests other than BAE's desire to control the calendar and direction of this matter.

In previous submissions to this Court, BAE has argued that discovery was subject to a "de

11

facto" stay simply because no discovery requests had yet been served. Such an assertion is unsupported by any legal authority. See Id. at *1. Discovery remains open, no stay exists. Indeed, as this Motion to Compel is filed, Fluor's discovery requests remain unanswered, long after the 30-day period in which the Federal Rules of Civil Procedure command a full and complete response.

**B.      An Intended Stay of Discovery Does Not Justify BAE's Refusal to Answer Discovery**

BAE asserted that it would not respond to Fluor's discovery until its intended Motion to Stay was resolved. But motions to stay discovery are "generally disfavored" due to the delay and case management problems they cause. Bennett v. Fastenal Co., No. 15-cv-543, 2016 WL 10721816, at *1 (W.D. Va. Mar. 8, 2016) (quoting Fed. Ins. Co. v. S. Lithoplate, Inc., No. 12-cv-793, 2013 WL 4045924, at *1 (E.D.N.C. 2013)). To determine whether to grant a stay pending resolution of a dispositive motion, courts "balanc[e] the harm produced by a delay in discovery against the possibility that the [dispositive] motion will be granted." Id.

    **1.      Resolution of BAE's Motions Will Not Reduce the Scope of Discovery**

BAE's pending Motion to Strike asserts that the bulk of Fluor's claims are barred because of a provision in the Subcontract that purports to limit damages for certain types of claims to $30 million. Fluor arguments are set forth more fully in its prior pleadings, but the plain language of the Contract reveals that the Limitation of Damages provision does not apply to the types of damages that Fluor asserts in this case. Fluor's damages arise from actions controlled by the Parties' Changes Clause, and the Limitation of Damages clause directs the Parties to the Changes Clause to manage and control all such damages.

Even if this Court interprets the Contract in BAE's favor, Virginia law is clear that a prime contractor - like BAE - cannot impose a cap on recovery of a subcontractor's demonstrated additional costs. See VA Code § 11-4.1:1. Under Section 11-4.1:1, any contract provision that attempts to diminish a subcontractor's right to assert claims for demonstrated additional costs is "null and void."

12

Notably, this Virginia statute has never been interpreted by any court in Virginia or elsewhere. Thus, this fundamental legal issue is a matter of first impression for this Court and one of the bases of Fluor's opposition to BAE's Motion to Strike.

### 2. The Pending Motions to Dismiss Will Not Dispose of the Entire Case

BAE, as the Plaintiff, has sued Fluor for more than $9 Million. Fluor filed a counterclaim against BAE exceeding $183 Million. A stay will not promote efficiency because the pending Motions will not dispose of this entire action. As an initial matter, Fluor moved for partial dismissal of BAE's Complaint. Specifically, Fluor moved to dismiss only those costs related to "abnormal maintenance" that BAE agreed to perform on other parts of the Radford Plant. Fluor was not involved with other parts of the Radford Plant. Fluor, therefore, has no responsibility for such maintenance.

Also, BAE did not move to dismiss Fluor's claims related to BAE's delay or changes to the Project's Process Design. During the Parties' most recent conference call with Judge Ballou, BAE inaccurately represented that Fluor's damages related to BAE's Process Design changes are "minimal." That statement misrepresents Fluor's claims; a significant portion of Fluor's damages arise from BAE's changes to the Process Design. In fact, during a conference call, BAE selected the example of Fluor's claim for additional piping within the Stabilization Building, for which Fluor has asserted $15,834,334.00 in damages against BAE, to support its position that the process design damages are insignificant. Contrary to BAE's argument, nearly $11 million – the majority of the claim BAE quoted to this Court - relates to BAE's deficient Process Design. Thus, regardless of the outcome of the Motions, significant discovery will be required on Fluor's claims and defenses. Again, BAE had no justification for refusing to respond to Fluor's discovery requests.

Furthermore, even if BAE prevails in its Motion to Strike, such a ruling would not reduce the scope of discovery. BAE believes that if recovery is capped at $30M, Fluor would be barred from presenting claims exceeding that amount. BAE is incorrect. Fluor must still take discovery on all its

13

claims, and present evidence on <u>all</u> its damages, regardless of any alleged damages cap. Should this Court apply an alleged damages cap, Fluor must nevertheless present <u>all</u> $183 Million of its damages to this Court. At that point, after finding that Fluor has proven its damages, the Court could apply any damages cap. Indeed, Fluor <u>must</u> present all its claims to preserve them for appeal.

Discovery of all issues is also required for Fluor to <u>defend</u> against BAE's Complaint, including BAE's allegations that Fluor delayed the Project. The assertions presented in Fluor's Counterclaim serve as the basis for its defense against BAE's allegation that Fluor delayed the Project. BAE's many changes to the Project, and its refusal to extend the schedule, excuse any alleged delay by Fluor. Thus, Fluor will be required to conduct the <u>same</u> discovery regardless of any decision issued on BAE's Motion to Dismiss or Strike. Fluor will, therefore, require discovery on the same issues regardless of whether the disputed provision applies to its affirmative claims. Thus, BAE had no justification for unilaterally refusing to answer Fluor's discovery.

