**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

| | | |
|---|---|---|
| **BAE SYSTEMS ORDNANCE** | ) | |
| **SYSTEMS, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 7:20-CV-00587-MFU-RSB** |
| **v.** | ) | |
| | ) | |
| **FLUOR FEDERAL SOLUTIONS, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

**FLUOR FEDERAL SOLUTIONS, LLC'S FIRST SET OF INTERROGATORIES**
**TO PLAINTIFF BAE SYSTEMS ORDNANCE SYSTEMS, INC.**

Under Federal Rule of Civil Procedure ("FRCP") 33, Defendant, Fluor Federal Solutions, LLC ("Fluor"), through its undersigned counsel, serves Plaintiff, BAE Systems Ordnance Systems, Inc. ("BAE"), the following Interrogatories in accordance with the following definitions and instructions. Under FRCP 33 and 34, BAE must respond to Fluor's discovery requests within thirty (30) days of being served them.

**INSTRUCTIONS**

1.      Each Interrogatory must, to the extent it is not objected to, be answered separately and fully in writing and under oath. Each Interrogatory is to be accorded a separate answer, and Interrogatories are not to be combined for the purpose of supplying a common response thereto.

2.      Under FRCP 26(e), these Interrogatories are continuing in nature, and you are required to supplement or correct any disclosure or response to these Interrogatories in a timely manner if you learn that the disclosure or response is, in some material respect, incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other party during

EXHIBIT

B

the discovery process in writing, or as ordered by the Court. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under FRCP 26(a)(3) are due.

3.      No part of an Interrogatory should be left unanswered merely because an objection is interposed to another part of the Interrogatory. If a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

4.      In accordance with FRCP 26(b)(5), where a claim of privilege is asserted in objecting to any Interrogatory or part thereof, and information is not provided on the basis of such assertion:

A.      In asserting the privilege, the responding party shall, in the objection to the Interrogatory, or part thereof, identify with specificity the nature of the privilege (including work product) that is being claimed.

B.      The following information should be provided in the objection, if known or reasonably available, unless divulging such information would cause disclosure of the allegedly privileged information:

i.      For oral communications:

a.      The name of the person making the communication and the names of persons present while the communication was made, and, where not apparent, the relationship of the persons present to the person making the communication;

b.      The date and place of the communication; and

c.      The general subject matter of the communication.

ii.     For documents:

a.      The type of document;

b.      The general subject matter of the document;

c.      The date of the document; and

     d.   Such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other.

5.     In accordance with FRCP 33(d), if the responding party elects to specify and produce business records in response to any Interrogatory, the specification shall be in sufficient detail to permit the interrogating party to locate and identify, as readily as the responding party can, the business records from which the answer may be ascertained.

6.     If, in answering these Interrogatories, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous, and the construction used in answering.

## DEFINITIONS

1.     The terms "you," "your," and "BAE" refer to BAE Systems Ordnance Systems, Inc., its directors, officers, employees, agents, representatives, consultants, and attorneys.

2.     The term "Fluor" refers to Fluor Federal Solutions, LLC, its directors, officers, employees, agents, representatives, consultants, and attorneys.

3.     The term "Parties" refers to BAE and Fluor, collectively.

4.     The term "Army" refers to the United States Army, the Project owner for whom BAE was the prime contractor.

5.     The term "Action" refers to the above-captioned case.

6.     The term "Complaint" refers to the Complaint (ECF No. 1) that BAE filed in this Action on September 30, 2020.

7.     The term "Answer" refers to the Answer and Affirmative Defenses (ECF No. 40) that BAE filed in this Action in response to Fluor's Complaint on June 14, 2021.

8.     The term "Project" refers to the design and construction of the new nitrocellulose facility that Fluor performed under a subcontract with BAE on the Radford Army Ammunition Plant in Radford, Virginia, which is the subject of this Action.

9.     The phrase "NC Facility" refers to the new nitrocellulose facility on which Fluor provided design and construction services under a subcontract with BAE, and which was intended to replace the Army's legacy nitrocellulose facility on the Radford Army Ammunition Plant.

