IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| **BAE SYSTEMS ORDNANCE SYSTEMS, INC.** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **FLUOR FEDERAL SOLUTIONS, LLC** ) <br> ) <br> **Defendant.** ) <br> ) <br> _____ ) | Civil Action No. 7:20-CV-00587-MFU-RSB |

# FLUOR FEDERAL SOLUTIONS, LLC'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO PLAINTIFF BAE SYSTEMS ORDNANCE SYSTEMS, INC.

Under Federal Rule of Civil Procedure ("FRCP") 34, Defendant, Fluor Federal Solutions, LLC ("Fluor"), through its undersigned counsel, requests Plaintiff, BAE Systems Ordnance Systems, Inc. ("BAE"), to produce the documents and other tangible things described herein, in accordance with the following definitions and instructions, within thirty (30) days of service, to the following address: Watt, Tieder, Hoffar & Fitzgerald, LLP, Attn: Scott P. Fitzsimmons, 1765 Greensboro Station Place, Suite 1000, McLean, VA 22102.

## INSTRUCTIONS

1. The requests for production of documents ("Requests") below are to be answered in the manner and form required by FRCP 34.

2. Each Request must, to the extent it is not objected to, be answered separately and fully in writing and under oath. Each Request is to be accorded a separate answer, and Requests are not to be combined for the purpose of supplying a common response thereto.

**EXHIBIT C**

3. Under FRCP 26(e), these Requests are continuing in nature, and you are required to supplement or correct any disclosure or response to these Requests in a timely manner if you learn that the disclosure or response is, in some material respect, incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other party during the discovery process in writing, or as ordered by the Court. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under FRCP 26(a)(3) are due.

4. No part of a Request should be left unanswered merely because an objection is interposed to another part of the Request. If a partial or incomplete answer is provided, the responding party shall state that the answer is partial or incomplete.

5. Documents must be produced as they are kept in the usual course of business or organized and labeled to correspond with the categories in the request, as described in FRCP 34(b).

6. Under FRCP 37(a), the propounding party may move for an order with respect to any objection to or other failure to respond to a Request or any part thereof, or any failure to permit inspection as requested.

7. Even though a Request is directed to BAE, furnish all documents which are available to, or in the possession, custody, or control of BAE, its board members, directors, officers, employees, agents, representatives, consultants, or anyone acting on BAE's behalf, and, unless otherwise privileged, BAE's counsel and their employees, representatives, agents, investigators, or consultants.

8. If any document called for by a document request is withheld under any claim or assertion of privilege and/or work product, whether in whole or in part, identify as to each such document:

    A. The bates number (if any) of the document;

    B. The date of the document;

    C. The file type or document extension (*e.g.*, .doc, .msg, etc.)

    D.    The document title or subject;

    E.    The author of the document;

    F.    All recipients (including recipients by blind carbon copy);

    G.    A brief general description of the document; and

    H.    The basis for the privilege, protection, or immunity claimed, set forth in sufficient detail to enable Fluor to assess the applicability of the claimed privilege, protection, or immunity.

9. To the extent BAE considers any of the following Requests or subparts thereof to be objectionable, answer the portion of the Request (or subpart thereof) to which BAE does not object, and separately state which portion of the Request (or subpart thereof) BAE objects to, along with the specific grounds for the objection.

10. For any document no longer in existence or which cannot be located, identify the documents, state how and when it passed out of existence or can no longer be located, and the reasons therefor, and identify each person having knowledge concerning such disposition or loss, and each document evidencing such document's prior existence or facts concerning its nonexistence or loss.

## DEFINITIONS

1. The terms "you," "your," and "BAE" refer to BAE Systems Ordnance Systems, Inc., its directors, officers, employees, agents, representatives, consultants, and attorneys.

2. The term "Fluor" refers to Fluor Federal Solutions, LLC, its directors, officers, employees, agents, representatives, consultants, and attorneys.

3. The term "Parties" refers to BAE and Fluor, collectively.

4. The term "Army" refers to the United States Army, the Project owner for whom BAE was the prime contractor.

5. The term "Action" refers to the above-captioned case.

6. The term "Complaint" refers to the Complaint (ECF No. 1) that BAE filed in this Action on September 30, 2020.

7. The term "Answer" refers to the Answer and Affirmative Defenses (ECF No. 40) that BAE filed in this Action in response to Fluor's Complaint on June 14, 2021.

