```
                 BAE Systems Ordnance Systems, Inc. v. Fluor Federal
                       Solutions, LLC, 7:20CV587, 12/15/2021

1                        UNITED STATES DISTRICT COURT
                      FOR THE WESTERN DISTRICT OF VIRGINIA
2                             ROANOKE DIVISION

3      *************************************************************

4      BAE Systems Ordnance        CIVIL CASE NO.:  7:20CV587
       Systems, Inc.,              DECEMBER 15, 2021, 4:01 P.M.
5                                  MOTIONS HEARING VIA ZOOM
               Plaintiff,
6      vs.

7      FLUOR FEDERAL SOLUTIONS,    Before:
       LLC,                        HONORABLE ROBERT S. BALLOU
8                                  UNITED STATES MAGISTRATE JUDGE
               Defendant.          WESTERN DISTRICT OF VIRGINIA
9
       *************************************************************
10
       APPEARANCES:
11

12     For the Plaintiff:    JOSHUA R. TREECE, ESQUIRE
                             JUSTIN E. SIMMONS, ESQUIRE
13                           Woods Rogers PLC
                             10 S. Jefferson Street, Suite 1400
14                           Roanoke, VA  24011
                             540-983-7730
15
                             KAREN M. STEMLAND, ESQUIRE
16                           Woods Rogers PLC
                             123 E. Main Street, Fifth Floor
17                           Charlottesville, VA  22902
                             434-220-6826
18
                             TODD M. CONLEY, ESQUIRE
19                           Womble Bond Dickinson LLP
                             8350 Broad Street, Suite 1500
20                           Tysons Corner, VA  22102
                             703-394-2245
21     FTR Operator:  K. Brown

22     Court Reporter:  Lisa M. Blair, RPR, RMR, CRR, FOCR
                        255 West Main Street, Suite 304
23                      Charlottesville, Virginia  22902
                        434.296.9284
24
       PROCEEDINGS RECORDED BY ELECTRONIC RECORDING;
25     TRANSCRIPT PRODUCED BY COMPUTER.
```

```
        BAE Systems Ordnance Systems, Inc. v. Fluor Federal
              Solutions, LLC, 7:20CV587, 12/15/2021

 1  APPEARANCES CONTINUED:

 2  For the Defendant:           KATHLEEN O. BARNES, ESQUIRE
                                 SARAH K. BLOOM, ESQUIRE
 3                               SCOTT P. FITZSIMMONS, ESQUIRE
                                 Watt, Tieder, Hoffar & Fitzgerald,
 4                               LLP
                                 1765 Greensboro Station Place,
 5                               Suite 1000
                                 McLean, VA  22102
 6                               703-893-8029

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  (Proceedings commenced, 4:01 p.m.)

2          THE COURT:  Let me just go ahead and call the case.

3  Ms. Brown, call the case and I'll just have everyone identify

4  themselves.

5          THE CLERK:  BAE Ordinance Systems, Inc. versus Fluor

6  Federal Solutions, LLC, Civil Action Number 7:20cv587.

7          THE COURT:  All right.  Let the record reflect the

8  parties are present by counsel.

9          All right.  Mr. Treece, you can go ahead and just

10  identify who you have there with you today.

11          MR. TREECE:  Certainly, Your Honor.  Joshua Treece on

12  behalf of BAE.  With me I have Justin Simmons.

13          THE COURT:  All right.  Anyone else on behalf of BAE

14  there with you?

15          MR. TREECE:  Not in my office, but here present via

16  video.

17          THE COURT:  Okay.  Go ahead and identify those folks.

18          MR. TREECE:  Sure.  Catherine Ronis, vice president

19  and associate general counsel for BAE; Joe Port, senior

20  in-house counsel for BAE; and Todd Conley, outside counsel for

21  BAE.

22          THE COURT:  All right.  Good afternoon.  I hope

23  you're doing well.

24          MR. TREECE:  And Your Honor, I'm sorry, Karen

25  Stemland is also with us on behalf of BAE.  I couldn't scroll

                BAE Systems Ordnance Systems, Inc. v. Fluor Federal
                   Solutions, LLC, 7:20CV587, 12/15/2021

1  over.  I didn't see her face.

2          THE COURT:  Ms. Stemland had more than enough of me

3  last Friday for mediation.  Karen, it's good to see you again.

4          All right.  Mr. Fitzsimmons, I guess you're here on

5  behalf of Fluor?

6          MR. FITZSIMMONS:  I am, Your Honor.  And I'm going to

7  allow my partner, Kathleen Barnes, to introduce us.

8          MS. BARNES:  I am Kathleen Olden Barnes on behalf of

9  Fluor Federal Solutions.  With me, as you've already

10 recognized, is Scott Fitzsimmons, and also Sarah Bloom.  We

11 also have in attendance Jonathan Conte, who is senior counsel

12 at Fluor.

13         THE COURT:  Is that the person that looks like he's

14 in a witness protection program there?

15         (Laughter.)

16         MS. BARNES:  Yes.  He asked that we blur his face.

17         (Laughter).

18         THE COURT:  All right.  Very well.

19         MR. CONTE:  It's better off that way, Your Honor.

20         THE COURT:  Well, thank you all very much for being

21 here.  We're here on dockets 63 and 65, which are the competing

22 motions that have been filed first by BAE to stay the case and

23 bifurcate, and the motion filed by Fluor to compel discovery

24 and for attorneys' fees.

25         I can tell you one way almost certain I'm going to

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   rule is the issue regarding bifurcation I'm going to pass to

2   Judge Urbanski.  It touches upon trial and what would happen in

3   trial.  And typically the way that we have had a division of

4   labor over here is that anything that will touch upon how a

5   trial will go forward, evidence that would come in, issues that

6   would be before the judge or the jury, as the case may be, are

7   typically reserved for the district judge.  And so unless he

8   sends that back to me, I'm going to send it to him.  And I

9   think that he would prefer to make that decision as well,

10  especially since it's a bench trial where a district judge is

11  going to have much more latitude on the conduct and how things

12  will go.  So I haven't put that in writing yet, but that's just

13  to let you all know where I'm headed.

14          Mr. Treece, I believe you filed the first motion.

15  I'll give you the first argument.

16          MR. TREECE:  Thank you, Your Honor.

17          So as you know, we're before the Court on our motion

18  to stay, and I understand the Court's comments with respect to

19  bifurcation.  I may mention bifurcation only to the extent it

20  further supports the justification for the stay.  And then we,

21  of course, have Fluor's motion to compel.

22          I wanted to mention at the outset, though, that

23  Fluor's motion to compel is not a true motion to compel.  It is

24  more in the way of opposition to our motion to stay.  And I say

25  that because there has been no meet and confer on any of the

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  specific requests.  We have the general objection that we filed

2  a motion to stay and it's inappropriate, and then we have

3  individualized objections to much of the requests.  And we

4  haven't met and conferred.  As you know, Fluor doesn't identify

5  any specific set of requests that they're moving to compel on.

6  So that's not ripe for resolution, but we do view it as an

7  opposition to the motion to stay.

8          THE COURT:  Is it fair to say, maybe just so I can

9  understand exactly what your position is -- I didn't go through

10 it, and I need to go through it and kind of look at all the

11 different discovery requests -- is that if I grant the motion

12 to stay, it is what it is; no discovery is going to go forward

13 anyway.

14         If I deny the motion to stay, however, then to the

15 extent that there are relevant interrogatories, discovery

16 requests, documents to be produced, then we'll go forward on

17 that.  To the extent that there are further objections to

18 specific interrogatories or specific requests, specific

19 documents for whatever reason -- whether it be work product,

20 attorney-client, whatever -- that would then be subject to a

21 meet and confer, and we'd be back on that, if necessary?  Is

22 that the way you view that, Mr. Treece?

23         MR. TREECE:  Well, slightly differently, Your Honor.

24 But certainly for any of that to be ripe, we would have to meet

25 and confer.

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1           THE COURT:  Right.  Right.

2           MR. TREECE:  Now, with respect to the requests

3    themselves, as you'll see from the justification here, the

4    discovery doesn't make sense for a variety of reasons, a lot of

5    which also relate to bifurcation to the extent we get there,

6    right?  So compelling something that is going to be bifurcated,

7    and not until later down the road, if ever, depending on

8    resolution of the dispositive motions, I don't think it makes

9    sense to have anything compelled.  But if there is some subset

10   that they want to compel, we did identify those requests that

11   we thought --

12          THE COURT:  But my question was prefaced upon the

13   idea that -- and I'm not talking about bifurcation, but about

14   staying -- is that if I do not stay the case, the understanding

15   would be you'll proceed forward with discovery.  If there are

16   specific objections to specific requests, that would come back

17   on a different motion to compel.  Is that the way you

18   understand it?

