# BAE SYSTEMS ORDNANCE SYSTEMS, INC.'S

## RULE 12(f) MOTION TO STRIKE

## FLUOR'S COUNTERCLAIM ALLEGATIONS SEEKING DAMAGES IN EXCESS OF THE PARTIES' $30M CONTRACTUAL DAMAGES CAP

*BAE Systems Ordnance Systems, Inc. v. Fluor Federal Solutions, LLC,*

*Case No. 7:20-CV-00587*

*W.D.Va. – Roanoke Division*

1

# MOTION TO STRIKE OVERVIEW

# THE PARTIES' FIRM-FIXED PRICE CONTRACT IS FULLY INTEGRATED

- The Subcontract is a **Firm fixed-price**, design-build contract to design and construct a new Nitrocellulose Facility at the Radford Arsenal.

- The Subcontract is a fully merged and integrated agreement.

  - "**This Contract … constitutes the entire agreement between the Parties**." Subcontract, General Provisions § 2(a) (Dkt. 1-2 at 17).

- Thus, the Court need **look no further than the 4 corners** of the parties' contract.

3

# *FLUOR* DRAFTED & ADDED THE LOD IN THE SUBCONTRACT

- Significantly, Fluor drafted and added this provision, and **Fluor** **expressly** ***defined*** **the $30M Cap**:

  - *For **all** claims, **regardless of the basis on which the claim is made**, the applicable party's liability for damages **arising under or related to** this Subcontract **shall be limited** to $30M, **$30M being defined** as **the value** including **all changes** and the **maximum liability for damages**."*

  - (Dkt. 1-2 at 12); Subcontract Appendix J § 36, (Dkt. 1-2 at 71) (same); *see also* BAE_Construction 5/15 (modified) § 46, (Dkt. 1-2 at 42); BAE_Construction 5/15 (modified) Rev. 2 (9/15/16) § 46, (Dkt. 1-3 at 64)

4

# FLUOR NOW SEEKS TO EVADE ITS OWN LOD

- Despite **Fluor's own contractual bar on seeking damages above of $30M, including "the value [of] all changes,"** Fluor nonetheless seeks recovery of damages that ***vastly exceed*** $30M.

- Fluor alleges, for example, that "[it] has submitted change proposals to BAE documenting *its entitlement to* approximately $183,379,199.00 in additional costs [*i.e. damages*] caused by BAE for work performed on the Project, and BAE has failed and refused to pay this amount."

  - *See, e.g.,* Counterclaim at ¶ 223.

- Fluor alleges "BAE has improperly, and without a contractual basis, rejected [approximately $183,379,199.00 of] Fluor's costs submitted in its change proposals identified [in Paragraph 223]."

  - *Id.* ¶¶ 227-28; *see also* Count I, ¶ 231 (incorporating these allegations in its Breach of Contract claim).

5

# BAE Is *Substantially* Prejudiced by Fluor's Willful Disregard of its Own Damages Cap

- BAE is **substantially prejudiced by Fluor's willful disregard of its *own damages cap*** in the parties' contract.

  - BAE is deprived of the benefit of its bargain.

  - With Fluor's current allegations, the **amount in controversy is *orders of magnitude larger* than the Subcontract permit**.

- BAE's **time, effort, and expense** (including, for example, the number and scope of expert witnesses) will vary *dramatically* based on whether this is:

  - (1) a **capped $30M counterclaim** (as the parties agreed in the contract) or

  - (2) a **more than $200M** counterclaim (flatly disregarding the parties contract)

- The prospect of **early resolution largely depends on the amount in controversy**.

# EARLY RESOLUTION BENEFITS THE PARTIES & THE COURT

- When, as here, the Court is **construing unambiguous terms**, early resolution benefits the parties & the Court.

- Contract interpretation is a **pure question of law** that is ripe for decision.

- Fluor argues the LOD is unenforceable—a legal question that should be resolved now.

- Benefits:

  - **Discovery cannot change interpretation/resolution of this pure question of law.**

  - Parties receive the benefit of their bargain.

  - **No benefit** to the parties or the Court **from a delayed resolution**.

  - **BAE** (and presumably the Court) will **manage case differently if only $30M (or less) are in dispute vs 200M (85% reduction in amount in dispute)**

  - This will inevitably **reduce discovery, costs and length of trial**.

  - Resolution will bring the parties' position closer for a non-judicial resolution.

