# BAE SYSTEMS ORDNANCE SYSTEMS, INC.'S

# RULE 12(b)(6)

# MOTION TO DISMISS FLUOR'S COUNTERCLAIM

*BAE Systems Ordnance Systems, Inc. v. Fluor Federal Solutions, LLC,*

*Case No. 7:20-CV-00587*

*W.D.Va. – Roanoke Division*

1

# BAE'S MOTION TO DISMISS OVERVIEW

# FLUOR'S DESIGN/BUILD SUBCONTRACT

- For a **FIRM FIXED PRICE**, Fluor agreed to **DESIGN & BUILD** the new nitrocellulose manufacturing facility ("NC facility") for the U.S. Army, in accordance with the Subcontract's Statement of Work ("SOW"):

**2.12   STATEMENT OF WORK**

Subcontractor, as an independent company and not as an agent of BAE Systems, shall provide the necessary facilities, personnel, equipment and materials to accomplish the assigned tasks within the parameters of this Subcontract Agreement and in accordance with the Statement of Work (SOW), Exhibit E.

**2.13   SUBCONTRACT TYPE**

**This is a Fixed Price Subcontract.**  The Buyer shall pay the Subcontractor for the supplies, services and/or data delivered and accepted hereunder the firm fixed price stated in, Exhibit I.  The price is not subject to any adjustment on the basis of the Subcontractor's cost experience in performing the Statement of Work.

*Subcontract Part 2-Supplemental Terms & Conditions(Dkt. 1-2 at 10)*

3

# THE SOW PLACES *ALL PERTINENT DESIGN RESPONSIBILITY* ON FLUOR

- 1.0 PROJECT OBJECTIVES …. The objective of this Statement of Work (SOW) is to **design**, procure, and **construct** (including construction checkout, and water runs) the new NC Area Acid Tank Farm…, a Nitration area …, Stabilization area …, Dewater/Packout area …, Administration building … and the supporting areas/processes required to support the new Nitrocellulose (NC) Facility …

- 2.1 This project will **design**, procure, and **construct** the new NC facility…

- 2.2 …**.** The **Subcontractor** *shall* **prepare** their *own drawings* to be used for design review submittals, construction and as Record Drawings. …

- 2.4 …**Subcontractor** *shall* **prepare** their *own* construction *specifications* to be used for design review submittals and construction.  …

- 2.5 It is **incumbent upon the Subcontractor to review the documents submitted** and to *perform* their *own analysis* …

- **the Subcontractor** *shall be solely responsible for the design* …

- 2.7 *Subcontractor* will be *responsible* to *validate and complete* **all PFD's** [process flow diagrams] **and P&IDs** [piping and instrumentation diagrams]**.**

SOW at §§ 1.0-2.0 (Dkt. 1-2 at 75, 77-78) (Ex. E at 4-5)

4

# THE SUBCONTRACT'S 4 CORNERS DISPOSE OF FLUOR'S CLAIMS

- The Subcontract is a **fully merged and integrated** agreement:

  - "This Contract … constitutes the **entire agreement** between the Parties." Subcontract, General Provisions § 2(a) (Dkt. 1-2 at 17) (Ex. A at 2).

  - "**These terms and conditions constitute an offer by [BAE]** and said offer is expressly limited to acceptance on the exact terms set forth and no other terms and conditions shall be controlling: and these terms and conditions **supersede** the terms and conditions of **your proposal**." Subcontract at 4 (Signature Page) (Dkt. 1-2 at 6).

- Thus, **pre-contract** representations **cannot alter the terms**.

- Conclusion:  The SUBCONTRACT'S 4 CORNERS CONTROL.

5

# The Subcontract *Precludes* Fluor From Altering Terms with Alleged *Post-Contract Reviews and Submissions*

- The Subcontract likewise **precludes Fluor** from **altering Subcontract terms via alleged *post-contract design reviews*** or ***Fluor's post-contract submissions*:**

  - "**Additional or differing terms** or *conditions proposed by CONTRACTOR* … are **hereby objected to by BAE SYSTEMS and *have no effect* **unless expressly accepted** in writing by BAE SYSTEMS**." *Subcontract, General Provisions § 2(c) (Dkt. 1-2 at 17)*

  - "*[W]herever this Contract provides for submittal of designs*, components, processes, or other items *for **review or approval by BAE SYSTEMS**… Such reviews and approvals* [by BAE] **shall *in no way relieve the CONTRACTOR* of the responsibility for **any error or deficiency** which may exist** in the submitted design or other items, as the *CONTRACTOR shall be responsible for meeting all the requirements of the contract*." *Id. § 3(k) (Dkt. 1-2 at 19).*

  - "**BAE SYSTEMS's approval** of documents **shall not relieve CONTRACTOR** from complying with any requirements of this Contract." *Id. § 20 (Dkt. 1-2 at 27)*

  - "**BAE SYSTEMS shall not be liable** for any of [Fluor's] **increased cost of performance** that result from **[Fluor's] implementation of *changes or modifications* that **BAE SYSTEMS'** Procurement Representative ***did not* first approve in writing**." *Id*. § 3(f) (Dkt. 1-2 at 18)

6

## THE SUBCONTRACT DOES *NOT* REQUIRE
## USE OR ADHERENCE TO THE LAUREN DRAWINGS

- The Subcontract does ***not require*** Fluor to use or adhere to Lauren's expressly "Conceptual" drawings (which were provided "'**as is**' **based on work in progress**" and "for reference only.")

