**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
Roanoke Division

| | | |
|---|---|---|
| BAE SYSTEMS ORDNANCE SYSTEMS, INC. | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 7:20-CV-00587-MFU-RSB |
| v. | ) | |
| | ) | |
| FLUOR FEDERAL SOLUTIONS, LLC | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF FLUOR'S MOTION FOR**
**RECONSIDERATION AND FOR CLARIFICATION**

Respectfully submitted,

s/ Scott P. Fitzsimmons
Scott P. Fitzsimmons (VSB 68147)
Kathleen O. Barnes (VSB 30451)
Edward J. Parrott (VSB 29499)
Sarah K. Bloom (VSB 94406)
Gregory M. Wagner (VSB 96017)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
Tel: (703) 749-1000
Fax: (703) 893-8029
sfitzsimmons@watttieder.com
kbarnes@watttieder.com
eparrott@watttieder.com
sbloom@watttieder.com
gwagner@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*

Dated: April 15, 2022

## I.   INTRODUCTION

This case concerns $183 million that Fluor incurred under a Subcontract to construct a one-of-a-kind, state-of-the-art nitrocellulose manufacturing facility for BAE, on behalf of the U.S. Army. BAE has refused to compensate Fluor. Despite the work performed by Fluor without compensation, on March 30, 2022, the Court granted BAE's "Motion to Strike Fluor's Counterclaim for Damages in Excess of $30 Million." ECF 94 at 31 ("the Opinion"). In this Motion, Fluor seeks reconsideration of the Court's Opinion striking Fluor's damages in excess of $30 million, thereby allowing Fluor to recover all damages pled in its Counterclaim. Should the Court decline to reconsider and revise its Opinion, Fluor requests clarification of the Court's Opinion to allow Fluor to pursue discovery and present evidence at trial on all of its damages, without limiting discovery or trial evidence to only $30 million.

Reconsideration of the Court's ruling on the Motion to Strike is warranted for several reasons. First, when reviewing BAE's Motion to Strike, the Court should have accepted the allegations in Fluor's Counterclaim either as true or in the light most favorable to Fluor. By instead crediting the facts in BAE's Complaint to decide BAE's Motion to Strike, the Court misapplied the standard applicable to a Rule 12(f) Motion.

Second, in construing the three Limitation of Damages ("LOD") clauses in the Subcontract, the Court assumed facts not in the record. Those assumptions would be contravened at trial if Fluor is permitted to introduce evidence on the issue. Specifically, the Court incorrectly assumed Section 46 was a "form BAE term" that was "buried within generalized terms." Id. at 26. In fact, the Parties specifically negotiated the terms of Section 46 and deleted the term "including all changes" from the original language. Based on its belief that Section 46 was non-essential boilerplate, the Court effectively gave it bystander status when construing the Subcontract. Consequently, the Court's construction did not adequately consider the significance of the Parties' removal of the "including all changes" language.

The very fact that the Parties removed this language, contrary to the Court's finding, requires that the Court reconsider its decision.

Third, the Court incorrectly found that no provision of the Subcontract, except the Limitation of Damages ("LOD") provisions, addressed limitations on the recovery of costs for changes. ECF 94, at 27. This finding is not supported by the plain reading of the Subcontract. The Subcontract's Changes clause itself specifically includes such a limitation. The Subcontract's Changes Clause, § I.1A.3(J) states, "Except with respect to such limitations, nothing herein shall affect the right of the Parties to an equitable adjustment by reason of the change, pursuant to this clause." (emphasis added). ECF 1-2 at 19. The Court did not harmonize the language of the Changes clause with the limiting language of the LOD provisions ("Except as otherwise provided herein").

Finally, when interpreting Va. Code Ann § 11-4.1:1 ("the Statute"), the Court inserted a concept into its reasoning that is not found in the Statute. The Court determined that Fluor had waived any protections afforded under the Statute because Fluor had "performed work on the Project" and that Fluor "began construction on the project and completed approximately $32 million of work." ECF 94 at 28-29 (emphasis added). But the Statute refers explicitly to "a contract," not a "project." In this case, there are two separate and distinct contracts. The Undefinitized Contract Action ("UCA contract") and the Subcontract. These are two separate and distinct contracts. The UCA contract had its own terms and conditions, its own period of performance, and its own limitation of liability clause. By the UCA contract's own terms, the Subcontract "supersede[d] the UCA in its entirety." ECF 1-4 at 2.. The Subcontract was, therefore, not an extension or part of the UCA contract. All of these facts had been pled by Fluor.

The Court's ruling, in a case of first impression, has sweeping implications for the construction industry in Virginia. By way of background, many construction projects are phased and involve separate contracts covering each phase. Under the Court's interpretation, a contractor who works on

2

an early phase of a project under a specific contract will have waived all protections for the entire project regardless of entering into completely separate contract(s) later in time. No apparent basis exists in the law, the statutory construction, or the statutory interpretation to reach this conclusion. In rendering its decision, the Court also again relied solely on BAE's Complaint to support its finding that Fluor performed "substantial services" on the Project before entering into the Subcontract. In fact, Fluor did not perform $32 million of work before executing the Subcontract, and evidence in this case will reveal this fact. Fluor's pleadings contradict BAE's "facts," but were rejected by the Court.

In drawing its conclusions related to the LOD provisions, the Court appears to have relied upon the facts set forth in BAE's Complaint, which Fluor disputes. In the case of the Virginia Code, the Court's finding was inconsistent with the express Statutory language. Accordingly, Fluor respectfully requests that this Court reconsider its decision granting BAE's Motion to Strike and reverse its Opinion.