### 3. BAE Has Participated in Discovery for Five Months Without Objection

Any assertion that discovery presents an undue burden is belied by the fact that from July 23, 2021, until November 15, 2021, BAE participated in discovery without objection. Months after filing its Rule 12(b) Motions, BAE served Initial Disclosures, negotiated an ESI Protocol, and exchanged the names of hub and party custodians and non-custodial document locations with Fluor. <u>See</u> Exhibit A. BAE had five months to stay discovery and chose not to do so. Instead, without a court order and before even filing a motion to stay, BAE unilaterally imposed a stay of discovery in this case by objecting "to all discovery in this action until the Motions to Dismiss, Motion to Strike, and Motions to Stay and to Bifurcate are ruled upon by the Court." In short, BAE's conduct flagrantly violates this Court's rules. Accordingly, BAE should be <u>compelled</u> to respond to Fluor's properly served discovery requests.

## C.     Fluor's Discovery Requests are Valid and Permissible Under Rule 26(b)

Broad discovery is permitted in civil cases. Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In the context of a motion to compel, the party "resisting discovery, not the party moving to compel discovery, bears the burden of persuasion." Eramo v. Rolling Stone LLC, 314 F.R.D. 205, 209 (W.D. Va. 2016).

Once the moving party has made a prima facie showing of discoverability, the resisting party has the burden of showing either: (1) that the discovery sought is not relevant within the meaning of Rule 26(b)(1); or (2) that the discovery sought "is of such marginal relevance that the potential harm ... would outweigh the ordinary presumption of broad discovery." Berry v. Town of Front Royal, Virginia, No. 5:21-CV-00001, 2021 WL 4895204, at *2 (W.D. Va. Oct. 20, 2021) (internal quotation marks omitted).

Fluor's Interrogatories are relevant, reasonable, and proportional to the needs of the case. For example, they seek information related to the Lauren Design, BAE's communications with the Army regarding the Lauren Design, the decision to terminate Lauren from the Project, the amounts paid for the Lauren design by BAE and by the Army, BAE's assessment of the completeness of the Lauren Design, and the Lauren Design's relationship to the Subcontract's requirements, all of which are relevant to Fluor's claims related to the defective specifications BAE furnished and directed Fluor to use. See Exh. B, at 3-7, 12. The Interrogatories also seek information related to BAE's Process Design, and BAE's interpretation and understanding of its design responsibility, issues that have been raised repeatedly by both Parties in this litigation. Id. at 7-8. Fluor specifically asked about the $9 million in "abnormal maintenance" that BAE seeks to recover from Fluor. Id. at 9-11. Finally, Interrogatories 14 and 20 seek information related to BAE's assessment of Fluor's change proposals, which form the basis of Fluor's entire $183 million Counterclaim. See id. at 9, 11. Each of the above issues is relevant

to the Parties' claims and defenses. And they are proportional to the case, given the large and complex claims asserted by both Parties.

Similarly, Fluor's First Set of Requests for Production of Documents is proper under Rules 26 and 34. Fluor requested documents related to the Lauren design, Lauren's termination, BAE's communications with the Army and prime contract documents, copies of relevant subcontracts, BAE's responsibility for and work on the Process Design, documents related to BAE's interpretation of the Subcontract's limitation of damages provision, and BAE's analysis of Fluor's change proposals. See Exh. C. These documents are necessary to develop Fluor's affirmative claims, as well as to prepare its defenses against BAE's overall project delay claim.

Thus, Fluor has established a prima facie showing of discoverability. The burden therefore rests on BAE to show why they are justified in refusing to respond to Fluor's discovery requests. BAE can provide no such justification

**D.      A Request for a "Short Stay" Does Not Justify BAE's Failure to Respond to Discovery**

BAE's attempted request for a "short stay" of discovery fails to justify their refusal to respond to discovery. Instead, as mentioned above, BAE timed its motion to stay to clog the calendar and hope to prevent the production of any document before the January 14 hearing.

Even if the Court granted a "short stay" to await the outcome of the Parties' motions, which could arrive months after the January oral argument, the Parties will be right back before this Court to discuss restarting discovery and the proper scope of discovery within the month. BAE does not agree now that Fluor must pursue full discovery. Even if this matter is pared down, the parties are unlikely to agree on the necessary scope of discovery. Thus, BAE had no justification for unilaterally halting all discovery in this case.