10.     The term "RFAAP" refers to the Radford Army Ammunition Plant in Radford, Virginia, where the Project was performed.

11.     The phrase "Basic Ordering Agreement" refers to Contract No. W52P1J-11-G-0002, entered by BAE and the Army on May 17, 2011.

12.     The phrase "Prime Contract" refers to Task Order 0002 to the Basic Ordering Agreement, including all amendments, change orders or modifications thereto, which was issued by the Army to BAE on or about January 23, 2012, for the design and construction of a new nitrocellulose facility.

13.     The term "Subcontract" refers to the subcontract between BAE and Fluor, entered on or about December 17, 2015, for the design and construction of a new nitrocellulose facility.

14.     The phrase "Process Design" refers to the design prepared by BAE by which the thousands of components of the NC Facility would operate, and which was required to ensure that the nitrocellulose production process provided high quality, improved manufacturing efficiencies, and operated safely.

15.     The term "Lauren" refers to Lauren Engineers & Constructors, Inc., BAE's original subcontractor for the design and construction of the NC Facility, whose construction and design subcontracts BAE terminated in January 2015 and March 2015, respectively.

4

16.     The phrase "Lauren Design" refers to the designs, specifications, drawings, diagrams, and computer models of the NC Facility that Lauren prepared under the subcontract with BAE.

17.     The term "Solicitation" refers to the Solicitation and Request for Proposals that BAE issued to interested bidders, including Fluor, on or about July 2, 2015, for the Project.

18.     The phrase "Bid Proposals" refers to both the cost proposals and the technical proposals that Fluor submitted to BAE in August through November 2015 in order to bid on the Project.

19.     The phrase "Change Proposal (PCN)" refers to the formal proposals that Fluor submits to BAE, as required by the Subcontract, stating the bases of Fluor's entitlement to additional compensation.

20.     The phrase "Statement of Work" refers to the Subcontract's Statement of Work, which is Exhibit E to the Subcontract.

21.     The phrase "Appendix G" refers to Appendix G of the Statement of Work, which includes the Lauren Design.

22.     The term "communication" means the transmittal of information by any means. Without limiting the foregoing, "communication" includes all documents (whether paper, electronic, or otherwise), email communications, telephone conversations, face-to-face conversations, negotiations, meetings, or conferences whether internal to BAE or with any other entity.

23.     The term "document" means any document, and any original, preliminary, or draft of such document, in your control, custody, or possession, and includes, without limitation, any of the following, whether printed, recorded, microfilmed, reproduced by any process, or written or produced by hand, and whether or not claimed to be privileged, confidential, or personal: communications, writings, files, contracts, agreements, notes, reports, records, schedules, correspondence, letters, telegrams, cables, telex messages, email transmissions, memoranda, notations, notepapers, interoffice,

intradepartmental, interdepartmental, and other internal office communications, diaries, manuals, training manuals, operator's manuals, user's manuals, policies, proposed and adopted revisions to policies, invoices, purchase orders, requisitions, transcripts, notes and minutes of telephone and other conversations, notes and minutes of conferences or directors meetings or committee meetings, standard and nonstandard forms, executed written statements or reports, books, pamphlets, periodicals, press clippings, articles, requisitions, resolutions, certificates, opinions, studies, analyses, evaluations, contracts, proposed or adopted amendments to contracts, licenses, agreements, financial statements, financial records, ledgers, checks, check stubs, books or records of accounts, credit memoranda, credit files, notations in credit files, loan cards, statistical records, tax returns, desk calendars, books, lists, tabulations, summaries, charts, graphs, maps, surveys, plans, drawings, specifications, sound recordings, photographs, video recordings, computer tapes or printouts, magnetic tapes, microfilms, punch cards, computer records, runs programs or software and any codes necessary to comprehend such records, runs programs or software, opinions and reports of consultants, and all other records prepared or maintained by electronic, photographic or mechanical means, and all papers and things similar to any of the foregoing, as well as all handwritten notices or notations, in whatever form, and however denominated, by you or any other person. The terms "document" and "documents" shall include all electronic and magnetic data, and this data shall be produced in digital form on CD-ROMs, DVDs, or hard drives. This definition includes all documents for which privilege is claimed. A draft or nonidentical copy is a separate document within the meaning of these terms.