8. The term "Project" refers to the design and construction of the new nitrocellulose facility that Fluor performed under a subcontract with BAE on the Radford Army Ammunition Plant in Radford, Virginia, which is the subject of this Action.

9. The phrase "NC Facility" refers to the new nitrocellulose facility on which Fluor provided design and construction services under a subcontract with BAE, and which was intended to replace the Army's legacy nitrocellulose facility on the Radford Army Ammunition Plant.

10. The term "RFAAP" refers to the Radford Army Ammunition Plant in Radford, Virginia, where the Project was performed.

11. The phrase "Basic Ordering Agreement" refers to Contract No. W52P1J-11-G-0002, entered by BAE and the Army on May 17, 2011.

12. The phrase "Prime Contract" refers to Task Order 0002 to the Basic Ordering Agreement, including all amendments, change orders or modifications thereto, which was issued by the Army to BAE on or about January 23, 2012, for the design and construction of a new nitrocellulose facility.

13. The term "Subcontract" refers to the subcontract between BAE and Fluor, entered on or about December 17, 2015, for the design and construction of a new nitrocellulose facility.

14. The phrase "Process Design" refers to the design prepared by BAE by which the thousands of components of the NC Facility would operate, and which was required to ensure that the nitrocellulose production process provided high quality, improved manufacturing efficiencies, and operated safely.

15. The term "Lauren" refers to Lauren Engineers & Constructors, Inc., BAE's original subcontractor for the design and construction of the NC Facility, whose construction and design subcontracts BAE terminated in January 2015 and March 2015, respectively.

16. The phrase "Lauren Design" refers to the designs, specifications, drawings, diagrams, and computer models of the NC Facility that Lauren prepared under the subcontract with BAE.

17. The term "Request for Proposals" refers to the Solicitation and Request for Proposals that BAE issued to interested bidders, including Fluor, on or about July 2, 2015, for the Project.

18. The phrase "Bid Proposals" refers to both the cost proposals and the technical proposals that Fluor submitted to BAE in August through November 2015 to bid on the Project.

19. The phrase "Change Proposal (PCN)" refers to the formal proposals that Fluor submits to BAE, as required by the Subcontract, stating the bases of Fluor's entitlement to additional compensation.

20. The phrase "Limitation of Damages clauses" refers collectively to the contractual clauses located at Article 2.21 of the Supplemental Terms & Conditions of the Subcontract, Article 36 of Appendix J of the Subcontract, and Article 46 of the General Provisions for Construction Subcontracts/Purchase Orders of the Subcontract.

21. The phrase "Statement of Work" refers to the Subcontract's Statement of Work, which is Exhibit E to the Subcontract.

22. The phrase "Appendix G" refers to Appendix G of the Statement of Work, which includes the Lauren Design.

23. The term "communication" means the transmittal of information by any means. Without limiting the foregoing, "communication" includes all documents (whether paper, electronic, or otherwise), email communications, telephone conversations, face-to-face conversations, negotiations, meetings, or conferences.

24. The term "document" is used in its customary sense and is meant to have the broadest possible meaning provided under the Federal Rules of Civil Procedure, Local Rules, and other applicable law. It includes the original, preliminary, draft, and final copies of all written, typed, printed, electronic, recorded, or graphic statements, communications, or other matter, however produced, reproduced, or stored, in your possession, custody, or control. It includes, without limitation, all drafts and final correspondence, letters, emails, facsimile transmissions, memoranda, notes, notations, notepapers, interoffice communications, transcripts, notes and minutes of telephone conversations, of other conversations, of conferences, and of meetings, books, pamphlets, periodicals, articles, requisitions, resolutions, certificates, opinions, reports, studies, analyses, evaluations, contracts, licenses, agreements, financial statements, ledgers, checks, check stubs, invoices, receipts, estimates, bills, applications for payment, books or records of account, credit memoranda, credit files, notations in credit files, statistical records, desk calendars, diaries, journals, lists, tabulations, summaries, charts, graphs, maps, surveys, plans, drawings, specifications, sound recordings, photographs, computer tapes or printouts, magnetic tapes, and all other records kept by electronic, photographic, or mechanical means, and papers and things similar to any of the foregoing, however denominated, and in their original form, by you or any other person. If copies, reproductions, drafts, or facsimiles of a document are not identical by reason of handwritten notations, initials, identification marks, or other modification, each such nonidentical copy is a separate document within the meaning of this definition.