19          MR. TREECE:  That's correct, Your Honor.  And I did

20   want to mention that in our briefs we identified specific

21   requests that would go to the key contract interpretation

22   issues.  So again, still need the meet and confer process with

23   that.  But to the extent anything was going to be compelled,

24   we're not going to get substantive discovery on that before the

25   hearing anyway, but that would make sense.  If you're trying to

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   identify some subset, the subset relating to the key contract

2   interpretation issues -- which Your Honor is aware of from our

3   informal hearing, and I'll mention again today -- that would be

4   sort of a way to slice it in a way that could arguably be

5   reasonable if we weren't having a hearing a month from now and

6   it being inefficient.  No substantive discovery would take

7   place between now and then anyway.  We'd only have a protective

8   order, for example, and the interrogatories are largely

9   blockbuster interrogatories.  I mean, there's a number of

10  issues there we don't need to delve into.  But I think Your

11  Honor understands our views on that.

12          Now, let me just kind of start at the outset and say

13  that, you know, BAE's motion is timely.  I'm going to walk

14  through sort of the details on that.  As you know, we're only

15  seeking a short stay; that is, until the hearing on the 14th

16  and resolution of the dispositive motions.  Judge Urbanski, as

17  Your Honor is aware, is often inclined to sort of give the

18  parties his reaction to pleadings when they're heard before

19  him.  And so he may give the parties an indication of what way

20  he's going without us having to wait for an ultimate

21  resolution, but we anticipate having some sort of guidance.

22  But ultimately it's just not efficient to address these issues

23  until such time as the motion is ruled upon.

24          Now, with respect to our dispositive motion, Fluor

25  has sort of mischaracterized those as relating to only part of

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  the issues in this case.  We spelled that out in our papers

2  where -- our dispositive motion through the entirety of their

3  claim.  And most of what we're dealing with, with respect to

4  bifurcation and all of those issues relates to unambiguous

5  contract provisions, right?  This is design responsibility.

6  This is the enforceability of the $30 million damages.  These

7  are unambiguous contract issues.  I know Fluor wants to do all

8  this discovery into parole evidence, but as a matter of

9  contract law, they're got going to get there.  And if they do

10 get there because Judge Urbanski, you know, doesn't agree with

11 us that it's unambiguous, then at a minimum there we can

12 address that through the bifurcation and we can have a limited

13 hearing on those issues, a limited number of depositions, a

14 short, you know, multi-day hearing if necessary, but not a

15 three-week trial which we could deal with later.

16          So we've got the motion to dismiss, and the four

17 corners of the contract spell out the parties' obligations.

18 And in Fluor's brief they keep citing something we said in a

19 brief which they're taking out of context.  And that relates to

20 the process design.  And I'll just mention with process design,

21 Your Honor, the obligation of BAE was to procure equipment.

22 They talk a lot about Appendix G.  We'll talk about that.  But

23 Appendix G in the contract relates to equipment specifications.

24 It is not a design requirement.  It is just the equipment.

25          Your Honor, if you wanted to build a house and you

19

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  want a slate roof on your house, you hire a contractor.  You

2  say, "Contractor, I want you to build a house.  I want a slate

3  roof on that house."  You telling them you want a slate roof is

4  not a design.  That is a specification.  If you've seen in

5  their brief, they try to support their arguments with a single

6  attachment which talks about a valve.  That's exactly what

7  we're talking about, is the only thing that they can point to

8  in the contract -- and this is really for Judge Urbanski -- but

9  it's discrete components.  It's equipment.  It's a pump and a

10 valve.  It is not a design.  They talk about P&IDs and things

11 like that, but the scope of work expressly says this is

12 two-point drawings, specifications, technical drawings provided

13 in Appendix G, which is what Fluor is relying so heavily on

14 now.  It goes on to say, These drawings are provided for

15 reference only.  The subcontractor shall prepare their own

16 drawings to be used for the design submittals.

17          The bottom line, Your Honor, is this is a strict

18 contract interpretation issue, and it's to the tune of in

19 excess of 100 million and really 150 million PCNs that we're

20 talking about, proposed change notices.  So as a matter of

21 strict contract interpretation, Judge Urbanski can kick out

22 $150 million worth of what Fluor is claiming is in dispute.

23 And then, of course, we have the limitation on damages of 30

24 million.

25          Now, Your Honor mentioned in our December 1st call

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  that, Well, isn't this in the nature of a med mal cap and will

2  be applied later?  It's much different here, Your Honor.  If

3  you're doing a med mal case, you're going to prove the harm to

4  the patient, right?  And you're going to prove it anyway, and

5  then the cap is what it is.  Here we're dealing with a vast

6  number of PCNs to the tune of $200 million.  If the case is

7  limited to $30 million, we're going to take a lot fewer

8  depositions, everybody is not going to go to the ends of the

9  earth to prove every who shot John with every PCN.  What Fluor

10 is likely to do as a practical matter is pick what they think

11 are their most compelling PCNs, and we're going to be dealing

12 with that.  So practically speaking, it's true Fluor may have

13 the right to prove up PCNs, but practically the case is not

14 going to be the same.  The proportionality analysis under

15 Rule 26 with the amount in dispute is not going to be the same.

16 It is going to be a much different case.  We're not going to

17 hire as many experts, presumably.

18        THE COURT:  But whether you stay discovery or not on

19 that particular issue doesn't really matter.  I mean, if Judge

20 Urbanski rules four weeks or so after your hearing that it's

21 limited to $30 million and he's only going to allow $30 million

22 of damages to be put on, then your discovery is still going to

23 go forward and Fluor is going to make a decision as to which

24 claims it's going to pursue.  It may change its mind from the

25 beginning to the end as to which one it finds to be the

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   strongest.  It doesn't mean that that's going to limit the

2   discovery on those.

3           MR. TREECE:  Your Honor, I understand your point

4   there.  So first, the motion to dismiss is sort of principally

5   going to eliminate all of it, in our view, based on strict

6   contract interpretation and the fact that these terms are

7   unambiguous.  The 30 million, though, as a practical matter, is

8   going to substantially affect how discovery ensues, right?  And

9   I'm not saying that Fluor is going to be limited.  If Fluor

10  wanted to spend a ridiculous amount to prove all of these $200

11  million in changes, I mean, that would be their own decision to

12  waste that money.  But if they're trying to compel a bunch of

13  stuff from us, you know, I think certainly the Court should

14  factor into whatever the analysis is with respect to whatever

15  they're requesting whether it makes sense to do it, if, you

16  know, it's a $30 million case versus a $200 million case.

17          THE COURT:  Both are a lot of money.

18          MR. TREECE:  Well, I understand both are a lot of

19  money in the context of cases generally.  In the context of

20  this case, I mean, think $30 versus $200.  It's a vast

21  difference from a proportional perspective, and it's a

22  proportionality analysis, right?

23          THE COURT:  Right.  But that -- so I don't know

24  whether one claim may be worth 100 million and then three or

25  four others are worth 20 or 30 million apiece, as opposed to

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  there are 200 claims, each of which is worth a million dollars,

2  right?  And I think there's a difference in the nature of the

3  discovery in that regard.

4        MR. TREECE:  And I understand Your Honor's point on

5  that.  I mean, our driving principle here is the motions to

6  dismiss are the largely dispositive issue.  And practically

7  speaking, limiting damages to 30 million will have a

8  substantive impact on discovery.  Now, exactly the parameters

9  and the scope of that, that's harder to define, but I think

10  it's plain it will.  And then, of course, if only -- I say only

11  30 million, but in the context of this case where the NC

12  facility is a $250 million project, you know, if only 30

13  million are in dispute, it's more likely to bring the parties

14  closer together for resolution discussions.  Now, obviously, no

15  way to predict how that would go.  But it will dramatically

16  impact the case and how it proceeds in any event is sort of

17  where we wanted to make our point on that.

18        Now, getting to the timeliness of our motion to stay,

19  Your Honor is aware there were two lawsuits filed initially.

20  You know, we filed first.  It got assigned to Judge Conrad.

21  Fluor filed second, a separate case, and got assigned to Judge

22  Dillon.  Then we filed a motion consolidate.  And the parties

23  agreed that, look, while we're working out this motion to

24  consolidate, everything is going to be stayed, right?  So there

25  was an agreement not to do anything until there was a ruling on

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  the motion to consolidate.

2        We had a hearing with Judge Urbanski in I believe

3  April where he addressed the motion to consolidate.  During

4  that hearing we raised the issue of bifurcation with Judge

5  Urbanski.  So it came up in that context.  After that hearing

6  Judge Urbanski said, all right, everybody needs to file their

7  responsive pleadings.  Everybody needs to file their

8  dispositive motions so we can get everything on file.  We did

9  that.