  - No prejudice to Fluor because LOD is unambiguous (and it was added by Fluor).   7

# RULE 12(f) STANDARD

# 12(F) STANDARD OF REVIEW

- Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "**strike** from a pleading … **any redundant, immaterial, impertinent**, or scandalous matter."  Fed. R. Civ. P. 12(f).

  - "**Immaterial** matter is that which **has no essential or important relationship to the claim** for relief … and **impertinent matter' consists of statements that do not pertain, and are not necessary, to the issues in question**."  *Jones v. City of Danville*, 2020 WL 6063063 at *1 (W.D. Va. 2020).

- "**The function of a 12(f) motion to strike is 'to avoid the expenditure of time and money** that must arise from **litigating spurious issues** by dispensing with those issues prior to trial.'" *Id*.

- Fluor's **alleged entitlement to *any amount above $30M* is **spurious and imposes unnecessary costs and expenses.**

9

# COURTS STRIKE ALLEGATIONS THAT IMPOSE AN UNDUE BURDEN & TO SHARPEN AND REFINE THE CASE

- While motions to strike have been characterized as disfavored in routine or ordinary cases,

- In large or complex cases (as here), "**courts will strike redundant or immaterial allegations** … on the ground that they … **place an undue** … **case preparation burden on the responding party and interfere with the district judge's ability to sharpen and refine the case**."

  - Charles Alan Wright & Arthur R. Miller ("Wright & Miller"), 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.).

10

# COURTS ROUTINELY GRANT MOTIONS TO STRIKE CLAIMS IN EXCESS OF APPLICABLE DAMAGES CAPS

- *Boren v. Nw. Reg'l Jail Auth.* (W.D. Va. 2013) (J. Urbanski), *abrogated on other grounds* (**striking, pursuant to Rule 12(f), plaintiff's $3,000,000 punitive damages demand** on the ground that it exceeded Virginia's $350,000.00 statutory cap);

- *Tabor v. Sutherland*, (W.D. Va. 2001) (striking plaintiff's claim for damages above the medical malpractice cap, and finding "the ***better course is to strike any claim for an amount above the cap as immaterial under Federal Rule of Civil Procedure 12(f)***").

- *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.* (E.D. Pa. 2020) ("[T]here is no doubt as to the legality of a limitation of liability provision in a contract between ordinary business persons," and **granting defendant's Rule 12(f) motion to strike damages precluded by the parties' contractual limitation of liability provision on the grounds that such allegations are "immaterial and impertinent"**)

- *Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys., U.S.A., Inc.*, (S.D.N.Y. 2021) (**striking**, pursuant to Rule 12(f), **allegations seeking damages precluded by the parties' contractual limitation of liability provision**).

11

# FLUOR CANNOT DISPUTE THE PROPRIETY  OF RULE 12 TO STRIKE DAMAGES BARRED BY THE LOD

- Fluor cannot use the LOD as a **SWORD** against BAE (Fluor's Partial MTD) and **SHIELD itself against its own Cap.**

- Fluor alleges:

    - "**In clear and unambiguous terms** and **in three (3) separate [LOD] clauses**, the Subcontract prohibits BAE's recovery of consequential damages." (Dkt 31 at 15).

    - (Fluor is wrong with respect to the nature of BAE's damages.  BAE's damages are *not* consequential.)

- Nonetheless, by moving under Rule 12 to dismiss damages under terms of the LOD:

    - (1) **Fluor recognizes Rule 12 is an appropriate** avenue for enforcing the LOD

        - Even though Fluor inappropriately moved under Rule 12(b)(6) rather than 12(f)

    - (2) **Fluor recognizes** the LOD is **"clear and unambiguous"**

12

# LIMITATION ON DAMAGES PROVISION

# LOD IS REITERATED 3 TIME IN THE SUBCONTRACT

- **2.21 LIMITATION OF DAMAGES**

Except as otherwise provided in this Subcontract, in the event of either Party's failure to perform in accordance with this Subcontract, whether such failure is occasioned by the acts or omissions of either Party, its respective suppliers, or the BAE Parties, either Party may pursue any and all damages and remedies available under this Agreement and/or applicable law. Except as otherwise provided in this Subcontract, damages and remedies that may be recovered by either Party shall be limited as follows: *For all claims*, regardless of the basis on which the claim is made, the applicable party's liability for *damages arising under or related to this Subcontract shall be limited to $30M*, *$30M being defined as the value including <u>all changes</u> and the <u>maximum liability for damages</u>*. *Neither Party shall be liable for* any indirect, special, incidental or consequential damages, including but not limited to lost profits or business interruption losses, whether arising under contract, warranty, express or implied tort, including negligence, or strict liability, arising at any time from any cause whatsoever in connection with this Subcontract or performance hereunder, even if caused by the sole or concurrent or active or passive negligence, strict liability or other legal fault of either of the Parties, their members, directors, officers, employees, agents, representatives, parent companies, subsidiaries, affiliates, joint venture partners, successors and assigns, and each of their respective owners, partners, members, shareholders, directors, managers, officers, employees, agents, representatives and subcontractors at any tier.