  - *See, e.g., SOW at §§ 2.0 (Dkt. 1-2 at 77-78)*

- Rather, Fluor's contractual responsibility included:

  - (1) deciding whether and to what extent to use the **expressly <u>preliminary</u> and <u>conceptual</u> design** (provided "as is" and "for reference only");

  - (2) *validating*, *correcting*, and *completing* any preliminary drawings used; and

  - (3) design/building the overall NC Facility.

- Fluor conflates Process "equipment specifications" in Appendix G-10 with design drawings and design specifications.

  - The Lauren Design is a Conceptual Drawing  (not the equipment specs in Appendix G-10).

7

# FLUOR'S COUNTERCLAIM

- Fluor's Counterclaim alleges **three (3) separate breach of contract claims** under Count I:

  - (1) Breach of purported "**implied warranty of plans, designs and specifications**" for the Lauren Design

    - Seeking damages "related to [alleged] defects, errors, omissions, conflicts, clashes, and inconsistencies within the Lauren Design." CC at ¶¶ 239-240.

  - (2) Breach of a duty to "grant Fluor an **equitable adjustment** to the Subcontract's price and schedule" related to:

    - (a) the Lauren Design (failing to pay PCNs—majority of which relate to the Lauren Design); &

    - (b) purported directed/constructive changes (i.e. work outside the SOW). CC at ¶¶ 241-245

  - (3) Breach of **implied covenant of good faith and fair dealing** related to the :

    - (a) Lauren Design (by "knowingly, negligently, or with gross negligence …misrepresenting the design status and the maturity of the Lauren Design," changes to the process design, and "failing to cooperate with Fluor in resolving the defective design"); and

    - (b) "changes to Fluor's scope of work [(i.e. work outside the SOW)] without the intent to compensate for such changes" CC at ¶¶ 246-250.

- Fluor alleges 2 **extra-contractual claims** (Count II (**Quantum Meruit** ) & Count III (**Unjust Enrichment**).

# FLUOR'S BREACH OF CONTRACT CLAIMS SHOULD BE DISMISSED

- Fluor fails to state a cognizable breach of contract claim related to the Lauren Design under *Breach 1 (implied warranty)*, *Breach 2 (equitable adjustment)* or *Breach 3 (good faith and fair dealing)* because:

  - (1) The Subcontract **Assigns All Pertinent Design Responsibility to Fluor**,

  - (2) The Subcontract **does not require adherence to the Lauren Design** (i.e. Drawings),

    - ("minimum requirement" in Appendix G-10 unequivocally refers to equipment specs, *not design drawing),* and

  - (3) The Subcontract **contains no % complete representation for any Lauren Drawing**.

- Fluor fails to state a cognizable breach of contract claim for directed/constructive changes under *Breach 2 (equitable adjustment)* or *Breach 3 (good faith and fair dealing*) because:

  - (1) Fluor fails to plausibly allege extra work, **outside of the SOW**;

  - (2) Fluor fails to plausibly allege it received **Prior Written Approval from BAE *before implementing any alleged change***, as required by *General Provisions § 3 (Dkt. 1-2 at 18-19);* and/or.

  - (3) Fluor fails to plausibly allege it **provided the required notice of any alleged change**, as required by *General Provisions § 3 (Dkt. 1-2 at 18-19*) and/or *§ 19(b)*.

- The 4 corners of the Contract plainly bar Fluor's Claims for  Cost-Overruns Associated with the Overall NC Facility Design (including the Lauren Design).

# FLUOR'S EQUITABLE CLAIMS SHOULD BE DISMISSED

- Fluor's extra-contractual claims (Quantum Meruit & Unjust Enrichment) for relief fail to plausibly state a claim because:

  - (1) An **express contract governs** the parties' obligations;

  - (2) **Neither party alleges that the contract is unenforceable**; therefore, alternative equitable relief based on lack of an unenforceable contract is unavailable; and

    - Fluor admits the "Subcontract is a binding and enforceable agreement between BAE and Fluor." CC ¶ 232

  - (3) **Fluor also fails to sufficiently plead the elements** of either cause of action.

    - Fluor's allegations are based on what the Subcontract requires;

    - Fluor fails to plausibly plead that the Subcontract is unenforceable;

    - Judge Dillon addressed this very issue in a case brought by Fluor against BAE related to another facility and concluded:

      - Fluor (as here) is "not challenging the existence, validity, or enforceability of the contract," thus, pleading equitable claims based on the same facts was inappropriate and Judge Dillon dismissed a quantum meruit and unjust enrichment claim.