## II.    STANDARD OF REVIEW

A district court retains the power to reconsider and modify its interlocutory judgments at any time before final judgment when such is warranted. Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514–15 (4th Cir. 2003) (citing Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1469 (4th Cir.1991)). Thus, motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment under Rules 59 or 60. See id. Instead, the resolution of such motions is within the sound discretion of the district court. Porter v. Buck, 137 F. Supp. 3d 890, 894 (W.D. Va. 2015).

Reconsideration of interlocutory orders is appropriate where "the [c]ourt has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the [c]ourt by the parties, or has made an error not of reasoning but of apprehension." Id. (quoting Above the

Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D.Va.1983)). "The ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Am. Canoe Ass'n, 326 F.3d at 515.

## III.  FACTUAL, LEGAL AND PROCEDURAL MISUNDERSTANDINGS WITHIN THE COURT'S MARCH 30 OPINION JUSTIFY RECONSIDERATION

In granting BAE's Motion to Strike, the Court held that: (1) the Subcontract's LOD provisions limit the amount Fluor can recover for work performed under the Subcontract; and (2) that Virginia Code § 11-4.1:1 does not apply because Fluor performed "substantial services" on the "Project" before executing its Subcontract. The Court's decisions in each of these areas rest upon reversible legal and factual misunderstandings and resulting mistakes, and Fluor respectfully requests that the Court reconsider its opinion granting BAE's Motion to Strike.

### A.  The Court Misapplied the Relevant Standard in Reviewing BAE's Motion to Strike

#### 1.  The Court erred in failing to read facts in the light most favorable to Fluor and by accepting BAE's allegations as true

Federal Rule of Civil Procedure 12(f) authorizes the Court to strike from a pleading, "an insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter." As this Court recognized in its Memorandum Opinion, a Rule 12(f) Motion is a drastic remedy, disfavored by the courts. See ECF 94 at 13-14. In reviewing motions to strike, Courts must view the challenged pleading in the light most favorable to the non-moving party. Tippman Eng'g, LLC v. Innovative Refrigeration Sys., Inc., No. 5:19-CV-00087, 2020 WL 1644985, at *1 (W.D. Va. Apr. 2, 2020) (citing Palmer v. Oakland Farms, Inc., No. 5:10CV00029, 2010 WL 2605179, at *2 (W.D. Va. June 24, 2010)). Allegations should be stricken only where "'the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant

prejudice to one or more of the parties to the action.'" Id. (quoting Bailey v. Fairfax Cnty., No. 1:10-cv-1031, 2010 WL 5300874, at *4 (E.D. Va. Dec. 21, 2010)).

As a threshold matter, the Court did not find that any allegation set forth in Fluor's Counterclaim was "redundant, immaterial, or impertinent." Nor did the Court conclude that Fluor's allegations bore "no possible relation or logical connection to the subject matter of the controversy." Thornhill v. Aylor, No. 3:15cv00024, 2016 WL 258645, at *2 (W.D. Va. Jan. 20, 2016) (denying motion to strike, emphases added) (quoting Bailey, 2010 WL 5300874, at *4). Nor could it; Fluor's allegations and damages are the core of the subject matter in controversy.

Rather, the Court appears to have treated BAE's Motion to Strike as akin to a motion for partial dismissal under Rule 12(b)(6)– but BAE did not file a motion to dismiss. Under Rule 12(f), the Court must view facts in the light most favorable to Fluor; under Rule 12(b)(6), it had to accept Fluor's factual allegations pled in its Counterclaim as true. In neither case may the Court treat BAE's factual allegations as correct. Had the Court considered this issue under the appropriate standard for either Rule 12(f) or Rule 12(b)(6), it would have arrived at the following conclusions:

(1) The phrase "Except as otherwise provided in this Subcontract" contained in the LOD provisions directs the Parties to the relevant clauses that authorize Fluor's recovery for demonstrated additional costs – the Subcontract's Changes clauses;

(2) The Subcontract Changes clause at Section 3(j) provides "**nothing contained herein shall affect the right of the Parties to an equitable adjustment by reason of the change** . . ."; and

(3) Fluor had performed some work only under an Undefinitized Contract Action ("UCA"), which was separate from and superseded by the Subcontract in its entirety. See ECF 1-4, at 2 (stating that the Subcontract "will supersede this UCA in its entirety").

Despite Fluor's denial of BAE's allegations, the Court accepted as true, and relied upon, BAE's factual allegations and documents when granting the Motion to Strike. ECF 94 at 28-29. Fluor had denied BAE's allegations. Thus, the Court inverted the Rule 12(f)/Rule 12(b)(6) standards. If the

Court had accepted Fluor's allegations as true, or viewed them in the light most favorable to Fluor, it could not reasonably have granted BAE's Motion to Strike.

In arriving at its interpretation of VA Code Ann. § 11-4.1:1 ("the Statute"), the Court cited to BAE's Complaint for supportive facts. ECF 94, at 29. Fluor has never admitted to performing "$32 million of work." Id. In fact, BAE itself asserts that Fluor performed minimal services, and that the UCA was only funded to $32 million. See BAE Compl., ECF 1, at ¶¶ 61, 72, 75. Put simply, Fluor did not spend, earn, or receive $32 million under the UCA contract. See Fluor Answer, ECF 29, at ¶¶ 59–61. The Court's finding, therefore, was factually incorrect as discovery in this case will reveal. Yet, the Court cited to and relied on BAE's Complaint for its holding, not the factual allegations made by Fluor.

In the same section of its Opinion, the Court cited to BAE's Complaint to find and emphasize that funding from the Parties' UCA contract was included in the Parties' Subcontract. ECF 94, at 29 (citing to BAE's Complaint at 19). Notably, the Court did not find that the Subcontract was an extension or continuation of the UCA contract. Thus, it is uncontroverted in this litigation that the UCA contract and the Subcontract are separate agreements as revealed in the UCA contract language, which states that the Subcontract supersedes the UCA contract "in its entirety." Nevertheless, the Court here too relied on allegations in BAE's Complaint regarding funding, and viewed those allegations in the light most favorable to BAE, to grant BAE's Motion to Strike.