BAE grossly underestimates the amount of discovery necessary in this matter, even if it is pared down through the Parties' motions to dismiss. In their Rule 26 report, the Parties have agreed

16

to 40 fact witnesses. It is anticipated that each party will have at least 3 expert witnesses. **Fact discovery in this case closes on November 16, 2022.** Thus, discovery should commence now. BAE also cannot articulate any logical or efficient method of bifurcating this matter. Thus, again, BAE was not substantially justified in failing to respond to Fluor's proper discovery requests.

**E.      Fluor is Entitled to Reasonable Attorneys' Fees Associated With its Motion to Compel.**

Should the Court grant this Motion to Compel, Rule 37(a)(5) requires the award of monetary sanctions, including reasonable attorneys' fees, unless (i) the movant (Fluor) filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's (BAE's) nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. Here, no exception applies, as BAE **willfully and without justification**, sought to usurp the Court's authority over the discovery and case management process by unilaterally imposing a stay of discovery.

BAE cannot argue that the Motion to Compel is premature; the Parties are before the Court because of BAE's untimely, and yet-to-be-filed Motion to Stay Discovery. And BAE has acknowledged that the Parties conferred regarding its failure to respond to proper discovery before the Motion to Compel was raised with the Court.

Nor was BAE's refusal to answer discovery "substantially justified." A party satisfies that standard "if there is a genuine dispute as to proper resolution or if a reasonable person could think [that the failure to produce discovery is] … has a reasonable basis in law and fact." Sky Cable, LLC v. Coley, No. 5:11CV00048, 2015 WL 4873167, at *3 (W.D. Va. Aug. 12, 2015). Here, there can be no doubt that no reasonable person would support BAE flagrant violation of the Federal Rules of Civil Procedure and the local rules of this Court. See Fed. R. Civ. P. 33(b)(2). Importantly, BAE does not cite to any rule of procedure or relevant case law

Finally, no other circumstance makes an award of expenses unjust. BAE had 5 months to stay

17

discovery in this case and chose not to do so. At worst, BAE could have moved for a stay immediately upon receiving Fluor's Document Requests and Interrogatories. BAE did neither. Rather, BAE played the clock down, and waited until the <u>last minute</u> to revive its idea of a stay. BAE <u>knew</u> that resolving a Motion to Stay would consume weeks of the Parties' and this Court's time and BAE <u>purposely</u> waited. Thus, BAE's own behavior eliminates any other possible reasons that the award of attorney fees is unjust.

As set forth above, BAE has no justification for having refused to respond to Fluor's discovery requests without a Court order. Thus, no exception under Rule 37(a)(5) applies and Fluor should be awarded the fees it has incurred and will incur preparing and arguing this Motion to Compel.

### V. **CONCLUSION**

BAE must not be rewarded for its flagrant disregard of the authority reserved solely to this Court to stay discovery and violation of the Federal Rules and the local rules of this Court.

Accordingly, Fluor respectfully requests that this Court grant Fluor's Motion to Compel BAE's complete responses to Fluor's First Set of Interrogatories and First Set of Requests for Production of Documents, and order that BAE provide such responses not later than December 20, 2021, or five (5) business days after this Court rules on this Motion, whichever is earlier.

In addition, Fluor respectfully requests that this Honorable Court award Fluor its reasonable attorneys' fees in connection with the preparation and prosecution of this Motion to Compel, as authorized under Fed. R. Civ. P. 37(a)(5).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of December 2021, a copy of the foregoing was delivered via the CM/ECF system to the following:

>Todd M. Conley (VSB 89839)
>Jeffrey J. Golimowski (VSB 93525)
>WOMBLE BOND DICKINSON (US) LLP
>8350 Broad Street, Suite 1500
>Tysons, Virginia 22102
>Tel: (703) 394-2275
>Fax: (703) 790-2623
>todd.conley@wbd-us.com
>jeff.golimowski@wbd-us.com
>
>D. Stan Barnhill (VSB 22978)
>Joshua R. Treece (VSB 79149)
>Justin E. Simmons (VSB 77319)
>WOODS ROGERS PLC
>10 South Jefferson Street, Suite 1400
>Roanoke, Virginia 24011
>Tel: (540) 983-7600
>Fax: (540) 983-7711
>barnhill@woodsrogers.com
>jtreece@woodsrogers.com
>jsimmons@woodsrogers.com
>
>Karen M. Stemland (VSB 47167)
>WOODS ROGERS PLC
>123 East Main Street, 5th Floor
>Charlottesville, Virginia 22902
>Tel: (434) 220-6826
>Fax: (434) 566-0473
>kstemland@woodsrogers.com
>
>*Attorneys for BAE Systems Ordnance Systems, Inc.*

>Respectfully submitted,
>
>s/ Scott P. Fitzsimmons
>Scott P. Fitzsimmons (VSB 68147)
>WATT, TIEDER, HOFFAR
>& FITZGERALD, LLP
>1765 Greensboro Station Place, Suite 1000
>McLean, Virginia 22102

Tel: (703) 749-1000
Fax: (703) 893-8029
sfitzsimmons@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*