24.     The term "correspondence" means any document related to any communication, contact, discussion, or exchange between any two or more persons, whether internal to BAE or with another entity.

25.     The terms "person," "individual," and "entity" include any natural person, partnership, corporation, proprietorship, joint venture, unincorporated association, or other business association or legal entity, and any other domestic or foreign governmental body, commission, board, agency, authority, branch, department, or component thereof.

26.     "Related to," "relating to," or "pertaining to" includes referring to, pertaining to, in any way, embodying, regarding, concerning, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, constituting, or being, in any way, legally, logically, or factually connected with the matter discussed.

27.     The term "concerning" includes constituting, referring to, relating to, describing, discussing, analyzing, comprising, embodying, recording, evidencing, effecting, or containing any information which refers to, relates to, or pertains to a specific subject.

28.     The term "include" or "including" means "including, but not limited to."

29.     The term "identify" means:

A.     When referring to a natural person, state their full name, present or last known business and home addresses, their present or last known business position, and, if different, their occupation or business position at the time to which the request or your response thereto has reference. When used with respect to any particular person, the information other than their full name need be given only once.

B.     When referring to a corporation, partnership, subsidiary, association, joint venture, firm, or other business enterprise or legal entity, state the full name and address and a brief description of the primary business in which such entity is engaged. With respect to any particular entity, the information other than the full name need be given only once.

C.   When referring to a communication, act, transaction, event, occasion, or instance, including an oral agreement, statement, recommendation, or representation:

   i.   State its date and place of occurrence (or, if a telephone call is involved, so state and provide the location of all parties to such telephone call and identify the person who initiated it); the identity of each person participating therein, who each such person participating therein represented or purported to represent, the nature and subject matter or any circumstances surrounding it, and the substance of what transpired or was said; and

   ii.   Identify all documents, summarizing, recording, reflecting, reporting, or containing a reference to it.

D.   When referring to anything other than any of the foregoing, provide the information requested, fully state all facts supporting your answer, and explain in detail any circumstances relevant to the information requested.

30.   Terms referring to a gender include all genders, as appropriate in the context.

31.   The term "each" includes the word "every," and the term "every" includes the word "each." "Any" includes the word "all," and "all" includes the word "any." "And" includes the word "or," and "or" includes the word "and," as is necessary to bring within the scope of a particular request any document that might otherwise be construed to be outside its scope.

32.   Terms in the plural include the singular, and terms in the singular include the plural.

## **INTERROGATORIES**

1.      Identify and describe in detail all factual, legal or contractual bases, reasons, rationales or arguments for each of BAE's representations to Fluor during the proposal period that the Lauren Design was 85% "Schedule Complete," "an estimated 85% design solution," "estimated at 85%," and "80-90% complete," including representations made at meetings and in email communications on or about March 26, 2015, April 16, 2015, April 23, 2015, July 21, 2015, August 31, 2015, and October 26, 2015. See Exhibit A.[1] In your response, identify each person with personal knowledge of the facts concerning each representation; and identify all documents referred to, reviewed or relied upon, in any way, to prepare your response.

2.      Identify and describe in detail all statements, estimates, and representations, whether oral or in writing, that BAE made to the Army regarding the Lauren Design's completion status, including the percentage of completion, between the date that BAE terminated Lauren's design contract and the date that BAE executed the Subcontract with Fluor.

3.      Identify and describe in detail all actions BAE undertook to evaluate the percentage complete, maturity, condition, status, and progress of the Lauren Design at or around the time that BAE terminated Lauren's design subcontract. In your response, identify all personnel who took such actions.

4.      Identify and state in detail all payments made by BAE to Lauren under the Lauren subcontract(s). In your response, identify each amount paid and the date of payment for all design work performed by Lauren.

---

[1] BAE's presentation titled "New Nitrocellulose Facility," dated July 21, 2015 – wherein BAE described the Lauren Design as 85% "Schedule Complete" – is marked "Export-Controlled Data" and "EAR Controlled" and therefore cannot be disclosed publicly. However, BAE both prepared and delivered the presentation, and so is, or should be, aware of its contents. Accordingly, BAE is not prejudiced by the presentation not being attached to these Interrogatories.