25. The term "correspondence" means any document related to any communication, contact, discussion, or exchange between any two or more persons.

26. The terms "person," "individual," and "entity" include any natural person, partnership, corporation, proprietorship, joint venture, unincorporated association, or other business association or legal entity, and any other domestic or foreign governmental body, commission, board, agency, authority, branch, department, or component thereof.

27. The term "each" includes the word "every," and the term "every" includes the word "each." "Any" includes the word "all," and "all" includes the word "any." "And" includes the word "or," and "or" includes the word "and," as is necessary to bring within the scope of a particular request any document that might otherwise be construed to be outside its scope.

28. Terms in the plural include the singular, and terms in the singular include the plural.

29. The term "includes" or "including" means "including, but not limited to."

30. The terms "related to," "relating," or "concerning" mean consisting of, referring to, reflecting, or being in any way legally, logically, or factually connected with the matter discussed, and includes referring to, relating to, concerning, embodying, pertaining to, connected with, commenting on, responding to, showing, describing, analyzing, reflecting, or constituting.

31. Terms referring to a gender include all genders, as appropriate in the context.

32. As used herein, the words "or" or "and" shall mean "and/or."

## DOCUMENT REQUESTS

1. All documents, communications, and correspondence, supporting, refuting, addressing, concerning, referring to, or relating, in any way, to the averments in BAE's pleadings, as the term "pleadings" is defined in FRCP 7(a).

2. All documents, communications, and correspondence, reviewed, referenced, considered, adopted, or rejected to prepare your answers to any discovery requests served in this Action.

3. All documents, communications, correspondence, analyses, records, and data that BAE intends to introduce into evidence at trial or at any other hearing in this Action.

4. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren, the Subcontract, the Project, this Action or its subject matter.

5. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and Lauren that concern, refer, or relate, in any way, to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren (and its negotiation, performance, or termination), the Subcontract, the Project, this Action or its subject matter.

6. All statements (as that term is used in FRCP 26(b)(3)(C)) which were previously made by you concerning, referring to, or relating, in any way, to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren (and its negotiation, performance or termination), the Subcontract, the Project, this Action or its subject matter.

7. A complete copy of the Prime Contract between BAE and the Army including, without limitation, all task orders, delivery orders, general, special, and supplemental conditions,

exhibits, attachments, schedules, modifications, change orders, and other documents incorporated or referenced therein.

8. A complete copy of the subcontract(s) between BAE and Lauren including, without limitation, general, special, and supplemental conditions, exhibits, attachments, schedules, modifications, change orders, and other documents incorporated or referenced therein.

9. All documents, communications, correspondence, analyses, records, and data maintained by your employees concerning, referring to, or relating, in any way, to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren (and its negotiation, performance, or termination), the Subcontract, or the Project, including, without limitation, any notes, notes of telephone conferences or meetings, field notes, diaries, journals, and calendars, whether handwritten or otherwise.

10. All documents, communications, correspondence, analyses, records, and data summarizing, memorializing, reporting, referring to, or relating, in any way, to any internal BAE oral communications, including, without limitation, meetings, conferences, and phone calls pertaining to the Prime Contract, Lauren, the Lauren Design, the Subcontract, or the Project.

11. All documents, communications, correspondence, analyses, records, and data summarizing, memorializing, reporting, concerning, referring to, or relating, in any way, to any oral communications, including, without limitation, meetings, conferences, and phone calls prepared by, exchanged by and between, or involving BAE and Fluor pertaining to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren (and its negotiation, performance, or termination), the Subcontract, or the Project.

12. All documents, communications, correspondence, analyses, records, and data summarizing, memorializing, reporting, referring to, or relating, in any way, to any oral communications, including, without limitation, meetings, conferences, and phone calls between or

involving BAE and the Army pertaining to the Prime Contract, Lauren, the Lauren Design, the Subcontract, or the Project.