10        Thereafter, we had the 26(f) conference.  The 26(f)

11  conference lasted an hour.  A large topic there was the stay

12  and bifurcation in light of the motions to dismiss that had

13  been filed by that time.  That was memorialized, of course, in

14  our 26(f) report.  And our 26(f) report expressly says BAE

15  informed Fluor that, quote, Discovery could change

16  substantially depending on the outcome of the parties' pending

17  motions under Rule 12(b)(6) and 12(f).

18        And BAE raised the possibility of a motion to

19  bifurcate and stay during the discovery conference.  At no

20  point since has BAE ever indicated that they were doing

21  anything other than moving to stay and bifurcate once discovery

22  was issued to BAE.  But since our July 26(f) conference, Fluor

23  elected not to issue discovery, and BAE took that as an

24  implicit recognition that they saw the wisdom in not moving

25  forward with discovery until resolution of the dispositive

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

 1  motions there.  But in our call with Your Honor on December 1st

 2  you asked Mr. Fitzsimmons if the parties had conferred on

 3  bifurcation, and he told you no.  I have zero idea where he

 4  came up with that, because that's entirely contravened by our

 5  entire dealings and past conferring on the motion to bifurcate.

 6          Now, what precipitated our motion is we thought Fluor

 7  was not going to move forward with discovery as to BAE, and so

 8  there was no need to trouble the Court with any filing, but

 9  then on October 15th we got discovery requests.  After we got

10  those discovery requests, of course, we realized that Fluor is

11  going to try to take discovery before resolution on the

12  motions.  And that doesn't make any sense, so we immediately

13  prepared our motion to stay and bifurcate.

14          Before our responses were due I emailed

15  Mr. Fitzsimmons, and I said, We have prepared our motion to

16  stay and bifurcate for filing tomorrow.  And this is, again, a

17  week before our responses were due.  He told me that if we

18  tried to file first, he wanted to meet and confer again on the

19  issues; and that if we tried to file it, he would object

20  because it's not procedurally proper.  I explained to him I

21  disagreed with his views there because we had met and

22  conferred, and this was not really the nature of the issue that

23  goes to the informal resolution process because we're not --

24  there is nothing to resolve.  If you flatly disagree with us,

25  and we've met and conferred on it, it just makes sense to file

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  it.  So we were prepared to file on the 12th, Your Honor.  And

2  here we are on the 15th, and Fluor is trying to say that we're

3  delaying.  We could have filed on the 11th if they didn't want

4  to meet and confer further and insist on the informal

5  conference.  But that was their request to do so, and we

6  obliged them.  And we were hopeful that they were going to

7  change their tune in the meet and confer, but they took the

8  same approach, which is no, we just flatly disagree with you.

9  I proposed in that call -- I said, Well, Scott, why don't we

10 wait until -- we can wait on filing bifurcation.  Why don't we

11 wait until the hearing, and maybe at the hearing Judge Urbanski

12 will give us some guidance, and then we're only waiting a

13 matter of weeks.  And he wouldn't entertain that as an option.

14 So we were left with no choice but to file our motion and

15 certainly proceed first with an informal conference that Fluor

16 insisted that conduct there.

17         So the bottom line, Your Honor, is our motion is

18 timely.  And the only reason it wasn't filed before our

19 discovery responses were due is because Fluor insisted that we

20 not do so, and essentially said, you know, if you try to do it,

21 we're going to, you know, tell the Court that you're violating

22 all these rules.  We said, All right, well, look, if you want

23 to meet and confer and you think that's beneficial, we're happy

24 to do that.  If you want to set a call with Judge Ballou, we're

25 happy to do that.  So that is the reason our motion was filed

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  when it was.

2          I've already talked about the short stay, but really

3  the efficiencies gained from the stay make up for any delay.

4  If Judge Urbanski agrees with us that this is an unambiguous

5  contract interpretation issue as to the motion to dismiss and

6  the damages cap, then limiting and removing those issues from

7  the case substantially limit the amount of discovery we're

8  going to have for the remainder of the discovery period.  So

9  it's just efficient not to engage in, you know, unbridled

10  broad-sweeping discovery, when in a matter of weeks we may know

11  more that will prevent us from having to do broad-sweeping

12  unbridled discovery.  So that's where we are with respect to

13  that.

14          Now, on the substance of their arguments with the

15  motion to dismiss -- and we get into this only because, you

16  know, it is appropriate for Your Honor to look somewhat at the

17  merits of the motion to dismiss.  And it's plain that the

18  merits of our motion to dismiss are sound, and in our view

19  likely to be granted by Judge Urbanski.  Again, we can

20  eliminate everything relating to design responsibility.  The

21  contract is crystal clear that Fluor has overall design

22  responsibility for the contract.  The only thing BAE did was

23  supply equipment specifications.  And I mentioned they talk

24  about P&IDs that were redlined.  Again, it goes on to say in

25  the contract, 2.2, drawing specifications and technical

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  documents provided in Appendix G are for reference only.  There

2  is no requirement for them to rely on that.  The only

3  specifications in Appendix G that they are talking about,

4  they're trying to make it seem as if drawings and specs are the

5  same thing.  Not at all.  They're talking valves, pumps, which

6  is what you see in their attachment.  Again, that is nothing

7  more than you building a house and saying, I want a gray slate

8  roof.  And then, of course, the contractor who is constructing

9  it has to figure out how to design a house that can withstand

10  the weight of that slate roof.  That's not you because you're

11  saying, Contractor, I want a slate roof.

12        So that's where we are on that.  But with the period

13  leading up to this, which they make much about because of the

14  Lauren Design, there was an eight-month bid period here.  And

15  Fluor contractually agreed to be the design-build contractor on

16  this.  There were certain data provided from Lauren, the prior

17  contractor, to all bidders, including Fluor, but it was

18  expressly as is.  And I'll read you what it says.  This is

19  in -- this is the cut-out from the language there:  "Native

20  files from previous contractor will be provided as they are

21  received.  Files are as is based on work in progress at the

22  time of termination of the previous contractor."

23        They knew it was incomplete.  In fact, they talked to

24  Burns & Mack before they signed the contract.  Burns & Mack is

25  a design firm.  Burns and Mack looked at it and they said,

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  Look, we would start from scratch.  We wouldn't take this.

2  Burns & Mack ultimately was not used by Fluor as a design firm,

3  but the bottom line is they knew since the outset that what

4  they were getting was a conceptual design as is.  It's not

5  incorporated anywhere in the subcontract at all.  And so,

6  that's one of the issues for Judge Urbanski.  He can make that

7  discrete ruling, and then we're lopping off hundreds of

8  millions of dollars of PCNs just by that decision.

9        Now, during the bid process Fluor was alerted that

10 they've got to validate, correct, and complete the conceptual

11 design, if they end up using it.  And the statement of work is

12 just crystal clear.  The statement of work says the definition

13 of work:  All of the design.  It goes on to say in the

14 statement of work, The objective of this statement of work is

15 to design and procure and construct.  The subcontractor shall

16 prepare their own drawings to be used for design review

17 submittals, construction, and as record drawings.

18        They've got the responsibility to construct this

19 thing.

20        It is incumbent upon the subcontractor to review the

21 documents submitted and to perform their own analysis.  The

22 subcontractor shall be solely responsible for the design.

23        Now, what they're talking about with the process

24 design, just so Your Honor can be aware of how they're trying

25 to conflate the two and make it seem as if there's some big

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   area of uncertainty that needs discovery, the process design is

2   the machinery that makes the nitrocellulose, right?  That is

3   from Boas, a company I think out of Germany that specializes in

4   this proprietary design for making nitrocellulose.  But this is

5   no different than any other facility or factory that Fluor

6   would design and construct.  If Fluor is building a chemical

7   plant for Dow, they don't know how to make the chemical

8   process.  They're going to rely on Dow to get the equipment,

9   which is what they did here.  But they've got the obligation to

10  design the overall facility.  That's their obligation.  It's

11  not -- it's not a design obligation.  It's a specification

12  issue is what it amounts to.  But the subcontractor is crystal

13  clear on this.

14          And again, Exhibit G is -- Exhibit G itself is

15  entitled, "Equipment specifications," not drawings, not -- it's

16  equipment specifications like a valve or a pump.  This is

17  actually a very straightforward issue sort of despite Fluor's

18  efforts to make it seem like a convoluted -- I think

19  Mr. Fitzsimmons called it a bowl of spaghetti.  As difficult as

20  he wants to make it, it's clear in the contract.  So that is

21  what it is.