- (Dkt. 1-2 at 12); Subcontract Appendix J § 36, (Dkt. 1-2 at 71) (same); *see also* BAE_Construction 5/15 (modified) § 46, (Dkt. 1-2 at 42); BAE_Construction 5/15 (modified) Rev. 2 (9/15/16) § 46, (Dkt. 1-3 at 64)

14

# ALL LOD PROVISIONS ARE CONSISTENT

- Both Section 2.21 (Supplemental Ts&Cs, Dkt. 1-2 at 12) & Section 36 (Appendix J, Dkt. 1-2 at 71) *define $30M stating:*

    - ***$30M being defined as the value including <u>all changes</u> and the <u>maximum liability for damages</u>***

- Section 46 (BAE_Construction Terms, Dkt. 1-2 at 42), does not restate this Fluor-provided definition **a *third time*,** but it *reiterates the $30M cap.*

- **Section 46, however, in no way varies or contradicts the terms of § 2.21 or § 36**, and the same definition applies, with equal force, to § 46.

15

# ANALYSIS OF THE LOD IS A PURE QUESTION OF LAW

# ANALYSIS OF THE LOD IS A PURE QUESTION OF LAW

- "When contract terms are clear and unambiguous, a court must construe them according to their plain meaning." *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.,* 250 Va. 402, 407 (1995)

- "The **law will not insert** by construction, for the benefit of a party, an exception or condition which the parties **omitted from their contract by design or neglect.**" *Id.*

- "**Whether [a] contract preclude[s a contractor's] claims for the additional and unanticipated expenses** it incurred in performing the work is a **pure question of law**, to be answered by examining the language of the contracts themselves." *Marriott Corp. v. Dasta Const. Co.*, 26 F.3d 1057, 1064 (11th Cir. 1994) (emphasis added).

17

# FLUOR ASSUMED THE RISK UNDER ITS FIRM-FIXED PRICE CONSTRUCTION CONTRACT

- As the 11th Circuit held in *Marriott Corp. v. Dasta Const. Co.*:

  - "**Under [a firm fixed] pricing arrangement**, [also] known as lump sum pricing, **[the contractor bears] *the risks associated with underestimating its price or failing to account for unexpected additional costs***." *Id.* at 1066 (emphasis added).

  - Thus, even when a contractor later concludes that it made an improvident bargain, "[i]t is **not the function of the courts to 'rewrite a contract** or interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to **relieve one of the parties from the apparent hardship of an improvident bargain**.'" *Id.* at 1068;

  - *see also id.* at 1069 ("In the face of a clear contractual provision directly addressing its right to relief in the given situation, [a commercial contractor], in light of its sophistication and experience, [is] simply [] **not permitted to rely on general notions of good faith and mutual fair dealing**" to rewrite its bargained for terms.)

18

# FLUOR CAPPED DAMAGES AND USED OTHER MEANS TO GUARD AGAINST RISK

- **Fluor is a sophisticated party** and an **expert in design-build construction projects** and fixed price contracts, with the "requisite expertise" to enter and perform the NC Facility Subcontract—**expertise upon which BAE *expressly* relied**. *See, e.g.,* Counterclaim ¶22; BAE_Construction 5/15 (modified) § 21(e) (Dkt. 1-2 at 28); BAE_Construction 5/15 (modified) Rev. 2 (9/15/16) § 21(e) (Dkt. 1-3 at 50).

- **To guard against its own risk**, Fluor proposed to cap the parties' "maximum liability," including for "all changes" at $30M.

- In addition to other provisions of the Subcontract that mitigate or assign risk by and between the parties (such as insurance requirements, for example), the Subcontract contained a substantial, $14M "Contingency" fund for "unforeseen contingencies." Supplemental Terms and Conditions § 2.22 (Dkt. 1-2 at 12).

19

# The LOD Is Unambiguous

# The LOD is Plain and Unambiguous

- In its own Partial Motion to Dismiss, Fluor admitted the LOD is "clear and unambiguous." (Dkt. 31 at 15).