      - *See* Motions Hearing, Feb. 7, 2020, ECF No. 36, Case No. 7:19-cv-698, Tr. at 58:18-59:19

10

# THE SUBCONTRACT ASSIGNS
# ALL PERTINENT DESIGN RESPONSIBILITY TO FLUOR

# SUBCONTRACT'S DEFINITION OF FLUOR'S WORK

Subcontract's definition of "Work" is:

"**all of the design** and construction which CONTRACTOR is required to perform under the Contract Documents or can be reasonably inferred from the Contract Documents." (Subcontract, General Provisions for Construction Subcontracts/Purchase Orders ("General Provisions") §1 (m) (emphasis added).) *General Provisions* (Dkt. 1-2 at 17), (Ex. A at 2).

- "CONTRACTOR shall be totally responsible for the professional quality, technical accuracy, feasibility, and coordination of all designs, drawings, [and] specifications ..." § 23 (f). *General Provisions* (Dkt. 1-2 at 29), (Ex. A at 13)

12

# STATEMENT OF WORK SEC. 2.0 "SCOPE"

- 2.1 This project will design, procure, and construct the new NC facility... The preliminary design of for the new NC facility has been developed and is included in this SOW. This **Conceptual Design** was developed by Lauren Engineers & Constructors (LEC) based on the Technical Design Package (TDP) prepared by the U.S. Army.  Drawings, specifications, and other technical documents provided in the appendices of this SOW were prepared by LEC and amended by BAE Systems.

- 2.2 The **drawings**, **specifications**, and **technical documents provided in APPENDIX G** are amended in this Statement of Work (SOW) by BAE systems to show additional requirements and/or corrections. **These drawings are provided for reference only**. The **Subcontractor shall prepare their own drawings** to be **used for design review submittals, construction and as Record Drawings**. Native CADD files for these drawings are available to the Subcontractor.

> Plainly *Not* Lauren Design Drawings or Design Files

- 2.4 Specifications [(*different from drawings*)] provided in APPENDIX G represent the minimum requirements. The **Subcontractor shall prepare their own construction specifications** to be used for design review submittals and construction. **Native Word files** [*i.e. not design files*] for these specifications will be made available to the Subcontractor. Construction specifications should be prepared using Unified Facilities Guide Specifications (UFGS), AIA Master Spec or other specification systems as approved by BAE Systems.

- 2.5 It is *incumbent upon the Subcontractor* to review the documents submitted and to *perform their own analysis*, including Hazard and Operability Studies and Life Safety Code Analysis. The *Subcontractor shall be solely responsible for the design*…

- 2.7 Subcontractor will be responsible to **validate** and **complete** all PFD's and P&ID's....

13

# THE SUBCONTRACT DOES *NOT* REQUIRE USE OR ADHERENCE TO THE LAUREN DRAWINGS

# FLUOR'S USE OF LAUREN'S DESIGN DRAWINGS WAS OPTIONAL

- <u>Use of the Lauren Design Files were Optional, to the extent Fluor (and its design expert(s)) deemed aspects appropriate to use</u>.

- Fluor is wrong that Appendix G-10 required the Lauren Design. (CC at ¶ 73)

  - Appendix G-10 is **"Equipment Specifications"**:

    Appendix G-10 Equipment Specifications

    - The equipment specifications pertained to the BOWAS process equipment for the nitrocellulose process.

    - Appendix G-1 clarifies the nitrocellulose production "process" :

      1.1.  The RFAAP nitrocellulose (NC) plant will incorporate the Densified Nitrocellulose (DNC) Process developed by BOWAS Induplan Chemie Ges. M. b. H. (BOWAS), of Salzburg, Austria.  The DNC process is a state-of-the-art NC production process,

- Appendix G involves specifications <u>for components and materials</u>

  - **<u>Appendix G did not require use of the Lauren Design for the facility</u>**.

- Flour was hired to assume responsibility for pertinent NC facility design work –including fixing and completing preliminary concepts if Fluor chose to use them.

15

# Fluor's Technical Proposal Admits Responsibility for Lauren Design Correction and Completion

- **Fluor admitted** in its Technical Proposal (TP) that it is **responsible for correcting and completing** the **Lauren Design**.  (CC ¶ 119 (alleging TP's incorporation into the Subcontract)).

- In its technical proposal, Fluor indicated that <u>Mustang (Fluor's design sub-subcontractor) will take responsibility of "validating the existing design status, *acceptance and ownership of the existing design, correcting and completing existing design*</u>." Fluor stated:

> BAE, Fluor, and our architecture/engineering (A/E) design subcontractor, Wood Group Mustang (Mustang), bring experience and proven solutions to the NC Facility project. Our corporate history and relevant past performance demonstrate our dedication to quality performance.
>
> **3.7   Project Team**
>
> Our project team brings together Fluor Federal Solutions, LLC as the prime constructor and Wood Group Mustang (Mustang) as our engineering design subcontractor. The NC Facility success depends on close coordination between these two organizations. This coordination is critical because our fast-track engineering design approach is synchronized with beginning construction upon notice to proceed. We deliver architectural design, engineering design, deliverables and construction support services as required for a completed project in accordance with the technical requirements stated throughout the documents provided. The Mustang scope of services includes:
>
> - Serving as Fluor's design team member and Designer of Record for the NC Facility
>
> - Performing Design, Engineering Construction Support Services for the NC facility including but not limited to the following:
>
>   – Validating the existing design status, acceptance and ownership of existing design, correcting and completing existing design for all aspects of the project identified in the BAE RFP.