Based on the above, this Court applied an incorrect standard of review required for a Motion to Strike.

## 2.    The Court's opinion does not strike any allegation or defense

While the Court's ruling is couched as a decision on a motion to strike, it appears the Court did not strike any particular allegation, claim, or defense from Fluor's pleadings. Instead, the Court granted "BAE's Motion to strike Fluor's counterclaim for damages in excess of $30 million." ECF 94

at 31. As previously noted, the Court's ruling appears to be more in the nature of granting a motion for partial dismissal under Rule 12(b)(6) than a motion to strike.

Like FRCP 12(f), FRCP 12(b)(6) requires the Court to accept Fluor's, not BAE's factual allegations as true, and construe the pleadings in the light most favorable to Fluor, the non-moving party. SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 430 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015). And "[FRCP] 12(b)(6) does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations." Colon Health Ctrs. of Am., LLC v. Hazel, 733 F.3d 535, 545 (4th Cir. 2013). As set forth above, the Court did not apply that standard. Even if the Court were to consider evidence outside the pleadings and consider BAE's Motion to Strike under the summary judgment standard of Rule 56, the Court could grant summary judgment only on issues over which there is no genuine dispute of material fact. See Sloan v. Norman, No. 4:18CV00049, 2019 WL 2146616, at *1 (W.D. Va. May 16, 2019). As described above almost every material fact asserted by BAE has been disputed by Fluor, including many upon which the Court based its ruling.

Because the Court accepted as true several material facts alleged by BAE, but which are fervently disputed by Fluor, the Court's March 30 opinion does not comport with FRCP 12(f) or 12(b)(6)

### B. The Court Incorrectly Concluded that the Subcontract Limits Fluor's Ability to Recover for Work Performed under the Changes Clause

In its Opinion, the Court held that the Subcontract's LOD provisions limit the amount Fluor can recover for changed work performed under the Subcontract. ECF 94 at 22-28. In arriving at its conclusion, the Court focused on two of the Subcontract's three LOD provisions, which define the $30 million LOD as "the value including all changes and the maximum liability for damages." (emphasis added). That language, according to the Court, makes clear that Fluor's ability to recover for directed or BAE-caused changes to the Subcontract work is capped at $30 million, regardless of the value of the changed work.

The Court's interpretation rests on several legal and factual misunderstandings or mistakes. First, the Court mistakenly concluded that one of the three LOD provisions (Section 46) constituted "form BAE terms and conditions." ECF 94, at 25. Yet, neither party characterized Section 46 as a "form BAE" term, and the Court had no facts in the record upon which to reach this conclusion. Indeed, in its briefing, Fluor explained that the Parties negotiated and modified Section 46. See Fluor Opp'n to BAE Mot. to Strike, ECF 44, at 24. The Court, therefore, reached beyond the Parties' arguments to make dispositive findings based on its own interpretation of the facts. It appears, however, that the Court was unaware that the Parties intentionally excluded the language "including all changes" in Section 46. In short, Section 46 was anything but a form term to which the Parties paid little mind. This fact would be revealed through discovery and review of all parol evidence, which would undermine the weight the Court gave to the single hearsay e-mail presented by BAE

As stated above, the Court also did not harmonize its interpretation of the LOD provisions with the plain language of the Changes Clause, which states "Except with respect to such limitations, *nothing herein* shall affect the right of the Parties to an equitable adjustment by reason of the change, pursuant to this clause." Contract Direction/Changes Section (j) (emphasis added). Section 3(j) explains that equitable adjustments would be made to the Subcontract price as a result of changes made by BAE. In its Opinion, however, the Court found that "nothing in the . . . Changes provisions negates application of the $30 Million Limitation of Damages Provision." ECF 94 at 27. The Court further found that "nothing in the Changes provision provides any basis for" an exemption of the LOD provisions. Id. at 28. These findings by the Court contradict the Subcontract's clear terms, as pled by Fluor.

By not harmonizing Section 3(j) with its interpretation of the LOD provisions, the Court rendered meaningless a Subcontract provision that specifically and purposely addressed price limitations on changes to Fluor's scope of work.

1.    **The Court incorrectly prioritized two LOD provisions over the third**

In its Opinion, the Court held that the Subcontract limits Fluor's ability to recover for work performed under the Changes clause to $30 million, despite the fact that: (1) the Changes clause itself "otherwise provide[s]" the exclusive method for limiting such costs, and (2) one of the Subcontract's three versions of the LOD clause does not contain the phrase "including all changes." In arriving at its conclusion, the Court found that the Subcontract was not ambiguous, despite the virtually incomprehensible language included in the two provisions prioritized by the Court.

The Court avoided finding ambiguity by instead concluding that the two versions containing the language "including all changes," found in Subcontract Section 2.21 and Section 36 of Appendix J, take precedence over the version set forth in Section 46 of Exhibit A, which lacks an explicit reference to "changes." The Court concluded that Sections 2.21 and Appendix J are located near other provisions that specifically refer to Fluor, BAE and the RFAAP, while Exhibit A contains merely "form terms and conditions, referencing neither Fluor nor the RFAAP." ECF 94 at 25-26. The Court relied upon cases articulating the general rule of contract construction that specific provisions override general ones. But that principle cannot apply here.