5.      Identify and describe in detail all corrections, redlines, or updates that BAE made to the Lauren Design after terminating the Lauren design subcontract and before executing Fluor's Subcontract with BAE on or about December 17, 2015, to include redlined drawings provided to Fluor on or about December 7, 2015. In your response, identify the personnel involved and the reason why BAE made such redlines, corrections, or updates.

6.      Identify and describe in detail all bases, reasons, and rationales for BAE's representation made on August 31, 2015, that "the design portion of [Fluor's] proposal is really far out of whack with our expectations. As a reference point, the entire original design was around $15M, and that should be about 80-90% complete." See Exhibit B.

7.      Identify and describe in detail all bases, reasons, and rationales for BAE's decision to provide the Lauren Design to bidders during the pre-Solicitation and Solicitation phases of the Project, as set forth in Paragraph 42 of your Complaint.

8.      Identify and describe in detail all bases, reasons, and rationales for BAE's statement made on or about July 15, 2015, that the "[r]eference to exisitng [sic] Lauren standards is a general statement included in a [sic] all sections to ensure that the Lauren developed standards in all disciplines [sic] are referenced and applied to the program." See Exhibit C.

9.      Identify and describe in detail all bases, reasons, and rationales for BAE's decision to include the Lauren Design in the Subcontract, including in Appendix G, as well as BAE's requirement that the Lauren Design "represent[s] the minimum requirements" for the Project, as set forth in Subcontract Statement of Work Section 2.4.

10.     Identify and describe in detail BAE's understanding of its design responsibilities related to the Project's Process Design as set forth in the Subcontract, including BAE's responsibilities for any modifications to the Process Design during the Project. In your response identify and describe in detail all factual, legal or contractual bases, reasons or rationales for Your understanding.

11.     Describe in detail how BAE contends that it managed and implemented its design responsibilities related to the Project's Process Design, including all modifications to the Process Design during the Project. In your response, identify any individuals who stamped the Project's Process Design drawings.

12.     Identify and describe in detail all factual, legal or contractual bases, reasons, rationales or arguments for,  and all documents, communications or correspondence concerning referring or relating to, BAE's allegation that it paid Fluor to, "determine the level of completeness of Lauren's [D]esign and discover any perceived deficiencies," as set forth in Paragraph 61 of BAE's Complaint. In your response, identify each person with personal knowledge of the facts concerning such allegation.

13.     Identify and describe in detail all factual, legal or contractual bases, reasons, rationales or arguments for BAE's allegation, in Paragraph 30 of its Complaint, that Fluor failed to "complete the process design," and BAE's denial, in Paragraph 167 of its Answer, that BAE retained design responsibilities for the Project's Process Design, when BAE also stated in its July 13, 2021 Reply Brief: "To be clear, BAE does not and has not argued that Fluor is responsible for all aspects of the design. BAE acknowledges that it has limited process design responsibility related to overall plant operations, program management, and the BAE furnished equipment for the NC manufacturing process." See ECF 49 at 5.

14.     Identify and describe in detail all actions that BAE took to analyze, review, assess, evaluate, or consider the Change Proposals (PCN's) submitted by Fluor to BAE on the Project. In your response, identify all persons or entities who participated in, or who possess knowledge of, BAE's analysis of Fluor's PCNs.

15.     Identify and describe in detail all factual, legal or contractual bases, reasons, rationales or arguments for BAE's agreement with the Army to "perform a total of $9,000,000.00 in abnormal maintenance efforts on the legacy NC facility as needed," as set forth in Paragraph 111 and Exhibit I

of your Complaint. In your response, identify the individuals from BAE and the Army who negotiated this agreement and how the $9 Million amount was calculated or determined.

16.     Identify and describe in detail all work performed by BAE as "abnormal maintenance efforts on the legacy NC facility" and work performed on "other projects or efforts at Radford," as set forth in Paragraph 111 and Exhibit I of your Complaint. In your response, identify the amount credited for each item of work or effort performed against the $9 Million in abnormal maintenance and work on other projects and efforts that BAE agreed to perform without cost to the Army.