13. All documents, communications, correspondence, analyses, records, and data summarizing, memorializing, reporting, referring to, or relating, in any way, to any oral communications, including, without limitation, meetings, conferences, and phone calls between or involving BAE and its subcontractors including, without limitation, Lauren, related to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren (and its negotiation, performance, or termination), the Subcontract, or the Project.

14. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to the negotiation and/or formation of the Prime Contract, under which BAE contracted with the Army to design and construct the Project.

15. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to the negotiation and/or formation of the Subcontract between BAE and Fluor.

16. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to the preparation and issuance of the Request for Proposals BAE issued to potential bidders, including Fluor, for the Subcontract and/or the Project.

17. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and any one or all of the potential offeror(s) on the Project concerning, referring to, or relating, in any way, to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren (and its negotiation, performance, or termination), or the work to be performed as set forth in the Request for Proposals issued to the potential offerors.

18. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to any BAE investigation, review, evaluation, assessment, analysis, and/or determination of the percent complete, maturity, condition, status, or progress of the Lauren Design as of the dates BAE terminated the Lauren subcontracts.

19. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to any BAE investigation, review, evaluation, assessment, analysis, and/or determination of the percent complete, maturity, condition, status, or progress of the Lauren Design at any time between April 2015 and December 2015.

20. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to all Lauren reports, statements, descriptions, or information provided to BAE and/or the Army regarding the percent complete, maturity, condition, status, or progress of the Lauren Design.

21. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to all BAE reports, statements, descriptions, or information provided to the Army regarding the percent complete, maturity, condition, status, or progress of the Lauren Design.

22. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to the percent complete, maturity, condition, status, or progress of the Process Design as of the date the Subcontract was executed.

23. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to BAE's analysis, review, assessment, evaluation, and consideration of Fluor's Bid Proposals.

24. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to BAE's analysis, review, assessment, evaluation, and consideration of the portion of Fluor's Bid Proposals concerning Fluor's proposed design work.

25. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to Fluor's Bid Proposals including, BAE's analysis, review, assessment, evaluation, and consideration of the Bid Proposals.

26. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to the negotiation, formation, performance or termination of the subcontract(s) between BAE and Lauren.

27. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to the Lauren Design.

28. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and Lauren concerning, referring to, or relating, in any way, to the Lauren Design.

29. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and Lauren concerning, referring to, or relating, in any way, to the performance and termination of Lauren's design and construction subcontracts, including, without limitation, the termination of the Lauren design and construction subcontracts.

30. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to BAE's representations to Fluor, prior to the execution of the Subcontract, that the Lauren Design was 85% complete.

31. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to any updates, amendments, or corrections performed by BAE to the Lauren Design prior to the execution of the Subcontract.

32. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to any updates, amendments or corrections to the drawings, specifications, and technical documents included in Appendix G to the Subcontract that were performed by BAE prior to the execution of the Subcontract.

33. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to BAE's understanding, impressions of, and/or interpretation of the Subcontract including, without limitation, the scope of Fluor's and BAE's design responsibilities.

34. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to the negotiation, formation, selection, and revisions to the language of the Limitation of Damages clauses in the Subcontract, including all drafts, edited and/or revised versions of the Limitation of Damages clauses.

35. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to BAE's analysis, review, assessment, evaluation, and consideration of Fluor's Change Proposals (PCNs), including all revised versions of the Change Proposals (PCNs.)

36. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or

13

relating, in any way, to the Change Proposals (PCNs) that Fluor submitted to BAE on the Project, including all revised versions of the Change Proposals (PCNs).

37. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to Prime Contract Modification 17, executed by the Army and BAE on or about July 23, 2018.

38. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to any Cure Notice or Show Cause Notice issued by the Army to BAE, to include the Show Cause Notice issued by the Army on February 8, 2018.

39. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to the "letters of concern" issued by the Army as alleged in Paragraph 134 of BAE's Complaint.

40. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to the Show Cause Notice issued by the Army on October 16, 2019.

41. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to any Cure Notice issued by BAE, to include the Cure Notice issued by BAE on November 2, 2016.

42. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE, Fluor or the Army concerning, referring

to, or relating, in any way, to Fluor's November 11, 2016, response to the Cure Notice that BAE issued on November 2, 2016.

43. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE, Fluor or the Army concerning, referring to, or relating, in any way, to Fluor's December 2, 2016 response to the Cure Notice that BAE issued on November 2, 2016.

44. All CPM schedules, proposed schedules, bar charts, two-week look-aheads, alleged recovery schedules and schedule updates prepared by BAE concerning, referring to, or relating, in any way, to the Project, including all documents, communications, correspondence, analyses, records, evaluations, analyses and data concerning the schedules.

45. All documents, communications, correspondence, evaluations, analyses, schedules, records, and data concerning, referring to, supporting, refuting, or relating, in any way, to BAE's contention that all delay on the Project is the responsibility of Fluor.

46. All documents, communications, correspondence, analyses, records, and data concerning, referring to, or relating, in any way, to BAE's review, evaluation, and analysis of Fluor's schedules, proposed schedules, alleged recovery schedules, and schedule updates including, without limitation, all documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE, Fluor, and/or the Army.

47. All documents, communications, correspondence, analyses, records, and data concerning, referring to, supporting, refuting, addressing, or relating, in any way, to the allegations set forth in Paragraphs 93, 99, 100, 103, 110, 114, 134, 141, and 153(a) – (d) of the Complaint.

48. All documents, communications, correspondence, analyses, records, and data prepared by, exchanged by and between, or involving BAE and Bowas-Induplan Chemie Gesellschaft MBH (BOWAS) or any of its affiliates or subsidiaries concerning, referring to, or relating, in any way,

15

to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren, the Subcontract, the Project or the Change Proposals (PCNs.)

49. All minutes of meetings between BAE and Fluor concerning, referring to, or relating, in any way, to the Prime Contract, Lauren, the Lauren Design, BAE's subcontract(s) with Lauren, the Subcontract, the Project or the Change Proposals (PCNs.)

50. All minutes of meetings prepared by, exchanged by and between, or involving BAE and the Army concerning, referring to, or relating, in any way, to the Prime Contract, Lauren, the Lauren Design, the Project, the Subcontract or the Change Proposals (PCNs.)

51. All photographs and videos of or concerning, referring to, or relating, in any way, to the Project.

Dated October 15, 2021

Respectfully submitted,

/s/ Scott P. Fitzsimmons
Scott P. Fitzsimmons, Esq. (VSB 68147)
Kathleen O. Barnes, Esq. (VSB 30451)
Edward J. Parrott, Esq. (VSB 29499)
Sarah K. Bloom, Esq. (VSB 94406)
Gregory M. Wagner, Esq. (VSB 96017)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
sfitzsimmons@watttieder.com
kbarnes@watttieder.com
eparrott@watttieder.com
sbloom@watttieder.com
gwagner@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of October 2021, a copy of the foregoing was delivered via email to the following:

>Todd M. Conley (VSB #89839)
>Jeffrey J. Golimowski (VSB #93525)
>WOMBLE BOND DICKINSON (US) LLP
>8350 Broad Street, Suite 1500
>Tysons, Virginia 22102
>Tel: (703) 394-2275
>Fax: (703) 790-2623
>Email: todd.conley@wbd-us.com
>Email: jeff.golimowski@wbd-us.com
>
>D. Stan Barnhill (VSB #22978)
>Joshua R. Treece (VSB #79149)
>Justin E. Simmons (VSB # 77319)
>WOODS ROGERS PLC
>10 South Jefferson Street, Suite 1400
>Roanoke, Virginia 24011
>Tel: (540) 983-7600
>Fax: (540) 983-7711
>Email: barnhill@woodsrogers.com
>Email: jtreece@woodsrogers.com
>Email: jsimmons@woodsrogers.com
>
>Karen M. Stemland (VSB #47167)
>WOODS ROGERS PLC
>123 East Main Street, 5th Floor
>Charlottesville, Virginia 22902
>Tel: (434) 220-6826
>Fax: (434) 566-0473
>Email: kstemland@woodsrogers.com
>
>*Attorneys for BAE Systems Ordnance Systems, Inc.*

Respectfully submitted,

/s/ Kathleen O. Barnes
kbarnes@watttieder.com
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
kbarnes@watttieder.com

*Attorney for Fluor Federal Solutions, LLC*