22          So I think I've addressed all the issues there with

23  respect to their process argument and the red herring with

24  that.  But at the end of the day what they're trying to do is

25  take a firm fixed price contract and then look at all of their

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  errors and failures and say, Well, you know what?  We blame

2  these on something we got from you, and so we're issuing all

3  these PCNs.  But it's a very clean, discrete issue in terms of

4  the issue is:  Who has design responsibility?  That's resolved

5  on the contract.  Is there a $30 million damages cap?  That's

6  resolved on the contract.  And again, in the unlikely event the

7  parole evidence is required, bifurcation would address that

8  issue by just doing a couple of depositions about the parties'

9  intent when they entered these terms.  But parole evidence is

10  not permitted.  Even course of performance, course of dealing

11  subsequent to the contract is not admitted if it's unambiguous.

12  And we provided the Court with the *Snowden* case in our papers

13  which make that issue crystal clear.

14          So in our view, Your Honor, it's not even a close

15  call.  I mean, the motion to stay makes imminent sense here for

16  all involved.  It saves the cost across the board.  You know,

17  Fluor is trying to say, Oh, we're trying to shield evidence

18  from the upcoming hearing.  The upcoming hearing is a motion to

19  dismiss.  You can't go outside the pleadings.  You can't use

20  extrinsic evidence that's not in the pleadings.  So if you --

21  so the bottom line is that's not permitted anyway.  And then

22  you've got the unambiguous issue that they can't use parole

23  evidence anyway.  So the combination of those two things just

24  show that Fluor is sort of grasping to try to make this seem

25  like some manipulative process, when really what we're doing is

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1    it's just imminently reasonable and efficient to approach this

2    in the way that we're proposing.  It saves everyone money.  It

3    saves the Court time and expense.  It saves the parties time

4    and expense.

5          And we're talking about a matter of weeks, maybe

6    months, in terms of two months before Judge Urbanski rules.

7    But like I said, I would anticipate some sort of indication as

8    to his views as to whether he thinks it's ambiguous or not,

9    those kind of things.  We had proposed to revisit with them at

10   that time.  You know, certainly got no traction when we made

11   that proposal.  But resolving these issues would result in

12   minimal factual discovery, especially if we bifurcate, limited

13   hearing on those issues.  And we can perhaps resolve the vast

14   majority of the case within a matter of months, and not have to

15   do a three-week trial.  I know that ties into bifurcation, but

16   again, it just goes to the merits of the motion to stay and why

17   it's imminently reasonable to do that here.

18         And with that, Your Honor, we would request that our

19   motion to stay be granted and bifurcation obviously tabled for

20   another day; their motion to compel denied, certainly, for the

21   reasons stated in our motion to stay; and then also denied

22   because it's not even ripe.  There has been no meet and confer

23   on any specific motion to compel.

24         THE COURT:  All right.

25         MR. TREECE:  Any specific interrogatory or request

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   for production.

2            THE COURT:  Okay.

3            MR. TREECE:  Thank you.

4            THE COURT:  Thank you very much, Mr. Treece.

5        All right.  Ms. Barnes, Mr. Fitzsimmons, who's going

6   to argue on behalf of Fluor?

7            MS. BARNES:  As soon as I unmute myself, I am going

8   to argue on behalf of Fluor.

9            THE COURT:  Let me start with a question, Ms. Barnes.

10  Just in looking through the docket -- and I think this affects

11  you-all's case a little bit more -- so I'm looking at the order

12  Judge Urbanski entered on April the 30th dealing with

13  consolidation, the repleading of your claims into

14  counterclaims, and so forth.  It says that once the claims

15  alleged in the '596 case -- which I think is your case, the

16  Fluor case -- are reasserted as counterclaims in -- the '596

17  case will be dismissed as duplicative.  Are we at that stage?

18  Can I suggest to Judge Urbanski that that step can be taken at

19  this time?  I asked you first because Fluor filed the case.  I

20  know Mr. Treece would absolutely agree that that case should be

21  dismissed, but I wanted just to see if I could clean up at

22  least that part of the docket.

23            MS. BARNES:  Yeah.  We don't see any reason why it

24  needs to be there.  We have filed our entire claim and the

25  counterclaim, and it has been answered.  So the issues are at

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  bar.

2         THE COURT:  Let me just suggest to him -- I'll get a

3  message over to him after this hearing that that action can be

4  taken.

5         MS. BARNES:  Okay.

6         THE COURT:  So with that, Ms. Barnes, the floor is

7  yours.

8         MS. BARNES:  Okay.  I will just say kind of in the

9  order that all of these things came up, with regard to the

10  motion to compel, Your Honor in our meeting to confer discussed

11  the fact that we were not going to specific objections that may

12  have been made to the request, that we were going to address

13  the real reason that BAE did not respond to even one of the

14  interrogatories or document requests.  And that was because

15  they assumed that they had somehow a de facto stay and did not

16  have an obligation to respond to any discovery.  They did not

17  have any citation to any agreement between the parties, any

18  letter that was issued by Fluor, any ruling by this Court, any

19  case law, or any rule that would allow them simply to decide

20  not to address discovery requests.  We did have a meet and

21  confer because we met with Your Honor, and we talked about the

22  motion to compel, and Your Honor gave us the right to file a

23  motion to compel on the issue with regard to the motion to

24  stay.

25         THE COURT:  But -- and I guess this goes to my

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  question to Mr. Treece is that if I agree with you regarding

2  the motion to stay, there may be further work on specific

3  objections that the parties need to then address.  The only

4  thing I would need to address as it relates to the motion to

5  compel would be with respect to discovery there may be -- and

6  you then have to deal with whatever objections are made --

7  whatever the substantive objections are.

8          MS. BARNES:  Yes.  And we understood that that was

9  the case based on your statement at the end of our meeting.

10 But none of the objections that BAE has made to any of the

11 individual requests are objections that would permit them

12 simply not to respond.  Those are objections that you make --

13 that people make in every one of their responses to discovery,

14 and then go ahead and provide responses subject to those

15 objections.  And so we don't see anything that would keep them

16 to give responses, but for the fact that they decided that they

17 didn't have to because they intended to file a motion to stay.

18          Okay.  I'm going to start out with regard to the

19 motion to stay on the issue of timeliness.  And we heard

20 Mr. Treece talk about the fact that there was a very detailed

21 discussion in the Rule 26(f) conference about BAE's decision

22 that they thought that they would file a motion to stay.  What

23 Mr. Treece did not also suggest is that there was also a very

24 significant response from Fluor, that Fluor opposed any motion

25 to stay.  Fluor said -- and it was included in the Rule 26(f)

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  report -- that Fluor saw no reason for there to be a motion to

2  stay pending a decision on the motions to dismiss.  And we also

3  spoke several times, including through emails, about not only

4  the motion to stay and how that would work, but the motion to

5  bifurcate.  And we -- and I wrote the email myself and said to

6  Mr. Treece, I really don't see what your plan is for

7  bifurcation.  It does not even make any sense what you're

8  talking about in terms of how to bifurcate.

9          So there has never, in any of the months -- July,

10  August, September, October, November -- there has not been any

11  indication to BAE that, in using Mr. Treece's words, that we

12  saw the wisdom of the motion to stay.  We have not seen the

13  wisdom of the motion to stay, and we still have not.  And we

14  never gave any suggestion of that.

15          But even if they thought Fluor may have seen the

16  wisdom of the motion to stay, there is no motion to stay until

17  the Court orders one.  And so, saying we thought that Fluor

18  might not file discovery is not an explanation of the failure

19  to file a motion to stay if you really wanted discovery to be

20  stayed.  There also is not any explanation for what BAE calls

21  participating in the place setting or the table setting

22  discovery.  They negotiated in significant negotiations that

23  went on for weeks an ESI proposal and then an ESI order that we

24  went through about how documents would be produced in this

25  case.  And then the parties have gone forward to deal with some

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   of the issues in the ESI protocol.  We have filed a -- filed

2   and served custodian emails.  We have identified party

3   custodians as responsible -- as required by the ESI protocol.

4   We have identified non-custodial sources of documents.  And

5   Fluor has provided BAE with a proposed protective order.  That

6   was provided on October 19th.  We have not heard anything back

7   from BAE with regard to that.  Fluor has provided BAE with

8   proposed search terms that would be responsive to our document

9   and interrogatory requests.  Have heard nothing back from BAE

10  on that.

11         THE COURT:  Let me ask you -- and the idea that every

12  judge can split every baby in some way -- is there a middle

13  ground somewhere that brings you-all all the way up to the

14  point of hitting the button to do the searches that invests so

15  much attorney time and then having to review what's probably

16  going to be millions of pages of documents here for discovery

17  purposes and so forth, is there -- is there a ground that I

18  could stake out that would say, I want you all to go forward

19  with discovery; assume that you're going to have one set of

20  discovery that leaves everything intact, and Judge Urbanski is

21  going to say, what you all are talking about are things to be

22  fleshed out in the motion for summary judgment stage, or there

23  are going to be some things that are left.  I know you're not

24  going to buy completely that your counterclaim will be

25  dismissed, but there are going to be some things that are left,

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   and here's our skinnied-down version of discovery.  And then 30

2   days after Judge Urbanski's hearing, if he hasn't ruled we come

3   back, we have a status conference and say, okay, maybe you can

4   drive forward and start with discovery now, because we don't

5   know how Judge Urbanski is going to rule?  Is there a middle

6   ground in that regard?