- Indeed, **in its Surreply, Fluor contends** that its email attached to BAE's Reply is inappropriate for the Court to consider because **this Court has not determined that "the language in the three LOD provisions is ambiguous**." (Dkt. 51-1 at 6).

- In any event, "[c]ontracts are **not rendered ambiguous** merely **because the parties disagree** as to the meaning of the language employed by them in expressing their agreement." *Wilson v. Holyfield*, 227 Va. 184, 187 (1984).

- **"[W]hat the parties claim they might have said, or should have said, cannot alter what they actually said**." *Id.* at 188.

# The LOD Applies to All of Fluor's Purported "Change Proposal" Claims for Cost Overruns

- As noted, both Section 2.21 (Supplemental Ts&Cs, Dkt. 1-2 at 12) & Section 36 (Appendix J, Dkt. 1-2 at 71) Fluor *define $30M:*

  - ***$30M being defined as* <span style="color:red">*the value*</span> *including* <span style="color:red">*all changes* *and the* *maximum liability for damages.*</span>**

- This provision means exactly what it says.

- Because $30M includes "the value" of "all changes" Fluor is only entitled to seek recovery only for changes up to the "maximum" amount of $30M for "all changes."

- BAE's position is plainly correct because:

  - (1) it construes **all provisions** in a manner that **are internally consistent**;
  - (2) gives **meaning to all terms**; and
  - (3) is **evident by the plain language**.

22

# The LOD Applies to Fluor's Purported "Change Proposal" Claims for its Cost Overruns

- **Fluor contends "*Except as otherwise provided in this Subcontract*"** in the LOD *refers to the Change clauses* in General Provision §I.1A.3, and *General Provision §I.1A.3(j) in particular*.

  - Fluor incredibly contends *§I.1A.3(j)* "*overrides other Subcontract provisions purporting to limit recovery*." (Dkt. 44 at 8).

- Fluor is Plainly Mistaken for numerous reasons:

  - **First**, the so-called "changes" listed in its Counterclaim are **not really "changes"** as contemplated by the Subcontract's Change clauses.

  - **Second,** even if the Change provision could be applicable:

    - Fluor's position **makes no attempt to read the LOD and Changes clauses in harmony**, which they are, and

    - Fluor's interpretation would *require the Court to rewrite* and *strike* the LOD's express reference to "*including all changes*" in the definition of the $30M cap ("$30M being defined as the **value** including **all changes**") or **render it meaningless**.

  - **Third,** the Changes clause and §I.1A.3(j) do not support Fluor's interpretation.

23

# Fluor's So-Called "Changes" are <u>not</u> "Changes under the Subcontract's Changes Clause

- "**Changes**" as contemplated in the Subcontract **means work that is different than the work that Fluor was required to provide under the SOW** (*e.g.*, added work).

- Here, the **$183M is largely**, if not totally, **for cost overruns for work that is *indisputably within Fluor's scope of work*** but cost Fluor more to perform because it misjudged and "mis-bid" the amount of work, the material needed and the length of time to complete its SOW.

- As such, Fluor's **"change proposals" are nothing more than purported damages for BAE's *alleged* misrepresentation relating to the completion level of the Lauren Design**, for which General Provision §I.1A.3 is inapposite.

  - Fluor is, of course, wrong with respect to any alleged misrepresentation, but its purported damages, are exactly that:  **Damages, not "Changes."**

24

# Fluor's Interpretation that "Changes" under the "Changes Clause" are Somehow Exempt from the Cap is Untenable

- **To exclude "changes"** under the "Changes Clause" from the Damages Cap would be to **strike the very definition of $30M**,

  - **"$30M being defined as the ~~value including all changes and the~~ maximum liability for damages."**

- Only BAE's construction is:

  - (1) internally consistent &

  - (2) based on the plain and unambiguous language of the Subcontract.

25

# Fluor's Interpretation that "Changes" under the "Changes Clause" are Somehow Exempt from the Cap is Untenable

- Fluor's argument that **§I.1A.3(j) somehow "overrides other Subcontract provisions purporting to limit recovery**," (Dkt. 44 at 8), is **equally untenable**.

- Subsection (j) requires Fluor, upon request, to provide BAE a "not-to-exceed" price estimate  and/or a "maximum (or minimum) schedule adjustments" required for performance of a BAE-directed change.

  - Per Subsection (j), once agreement is reached on the not-to-exceed amount and/or required schedule, they become limits on the equitable adjustment to which Fluor ultimately would be entitled for the change.