- **But Fluor ultimately chose not to hire Mustang, and to line up its own design team to self-perform the design work.**

16

# Fluor was Ultimately Responsible For the Design & Specifications

- Fluor cites a "Design After Award" document, Section 01 33 16 (which is distinct from the SOW, Section 01 10 00, *Dkt. 1-2 at 74-157*).  CC at ¶¶ 149-150.

- Fluor quotes the Design After Award (CC at¶ 149)--incorrectly claiming it is the SOW—and is forced to omits language *confirming* Fluor's ultimate design responsibility in ¶ 149 of its CC:

  - 3.7.6.2. ***BAE Systems review and acceptance of design submittals*** is for contract conformance only and ***shall not*** relieve the Subcontractor from responsibility to fully adhere to the requirements of the contract, including the Subcontractor's accepted contract proposal, **or limit the Subcontractor's responsibility of design as prescribed under Special Contract Requirement: "Responsibility of the Subcontractor for Design" or limit BAE Systems' rights under the terms of the contract**. *Compare* CC at¶ 149 (omitting Fluor's design responsibility language)

# Fluor was Ultimately Responsible For the Design & Specifications

- Although *not the SOW*, even the Design After Award further affirms Fluor's ultimate design responsibility:

  - 3.5.6. Specifications

    - "Subcontractor is responsible for **preparation of *all* Specifications**…."

  - 3.7.1. Drawings

    - 3.7.1.1. "Submit drawings complete with all contract requirements incorporated into the documents to **provide a <u>100% design</u>** for each package submitted."

  - 3.7.2. Design Analyses

    - 3.7.2.1. "The designers of record [i.e., Fluor] shall **update, finalize and present design analyses** with calculations necessary to substantiate and support all design documents submitted."

18

# FLUOR WAS ULTIMATELY RESPONSIBLE FOR PROCESS DESIGN

# Fluor's Contractual Scope
## <u>Expressly *Included* Process Design</u>
### (Including Developing Interfacing Systems)

- "Subcontractor is responsible for the following process, mechanical and piping systems detailed engineering and design": …

  - "Subcontractor will revise [*(i.e. correct)*] and approve PFDs and P&ID's based on the redlined documents, (see Appendix G), and any engineering changes resulting from completion of the facility design, **validation of the exi[s]ting redlined PFD's and P&ID's** and incorporating results from the final PHA and HAZOPS. <u>Packout system process *equipment* is being purchased by BAE Systems</u> and the **Subcontractor shall develop interfacing systems and components**…."

  - Exhibit E, SOW at (F) (Dkt. 1-2 at 116) (Ex. E at 43).

- Thus, as it relates to the Process Equipment (procured by BAE) Fluor is expressly responsible for *all connections* to the process equipment (Process Flow Diagrams & Piping and Instrumentation Diagrams)—*including* making revisions and corrections.

- Thus, Fluor has *all pertinent design responsibility* for the purported source of Fluor's alleged damages = Lauren Design and Process Design.  *See also* SOW 2.5 ("The Subcontractor shall be solely responsible for the design…")

20

# Fluor's Contractual Scope
## Expressly *Included 100% Process Design  Responsibility*

**MILESTONE SCHEDULE – SUBCONTRACT EXHIBIT F – (Dkt. 1-2 at 158, 160-161):**

| Milestone | Task | Totals | |
|---|---|---|---|
| | **CLIN 1 Option 2** | **$ 5,442,281** | |
| 10 | Zapata Building Kickoff Meeting | $ 1,360,570 | Dec-15 |
| 11 | Zapata Building 60% Design Review | $ 1,360,570 | Feb-16 |
| 12 | Zapata Building 90% Design Review | $ 1,088,456 | May-16 |
| ... | | | |
| | **CLIN 3 Option 1D** | **$ 10,014,313** | |
| 74 | **Engineering Kickoff Meeting** | $ 2,472,509 | Dec-15 |
| 75 | **Begin 60% Process Design** | $ 2,472,509 | Dec-15 |
| 76 | **60% Process Design Completed** | $ 1,520,789 | Jun-16 |
| 77 | **Begin 90% Process Design** | $ 1,013,859 | Jul-16 |
| 78 | **90% Process Design Completed** | $ 1,013,859 | Oct-16 |
| 79 | **Begin 100%/IFC Process Design** | $ 1,013,859 | Nov-16 |
| 80 | **100%/IFC Process Design Completed** | $ 506,930 | Dec-16 |
| | **CLIN 3 Option 1E** | **$ 1,103,851** | |
| 81 | **Engineering Kickoff Meeting** | $ 275,960 | Dec-15 |
| 82 | Submit 60% Electrical Design - Package 3 | $ 183,973 | Jan-16 |
| 83 | Submit 90% Electrical Design - Package 3 | $ 55,192 | Mar-16 |
| 84 | Submit 100%/IFC Electrical Design - Package 3 | $ 36,795 | Mar-16 |
| 85 | Submit 60% Electrical Design - Package 4 | $ 183,973 | Feb-16 |
| 86 | Submit 90% Electrical Design - Package 4 | $ 55,192 | Apr-16 |
| 87 | Submit 100%/IFC Electrical Design - Package 4 | $ 36,795 | May-16 |
| 88 | Submit 60% Electrical Design - Package 6 | $ 183,973 | Mar-16 |
| 89 | Submit 90% Electrical Design - Package 6 | $ 55,192 | May-16 |
| 90 | Submit 100%/IFC Electrical Design - Package 6 | $ 36,808 | Jun-16 |