First, none of the LOD provisions specifically reference the Parties or the Project; accordingly, the LOD provisions set forth in Sections 2.21 and Appendix J are not inherently more specific than Exhibit A. Moreover, as discussed above, the contemporaneous record of the Parties' negotiations is at odds with the Court's finding that Section 46 is a "form term . . . buried within the generalized terms and conditions." Rather, the full context of the Parties' negotiations reveals that when BAE first sent the draft NC Facility contract to Fluor, the LOD provisions in Section 2.21 and Exhibit A, § 46 limited damages to the Subcontract price (which was defined as the initial Subcontract price including all changes made to that price). See Exh. A at 10, 41. Thus, the Parties negotiated both versions of the LOD provision before the Subcontract was finalized and removed the "including all changes"

language from Section 46.

The terms and conditions set forth in Subcontract Exhibit A, including the LOD provision set forth in § 46 to the Subcontract, were among the most negotiated terms between the Parties. In fact, the Parties continued to revise § 46 <u>several days after</u> the December 7, 2015 email exchange between Fluor and BAE discussing how the $30 million limitation would interact with the Parties' respective insurance policies. <u>See</u> Exh. B at 33. During these negotiations, the Parties removed the language "including all changes" from Section 46. Hence, the Parties' intent was clearly to remove that clause. Therefore, no basis exists for prioritizing two LOD provisions over the third. Instead, the Court must either reconcile the clauses, or find an ambiguity.

The Court's finding that § 46 is, somehow, a form term cannot be divined from the pleadings alone, particularly when construed in the light most favorable to Fluor. The finding also lacks factual support in the record. Given the foregoing, Fluor's motion for reconsideration should be granted.

## 2.    The Court should not have relied upon BAE's parol evidence

In its Opinion, the Court explicitly found the LOD provisions to be unambiguous. Yet, the Court considered, and accepted as true, BAE's parol evidence in the form of certain emails between BAE and Fluor employees. ECF 94m at 31 n.5. Virginia law does not permit the Court to consider such evidence, or to apply it so broadly without additional context at this stage of the litigation. <u>See</u> Zehler v. E. L. Bruce Co., 208 Va. 796, 797 n2 (1968) (parol evidence rule is an issue of substantive law rather than a rule of evidence).

In Virginia, parol evidence is admissible only <u>after</u> the Court determines the relevant contract to be ambiguous. <u>Nextel Wip Lease Corp v. Saunders</u>, 666 S.E.2d 317, 322-23 (Va. 2008); <u>Neil v. Wells Fargo Bank, N.A.</u>, 686 F. App'x 213, 216–17(4th Cir. 2017) (unpublished).[1] Although the Court

---

[1] In addition to being parol evidence, the December 7, 2015 e-mail introduced by BAE constitutes hearsay under Fed. R. Evid. 801 for which no exception has been established. In its decision and at oral argument, the Court also ascribed actual and/or apparent authority to the Subcontract's Points of Contact without first exploring or confirming the authorities

states that it interpreted the Subcontract based on its plain meaning, the Court looked to BAE's parol

evidence to "confirm[]" its conclusion. ECF 94, at 31 n.5. During oral argument - before issuing its

written opinion - the Court made the following statements related to the email in question:

> Well, here's the problem I have with this, with this claim for damages above 30 million: **You-all** attach an e-mail between the two people that are the point of contact on this contract in which Fluor's representative says, "If we sue each other, we're limited to 30 million." Now, I know I can't consider that at 12(f) because it's -- **well, maybe I can**; I don't know. But whether I deal with this at Rule 12 or Rule 56, how in the world can Fluor bring a claim for more than $30 million at the end of the day? I mean, where is the good-faith basis for it? Their own contracting person said, "We can't bring a claim for more than $30 million." That's what this contract says.

Tr. 9:5-16. (emphasis added).

The Court then offered an interpretation of the email, and made predictions as to how Fluor's

witnesses would testify in forthcoming depositions:

> I'm just saying there's a lot of time and effort teed up in this litigation where Fluor is seeking $185 million in damages when their own documents, their own e-mails establish that Fluor understands they can't sue for any more than 30 million. So I don't understand how counsel can in good faith make these arguments, **because at the end of the day, when that person is deposed, they're going to say what that e-mail says.**

Tr. 10:5-12. (emphasis added).

The Court continued to opine that Fluor's evidence would establish its understanding that

changes were capped by the LOD provisions, although the Court had seen only one e-mail submitted

by BAE and no other pre-contractual communications between the Parties:

> THE COURT: Well, I mean, you know, regardless of who presented it, I mean how can you-all in good faith make a claim for $185 million when your own evidence is going to be that, from your own person who is the point of contact on this signed contract, says you're limited to 30 million?

---

such POC's had related to pre-contract negotiations. Accordingly, the email should not have been construed as admissible admissions against interest regardless of how they are interpreted.

. . . .

> THE COURT: I don't know. I'm just wondering how counsel, in good
> faith, can make a claim for 185 million when your own evidence is
> going to be you're limited to 30.

Tr. 21:4-19.

The Court's reliance on, and interpretation of, the email submitted by BAE was respectfully improper. Either at the summary judgement stage, or at trial, Fluor would introduce evidence demonstrating that the $30 million LOD provisions were never intended by the Parties to result in a situation where BAE could unilaterally direct Fluor to perform and accept the cost of BAE directed or caused changes in excess of $30 million. Such evidence, however, including BAE's parol evidence, is inappropriate in the context of a Rule 12(f) or Rule 12(b)(6) motion.

In any event, when read closely, it becomes clear that the email has been misunderstood. "Changes" are not mentioned in the e-mail, nor are the type of damages that could be recovered. BAE simply asked whether the $30 million limit applied after exhaustion of existing insurance policies (which are commonly used as the value for contractual limitations of liability), or whether it applied regardless of existing policy limits (which could exceed or fall short of $30 million). Fluor responded that it took the latter interpretation. Because it misinterpreted the context in which these emails were exchanged, the Court did not request follow-up information that would clarify their actual meaning.