17.     Does BAE contend that  both BAE and Fluor foresaw, or reasonably should have foreseen, at the time the Parties executed the Subcontract, that a breach of the Subcontract by Fluor would result in BAE paying concessions to the Army in the form of "abnormal maintenance," to include maintenance on portions of the RFAAP unrelated to any NC manufacturing process? If your answer is in the affirmative, identify and describe in detail all factual, legal or contractual bases, reasons or rationales for your contention.

18.     Identify and describe in detail each and every contractual default, delay, breach, or other deficiency, if any, that BAE alleges that Fluor committed, was responsible for, or otherwise failed to satisfy relating to the Project. For each such default, delay, breach, or other deficiency, identify the contractual requirement, standard, or other obligation that BAE contends that Fluor breached or otherwise failed to satisfy and all facts and circumstances upon which you base your contention.

19.     Identify and describe in detail all facts and circumstances upon which you base BAE's alleged damages as set forth in Paragraph 153 (a) – (d) of your Complaint. In your response, provide the calculation for each category of damages claimed and identify all documents, communications, correspondence, analyses, records, or data upon which each calculation is based.

20.     Identify and describe in detail all oral communications, including, without limitation, all meetings, conferences, and phone calls, whether internal or external, held by BAE, in which BAE

reviewed, addressed, or discussed any and all versions of Fluor's Change Proposals (PCNs). In your response, identify each person on behalf of BAE who participated in each oral communication and all documents summarizing, memorializing, or describing each oral communication.

21.     Identify and describe in detail all communications, including, without limitation, all meetings, conferences, and phone calls, held between BAE and the Army in which BAE reviewed, addressed or discussed with the Army any Project delays, to include any delays that BAE attributed to Fluor. In your response, identify each person representing the Army and BAE who participated in such oral communication and all documents summarizing, memorializing, or describing each oral communication.

22.     Identify and describe in detail all communications, including, without limitation, all meetings, conferences, phone calls, and oral communications, whether internal or external, held by and between BAE and Lauren in which BAE reviewed, addressed, or discussed with Lauren the alleged grounds for termination of the Lauren subcontract and the status or maturity, including the percent complete, of the Lauren Design. In your response, identify each person from BAE and Lauren who participated in each communication and all documents summarizing, memorializing, or describing each communication.

**Dated: October 15, 2021**

Respectfully submitted,


/s/   Scott P. Fitzsimmons
Scott P. Fitzsimmons, Esq. (VSB 68147)
Kathleen O. Barnes, Esq. (VSB 30451)
Edward J. Parrott, Esq. (VSB 29499)
Sarah K. Bloom, Esq. (VSB 94406)
Gregory M. Wagner, Esq. (VSB 96017)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
sfitzsimmons@watttieder.com
kbarnes@watttieder.com
eparrott@watttieder.com
sbloom@watttieder.com
gwagner@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of October 2021, a copy of the foregoing was

delivered via email to the following:

Todd M. Conley (VSB #89839)
Jeffrey J. Golimowski (VSB #93525)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, Virginia 22102
Tel: (703) 394-2275
Fax: (703) 790-2623
Email: todd.conley@wbd-us.com
Email: jeff.golimowski@wbd-us.com

D. Stan Barnhill (VSB #22978)
Joshua R. Treece (VSB #79149)
Justin E. Simmons (VSB # 77319)
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Tel: (540) 983-7600
Fax: (540) 983-7711
Email: barnhill@woodsrogers.com
Email: jtreece@woodsrogers.com
Email: jsimmons@woodsrogers.com

Karen M. Stemland (VSB #47167)
WOODS ROGERS PLC
123 East Main Street, 5th Floor
Charlottesville, Virginia 22902
Tel: (434) 220-6826
Fax: (434) 566-0473
Email: kstemland@woodsrogers.com

*Attorneys for BAE Systems Ordnance Systems, Inc.*

Respectfully submitted,

/s/   Kathleen O. Barnes
Kathleen O. Barnes, Esq. (VSB 30451)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
kbarnes@watttieder.com

*Attorney for Fluor Federal Solutions, LLC*