7           MS. BARNES:  I think that the only middle ground that

8   I could propose -- only because you're requiring me to do so,

9   one I'm doing it under duress -- however, the middle ground

10  that I would propose is that BAE responds fully and completely

11  to the written discovery.  This is not something that requires

12  hundreds and hundreds of hours of attorney time.  That the

13  parties finish the negotiation of a protective order.  So on

14  the day that any partial stay is lifted, that the parties could

15  start producing documents.  That the parties propose and

16  negotiate search terms which would allow also us to push the

17  button and start collecting documents and determining what

18  would be required.  We also ask that there not be any stay on

19  any third-party discovery.  If BAE is concerned about its own

20  time and attorney time, we have subpoenas out to the government

21  with regard to its communication and involvement in this

22  matter.  We have a subpoena out to Lauren -- that was the

23  original designer and the original supposed design-build

24  subcontractor -- which was not objected to by BAE, neither of

25  these -- neither of these subpoenas.  We also intend to have a

                 BAE Systems Ordnance Systems, Inc. v. Fluor Federal
                    Solutions, LLC, 7:20CV587, 12/15/2021

1   subpoena -- and likely we'll have to do letters rogatory with

2   regard to Boas, who is the contractor --

3           THE COURT:  In Germany?

4           MS. BARNES:  Yes.  That was working on the process

5   design.  And that is a thing that could take a lot of time, and

6   that we don't have time to sit around and not do anything on

7   while we're waiting for a decision on the motion to dismiss.

8           And so we would ask that third-party discovery go

9   forward; search terms; also that the parties work on and agree

10  to a protective order so that there won't be any more

11  roadblocks to production; and then that the written discovery

12  in its entirety be responded to, because there really is no

13  reason that interrogatories and document requests can't be

14  responded to.

15          THE COURT:  Okay.  All right.  I interrupted your --

16          MS. BARNES:  That's okay.

17          THE COURT:  I don't know if you remember where you

18  were.

19          MS. BARNES:  I do.  I was talking about the timeline.

20  And really not to belabor it, I think that in any way that BAE

21  somehow tries to blame Fluor for their failure in the period

22  between July and November to move for a stay should really just

23  be rejected.  There has been no conversation, no communication

24  between BAE and Fluor which would lead BAE to believe that

25  Fluor's position had changed with respect to the motion to

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  stay.  BAE never reserved their rights as we were going forward

2  with all of these discovery-related activities that they freely

3  engaged in.  They never reserved their rights to move to stay.

4  They never raised the motion to stay at all.  There was no

5  reason for Fluor to believe that BAE still was considering a

6  motion to stay.  And then once Fluor filed its written

7  discovery requests on October 15th, BAE then waited 26 days.

8  They waited until four days before their discovery responses

9  were due to even raise a motion to stay.  So there was no

10  reason for Fluor to even think that BAE was still considering a

11  motion to stay, because the thing that BAE claims is real

12  discovery, that had been filed.  That had been served on

13  October 15, 2021.  And BAE stood silent for 26 days until four

14  days before those responses were due before they even raised

15  the motion to stay.

16          The other thing that really should be rejected as

17  without any merit is BAE's continual statement that Fluor

18  somehow was trying to delay them from filing a motion to stay.

19  Fluor simply notified BAE of the requirements that are included

20  in Judge Urbanski's scheduling order that says that any

21  non-dispositive motion that relates to discovery must go first

22  to Judge Ballou, and that the parties have to meet and confer.

23  That is all we referred to.  If BAE believed that that didn't

24  apply to this specific discovery motion, they could have simply

25  said:  We refuse to do it.  We refuse to meet and confer.  But

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  they did not, because they know that the scheduling order

2  specifically says that it's a requirement.  And that is all we

3  did is to suggest to BAE that filing a discovery motion without

4  seeking a conference with Your Honor was in violation of the

5  scheduling order that both of the parties agreed to.

6          So when you look at this holistically, this motion to

7  stay is not only unnecessary because it's not going to help

8  this case, it's not going to increase any efficiency, it's not

9  going to narrow any discovery, and it certainly will prejudice

10 Fluor; but it's also untimely.  BAE had months to file this

11 motion to stay, and they decided that they would not file it

12 until it was too late for Fluor because they waited until four

13 days before the document and interrogatory requests were due in

14 order to say:  We've got our motion to stay ready to file, and

15 you should just realize you're not going to get any answers to

16 your discovery requests.  So that is all I will say on

17 timeliness.

18          The other thing that I would also like to preface my

19 remarks on the substance of this motion to stay is that it's

20 hard to know what BAE actually is requesting here.  BAE --

21 Mr. Treece said today, We would like to have the motion to stay

22 until the January hearing or until the motions are decided

23 because we think we'll get an indication.  Is it until the

24 January hearing or is it until the motions are decided?

25          We understand what has happened to the docket of the

1  courts based on the pandemic and how much there is before the

2  courts at this time.  And so we say with all due respect:  We

3  don't know that we're going to, number one, get any indication

4  on January the 14th, or that we're going to get a decision on

5  all three motions -- motion to dismiss by Fluor -- partial

6  motion to dismiss by Fluor, motion to dismiss by BAE, and a

7  motion to strike by BAE -- within a month, within two months,

8  within three or four months of the hearing, because they're

9  weighty motions, they're a lot to think about, and there are

10  three of them on this one case that Judge Urbanski has.  And we

11  don't know what his criminal docket is or what else that he has

12  before him.  And so I certainly can't -- and neither can

13  Mr. Treece -- guess how long it's going to take Judge Urbanski

14  to reach decisions on these motions.  And so a motion to stay

15  until the hearings is really unnecessary, particularly if we're

16  not going to know when Judge Urbanski can decide.  And a motion

17  to stay until the motions are decided could cut in half the

18  time that is remaining for discovery.  It could absolutely mean

19  that we have to lose the trial date of March of 2023.  And

20  frankly, if we lose that trial date, I don't know when we will

21  be able to get another three weeks before Judge Urbanski.  And

22  Fluor is not willing to lose that trial date based on a motion

23  to stay where discovery is not going to be narrowed, and where

24  there's going to be so much significant prejudice to Fluor if,

25  in fact, we have to lose the trial date because of the motion

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  to stay.

2       And so I say that in either case -- whatever BAE is

3  asking for this short motion to stay until January or for the

4  conceivably much, much longer motion to stay until the motions

5  are decided -- both are unnecessary; both will not increase

6  efficiency; and both will be prejudicial to Fluor.

7       THE COURT:  How much time -- all the claims are on

8  the table?

9       MS. BARNES:  Yes.

10       THE COURT:  At least until a dispositive motion

11  deadline.  I didn't go back to look at you all's amended

12  pretrial scheduling order, whether you extended the -- or

13  lengthened the time before the trial for filing dispositive

14  motions, but Judge Urbanski's normal rhythm is a discovery

15  cutoff 90 days before, 75 days before file motions --

16  dispositive motions and motions regarding experts.  If we're

17  keeping that, then you're talking about sometime in the

18  middle -- a year from now, basically, is when your discovery

19  cutoff would be.

20       How long would discovery take if all the issues are

21  on the table?  Would it take the full 12 months or would it

22  take -- could it be done in -- I'm not going to ask counsel to

23  drop everything.  I know this is an important case, but you

24  also have other clients.  Could it be done in six months?

25  Would it take nine months?  I don't know enough about the case

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   to be able to say how long a stay should be.

2        MS. BARNES:  Well, we have certainly thrown around a

3   lot of numbers in this case about the significant amounts that

4   are at issue.  There are just under 40 PCNs or change orders

5   that Fluor is requesting; however, there are some that really

6   encompass the entire project.  One of those is about the

7   overall delay to the project that was caused by the significant

8   revisions to the process design, the immature Lauren Design,

9   and then other directed changes that BAE made throughout the

10  project.  And so the overall delay is a significant, nearly $50

11  million change that Fluor has asked for.

12        On the other side, BAE is claiming that Fluor is

13  responsible for all delay to the project.  And so those issues

14  have to be litigated and have to be discovered.

15        The other thing is that the parties have agreed that

16  the ten and ten number of depositions is not going to be

17  sufficient for this case.