- The **last sentence of subsection (j)**, on which Fluor **exclusively relies**, states:

  - "*Except with respect to [the agreed not-to-exceed amount and schedule] limitations*, nothing contained herein shall affect the right of the Parties to an equitable adjustment by reason of the change, ***pursuant to this clause*** [i.e. §I.1A.3(j)]."

26

# Fluor's Interpretation that "Changes" under the "Changes Clause" are Somehow Exempt from the Cap is Untenable

- Thus, by its own terms, **the last sentence of subsection (j) is expressly limited to the clause in which it is contained** and refers to the limitations defined with that clause.

- "Nothing contained *herein*," in § I.IA.3(j) likewise **confirms that it refers only** to the **language within § I.IA.3(j)** – not the Subcontract at large or LOD in particular:

  - "Except with respect to [the agreed not-to-exceed amount and schedule] limitations, *nothing contained herein* shall affect the right of the Parties to an equitable adjustment by reason of the change, ***pursuant to this clause***."

- *See also:*

  - "The 'anything ... herein' language refers to 'anything within this paragraph' not 'anything within this contract.'" *Pronschinske Tr. Dated Mar. 21, 1995 v. Kaw Valley Companies*, Inc., 899 F.3d 470, 473 (7th Cir. 2018)

27

# "Except As Otherwise" Refers to Other Provisions in the Subcontract

- "Except as otherwise provided in the Subcontract" refers, **not to the Changes clause**, but **to other provisions** in the Subcontract like the ***indemnification, bond* and/or *insurance* provisions**, among others.

  - *See, e.g., id.* at §I.1D.33(d); *id.* at §I.1D.34(a)-(b); *id*. at §I.1D.35

- **Fluor's payment and performance bond** obligations, for example, require that "**penal sum[s] [for] such … bonds shall be 100% of the Contract price**." §I.1D.34(a)-(b).

  - At the time of execution, the Contract price was more than $245M – well in excess of the $30M cap.

  - Thus, the required **"penal sum[s]" exceeded the cap at the time of execution** and **qualify under the "Except as otherwise provided in this Subcontract."**

- **Insurance provisions** have numerous **independent and overlapping coverage obligations** and can fall within the "Except as otherwise provided in this Subcontract" depending on the insurance claims.

  - *See, e.g., id.* §I.1D.35 at Umbrella/Excess Liability  (Contractor shall provide and carry…minimum required limits…[of] $20,000,000 per occurrence…)

28

# Fluor's Construction is Without Support & Facially Unreasonable

- **Without *any* citation** to the Subcontract, **Fluor incredibly alleges**:

  - "the $30 Million damages limitation applies to **other** claims such as **personal injuries, torts, environmental fines, or any other costs *unrelated to the work performed by Fluor* to complete the Project.**"  (Dkt. 44 at 9).

- Fluor's construction is not only implausible and without contractual support, it is fantastical.

- The expressly bilateral LOD that applies to "***all*** claims, ***regardless of the basis on which the claim is made***," "**arising under or related to this Subcontract**" by "**either party**."

29

# THE LOD IS ENFORCEABLE

# THE LOD IS ENFORCEABLE

- "In Virginia, waivers and limitations of liability in contracts are enforceable."  *Regency Photo & Video, Inc. v. Am. Online, Inc.*, 214 F. Supp. 2d 568, 573 (E.D. Va. 2002); *Blue Cross of Sw. Virginia & Blue Shield of Sw. Virginia v. McDevitt & St. Co.*, 234 Va. 191, 197 (1987).

- "[A] contractual provision specifically limiting a party's liability embodies one of the essential purposes of contract law—the freedom of parties to limit their risks in commercial transactions."  *Kocinec v. Pub. Storage, Inc.*, 489 F. Supp. 2d 555, 558 (E.D. Va. 2007)

- Contractual damages caps are common and generally enforceable in construction contracts. AIA 201 § 15.1.7 (standard AIA provision permitting waiver of consequential damages and lost profits).

31

# VIRGINIA CODE 11-4.1:1 IS INAPPLICABLE

- **First**, Virginia Code § 11-4.1:1, applies **only to *private* projects,** not government or public projects, such as the US Army's Radford Arsenal or the NC Facility Subcontract, in particular.

- **Second**, § 11-4.1:1 **is in derogation of common law and must be strictly construed**. By its terms, § 11-4.1:1 applies only to the waiver of bond rights or contract claims "***in advance*** of furnishing ***any*** labor, services, or materials."