Annotations (in red):
- Fluor Responsible for Process design from Kickoff to 100% Issued for Construction (IFC)
- Fluor Given 1 yr. & More than $10M for Process Design

21

# Fluor's Pre-Contract Technical Proposal
# (Not Part of Subcontract)

- Some of the key design phase elements include:
  - Assignments, scheduling and work plan development
  - Process design concept workshop
  - Project Initiation meeting
  - Flow sheet meetings
  - Process and instrumentation diagram (P&ID) development meetings
  - Preliminary and final facility layout meetings
  - 60% and 90% peer reviews

After Notice to Proceed (NTP), we meet with BAE and other stakeholders to solicit additional input on the preliminary design concepts, and to incorporate the results of this exchange of information into the design. This and other reviews may have a variety of goals, including:
  - Concept development, optimization of overall approach
  - Technical accuracy
  - Coordination of engineering disciplines
  - Coordination of engineering documents
  - Constructability
  - Value optimization
  - Conformance to engineering standards

- **60 Percent.** The 60 percent technical review focuses on review of more advanced design concepts. It covers such items as permits, design criteria, equipment selection and sizing, site development, facilities layout, estimated project cost and scheduling. Constructability reviews play a key role at this stage. In addition, we complete preliminary assessments and/or pre-design, with all the major parameters known and documented in a general manner.

- **90 Percent.** The 90 percent milestone is the point at which the work is ready to be submitted for review prior to being finalized and issued for construction (IFC). At this point, we have completed all reviews, and have resolved any outstanding issues before we release documents. Documents to be reviewed include drawings, specifications, calculations and support information.

- **100 Percent.** After the 100 percent design review, we incorporate final comments and issue the IFC design set.

- **Issued for Construction.** After a design is issued for construction, we may encounter conditions requiring a design change. We establish and validate the cause of or reasons for the change and determine how the change may affect existing design, cost, and schedule. Regardless of the origin of the change, we make every effort of incorporating the change as effortlessly as possible and at the most reasonable cost without jeopardizing the project schedule. We inform BAE of any design changes.

22

# FLUOR IS CONTRACTUALLY BARRED FROM RELYING ON ALLEGED PRE-CONTRACT REPRESENTATIONS OR ITS OWN POST-CONTRACT SUBMISSIONS TO ALTER CONTRACT TERMS

# THE SUBCONTRACT'S 4 CORNERS DISPOSE OF FLUOR'S CLAIMS

- Fluor **cannot rely on any alleged % complete representation for the Lauren Design** <u>to alter the terms of the Subcontract</u>.

    - *Compare, e.g.,*
        - *Subcontract General Provisions § 2(a) (Dkt. 1-2 at 17) ("*This Contract … <u>constitutes the entire agreement between the Parties</u>.")
        - *Subcontract at 4 (Signature Page) (Dkt. 1-2 at 6) ("*These terms and conditions constitute an offer by [BAE] and said offer is *<u>expressly limited to acceptance</u> on the exact terms* set forth and <u>no other terms and conditions shall be controlling</u>)

    - *With, e.g.,*
        - *Counterclaim at* ¶¶ 57-65, 78, 250 (**alleging pre-contract representations** related to the maturity of Lauren's Drawings).

- Fluor **cannot rely on its *own* Cost & Technical Proposal** <u>to alter the terms of the Subcontract</u>.

    - *Compare, e.g.,*
        - *Subcontract at 4 (Signature Page) (Dkt. 1-2 at 6) ("*[BAE's] offer is *<u>expressly limited to acceptance</u> on the* <u>exact terms</u> set forth and no other terms and conditions shall be controlling: and these terms and conditions **supersede the terms and conditions of your proposal**.")
        - *Subcontract, General Provisions § 2(c) (Dkt. 1-2 at 17)* ("<u>Additional or differing terms</u> or conditions *<u>proposed by CONTRACTOR</u>* … are **hereby objected to by BAE SYSTEMS and have no effect** *unless expressly accepted in writing by BAE SYSTEMS*.")