### 3. The Court found the LOD provisions unambiguous although they are subject to at least two reasonable interpretations

Having concluded that the two LOD provisions containing the words "including all changes" override the third provision, the Court went on to find that the $30 million limitation on damages applies to costs Fluor incurred to perform changes to the Subcontract scope of work caused or directed by BAE under the Changes clause. This interpretation of the LOD provisions is not well founded.

As Fluor previously asserted, a bald reference to "changes," without any further context, cannot reasonably be read to refer to changes to Fluor's scope of work. See ECF 81, at 64; Tr. 26:13–22, 25, 27:1–18. Indeed, when the Parties referenced such changes in other Subcontract provisions, they did so much more specifically, including in the provision immediately following the LOD provision. See Subcontract Section 2.22 ("There is $14 million in the price of this contract for unforeseen contingencies, other than changes to the contract compensable under the Changes clause.").

Moreover, the Court's decision does not consider a second reasonable interpretation of the LOD provisions. Specifically, the provisions' reference to "all changes" does not refer to changes to the Subcontract's scope of work, but to changes the Parties might make to "the value" of the contractual limitation of damages. See ECF 81, at 64; Tr. 26:13–22, 25, 27:1–18. This interpretation actually gives effect to all words within the LOD provisions better than BAE's interpretation, under which the words "being defined as the value" appear superfluous. In fact, the Parties have a history of increasing contractual limitations of liability to accommodate changing Project conditions. For example, in the Boilers project, a related project at the RFAAP, these same Parties increased a contractual not-to-exceed amount numerous times throughout performance of the Project.

This interpretation is supported by the contemporaneous record and the practice of the Parties during the Project. As mentioned, when BAE sent a draft version of the NC Facility Subcontract to Fluor on November 30, 2015, both the LOD provision set forth in Section 2.21 and the one set forth in Exhibit A § 46 articulated that damages would be "limited to the Subcontract Price for the goods or services to be provided by Subcontractor, 'Subcontract Price' being defined as the cumulative value of [sic] Subcontract including all changes." See Exh. A at 10, 41. In other words, the clause originally provided for the damages cap to increase in lock-step with any increase to the value of the Subcontract. The Parties ultimately agreed on a flat limitation of $30 million, rather than one tied to the value of

the Subcontract. They never intended, however, to eliminate the ability to increase the damages cap. Preserving that intent, "including all changes" refers to changes that might be made to the value of the limitation of damages.

Thus, the phrase "including all changes" does not resolve whether the Parties intended to cap the amount recoverable for performing changes to Fluor's scope of work caused or directed by BAE. Instead, to fully understand the Subcontract, the Court must analyze the interaction of the LOD provision with the Subcontract's Changes Clause set forth in Exhibit A § I.1.A.3.(j), which states that no other provision limits recovery for and changes, and permit fulsome examination of relevant parol evidence. Even if the Court is not persuaded that Fluor's interpretation is the superior one, it must find an ambiguity and permit discovery of parol evidence given that Fluor's interpretation is reasonable. See CNX Gas Co. v. Rasnake, 752 S.E.2d 865, 867 (Va. 2014); Plum Creek Timberlands, L.P. v. Yellow Poplar Lumber Co., Inc., No. 1:13CV00062, 2016 WL 6837173, at *4 (W.D. Va. Nov. 21, 2016). The Court's decision did not consider the reasonableness of Fluor's interpretation set forth above when rendering its opinion. The foregoing justifies reconsideration.

### 4. The Court's Interpretation Results in an Unreasonable Reading of the Subcontract

Under this Court's interpretation of the Subcontract, Fluor's sole remedy for BAE's directed and constructive changes exceeding $30 million was for Fluor to suspend performance and walk off the Project. However, the Subcontract terms required Fluor to continue performance even in light of a dispute with BAE. Section 3(a) of the Subcontract's Changes clause states specifically that, pending the resolution of any alleged change "[Fluor] will diligently proceed with the Contract as modified."

During the Project, BAE asserted Section 3(a) and directed Fluor to continue working regardless of whether the work was outside the Subcontract scope of work. See Exh. C and ECF 81 at 59. BAE stated "Whether the work is within or outside the scope of the Subcontract, Fluor is required to proceed with performance of the Subcontract . . . If Fluor believes the work is outside the

scope of the Subcontract, Fluor is still required to proceed with the work and may not stop." Id. (emphasis added). This letter reveals BAE's contemporaneous interpretation of the Parties' Subcontract during project performance. And notably, BAE never cited the LOD provisions as limiting Fluor's entitlement to recover the cost of changes.

At oral argument, BAE changed its tune entirely from the position it took during the Project. BAE told this Court that Fluor's remedy in the face of financial exposure above $30 million was to simply stop performing work on the Project. Jan. 14, 2022 Tr. 36:19–25, 37:1–6 (asserting that Fluor's remedy was to perform $30 million in work "and no more"). On its face, BAE's position, and any such interpretation of the Subcontract, is unreasonable given Section 3 (a) of the Changes clause. By interpreting the LOD provisions to exclude the recoverability of BAE-caused changes under the Subcontract's Changes clause, the Court endorsed and adopted BAE's unreasonable interpretation and did not harmonize Section 3(a) with the other Subcontract terms.