18        THE COURT:  Right.

19        MS. BARNES:  So the parties have agreed to 20 and 20,

20  so a total of 40 depositions in this case.  And that obviously

21  is going to have to happen after we get documents produced, and

22  after the parties have a chance to review those documents and

23  get ready for depositions.  And 40 depositions, no matter how

24  much focus that we put on this case, based on the fact that

25  some people are not going to be employed by the parties

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   anymore, that people will have vacations and other matters that

2   they have to deal with, we're going to have to have a lot of

3   moving parts as to how we get people in and out of those

4   depositions.  And we can double track.  We can triple track.

5   Obviously, there are enough attorneys to do those kinds of

6   things, but it's not going to mean that we're going to be able

7   to do this -- discover this case in six months.

8           You know, the parties are also thinking about a

9   number of experts on each side.  And so we are not only going

10  to have to deal with discovery of fact witnesses; then we'll

11  have to deal with getting expert reports ready and then expert

12  depositions and discovery of expert witnesses in time for the

13  dispositive motions.

14          And so right now we have a November the 16th fact

15  discovery deadline.  That fact discovery deadline also

16  anticipates that there may be additional expert discovery that

17  is necessary after fact discovery.  So we've got supplemental

18  expert reports that can be issued after fact discovery is over.

19  We will be doing expert discovery as fact discovery proceeds.

20          So my long answer to your fairly short question is

21  that there is no way that we can do discovery in six months,

22  that a year I think is going to be pushing it, which is the

23  reason why we on Fluor's side have been trying to keep this

24  case going as we, you know, even waited for the motions to

25  dismiss, that we did all of the discovery procedures that the

36

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  parties have engaged in freely and willingly up until this

2  time.

3          I know that we're not supposed to talk about other

4  cases, but the parties also are involved in pretty much all of

5  the same counsel in another case between Fluor and BAE before

6  Judge Dillon.  And that case is going to trial in September.

7  So there is going to be some time that we -- in September of

8  2022.  So there also is going to be some time that we have to

9  take a time out and do that trial.  And so that's the reason

10  why we are so concerned about not wasting time waiting for

11  decisions on a motion to dismiss that we think are not going to

12  be granted.  And I understand that there is a difference of

13  opinion on that, but we sincerely think that these motions are

14  not going to be granted and should not be granted.

15          And we also think that there is a severe prejudice to

16  Fluor, who really is the plaintiff in this action,

17  notwithstanding BAE's race to the courthouse, that we will be

18  significantly prejudiced if we sit around for months because we

19  are waiting for Judge Urbanski to rule on motions to dismiss

20  and the motion to strike.

21          THE COURT:  Anything further, Ms. Barnes?

22          MS. BARNES:  Yes.  I actually -- you might think I

23  got through my --

24          THE COURT:  Well, you paused long enough that I

25  thought we were done.  Go right ahead, please.

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1          MS. BARNES:  I will hasten to my close.

2          THE COURT:  No.  Take your time.

3          MS. BARNES:  The important thing here with regard to

4  this motion to stay, I think that there are kind of three

5  questions that I will address as quickly as I can.

6          First, the Courts are going to look at will the

7  motion to strike, will the motions to dismiss be granted?  And

8  if the motions to dismiss are granted, will the entire case be

9  resolved?  And then what is the prejudice to Fluor?  I've

10 spoken a lot about the prejudice to Fluor, so I think I will

11 stand pat on that.  But let's talk a little bit about whether

12 or not the motion to dismiss and the motion to strike will be

13 granted.

14         The initial question to be asked is:  What are BAE's

15 arguments?  Because BAE's arguments have changed from the

16 filing of their motion to dismiss not so much on their motion

17 to strike, but definitely on their motion to dismiss to where

18 we are now.  And so, what Judge Urbanski is looking at now is

19 going to be definitely different than what Judge Urbanski is

20 going to hear when we go before him on January the 14th.

21         BAE's original arguments were these:  That Fluor was

22 hired to validate, correct, and complete the Lauren Design.

23 There was no discussion about whether or not Fluor elected to

24 use the Lauren Design, because BAE said that the contract

25 required Fluor to validate, correct, and complete the Lauren

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   Design.

2           Secondly, what BAE originally said is that Fluor is

3   responsible for the entire design scope, including the process

4   design.  If you look at page 12 of BAE's motion to dismiss,

5   they say Fluor's attempt to separate out the process design

6   from the rest of the design is contrary to Fluor's

7   understanding of its scope.  Fluor breaks its work under the

8   subcontract into six major design packages, the fifth of which

9   is the full process package.

10          So we're not guessing, we're not hoping, we're not

11  delusional when we say that BAE has argued to the Court that

12  Fluor was responsible for the process design.  BAE has done a

13  full 180 now to argue now what is the truth under the contract.

14  BAE is responsible for the process design.

15          I will talk about this whole validate, correct, and

16  complete question first.  BAE makes these statements as if

17  they're quoting from the subcontract, but the contract doesn't

18  include this language.  The contract says that Fluor will

19  validate and complete, but never says that Fluor will correct.

20  What the contract says is that the only party that is going to

21  correct the Lauren Design is BAE.  BAE says that the drawings,

22  specifications and technical documents in Appendix G, which is

23  where the Lauren Design is, have been corrected and amended to

24  include additional requirements.  So all of this discussion and

25  argument about Fluor electing to use the Lauren Design, that is

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  unambiguous.  It is unambiguous that the contract requires

2  Fluor to comply with the Lauren Design and requires Fluor to

3  use the corrections and amendments that BAE made to the Lauren

4  Design to do its design work.  The contract does not anticipate

5  that Fluor is going to correct the corrections that have

6  already been made by BAE.  And BAE already says in the contract

7  that they have already corrected and amended the Lauren Design.

8  Therefore, all of the discussion about these -- this language

9  that would disclaim any responsibility or any implied warranty

10 also is overcome by the very specific words of the contract.

11 The Lauren Design is no longer as is, because it has been

12 amended and corrected by BAE before it was included in the

13 contract.  Also, those designs are not for reference only

14 because they are required to be used by Fluor.  And the courts,

15 the Virginia courts -- and we talked about this a lot in our

16 motion to dismiss -- say that broad language talking about

17 verification and completing and correcting does not overcome

18 the implied warranty of specifications that Virginia law

19 acknowledges.  And BAE has that implied warranty of

20 specifications over the Lauren Design.

21        With regard to the process design, now that BAE has

22 admitted the truth that it is responsible for the process

23 design, the next thing that they want to do is to minimize any,

24 you know, involvement of the process design; the process design

25 is nothing.  But as we included in our -- our opposition to the

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  motion to the stay, the process design -- in BAE's own

2  complaint, the process design was critical because it described

3  the detailed layout of the complex web of piping required by

4  the project.  Without it, the construction of the NB and SB, as

5  well as many follow-on activities, could not occur as planned,

6  and sometimes not at all.

7           I was trying to think of a good analogy for what this

8  process design is, because very frankly, at this point I don't

9  understand the nitrocellulose process design yet, and I

10 certainly don't expect you to, Your Honor.  But I thought of

11 perhaps the design of a plane, and that there is a design of

12 the engine in the plane.  And that is like the -- (inaudible)

13 -- because BAE was not only responsible for equipment, as they

14 say, but also for doing the entire throughput model for showing

15 the model of how the process is going to work, and what that

16 complex web of piping is that would allow the process to work.

17 In an airplane, there is an engine.  If the engine is 50 pounds

18 heavier, then the materials that are in the -- that are -- that

19 make up the airplane that are in the fuselage may have to be

20 lighter, you might have to change the materials, you might have

21 to change how the wings are made.

22          And so what we are saying, that when BAE continually

23 changed the process design, either by changing the height of

24 the equipment or changing the way that the piping that Fluor

25 was designing would contact the equipment, changing the

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  orientation of the equipment, that would change Fluor's work,

2  and that would cause Fluor to incur additional design and maybe

3  construction cost.  And so it's not just two pieces of

4  equipment that you plop down on some concrete pads and switch

5  the lights on.  No.  There is a complex web of piping which BAE

6  says in its complaint that Fluor has to integrate into those

7  pieces of equipment.  And Fluor has to figure out how to do

8  that based on the orientation of the equipment, the

9  measurements of the equipment, what the equipment will do, what

10 the throughput model is, what the hazard analysis is.  And all

11 of those things were the responsibilities of BAE.  And BAE

12 continued to change the specification, the requirements of the

13 design process throughout performance of the contract.  And

14 that is a huge part of what this claim is about.