- **Third**, the LOD is about capping damages, not limiting claims.  Fluor did not waive or diminish any right to assert contract claims, and the LOD does not, in any way, preclude Fluor from "assert[ing] a contract claim."

32

# VIRGINIA CODE 11-4.1:1 APPLIES ONLY TO PRIVATE PROJECTS

- Virginia Code § 11-4.1:1, applies **only to *private* projects**, not the NC Facility Subcontract.

  - *See, e.g.,* Shelly L. Ewald § 47.02 BOND LAW (Virginia) (citing § 11-4.1:1 as "**barring prospective bond claim waivers *on private projects***") (emphasis added).

- Virginia Code § 11-4.1:1 was passed under Senate Bill 891 which is expressly defined as:

  - "An Act to amend and reenact § 43-3 of the Code of Virginia and to amend the Code of Virginia by adding a section numbered 11-4.1:1, ***relating to mechanics' liens; subcontractor's waiver of lien rights***." LIENS AND INCUMBRANCES—MECHANICS LIENS—WAIVER, 2015 Virginia Laws Ch. 748 (S.B. 891) (emphasis added).

- Pursuant to long-standing Virginia law, **statutes relating to mechanics' liens do not, "in the *absence of express [statutory] provisions*" apply to government buildings or projects**.

  - *See, e.g., Jones v. Commonwealth*, 267 Va. 218, 222 (2004) (recognizing mechanic's lien statutes "**do not, *in the absence of express provisions*, apply to public buildings** erected by States, counties, and towns for public uses.") (quoting *Phillips v. Rector and Visitors of Univ. of Va.,* 97 Va. 472, 474 (1899))

33

# VIRGINIA CODE 11-4.1:1 APPLIES ONLY TO PRIVATE PROJECTS

- Consistent with this requirement**, Va. Code § 11-4.1** (the section immediately preceding Va. Code § 11-4.1:1) **voids indemnification** for negligence causing "bodily injury to persons or damage to property,"

  - and Va. Code § 11-4.1 **contains *an express provision* applying its terms to *public*, not merely private, construction projects**.

- Virginia Code **§ 11-4.1:1**, however, does **not** contain any such provision extending its reach beyond private construction projects and thus remains limited to *private* projects.

- According, § **11-4.1:1 was not intended to and does not apply to the Army's Radford Arsenal or the NC Facility Subcontract**

34

# VIRGINIA CODE 11-4.1:1 APPLIES ONLY TO PRIVATE PROJECTS

- Virginia law is clear:

  - Damages Caps on public projects remain viable.

  - It would be inconsistent with long-standing law to apply Va. Code 11-4.1:1 to public projects.

- Indeed, Va. Code 2.2-4309 (Va. Public Procurement Act) provides:

  - A. A public contract may include provisions for modification of the contract during performance, but **no fixed-price contract may be increased by more than twenty-five percent** of **the amount of the contract or $50,000 <span style="color:red">[i.e. beyond this statutory cap]</span>**, whichever is greater, **without the advance written approval of the Governor** or his designee, in the case of state agencies, or the governing body, in the case of political subdivisions. In no event may the amount of any contract, without adequate consideration, be increased for any purpose, including, but not limited to, relief of an offeror from the consequences of an error in its bid or offer.

Va. Code Ann. § 2.2-4309 (West); *see also Costello Constr. Co. of Md. V. City of Charlottesville*, 97 F.Supp.3d 819, 826 (W.D. Va. 2015) (**the "court agrees that the VPPA and the parties' contract may limit the damages** available to Costello," citing Va. Code 2.2-4309).

35

# VIRGINIA CODE 11-4.1:1 DOES NOT APPLY BECAUSE FLUOR PROVIDED ADVANCED LABOR, SERVICES OR MATERIALS

- Virginia Code § 11-4.1:1 provides:

  - "A subcontractor as defined in § 43-1, lower-tier subcontractor, or material supplier **may not waive or diminish** his right to assert payment bond claims or his **right to assert claims** for demonstrated additional costs in a contract **in advance** of furnishing <u>any</u> labor, **services, <u>or</u> materials**. *A provision that waives or diminishes* a subcontractor's, lower-tier subcontractor's, or material supplier's right to assert payment bond claims or his **right to assert claims** for demonstrated additional costs in **a contract <u>executed prior</u> to providing <u>any</u> labor, services, <u>or</u> materials is null and void**."