    - *With, e.g.,*
        - *Counterclaim* ¶¶ 114-117 (alleging Fluor ***informed BAE*** it was relying on the Lauren Design)

24

# THE SUBCONTRACT'S 4 CORNERS DISPOSE OF FLUOR'S CLAIMS

- **BAE's post-contract review or approval** of the Fluor's Design Configuration Management Plan ("DCMP") or Design Quality Control Plan ("DQCP") submissions **cannot alter the terms.**

  - *Compare, e.g.*

    - *Subcontract, General Provisions §§ 2-3, 20  (Dkt. 1-2 at 17-19, 27);*

    - *Id. § 3(k) (Dkt. 1-2 at 19) ("[W]herever this Contract provides for submittal of designs*, components, processes, or other items *for* **review or approval by BAE SYSTEMS**... *Such reviews and approvals* [by BAE] **shall *in no way relieve the CONTRACTOR* of the responsibility for** <u>any error or deficiency which</u> **may exist** in the submitted <span style="color:red">design</span> or other items, as the <u>CONTRACTOR shall be responsible for meeting all the requirements of the contract</u>.")*

    - *Id. § 20 (Dkt. 1-2 at 27) ("***BAE SYSTEMS's approval** of documents **shall not relieve CONTRACTOR** from complying with any requirements* of this Contract.")

  - *With, e.g.,*

    - *Counterclaim at ¶¶ 123-137 (**alleging BAE ratified *Fluor's 85%* complete representations in its post contract submissions**)*

- **Thus, The SUBCONTRACT'S 4 CORNERS CONTROL.**

# FLUOR (THE DESIGN AND CONSTRUCTION EXPERTS) ASSUMED THE RISK OF UNDERBIDDING

26

# FLUOR'S SEEKS COST-OVERRUNS IN ITS COUNTERCLAIM

## Fluor's Counterclaim Seeks Cost-Overruns from Designing the NC Facility.

- Fluor alleges design-related costs exceeded Fluor's expectations.

- Fluor argues that because it was difficult and costly to validate, correct, and complete the design (including the Lauren Design), it is entitled to the extra costs, via change orders.

  - *But see* 2.13 SUBCONTRACT TYPE ("This is a Fixed Price Subcontract. The Buyer shall pay the Subcontractor for the supplies, services and/or data delivered and accepted hereunder the firm fixed price stated in, Exhibit I. The **price is not subject to any adjustment** on the basis of the Subcontractor's cost experience in **performing the Statement of Work**.

- Fluor assumed this risk when it agreed to the design responsibility in the Subcontract, requiring Fluor to design the overall NC facility, and if it used the Lauren files, to take ownership of, validate, correct, and complete them.

27

# $14 Million Dollar Contingency

- To account for uncertainty, Fluor incorporated a $14 million contingency into the Subcontract.

**2.22 Contingency**

There is $14 million in the price of this contract for unforeseen contingencies, other than changes to the contract compensable under the Changes clause.  If a contingency arises for which Fluor will use the contingency funding, Fluor will document the circumstances and the estimated amount.  Prior to drawing on the funding the following procedure will be followed:

·    The BAE Program Manager (PM) and Fluor Construction Operations Director will agree on the amount and use of the funding.  If agreement is not reached,

·    The matter will be resolved by the Fluor Government Contracts Manager and the BAE Subcontract Administrator.  If they do not agree,

·    The BAE Vice President/Deputy General Manager and the Fluor Services and Solutions Senior Vice President will seek agreement.

·    If there is no agreement, Fluor will make the final determination on use of the contingency funding.

- *See, e.g., Subcontract Part 2-Supplemental Terms & Conditions(Dkt. 1-2 at 12)*

28

# Fluor Fails to Plausibly Support A Claim for Relief

# CONTRACT LANGUAGE PRECLUDES
# FLUOR'S IMPLIED WARRANTY THEORIES

- Fluor alleges:

  57.    During the Solicitation period, BAE consistently represented orally and in writing to

  all bidders, including Fluor, that the Lauren Design was 85% complete.

- The **Contract does not incorporate any % complete representation.**

- The **Contract expressly precludes reliance on any pre-contract 85%** allegations to support a claim:

  - Merger Clause Bars Pre-Contract Representations

  - Parol Evidence Rule Bars Pre-Contract Statements because the it is clear and unambiguous.

    - *United States v. Snowden*, 2019 WL 8333546, at *5 (E.D. Va. Dec. 17, 2019) (When **the contract terms at issue are unambiguous, the "Court is … legally barred from accepting extrinsic evidence of course of performance, course of dealing, and common trade practices**.").

- **There is no inducement claim**.

30

# No Implied Warranty Where Contract Assigns Design Responsibility

- *Spearin* does not apply when the contract squarely places design responsibility on the contractor.

  - Here, the <u>Subcontract goes far beyond general disclaimers</u>; it <u>*required Fluor to perform its own analysis and submit its own design, including drawings & specifications*</u>.

- Virginia Courts reject implied warranties where contractor had the responsibility to review and check drawings and dimensions.