The dispute before this Court is precisely what VA Code Ann. § 11-4.1:1 attempted to avoid; a situation where a Prime Contractor inserts or relies on a purported limitation of damages provision, demands work outside of a contract's original scope, invokes a clause requiring the subcontractor to continue working in the face of a dispute, declines to pay for the additional work during project execution, and at the end of the job seeks to take advantage of the purported limitations of damages provision(s). This reading of Fluor's Subcontract is particularly irrational where, as here, BAE never articulated its position on the LOD clause during contract performance, directed Fluor to continue performing, and received millions in additional scope at no cost. The foregoing justifies reconsideration. [2]

---

[2] BAE's conduct during the course of performance should estop it from asserting this position now. In addition, by directing Fluor to incur costs beyond $30 million without advising Fluor until this litigation that it interpreted the damages cap in such a way that Fluor could not recover its cost of performance, BAE violated its duty of good faith and fair dealing. By granting BAE's Motion to Strike, the Court has effectively (and prematurely) precluded Fluor from presenting evidence on these issues.

**C.** **The Court Incorrectly Determined that the Virginia Code Does Not Invalidate BAE's Interpretation of the LOD Provisions**

In its Opinion, the Court misinterpreted VA Code Ann. § 11-4.1:1. That Statute provides that contract provisions purporting to waive or diminish a subcontractor's "right to assert claims for demonstrated additional costs in a contract executed prior to providing any labor, services, or materials" are null and void. This Court found that the Statute did not apply in this matter because Fluor performed work on the "Project" before executing the Subcontract. In arriving at this conclusion, the Court was incorrect in its findings: (1) about the work Fluor performed under the UCA contract; and (2) the distinction between the Subcontract and the UCA contract for purposes of the Statute.

**1.** **Fluor did not Perform $32 million in Construction Work under the UCA Contract as found by the Court**

The Court's determination that VA Code Ann. § 11-4.1:1 is inapplicable rests largely on its factual conclusion that Fluor performed "substantial services" on the "Project" when performing under the UCA contract. The Court's interpretation of the VA Code in this regard is incorrect.

As noted above, it is unclear where the Court derived its conclusion that Fluor "completed approximately $32 million of work" under the UCA contract. ECF 94 at 28-29. Neither party appears to allege such facts in their pleadings. BAE alleges in paragraph 63 of its Complaint that the UCA contract was "funded" up to $31,886,646.00, but never explicitly alleges that Fluor performed work at that value. ECF 1 at ¶ 63. In fact, in paragraphs 72 and 75 of its Complaint, BAE alleges Fluor performed little to no work under the UCA contract.

On the other hand, Fluor's Counterclaim alleges that the Parties executed the UCA contract on or about October 15, 2015, and that the UCA contract was a separate and distinct agreement from the Subcontract. Countercl. ¶¶ 85, 89. In fact, the UCA contract has its own Limitation of Liability provision, its own Terms and Conditions, and its own contract period. ECF 1-4. The UCA contract also states that the executed Subcontract would "supersede this UCA in its entirety." Thus, as a matter

of law, the UCA is a separate legal document from the Parties' Subcontract. Indeed, Fluor's Counterclaim pleads that "all work performed by Fluor before execution of the Subcontract on December 17, 2015 was performed under the UCA and not the Subcontract." Id. (emphasis added). Contemporaneous records show the Parties continued to negotiate terms and conditions of the Subcontract in November and December of 2015, well after the terms and conditions applicable to the UCA contract were finalized. See Exhs. A-C.

The UCA contract ended on December 3, 2015, two weeks before the Parties executed the Subcontract. ECF 1-4 at 21. The Court nevertheless found that Fluor performed $32 Million under the UCA contract, which is simply incorrect. As the non-moving party, Fluor was entitled to have its factual allegations, i.e. that all work performed before Subcontract execution was performed under the separate and distinct UCA contract, accepted as true and construed in the most favorable light. Had this standard been applied, the appropriate outcome would be to deny BAE's Motion to Strike. These matters, therefore, justify reconsideration.

### 2. The Court incorrectly concluded that previous work on a "Project" forfeits a contractor's protections under the Statute.

The Court's finding regarding VA Code Ann. § 11-4.1:1 rests upon a misinterpretation of the statutory language. Specifically, the Statute applies to invalidate claim waivers set forth "in a contract executed prior to providing any labor, services, or materials." (emphasis added). In other words, the Statute prohibits prospective claim waivers in a contract, only. The statutes does not refer to "projects."

The Court found that Fluor forfeited its protections under the Statute by performing work on the "NC Project" before executing the Subcontract. ECF 94 at 28. Yet, the Court acknowledges that such work was performed under the UCA contract and not under the separate Subcontract. Id. ("On or about October 14, 2015, Fluor and BAE executed an Undefinitized Contract Action ('UCA') pursuant to which Fluor began work on the NC Project while the Subcontract was negotiated and finalized."). Nothing in the Statute is so broad as to deny protection to contractors claiming additional

costs merely because they previously performed work on the same "project." In fact, the word "project" does not appear in the Statute. Instead, the Statute refers repeatedly to waivers "in a contract." We must presume that this formulation was purposeful by the VA Legislature.

The Court's expansion of the statutory language from "contract" to "Project" has broad implications that were not clearly intended by the VA Legislature. See Tr. 32:14–19. Like here, it is common for contractors to execute separate "contracts" for various phases of a single "project." For example, contractors often enter a Phase I design contract followed by a Phase II construction contract, all for the same Project. In fact, on the NC Facility Project, Fluor and BAE entered multiple contracts, including a contract for the Cutter Warehouse, and for a MAT foundation.. Here, the Court's ruling would render a contractor performing on a later phase of a multi-phased Project unable to claim the protections afforded by the Virginia Legislature because of previous work the contractor performed on "the Project." Nowhere in the Statutory language or in the legislative history is this outcome contemplated.[3]

The practical impact of the Court's ruling creates the exact injustice the Virginia legislature sought to prohibit. The Court's ruling enforces a purported prospective waiver of Fluor's right to over $150 million in demonstrated additional costs based upon BAE's reliance upon ambiguous clauses contained in a very voluminous and complex contract. In essence, the Court's ruling has allowed BAE to order a "gold plated" facility at almost twice the original contract price, relying upon the ambiguous LOD clauses to limit BAE's liability to $30 Million after contract completion. Under the Court's ruling, every other contractor in Virginia is subject to the same fate, despite the Legislature's clear intent to

---

[3] The Court's decision also appeared to focus on the fact that both parties to the case are sophisticated contractors, and therefore the concerns that led the legislature to enact VA Code Ann. § 11-4.1:1 are inapplicable. ECF 94 at 29. But no distinction in the Statute is made between small or large contractors. Instead, the statute applies across the board to protect all subcontractors from predatory prospective claim waivers.

avoid such an injustice. For the reasons above, this Court should reconsider and reverse its Opinion related to the LOD provisions and application of the Virginia Code to this matter.