15        And so I go back to throwing out the numbers,

16 throwing out 100 million, throwing out we'll get rid of all of

17 this claim.  That's really not the case.  Number 1, BAE's

18 motions to dismiss does not identify any specific PCNs that

19 should be dismissed, because they are wholly part of what is

20 Fluor's design responsibility.  So simply saying that this is

21 not Fluor's responsibility does not get rid of the case because

22 it is a factual analysis as to what the PCNs go through, and

23 we're going to have to do discovery on all of that.  So Judge

24 Urbanski is not going to resolve that question, even if he does

25 so on January the 14th.  So there is going to be significant

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   PCNs that relate to the process design.

2          The other thing that Judge Urbanski is not going to

3   resolve is directed changes.  Throughout the performance of the

4   project, both design and construction, BAE directed changes to

5   the work.  And BAE says that they're trying to resolve that now

6   by saying that Fluor didn't give notice or Fluor didn't request

7   approval.  But this is a motion to dismiss.  And on the motion

8   to dismiss, the Court takes the well-pleaded facts that Fluor

9   has argued and accepts those as true, including all inferences.

10  Fluor has argued and claims in its counterclaim in several

11  places in several paragraphs -- paragraph 210, paragraph 229,

12  paragraph 230, paragraph 237 -- that Fluor has met all

13  conditions precedent, and that they all have been performed,

14  and that there was timely notice given with respect to all of

15  its claims.  So the resolution of the directed and constructed

16  changes that BAE required throughout the project, that's not

17  going to be resolved.  We're going to still need discovery on

18  all of those issues.

19         So we argue that not only are there going to remain

20  significant issues with the process design; we also believe

21  that there is an implied warrant of specifications that BAE

22  owes Fluor on the Lauren Design.  And that -- I'm not going to

23  go back through that again, but that is addressed in our motion

24  to dismiss.

25         We've talked a lot also regarding this motion to

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1    strike with regard to the limitation on damages.  Well, there

2    are three points I want to make very quickly about that.

3    First, under the plain language of the contract, the limitation

4    of damages clause does not address Fluor's changes claims.  The

5    limitation of damages clause begins with, "except as otherwise

6    provided herein."  And there is a changes clause that

7    specifically addresses the documents, the claims, and the

8    damages that Fluor is making in this lawsuit.  And so we

9    believe that on its face the clauses that BAE is seeking to use

10   to limit this case to $30 million, it doesn't even apply here.

11         Secondly, even if the Court says, okay, maybe I don't

12   want to agree with that, there is not one limitation of damages

13   clause that the Court will have to look at and say, I can read

14   this.  There are three clauses, and those clauses are not the

15   same.  There are two clauses that refer to changes, one clause

16   that does not.  So at the very least, the intent of the parties

17   is ambiguous.  And so the Court cannot decide on a motion to

18   dismiss that where there are three clauses that are not the

19   same, that somehow this is what the clause says.

20         And then finally, there is a Virginia statute that

21   prohibits exactly what BAE is trying to do, which is to limit

22   Fluor's ability to recover for work that it has performed.  And

23   that is a Virginia statute that just came out, I believe it's

24   in 2015.  And we have looked -- and we continue to look -- to

25   see if there is even one case that addresses that statute.  And

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   there is not.  So this is going to be a case of first

2   impression.  The Court will have to decide on a motion to

3   dismiss whether or not this clause relates to that statute.

4   And number 1, we don't think that Judge Urbanski can or should

5   do that, and decide that motion on first impression.  And it

6   also means that Fluor is unlikely to just let it go, that Fluor

7   is much more likely to pursue this through appeal, and

8   therefore will have to prove all of its damages in order to go

9   to appeal and ask the Court of Appeals to overturn the decision

10  and allow it to recover its rightful damages.

11          So I am trying not to go over everything, but I think

12  I have addressed this.  What I want to say is that I really

13  believe here that these are not motions that are going to be

14  decided on a motion to dismiss.  They are far more complex.

15  They are not motions where the judge can simply open up a

16  statute and say:  I'm going to calculate the statute of

17  limitations; you're out.  These are very complex decisions

18  regarding the contract, where there is competing language in

19  the contract.  And I think that it's going to take much more

20  than a motion to dismiss.  And that's why we are asking the

21  Court to find that this motion to stay cannot be grounded in

22  any motions to dismiss that are likely to be granted, and that

23  there will be a significant prejudice to Fluor if the motions

24  to dismiss are granted.

25          THE COURT:  Thank you.

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1          MS. BARNES:  And also grant our motion to compel,

2   which I think I said before.

3          THE COURT:  If you didn't say it, I knew you didn't

4   give up the motion.

5          MS. BARNES:  Right.

6          THE COURT:  Thank you very much.

7          All right.  Mr. Treece, let me -- I'll give you the

8   final argument.  Let me ask you to confine it really just to

9   two things, because you all have -- you've well covered the

10  waterfront on the substantive issues of the motions to dismiss.

11  My initial question is that it may be a fool's errand for me to

12  go in and suggest what Judge Urbanski may or may not do on

13  these things because he's going to take his own read of it.

14         My concern is this:  Regardless of what Judge

15  Urbanski does -- unless he rules fully, completely, and he

16  gives you a narrow case going forward -- that by the time he

17  rules -- so this is January the 22nd.  If he rules, if it takes

18  him 30 days, if it takes him 60 days, by October you have to be

19  disclosing your experts and your discovery is done by November.

20  Your dispositive motions are done essentially a year from now.

21  My concern is that you're going to run out of time.

22         And so, one, how do I avoid that, because I view my

23  role as somewhat of a mass unit to make sure that the case is

24  triaged and ready to go when it's time to get to Judge Urbanski

25  for substantive decisions.

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1      And then secondly, if you can't -- beyond dealing

2  with that, why not essentially bring yourself all the way up to

3  the point at which there is significant attorney time that's

4  being spent?  In other words, I asked Ms. Barnes, What's the

5  middle ground?  Answer discovery fully.  Allow discovery to

6  proceed as to third parties.  If third parties want to make

7  objections, they can certainly do so.  Let documents come in,

8  in that regard, and proceed as it relates to those.  And then

9  maybe I have a status conference at the end of February, 30

10  days after the hearing.  If Judge Urbanski hasn't ruled, maybe

11  I'll look to stay.  Maybe I don't.

12      Address those two things.  I don't need you to go

13  back through the substantive issues of the motions to dismiss

14  and the motions to --

15      MR. TREECE:  Certainly, Your Honor.  And the answer

16  is actually quite simple, and it's the reason we're doing what

17  we're doing.

18      So again, what Fluor is trying to do is kind of

19  discovery across the board on everything, and then wait until

20  the end of the case to figure out who has design responsibility

21  under the terms of the contract.  What.

22      We're saying is this $50 million delay claim that

23  you've asserted, it's contingent upon who has design

24  responsibility under the terms of the contract.  So even if

25  Judge Urbanski doesn't grant the motion to dismiss, you

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   bifurcate discovery and you figure out who has design

2   responsibility under the terms of the contract, right?  And you

3   limit the issues to those contract interpretation issues, and

4   that will tell you what needs to be done.  If we do that, then

5   a lot of the -- you know, the meat of a lot of PCNs won't have

6   to be dug into as deeply because it's going to cut one way or

7   another, right?  I mean, it's who has design responsibility.

8   So that is the big ticket issue that is clear in the contract.

9   And I'm not trying to get off track there, but, I mean, I've

10  read to you the requirements, and what they're saying is based

11  on assertions in a brief or other things that are independent

12  of the contract itself.  But if we bifurcate the contract

13  interpretation issues, those can be resolved in a matter of

14  months with a limited number of deponents.

15          Now, again, they make the assertion about 40

16  depositions, right?  But if we bifurcate and we figure out who

17  has design responsibility, that's going to eliminate a lot of

18  the in-the-weeds discovery on the specific PCNs that are

19  contingent entirely upon who has design responsibility.  This

20  issue about the 85 percent, if you read through their

21  counterclaim, most of their counterclaim is about a precontract

22  representation of 85 percent.  The contract is fully

23  integrated.  There is no percent completion representation in

24  the contract.  They're asking for this -- you know, for a

25  middle ground they want a full and complete response to

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1    discovery requests.  That is not possible for a number of

2    reasons, mostly because they're contingent interrogatories.

3    But their first interrogatory:  Identify and describe in detail

4    all factual, legal, or contractual bases, reasons, or

5    rationales, or arguments for each of the representations to

6    Fluor during the proposal period that the Lauren Design was 85

7    percent complete, an estimation of 85 percent complete, etc.,

8    etc., including -- this is all a single interrogatory --

9    including during these meetings in March, April, June, August,

10   October.

11          If Judge Urbanski recognizes, as he should, or we

12   establish through parole evidence that there is no 85 percent

13   representation in the contract, that doesn't need to be

14   answered.  A vast amount of documents don't need to be

15   exchanged about the precontract period of 85 percent because

16   it's a nonissue.  And if it turns out to be an issue, we'll

17   know that, but we can do it in a very measured approach where

18   everybody is not throwing all resources scattered across every

19   issue in the case at once.  We're targeting the big ticket

20   things to find out who really has the obligation here?  What

21   does the contract really say?