36

# Virginia Code 11-4.1:1 Does Not Apply Because Provided Advanced Labor, Services or Materials

- Virginia Code § 11-4.1:1 is in derogation of common law and must be strictly construed.

- By its terms, § 11-4.1:1 applies only to "**a contract <u>executed prior to</u> providing <u>any</u> labor, services, or materials**."

- Fluor **<u>admits</u>** it provided labor services or materials prior to executing the Subcontract:

  - Counterclaim ¶ 89 states, in pertinent part:

    - "**All work performed by Fluor before execution of the Subcontract on December 17, 2015 was performed under the UCA**" (Dkt. 29 at ¶ 89)

- The UCA is expressly part of the Subcontract.  (Dkt. 1-2 at 5)

  - "This Firm Fixed Price Subcontract Agreement is issued for efforts in support of the New Nitrocellulose Facility and **incorporates funding provided by the UCA and subsequent modifications prior to definitizing the subcontract agreement**."

37

# VIRGINIA CODE 11-4.1:1 DOES NOT APPLY BECAUSE PROVIDED ADVANCED LABOR, SERVICES OR MATERIALS

| LN# | ITEM/ DESCRIPTION | UM | REV | ORDER QUANTITY | BALANCE DUE | PROMISED DOCK | UNIT PRICE | EXTENDED PRICE | T X |
|---|---|---|---|---|---|---|---|---|---|
| 001 | 2 0700 20046 56735 | EA | | 3889394 | 3889394 | 04/30/2016 | 1.00 | 3,889,394.00 | N |
| | CLIN 1 OPTION 1 STEEL PURCHASE, TEC AND GCS FOR OPTION1 | | | | | | | | |
| 002 | 2 0700 20046 56735 | EA | | 5442282 | 5442282 | 04/30/2016 | 1.00 | 5,442,282.00 | N |
| | CLIN 1 OPTION 2 ENGINEERING COST   ZAPATA | | | | | | | | |
| 003 | 2 0700 20046 56735 | EA | | 4423385 | 4423385 | 04/30/2016 | 1.00 | 4,423,385.00 | N |
| | CLN 1 OPTION 4 ELECTRICAL MATERIAL PURCHASE | | | | | | | | |
| 004 | 2 0700 20046 56735 | EA | | 4756680 | 4756680 | 04/30/2016 | 1.00 | 4,756,680.00 | N |
| | OPTION 2 CLIN 2 TRAIN 1 | | | | | | | | |
| 005 | 2 0700 20046 56735 | EA | | 1947635 | 1947635 | 04/30/2016 | 1.00 | 1,947,635.00 | N |
| | CLIN 1, OPTION 3A  LABOR | | | | | | | | |
| 006 | 2 0700 20046 56735 | EA | | 1325878 | 1325878 | 04/30/2016 | 1.00 | 1,325,878.00 | N |
| | CLIN 2, OPTION 1 A-LABOR & HEAT EXCHANGERS | | | | | | | | |
| 007 | 2 0700 20046 56735 | EA | | 87078 | 87078 | 04/30/2016 | 1.00 | 87,078.00 | N |
| | CLIN 3, OPTION 1 A  MUSTANG (500 HOURS) | | | | | | | | |
| 008 | 2-0700 20046 56735 | EA | | 10014314 | 10014314 | 04/30/2016 | 1.00 | 10,014,314.00 | N |
| | CLIN 3 OPT. 1D DESIGN ENGINEERING | | | | | | | | |

Subcontract Description on Page 3

(Dkt. 1-2 at 4)

38

# VIRGINIA CODE 11-4.1:1 DOES NOT APPLY BECAUSE PROVIDED ADVANCED LABOR, SERVICES OR MATERIALS

This Firm Fixed Price Subcontract Agreement is issued for efforts in support of the New Nitrocellulose Facility and incorporates funding provided by the UCA and subsequent modifications prior to definitizing the subcontract agreement. The potential ceiling value of the agreement is $245,690,422 and the funded value of the above options is $31,886,646. Modifications to Milestones/Options shall be handled in accordance with FAR 52.243-1, Changes - Fixed Price. Deletion of Milestones/Options are a partial termination subject to FAR 52.249-2, Termination for Convenience. Should milestones not be funded in accordance with the milestone schedule, causing Subcontractor to experience cost increase and/or delay of work progress, Subcontractor may request an equitable adjustment to the contract value.. The Parties may exercise the Options upon the Customer's approval and funding for each Option. If the Options for Train 2 are not funded/executed by 31 JULY 2016, then Subcontractor may reserve the right to propose changes for cost impact. The Subcontractor is required to send notification to BAE Systems when the available funding is 75% expended.