  - ***Mod. Continental South. v. Fairfax Cnty. Water Auth.**,* 72 Va. Cir. 268, at *3-4 (2006) (*Spearin* would not apply where **contract required contractor to "review for defects or ambiguities"**);

  - ***D.C. McClain, Inc. v. Arlington County**,* 249 Va. 131, 452 S.E.2d 659, 663-4 (Va. 1995)  (Virginia Supreme Court found no implied warranty from owner where **contractor agreed to check the dimensions** of existing structures, measure those dimensions, and measure the elevations before commencing construction).

31

# Examples of Fluor's Express Warranties

- General Provisions— "30.  **Warranty and Correction of Defects**" (Dkt. 1-2 at 32) (Ex. A at 16):

  - "b)  In addition to any other warranties in this Contract, the CONTRACTOR **[Fluor] warrants** that the **Work … is free of any defect in** equipment, materials, **or design furnished** …"

  - **"**d) The Contractor shall remedy **at the CONTRACTOR'S expense**, any failure to conform **or any defect**.  In addition, the CONTRACTOR shall remedy, **at the CONTRACTOR's expense**, any damages…when that damage is the result of:

    - i.  The CONTACTOR's failure to conform to Contract requirements; **or**

    - ii.  **Any defect** of equipment, material, workmanship, **or design furnished."**

- General Provisions— "22.  Specifications And Drawings" (Dkt. 1-2 at 28) (Ex. A at 12):

  - "c)  **Omissions from the drawings or specifications** or the misdescription of details of work which are manifestly **necessary to carry out the intent of the drawings and specifications**… **shall not relieve the CONTRACTOR** from performing the omitted or misdescribed work but they **shall be performed as if fully and correctly set forth** and described in the drawings and specifications…"

  - "d)  The CONTRACTOR **shall check all drawings furnished him immediately upon their receipt** and shall promptly notify BAE SYSTEMS of any discrepancies….  The CONTRACTOR shall **compare all drawings** and **verify the figures** before laying out the work and **will be responsible for any errors** which might have been avoided thereby."

  - "f)  The CONTRACTOR … shall be responsible for **all measurements**…"

  - "i)  … [BAE's review or approval] **shall in no way relieve** the CONTRACTOR **for any errors or deficiencies**…"

32

# Applicable Law Precludes Fluor's "Ratification" Argument

**As a matter of law**, Fluor **cannot establish ratification** of alleged pre-contract representations though submittal approval.

- *D.C. McClain, Inc.*, 452 S.E.2d at 663 (county's approval of shop drawing did not create implied warranty of errors in shop drawings submittals); *see also* Subcontract ¶ 3(k); ¶20.

- Fluor's attempt to distinguish *McClain* fails (Opp Br. at 11) for at least a couple of reasons:

  - (1)  The Lauren's preliminary drawings are not a contract requirement;

  - (2)  the Court in *McClain* did not base its decision off of any agreed understanding of defects, but based on the language of the operative contracts;

  - (3) Regardless, BAE and Fluor *did* contemplate potential errors & ambiguities with Conceptual design and

  - (4) Fluor was paid to assess the design before agreeing to design responsibility, including verification, correction, and completion of any aspect of the Lauren Design it wished to use.

33

# Fluor Failed to Provide Notice of Alleged "Changes" Or Receive Prior Approval

To the Extent Fluor Alleges "Changes" (Though really Cost-Overruns), **BAE Has No Contractual Duty** to Grant Fluor an Equitable Adjustment *After* **Fluor Proceeded with Alleged "Change" Work** for Years Before Providing **Notice & without** *prior Approval***.**

- As a preliminary matter, Fluor primarily seeks cost-overruns; not changes.

- The Subcontract provides that BAE "**shall not be liable for any of [Fluor's] increased cost of performance** that result from [Fluor's] implementation of changes or modifications that **BAE SYSTEMS' Procurement Representative did not first approve in writing**." (*Id*. § 3(f) (emphasis added).);

- *John W. Johnson, Inc. v. J.A. Jones Constr. Co.*, 369 F.Supp. 484, 494 (E.D. Va. 1973) (subcontractor's **failure to obtain prior written approval for extra work precludes claim** for additional payment);

- *McDevitt & Street Co. v. Marriott*, 713 F.Supp. 906, 919-922 (E.D. Va. 1989) *aff'd in part, rev'd in part*, 911 F.2d 723 (4th Cir. 1990) (contractor's claim for additional compensation **was barred due to failure to promptly notify owner**).

- FAR 52.243-4 does not apply (because the government did not order the extra work) and even if it did, it also requires timely notice.

34

# Fluor Cannot Minimize its Contractual Design Responsibility Through Other Legal Theories

Fluor Fails to State a Claim for Breach of Good Faith Covenant**.**

- Good-faith covenant does not apply (1) to pre-contract negotiations; or (2) to change the parties' contractual obligations:

  - "[T]he covenant applies only to conduct during performance of the contract, **not to conduct occurring prior to the contract's existence**." *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001)

  - "[**N]o implied duty arises with respect to activity governed by express contractual terms**." *Skillstorm, Inc. v. Elec. Data Sys., LLC*, 666 F. Supp. 2d 610, 620 (E.D. Va. 2009)

- Good-faith covenant cannot invalidate the express terms of the subcontract or meaningfully change their scope:

  - "[W]hen parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997);

  - The **good-faith covenant cannot be used to rewrite the parties' contract** to **impose new obligations** on one party. *See Ward's Equip.*, 493 S.E.2d at 520

35

# Quantum Meruit (Count II) & Unjust Enrichment (Count III) Should Be Dismissed.

(1)   An express contract governs the parties' obligations.