## IV.    CLARIFICATION OF THE COURT'S OPINION IS NECESSARY TO IDENTIFY THE CLAIMS FLUOR MAY PURSUE IN DISCOVERY AND AT TRIAL

Should the Court not reconsider and change its Opinion of March 30, 2022, as Fluor respectfully requests above, Fluor requests that the Court clarify its Opinion. In its Opinion, the Court asserted that it had "narrowed the issues" in this case and, therefore, denied BAE's Motion to Bifurcate. ECF 94 at 42 n.8. However, the Court did not strike any particular claim in Fluor's Counterclaim. It is, therefore, unclear whether the Court's ruling functions to: (1) allow Fluor to present its evidence for all of its PCNs and their corresponding damages, but then limits a verdict in Fluor's favor to $30 Million; or if it (2) bars Fluor entirely from pursuing discovery and proving damages that cross over the $30 Million mark. Given the import of this question on the discovery efforts and the trial in this case, Fluor respectfully requests that the Court clarify its opinion.

### A.    Standard of Review

Federal Rule of Civil Procedure 60(a) ("Rule") authorizes the Court to correct a "mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). The Court may do so on motion or on its own, with or without notice. Id. Rule 60(a) permits the Court to "'perform a completely ministerial task' []such as 'making a judgment more specific.'" Sartin v. McNair L. Firm PA, 756 F.3d 259, 265 (4th Cir. 2014) (quoting Caterpillar Fin. Servs. Corp. v. F/V Site Clearance I, 275 F. App'x 199, 204 (4th Cir. 2008) (per curiam; unpublished)). Whether to clarify an order by making it more specific is within the Court's discretion. Id. Clarifying the Court's opinion of March 30, 2022, to specify its effect on the litigation of Fluor's case is well within the types of tasks permitted by Rule 60(a).

**B.     The Court's Opinion Is Unclear Regarding What It Struck, and Its Resulting Impact Upon Fluor's Ability to Present All of Fluor's Damages**

The Court's Opinion granting BAE's Motion to Strike leaves unclear what effect the ruling has on Fluor's ability to present and prove its damages that exceed $30 Million. Fluor respectfully requests clarification on this point. Specifically, Fluor requests clarity on whether it: (1) remains entitled to conduct discovery on and present all of its claims and the corresponding damages; or (2) cannot conduct discovery on and present claims that exceed the $30 Million line.

When granting motions to strike, courts generally specify the <u>exact</u> language, paragraphs, or docket entries that are being struck. <u>See</u> <u>Bhattacharya v. Murray</u>, No. 19cv54, 2022 WL 808500, at *6 (W.D. Va. Mar. 16, 2022) (ordering a party to strike specific allegations from its proposed pleading); <u>Jones v. City of Danville</u>, No. 20cv20, 2020 WL 6063063, at *3 (W.D. Va. Oct. 14, 2020) (striking specific, numbered paragraphs); <u>Tippman Eng'g, LLC v. Innovative Refrigeration Sys., Inc.</u>, No. 19cv87, 2020 WL 1644985, at *2 (W.D. Va. Apr. 2, 2020) (striking specific affirmative defenses); <u>Williams v. Lipscomb</u>, No. 17cv446, 2018 WL 3672752, at *5 (W.D. Va. Aug. 2, 2018) (striking specific paragraphs and particular clauses within other specified paragraphs); <u>Stinnie v. Holcomb</u>, No. 16cv44, 2017 WL 11615521, at *3 (W.D. Va. May 22, 2017) (striking specific docket entries); <u>Hooper v. BWXT Gov't Grp., Inc.</u>, No. 16cv37, 2016 WL 6538000, at *6 (W.D. Va. Nov. 3, 2016) (striking specific language from paragraphs); <u>Dix v. Constr. Metal Prods., Inc.</u>, No. 15cv24, 2016 WL 4435276, at *2 (W.D. Va. Aug. 19, 2016) (same as <u>Tippman Eng'g</u>). This practice puts the party on notice of what portions of its pleadings are no longer active.

As the Court knows, Fluor's counterclaim is not a run-of-the-mill lawsuit that alleges a single, discrete injury with corresponding damages. Instead, its Counterclaim presents thirty-nine (39) distinct PCNs of differing amounts, all of which it seeks recovery from BAE. <u>See</u> Fluor Countercl., ECF 29, at 53–54. Although this Court granted BAE's Motion to Strike, the Court's Opinion does not state that it struck any of Fluor's claims, PCNs, specific allegations, or paragraphs. Nor did the Court direct

Fluor to amend its Counterclaim to reflect the ruling on the damages limitation.

In sum, it is unclear to what extent the Court's ruling limits Fluor's ability to bring forward its evidence on all of its PCNs and their damages. The question of whether Fluor is or is not barred from conducting discovery and presenting all of its damages is key.