22          That is the efficient way to proceed.  If we do that,

23   we could be ready by October, because I think when we get to

24   these issues, a lot of that is going to be out the window, even

25   if we have to do limited discovery of the contract

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   interpretation issues.  That's not that complicated.  What is

2   complicated is seven years of contract performance for every

3   PCN when those could be lopped off entirely or addressed

4   largely by who has design responsibility.

5            I mean, their interrogatories and requests are

6   largely the same.  As Your Honor would call them, they're

7   blockbuster interrogatories.  You know, they're asking for

8   every single -- identify and describe in detail all

9   communications, including without limitation all meetings,

10  conferences, phone calls, or oral communications, whether

11  internal or external, held between BAE and Lauren in which BAE

12  reviewed, addressed, or discussed Lauren and the grounds for

13  termination, the maturity of the Lauren Design, including the

14  percent complete.  That's a single interrogatory.  We have to

15  do a vast amount of document discovery to even answer that

16  interrogatory to identify all meetings, conferences, phone

17  calls, oral communications.  It just -- it's not even possible.

18  It's just broad-sweeping, scattershot, let's discover

19  everything.  And, you know, they may not be doing this to

20  impose costs on BAE to make the case painful.  They may be

21  doing it for legitimate reasons, but there is no need to do it

22  for those legitimate reasons when the case can be reasonably

23  streamlined in a manner that addresses -- well, first find out

24  who has the obligation before you have to go in and get to the

25  meat of every single PCN and who shot John with every single

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  PCN.

2          So in terms of the timing, if we do bifurcation on

3  the contract interpretation issues, it is going to cleanly

4  address a vast majority of these issues.  Now, we may have to

5  deal with individual PCNs that remain, and maybe some do

6  remain.  But those are going to be small in comparison to what

7  we're dealing with, with:  Who has the design issue?  Is there

8  a percent completion representation?  Is the damages cap

9  ambiguous?  And that's a great example on the damages cap.  I

10 mean, the damages cap is addressed in three provisions.  Two of

11 the provisions say expressly 30 million is defined as the value

12 of all changes.  And there is another place where it says it's

13 limited to 30 million.  It doesn't -- that other provision in

14 no way conflicts or alters the meaning of the other two

15 assertions that 30 million is defined as the value of all

16 changes.  They want to try to make it that way, of course,

17 because they don't want to be capped, but it is unambiguous.

18 And, you know, a disagreement over what terms mean, as the

19 Court is aware, doesn't make a provision ambiguous because the

20 contract speaks for itself and it's for the Court to determine.

21 So even a disagreement there.

22          Now, with respect to what could be, you know,

23 materially severed, if they want to do third-party discovery

24 that doesn't impose cost on BAE for the full gamut of 200

25 million, that's between them and the third parties that they're

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1   subpoenaing is the way we would view that.  And so if they want

2   to spin their wheel -- in our view, spin their wheels doing

3   that, then they're free to do that.

4          What we're trying to do is -- if we were the third

5   party, we would probably take the same position.  But we're

6   trying to organize this in a reasonable, structured way that

7   can address these in an incremental process that makes it

8   efficient, rather than let's just run with everybody to the end

9   of the road and get as many experts as we can, and then realize

10  in October, oh, well, a vast majority of these claims are no

11  longer relevant.  Sorry you hired experts to opine on all these

12  issues.  They're no longer issues.  It doesn't make sense to do

13  that.

14         So the third-party discovery I would say is something

15  they can consider.  Answering fully and entirely their

16  discovery request, as I have just demonstrated, is not

17  possible.  And it largely goes to irrelevant issues -- or it

18  goes to contract interpretation issues that once we know that,

19  whether we have to dig through all the evidence to find every

20  single communication with Lauren that talked about percent

21  complete, that talked about the maturity of the design,

22  anything along those lines, that may or may not be an issue,

23  but we don't -- we can easily know whether that's an issue, but

24  this is all going to require a vast amount of document

25  discovery.  And there is no way the parties are going to be in

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  a position to do document discovery before the hearing, and

2  certainly probably for a month after.  Now, we can take steps

3  to engage in that process.  But again, even with search terms,

4  I mean, if we framed them -- if we separated search terms of

5  here's search terms we agree we wouldn't need to do, like 85

6  percent complete, you know, those kind of things, if we kind of

7  separated them along those two lines and then realized that,

8  oh, we never have to run these -- or design responsibility, we

9  never have to run these because the contract is clear, then

10 maybe we could do that.  I mean, I don't think it would take

11 too much to kind of separate two groups of if it remains,

12 presumably we would go back and forth on that.

13          So those are things we can do.  But trying to answer

14 these -- and, you know, if we don't answer them, we put

15 objections in there, you stand on your objections.  And that's

16 where we are.  And we get a lot of these blockbuster contingent

17 interrogatories, and the document requests go to issues that

18 are irrelevant.  So that's kind of how we would view

19 structuring.  If third-party discovery is okay, perhaps we can

20 negotiate on search terms and do two tiers of search terms.

21 Those search terms that we would pull the trigger on, if we're

22 doing limited discovery on the contract interpretation issues

23 first, those we would pull the trigger on if we're doing, you

24 know, full scale discovery without any sort of, you know,

25 streamlined approach to try to target and limit this in a

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1  reasonable way.

2            So that's what I would say to address Your Honor's

3  points with respect to those issues.  I don't think there is

4  much else Your Honor would want to hear from me.  I have a lot

5  of other responses, but I'll table those unless Your Honor has

6  questions.

7            THE COURT:  No.  That's fine.

8            I think I understand well where everybody is.  I have

9  not forgotten our discussions by informal discovery conference

10 as well.  I think we have well covered it.

11           I'm going to work on an opinion.  I'm going to get

12 something out -- my goal is to get something out before the end

13 of next week before Christmas.  Certainly it will be before the

14 1st, because I'm going to be gone the first part of January.

15 Whatever decision I make, I may want to wind up and give to

16 Judge Urbanski anyway.  And I want there to be plenty of time

17 to get that issue beforehand if you want to.  So I'm going

18 to -- I'll take it under advisement.

19           Anything else we need to address, Mr. Treece?

20           MR. TREECE:  No, Your Honor.  Thank you for your

21 time.  I know we ran probably later than we all expected.

22           THE COURT:  Ms. Barnes, anything else?

23           MS. BARNES:  Not from me.  Thank you, Your Honor.

24           THE COURT:  Thank you all very much.  I very much

25 appreciate everybody being on.

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1           I hope we can get Mr. Conte out of witness protection

2   sometime soon.

3           (Laughter).

4           MS. BARNES:  We'll contact him in Arizona.

5           THE COURT:  Let me just say this:  I know there are a

6   lot of issues in this case.  I know there's a lot that's very

7   important to the parties.  Let me just say I very much

8   appreciate the way in which the lawyers are approaching this,

9   and that is it's clear that you all are professional friends

10  and have a great deal of professional respect and enjoy the

11  work that you do.  You do it well, and you do it well on behalf

12  of your clients.  And it really is a joy to sit here and watch

13  good lawyers do their work, but also be able to communicate in

14  such an amicable and civil way in a case that I know is very,

15  very important.  So I just want to thank you for that and

16  commend you all for that as well.  And I don't say it just to

17  try to sound nice or be nice, but I think it's important,

18  especially since we have clients on this call, for them to

19  appreciate that that's not all the cases that I see.  And so I

20  very much appreciate it and I'll get something out to you all

21  soon.  If I don't talk to you, everyone have a wonderful

22  holiday.

23  (Proceedings concluded, 5:24 p.m.)

24

25

BAE Systems Ordnance Systems, Inc. v. Fluor Federal
Solutions, LLC, 7:20CV587, 12/15/2021

1                    C E R T I F I C A T E

2      I, Lisa M. Blair, RMR/CRR, Official Court Reporter for

3  the United States District Court for the Western District of

4  Virginia, appointed pursuant to the provisions of Title 28,

5  United States Code, Section 753, do hereby certify that the

6  foregoing is a correct transcript of the proceedings reported

7  by me using the stenotype reporting method in conjunction

8  with computer-aided transcription, and that same is a

9  true and correct transcript to the best of my ability and

10 understanding.

11     I further certify that the transcript fees and format

12 comply with those prescribed by the Court and the Judicial

13 Conference of the United States.

14     /s/ Lisa M. Blair              Date: January 10, 2022

15

16

17

18

19

20

21

22

23

24

25