ACKNOWLEDGED BY:

REVIEWED
KLD
LEGAL

DATE: 12/16/2015

TOTAL EXTENDED AMOUNT

AUTHORIZED BY: BUYER   ELP

THIS PURCHASE ORDER   31,886,646.00

(Dkt. 1-2 at 5)

39

# VIRGINIA CODE 11-4.1:1 DOES NOT AFFECT FLUOR'S DAMAGES CAP

- LOD is about **capping damages**, **not limiting claims**.

- LOD does not, in any way, preclude Fluor from "assert[ing] a contract claim."

- It **merely caps the *damages*** that Fluor can seek to recover for claims it is in no way restricted from asserting.

  - Like Virginia's medical malpractice cap, it does not preclude *claims* for malpractice; it merely caps available *recovery* on those claims.

- In other words, the **clause does not purport to hold BAE harmless** from claims; it merely caps damages.

  - *Cf. Precision Plan., Inc. v. Richmark Communities, Inc.*, 298 Ga. App. 78, 80, 679 S.E.2d 43, 46 (2009) (limitation of liability clause "**did not purport to indemnify or hold the architect harmless from damages but simply established a bargained-for cap on the liability**").

40

# VIRGINIA CODE 11-4.1:1 DOES NOT AFFECT FLUOR'S DAMAGES CAP

- Further, **Fluor *established* its contract rights in the first place** under the terms of the LOD it drafted, proposed and inserted into the Subcontract (which was finalized after Fluor started work on the Project).

- BAE, in contrast, merely agreed to Fluor's LOD terms.

  - BAE did not impose these terms on Fluor.

- 11-4.1:1 is plainly designed to prevent general contractors (with unequal bargaining power) from cramming down a claim waivers on small subs who need to secure work.

  - (Fluor, in contrast, is sophisticated and was a **sole source bidder** at the time of the subcontract, **and held all of the bargaining power**)

41

# EQUITABLE ESTOPPEL IS NO DEFENSE

# EQUITABLE ESTOPPEL CANNOT BAR ENFORCEMENT

• Fluor cannot rely on equitable estoppel because:

  • (1) Fluor cannot satisfy the elements of equitable estoppel; &

  • (2) Fluor has **affirmed the Subcontract**, **in its entirety**, by performing for more than 6 years, after it was aware of any alleged issues with the Lauren Design.

43

# FLUOR CANNOT SATISFY THE ELEMENTS FOR EQUITABLE ESTOPPEL

- As stated in BAE's Memorandum in Support of its Motion to Dismiss and Reply in Support thereof:

  - (i) There **is no 85% Lauren Design representation** in the Subcontract  (precluding **reliance** under the **fully integrated** contract)

  - (ii) the Subcontract **assigned Fluor responsibility to determine the status of, and to verify and, if Fluor elected to use the Lauren Design (which it did), correct the Lauren Design**, and

  - (iii) **Fluor** (not BAE) represented that **it was the design and construction expert**, and **Fluor had the Lauren Design for nearly eight (8) months** and **was paid to review it** *prior* **to the Subcontract's definitization** and execution. *See generally* (Dkt. 39 at 5-20)

# FLUOR CANNOT RELY ON EQUITABLE ESTOPPEL BECAUSE IT AFFIRMED THE CONTRACT

- "The legal principle underlying the theory of equitable estoppel rests on a simple proposition:  **it is unfair for a party to rely on a contract when it works to its advantage, and repudiate it when it works to its disadvantage**."

  - *Am. Bankers Ins. Grp., Inc. v. Long,* 453 F.3d 623, 627 (4th Cir. 2006)

- A party cannot affirm a contract by performing for 6 years (as here) and affirmatively rely on the contract to either perform or sue:

- "One [who is] entitled to relief [from a contract based on purported misrepresentations] **can affirm <u>or</u> avoid the contract, but <u>he cannot do both; if he adopts a part, he adopts it all</u>. He must reject it entirely if he desires to obtain relief**."

  - *United States v. Idlewild Pharmacy, Inc.,* 308 F. Supp. 19, 23 (E.D. Va. 1969)

45

# CONCLUSION

- This Court should strike all allegations in Fluor's Counterclaim purporting to claim entitlement to or seeking recovery of amounts in excess of the parties' damages cap pursuant to Rule 12(f).

46