- Fluor's **equitable claims requires lack of express agreement**. *T. Musgrove Construction Co., Inc. v. Young,* 840 S.E.2d 337, 341 (Va. 2020) (unjust enrichment); *Mongold v. Woods*, 278 Va. 196, 203, 677 S.E.2d 288, 292 (2009) (quantum meruit)

(2)   **Fluor admits the "Subcontract is a binding and enforceabl**e agreement between BAE and Fluor."  CC at ¶ 232

(3) **Fluor also fails to sufficiently plead the elements** of either cause of action.

- Fluor's allegations are based on what the Subcontract requires;

- As Judge Dillon held in the Package Boiler case (where Fluor unsuccessfully attempted to allege the same claims:

  - Fluor is "not challenging the existence, validity, or enforceability of the contract," thus, pleading equitable claims based on the same facts is inappropriate.  *See* Motions Hearing, Feb. 7, 2020, ECF No. 36, Case No. 7:19-cv-698, Tr. at 58:18-59:19 (dismissing Fluor's quantum meruit and unjust enrichment claim.)

36

# Pre-Contract History Precludes Reasonable Reliance by Fluor (the design and construction Experts) on "As Is" Lauren Drawings Provided Pre-Contract

# 8 MONTH BIDDING PERIOD + PRE-SUBCONTRACT PAYMENT

- UCA, provides: "*Pending [negotiation &] execution of the definitive [Subcontract] by the parties,* ***[Fluor] is hereby authorized, and agrees to, commence work under this UCA… starting October 14, 2015.*** (Dkt. 1-4 at 2)

- Pre-Subcontract, **BAE paid Fluor** well **in excess of $10M to start work**, including to evaluate the scope of design/ build work and the status of preliminary concepts.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 007 | 2-0700-20046-56735 | EA | 87078 | 87078 | 04/30/2016 | 1.00 | 87,078.00 | N |
| | CLIN 3, OPTION 1 A- MUSTANG (500 HOURS) | | | | | | | |
| 008 | 2-0700-20046-56735 | EA | 10014314 | 10014314 | 04/30/2016 | 1.00 | 10,014,314.00 | N |
| | CLIN 3 OPT. 1D DESIGN ENGINEERING | | | | | | | |

| CLIN 3, Option 1D | |
|---|---|
| Design Engineering- TEC (Instrumentation) & Mustang (Piping & Equipment) | $10,014,313.30 |

*See, e.g.,* (Dkt. 1-2 at 4) & (Dkt. 1-4 at 17-21 & 24) (the total pre-subcontract UCA for Fluor's work prior to entering the Subcontract was *more than $31M*)

38

# BIDDING AND PAID EVALUATION OF PRELIMINARY DATA

- During the 8 month bidding period, bidders received preliminary conceptual data marked "<u>AS-IS</u>" so they could *evaluate and determine the scope of the design/build work*.

- Files included design files from a prior design/build subcontractor, Lauren Engineers & Constructors, Inc. ("Lauren"), which BAE terminated for convenience in early 2015.

- Preliminary files were marked "as is" and Fluor received compensation to evaluate them.

- Bidders viewed Industry Day slide (referenced in Compl. at ¶ 62) <span style="color:red">conspicuously stating</span>:

Native files from previous contractor will be provided as they are reviewed

Files are "as is" based on work in progress at the time of termination of the previous contractor

39

# APRIL 2015 INDUSTRY DAY SLIDE

**Ordnance Systems Inc.**



## Document Package

The following documents are being provided electronically:

- Redlined Piping and Instrumentation Diagrams (P&IDs)
- Redlined Process Flow Diagrams (PFDs)
- Civil Engineering and Architectural documents and specs
- Instrumentation specs and data sheets
- Electrical schematics & plans (power, lighting, grounding)
- Instrumentation loop sheets
- Equipment specifications for process equipment
- SOW Deliverables
- General Information regarding work at RFAAP
- Valve spec, pipe spec, insulation spec

Native files from previous contractor will be provided as they are reviewed

Files are "as is" based on work in progress at the
time of termination of the previous contractor

BAE Systems Proprietary Information

**19**

# CONCLUSION

Because Fluor **accepted all design-responsibility for the issues alleged in its Counterclaim**, Fluor's Cost-Overruns relating to its design responsibility fail to state a claim.

To the extent any alleged "changes" do not relate to Fluor's design responsibility:

(1) they relate to matters within Fluor's SOW and/or

(2) Fluor failed to plausibly allege that it satisfied conditions precedent, including prior notice of any alleged "changes."

Finally, there is no basis for Fluor's "Quantum Meruit" and "Unjust Enrichment" Claims, and Counts II and III, therefore, should be dismissed.