### C. The Appropriate Application of a Damages Limitation is to Allow a Party to Present Its Entire Case and then Impose the Cap on the Verdict

Fluor maintains its position that the LOD provisions are unenforceable as a matter of contract interpretation and under VA Code Ann. § 11-4.1:1. Following this Court's ruling to the contrary, however, the Court must apply the clauses appropriately. Specifically, the proper application of an alleged damages cap is to allow Fluor to present its entire case – and then impose the purported damages limitation upon a verdict.

Notably, BAE recognizes Fluor's ability to pursue discovery on all of Fluor's PCNs and to present all of Fluor's damages at trial. In its Opposition to Fluor's Motion to Compel Discovery, BAE stated: "BAE understands and agrees that enforcement of the liability cap will not cut off Fluor's right to seek discovery on any of its PCNs . . . " ECF 68 at 11.[4] Nevertheless, this Court indicated that it had "narrowed the issues," and BAE recently changed its position regarding discovery, stating to Fluor on April 4, 2022: "now that the Court has granted the motion to strike and reduced the amount in controversy by more than $150 million, BAE believes that the parties should reevaluate the scope of discovery."

As this Court has recognized, a damages limitation "come[s] into play" only after the "jury renders its verdict." Cain v. Priority Healthcare Corp., No. 05cv665, 2006 WL 2434238, at *2 (W.D.

---

[4] In its Reply Brief in Support of its Motion to Strike, BAE also recognized Fluor's ability to present all of Fluor's claims. ECF 50 at 18. BAE argues, however that the LOD provisions would neither "waive nor diminish" Fluor's right to assert its claims under the Virginia Statute. Fluor disagrees. By refusing to allow recovery of Fluor's "demonstrated additional costs" above $30 Million, the LOD provisions, as interpreted by this Court, certainly diminish and waive Fluor's rights to fully assert its claims.

Va. Aug. 21, 2006) (Urbanski, J.). It is true that one purpose of a Motion to Strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Jones, 2020 WL 6063063, at *1 (quoting Gregory v. Belfor USA Grp., Inc., No. 12cv11, 2012 WL 2309054, at *1 (E.D. Va. June 15, 2012)). This purpose, however, must not be wrested from its proper context. As Jones and several other cases state, this purpose refers to avoiding expenditures of time, money, and effort on "spurious issues." Id. Spurious issues include "allegations [that] have no possible relation or logical connection to the subject matter of the controversy." Childress v. Richardson-Wayland Elec. Corp., No. 15cv485, 2016 WL 308809, at *2 (W.D. Va. Jan. 25, 2016) (emphases added; quoting Bandy v. Advance Auto Parts, Inc., No. 11cv365, 2012 WL 831027, at *2 (W.D. Va. Mar. 6, 2012)); see Williams, 2018 WL 3672752, at *5 (striking, in a defamation suit, specific language relating to the defendant's reputation in the community and alleged criminal record); Bailey v. Wash. Area Council of Eng'g Lab'ys, No. 14cv59, 2016 WL 5173406, at *5 (W.D. Va. Sept. 21, 2016) (striking claims that the court already dismissed with prejudice where the plaintiff attempted to reassert them in an amended complaint).

In other words, Rule 12(f)'s function of "avoid[ing] the expenditure of time and money . . . litigating spurious issues" is not intended to be an end run around a party presenting its case fully. Jones, 2020 WL 6063063, at *1. Instead, the Court should follow the approach taken by Virginia courts when applying the Commonwealth's statutory cap on medical-malpractice damages: allow a party to present its case fully, and impose any damages limitation on the verdict to the extent it exceeds the applicable limit. See Wright v. Eli Lilly & Co., No. 03-2891, 2004 WL 2157420, at *12–14 (Va. Cir. Ct. Sept. 21, 2004); Bennett v. Riverside Reg'l Med. Ctr., No. 23629, 1997 WL 1070546, at *2 (Va. Cir. Ct. Mar. 17, 1997).

Accordingly, if the Court maintains that the LOD clauses are applicable, it must allow Fluor to pursue discovery and bring its entire case and then apply the limitation only after trial.

V.      <u>**CONCLUSION**</u>

For the factual, legal, and procedural reasons outlined above, Fluor respectfully requests that the Court reconsider and revise its Opinion related to BAE's Motion to Strike and the Subcontract's Limitation of Damages provisions. Should the Court decide to maintain its March 30, 2022 Opinion without change, Fluor requests that this Court clarify the impact of its March 30 Opinion on the proceedings in this case and the allegations raised in Fluor's Counterclaim.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of April, 2022, a copy of the foregoing was

delivered via the CM/ECF system to the following:

Todd M. Conley (VSB 89839)
Jeffrey J. Golimowski (VSB 93525)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, Virginia 22102
Tel: (703) 394-2275
Fax: (703) 790-2623
todd.conley@wbd-us.com
jeff.golimowski@wbd-us.com

D. Stan Barnhill (VSB 22978)
Joshua R. Treece (VSB 79149)
Justin E. Simmons (VSB 77319)
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1400
Roanoke, Virginia 24011
Tel: (540) 983-7600
Fax: (540) 983-7711
barnhill@woodsrogers.com
jtreece@woodsrogers.com
jsimmons@woodsrogers.com

Karen M. Stemland (VSB 47167)
WOODS ROGERS PLC
123 East Main Street, 5th Floor
Charlottesville, Virginia 22902
Tel: (434) 220-6826
Fax: (434) 566-0473
kstemland@woodsrogers.com

*Attorneys for BAE Systems Ordnance Systems, Inc.*

Respectfully submitted,

s/ Scott P. Fitzsimmons
Scott P. Fitzsimmons (VSB 68147)
WATT, TIEDER, HOFFAR
& FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102

24

Tel: (703) 749-1000
Fax: (703) 893-8029
sfitzsimmons@watttieder.com

*Attorneys for Fluor Federal Solutions, LLC*