**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | |
|---|---|
| BAE SYSTEMS ORDNANCE SYSTEMS, INC., | |
| *Plaintiff, Counterclaim Defendant,* | |
| v. | Case No. 7:20-cv-587 |
| FLUOR FEDERAL SOLUTIONS, LLC, | |
| *Defendant, Counterclaim Plaintiff.* | |

**BAE SYSTEMS ORDNANCE SYSTEMS, INC.'S**
**MEMORANDUM IN OPPOSITION TO MOTION FOR**
**RECONSIDERATION AND FOR CLARIFICATION**

BAE Systems Ordnance Systems, Inc. ("BAE"), by counsel, hereby files this memorandum in opposition to the Motion for Reconsideration and for Clarification (Dkt. 96) filed by Fluor Federal Solutions, LLC ("Fluor") challenging this Court's Memorandum Opinion (Dkt. 94) and Order (Dkt. 95) granting BAE's Rule 12(f) motion to strike "allegations in Fluor's Counterclaim, including Paragraphs 223, 227–228, purporting to claim entitlement to and seeking recovery of amounts in excess of the parties' $30M damages cap for 'all changes and [as] the maximum liability for damages' 'arising under or related to [the] Subcontract'" (Dkt. 36).

## I.  ARGUMENT SUMMARY

In its Memorandum Opinion, this Court correctly held: "The Subcontract unambiguously provides that BAE and Fluor agreed to limit any claim for damages, including for changes, to $30 million."  Dkt. 94 at 28.  The Court was clear that its legal conclusion applying "the $30 million limitation of damages to Fluor's counterclaim" was drawn "from the plain meaning of the Subcontract

itself," and not in reliance on *any* extrinsic evidence. *Id.* at 28, 31 n.5; *see generally id.* at 22–31. And the Court properly and correctly recognized that there are no grounds upon which Fluor can evade the parties' agreed $30 million cap for all damages, including all changes, arising under or related to the Subcontract. *See, e.g., id.* at 28–31.

Nothing in Fluor's Motion for Reconsideration can even *conceivably* alter this Court's proper (and inescapable) legal conclusions that the cap is unambiguous, includes all changes, is enforceable and binding on the parties, and precludes Fluor's allegations in its Counterclaim seeking amounts in excess of the parties' damages cap. Nonetheless, after having been provided ample opportunity to extensively brief and argue in opposition to BAE's Motion to Strike, including receiving leave to file a Sur-Reply (Dkts. 51, 61) and submitting supplemental demonstrative arguments (Dkt. 81) following an hours-long hearing, Fluor now asks this Court to reconsider its legal conclusions (which are entirely grounded in the plain and unambiguous language of the parties' Subcontract) without *any* credible argument in support.

In fact, Fluor primarily relies on newly-submitted extrinsic evidence. Fluor first relies on draft versions of the subcontract but fails to show the complete text of the parties' exchange; the complete version (provided herewith) entirely undermines Fluor's arguments and instead supports the Court's legal conclusions. And second, Fluor relies on an August 20, 2017 BAE letter to support its argument that the parties' damages cap does not apply to changes. This pre- and post-contractual extrinsic evidence, however, bears no weight and cannot affect the Court's correct and proper legal conclusions. *See Bentley Funding Grp., L.L.C. v. SK & R Grp., L.L.C.,* 609 S.E.2d 49, 58 (Va. 2005) ("[T]he trial court erred in deeming [a party's] post-contractual conduct as evidence of an intent contrary to the wording of the Contract. Where no 'obscurity exists . . . the acts of the parties done under the contracts' bear no weight 'as an indication of their intention.'" (quoting *Moore v. Chesapeake & O.R. Co.*, 167 S.E. 351, 360 (Va. 1933))); *Langman v. Alumni Ass'n of Univ. of Va.*, 442 S.E.2d 669, 674 (Va. 1994) ("[P]arol

evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional, written instrument." (quoting *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984))).

Fluor's Motion for Reconsideration should be rejected out of hand because:

(1) The Court applied the proper standard, and properly concluded that all Limitation on Damages ("LOD") provisions are consistent and unambiguous because $30 million is twice "*defined* as the value including all changes and the maximum liability for damages," and that "definition" of $30 million applies with equal force to § 46 (Dkt. 94 at 26);

(2) Fluor plainly misconstrues this Court's Memorandum Opinion on the Motion to Strike, which was not founded on BAE's factual allegations in its Complaint, but on the unambiguous language of the Subcontract and Fluor's *own* factual allegations admitting that it provided labor, services, or materials in connection with the Undefinitized Contract Action ("UCA") "to allow the Parties the time needed to negotiate the Subcontract terms and conditions" and *prior to executing* the Subcontract that contained the LOD and indisputably incorporated the UCA (*see, e.g.,* Dkt. 94 at 28–29 (citing Fluor's Counterclaim, Dkt. 29 at 33, and the UCA, Dkt. 1-4 at 2));[1]

(3) Fluor's statutory construction of Virginia Code § 11-4.1:1 remains fundamentally and fatally flawed, and this Court's reference to the "NC Project" in its analysis of § 11-4.1:1 was appropriate—indeed "Project" is expressly defined in the Subcontract to refer to all work required

---

[1] *See also* Dkt. 1-2 at 4 (Subcontract incorporating all UCA line items on the first page following the Purchase Order at the very outset of the Subcontract); Dkt. 1-2 at 5 (expressly incorporating the UCA, including funding and modifications, "prior to definitizing the subcontract agreement"); Dkt. 29, ¶ 89 (Fluor's Counterclaim *admitting* that Fluor performed work under the UCA, but drawing a *properly disregarded legal conclusion* that this work was unconnected to the Subcontract, when the UCA is plainly incorporated into the Subcontract and for the same "Project," as defined in the Subcontract (Dkt. 1-2 at 17)).

under the "Contract Documents," including the Subcontract incorporating the UCA and modifications made through UCA Purchase Orders;[2] and

(4) Fluor's recycled (and properly rejected) argument that General Provision clause § I.1A.3(j) could somehow affect the LOD appearing elsewhere in the Subcontract is plainly erroneous because the language in § I.1A.3(j) is *expressly limited* to the clause in which it appears and cannot, under principles of contract construction, apply to the LOD.[3]

Fluor's extrinsic evidence, which is irrelevant because the LOD provisions are consistent and unambiguous, nonetheless unequivocally *supports* the parties' intent to cap damages at $30 million, *including all changes*, and raises further concerns with Fluor's responsibility to make good-faith arguments to this Court. In its Motion for Reconsideration, Fluor asserts that § 46 was specifically negotiated and that the parties "deleted the term 'including all changes' from the original language." (Dkt. 97 at 2). This representation is misleading at best, and omits critical information that should have been included with Exhibit B to Fluor's Motion for Reconsideration, but was not.

Finally, with respect to Fluor's Motion for Clarification, Fluor's arguments are likewise misguided and premature. The Court's Memorandum Opinion plainly recognizes that Fluor's allegations in Paragraph 223 of its Counterclaim, alleging "entitle[ment] to approximately $183,379,199.00 in" and "which Fluor seeks in this action," are superfluous (i.e., immaterial and impertinent) and thus stricken. *See, e.g.,* Dkt. 94 at 22 (granting BAE's Motion to strike allegations in ¶¶ 223, 227–228 that "seek[] damages exceeding $30 million as capped in the Subcontract"). No clarification is needed or required.

---

[2] *See supra* n.1; Dkt. 1-2 at 17 (defining "Project" and "Contract Documents" to include the UCA).

[3] The last sentence of subsection (j) in General Provision § I.1A.3, on which Fluor exclusively relies, states: "Except with respect to [the agreed not-to-exceed amount and schedule] limitations, **nothing contained herein** shall affect the right of the Parties to an equitable adjustment by reason of the change, **pursuant to this clause** [i.e., §I.1A.3(j)]."

Further, Fluor's request for clarification is premature. This Court can resolve issues relating to the proper scope of discovery when they arise, and those issues can be left to the sound discretion of the Court and Magistrate Judge, by evaluating specific discovery disputes and the various factors the Court considers in such disputes, including whether the scope is "proportional to the needs of the case, considering the importance of the issues . . . , the amount in controversy," etc. Fed. R. Civ. P. 26(b). In short, no clarification is required at this time because the Court's Memorandum Opinion and Order are clear.

Accordingly, Fluor's Motion for Reconsideration and for Clarification should be denied.

## II.  ARGUMENTS IN OPPOSITION TO THE MOTION FOR RECONSIDERATION

### A.  THE COURT APPLIED THE PROPER STANDARD AND PROPERLY CONCLUDED THAT THE SUBCONTRACT UNAMBIGUOUSLY CAPS DAMAGES AT $30 MILLION, INCLUDING ALL CHANGES.

In its Motion for Reconsideration, Fluor alleges that the Court "misapplied the standard applicable to a Rule 12(f) Motion" and "should have accepted the allegations in Fluor's Counterclaim either as true or in the light most favorable to Fluor." Dkt. 97 at 2. The Court, however, applied the proper standard, and properly disregarded legal conclusions and allegations that were contradicted by the Subcontract and other documents incorporated or adopted in Fluor's Counterclaim. *Cf. Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) ("When [a party] attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper."); *Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202 (4th Cir. 2001) (When required to construe facts in the light most favorable to the non-moving party, courts "need not accept as true the legal conclusions drawn from the facts or unwarranted inferences, unreasonable conclusions, or arguments, such as conclusory allegations in the complaint that are contradicted by the attachments." (internal citations and quotation marks omitted)).

As an initial matter, the Court cited the three LOD provisions in the Subcontract that were incorporated by reference in Fluor's Counterclaim.  Dkt. 94 at 7 (citing the Subcontract, Dkt. 1-2 at 12 (§ 2.21), Dkt. 1-2 at 42 (§ 46), and Dkt. 1-2 at 71 (§ 36)); *see also* Dkt. 29, ¶¶ 1, 232 (Counterclaim incorporating the Subcontract).  The Court correctly recognized that "Virginia adheres to the 'plain meaning' rule: [w]here an agreement is plain on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself. . . . This is so because the writing is the repository of the final agreement of the parties."  Dkt. 94 at 22 (quoting *Berry v. Klinger*, 300 S.E.2d 792, 796 (Va. 1983)).

The Court further (and correctly) recognized that it is a cannon of contract construction that "a specific provision of a contract governs over one that is more general in nature."  *Id.* at 25–26.[4] The Court then correctly held:  "Consistent with the canon of contract construction referenced in these cases, the fact that §§2.21 and 36 ***specifically define*** the limitation of damages to 'includ[e] all changes' ***controls §46***, which contains the same general limitation of damages but lacks the specific 'including all changes' language."  *Id.* at 26 (alteration in original ) (emphasis added).

The Court's conclusion is unquestionably correct, as a matter of law, and in no way relies on factual allegations outside the scope of Fluor's Counterclaim.  Sections 2.21 and 36 twice define $30 million ("$30M being *defined* as the value including all changes and the maximum liability for damages") and that "definition" of $30 million plainly applies with equal force to § 46, as a matter of law.  *See Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, 528 F. Supp. 3d 407, 435 (E.D. Va. 2021) (finding the contract provisions at issue were plain and unambiguous, despite arguments to the contrary, because an "expressly defined term" must be read as applicable to the contract as a whole).  Indeed, the entire

---

[4] Citing *Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condominium, Inc.*, 709 S.E.3d 163, 170 (Va. 2011), and *Asphalt Roads & Materials Co. v. Commonwealth*, 512 S.E.2d 804, 809 (Va. 1999) (Lacy, J., concurring) ("[S]pecific section of the contract overrides the more general contract provisions.").

point of defining terms in a contract is to have those specific definitions apply when the general term—here "$30M"—is used elsewhere *for the same purpose*, imposing a hard cap of $30 million, which *must*, under cannons of contract construction, include "all changes and the maximum liability for damages." *See Chantilly Const. Corp. v. Commonwealth, Dep't of Highways & Transp.*, 369 S.E.2d 438, 445 (Va. 1988) ("[A]ny apparent inconsistency between a clause that is general and broadly inclusive in character, and a clause that is more specific in character, should be resolved in favor of the latter.").

The Court likewise properly struck Fluor's Counterclaim allegations purporting to claim "entitlement to" and "seek[ing]" recovery of amounts in excess of the parties' $30 million damages cap.  Dkt. 94 at 22 (granting BAE's Motion to strike allegations in ¶¶ 223, 227–228 that "seek[] damages exceeding $30 million as capped in the Subcontract").  Rule 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  As this Court correctly recognized:  "In applying such rule, 'a district court has broad discretion in deciding whether to strike matters from pleadings.'"  Dkt. 94 at 13 (quoting *F.D.I.C. v. Willetts*, 882 F. Supp. 2d 859, 870 (E.D.N.C. 2012)).

"Immaterial matter is that which has no essential or important relationship to the claim for relief . . . and impertinent matter' consists of statements that do not pertain, and are not necessary, to the issues in question."  *Jones v. City of Danville*, 2020 WL 6063063, at *1 (W.D. Va. 2020) (internal citation and quotation marks omitted).  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Dkt. 94 at 13 (internal citation and quotation marks omitted).  Further, the Court correctly recognized that "[w]hen a damages cap exists, the court may decide to strike superfluous damages."  *Id.* at 14 (citing *Boren v. Nw. Reg'l Jail Auth.*, 2013 WL 5429421, at *12 (W.D. Va. 2013) (explaining that when Virginia state law provided a damages cap, the court could strike damages in

excess of the cap under Rule 12(f)), *abrogated on other grounds by Tilson v. Humphrey*, 2019 WL 6902677, at *6–7 (W.D. Va. 2019); *see also* Dkt. 37 at 5–6; Dkt. 38 at 8–11.[5]

The Court's Memorandum Opinion plainly recognizes that Fluor's allegations in Paragraph 223 of its Counterclaim alleging "entitle[ment] to approximately $183,379,199.00 in" and "which Fluor seeks in this action" are superfluous (i.e., immaterial and impertinent) and go *far* beyond what is properly in issue. *See, e.g.,* Dkt. 94 at 22. Indeed, the amounts above the LOD that Fluor sought were not even "potentially available," and the Court's striking of these allegations in no way disturbed Fluor's formal request for relief of "a sum not less than $75,000.00." *See, e.g.,* Dkt. 29 at Counts I–III, Wherefore clauses.

### B. FLUOR MISCONSTRUES THE COURT'S MEMORANDUM OPINION, WHICH DOES NOT RELY ON BAE'S FACTUAL ALLEGATIONS BUT ON THE SUBCONTRACT AND FLUOR'S COUNTERCLAIM.

With respect to Fluor's contention that the Court failed to "accept the allegations in Fluor's Counterclaim either as true or in the light most favorable to Fluor," Fluor is plainly mistaken, and Fluor overlooks the fact that the Court "need not accept as true the legal conclusions drawn from the facts or unwarranted inferences, unreasonable conclusions, or arguments, such as conclusory allegations in the complaint that are contradicted by the attachments." *Jeffrey M. Brown Assocs.*, 7 F. App'x at 202. Further, Fluor plainly misconstrues this Court's Memorandum Opinion, which was not founded on BAE's factual allegations in its Complaint, but instead on the unambiguous language of

---

[5] *Tabor v. Sutherland*, 2001 WL 520806 at *1 (W.D. Va. 2001) (striking plaintiff's claim for damages in excess of Virginia's medical malpractice cap, and finding "the **better course is to strike any claim for an amount above the cap as immaterial under Federal Rule of Civil Procedure 12(f)**" (emphasis added) (internal citation omitted)); *Canters Deli Las Vegas, LLC v. FreedomPay, Inc.*, 460 F. Supp. 3d 560, 574 (E.D. Pa. 2020) (granting defendant's Rule 12(f) motion to strike damages precluded by the parties' contractual limitation of liability provision on the grounds that such allegations are "immaterial and impertinent"); *Radiology & Imaging Specialists of Lakeland, P.A. v. FUJIFILM Med. Sys., U.S.A., Inc.*, 2021 WL 149027, at *4 (S.D.N.Y. 2021) (striking, pursuant to Rule 12(f), allegations seeking damages precluded by the parties' contractual limitation of liability provision).

the Subcontract and Fluor's *own* factual allegations admitting that it provided labor, services, or materials in connection with the UCA "to allow the Parties the time needed to negotiate the Subcontract terms and conditions" and *prior to executing* the Subcontract that contained the LOD and indisputably incorporated the UCA.  *See, e.g.,* Dkt. 94 at 28–29 (citing Fluor's Counterclaim, Dkt. 29 at 33, and the UCA, Dkt. 1-4 at 2).

In fact, in Paragraph 89 of its Counterclaim, Fluor *expressly alleges* and *admits* that it provided labor, services, or materials under the UCA *prior to executing* the Subcontract:  "**All work performed by Fluor** before execution of the Subcontract on December 17, 2015 was performed under the UCA." Dkt. 29, ¶ 89 (emphasis added).  In its conclusory legal arguments (which were properly rejected), Fluor alleges that this work was somehow unrelated and ignores the fact that the UCA was *expressly incorporated* into the Subcontract.  Dkt. 97 at 6, 16–17.

In point of fact, the Subcontract (that is part of Fluor's Counterclaim) unequivocally incorporates *all* UCA line items by reference on the very first page following the Purchase Order at the outset of the Subcontract:

| ITEM/ LN# DESCRIPTION | UM | REV | ORDER QUANTITY | BALANCE DUE | PROMISED DOCK | UNIT PRICE | EXTENDED PRICE | T X |
|---|---|---|---|---|---|---|---|---|
| 001  2-0700-20046-56735 | EA | | 3889394 | 3889394 | 04/30/2016 | 1.00 | 3,889,394.00 | N |
| CLIN 1 OPTION 1 STEEL PURCHASE, TEC AND GCS FOR OPTION1 | | | | | | | | |
| 002  2-0700-20046-56735 | EA | | 5442282 | 5442282 | 04/30/2016 | 1.00 | 5,442,282.00 | |
| CLIN 1 OPTION 2 ENGINEERING COST -  ZAPATA | | | | | | | | |
| 003  2-0700-20046-56735 | EA | | 4423385 | 4423385 | 04/30/2016 | 1.00 | 4,423,385.00 | N |
| CLN 1 OPTION 4-ELECTRICAL MATERIAL PURCHASE | | | | | | | | |
| 004  2-0700-20046-56735 | EA | | 4756680 | 4756680 | 04/30/2016 | 1.00 | 4,756,680.00 | N |
| OPTION 2 CLIN 2 TRAIN 1 | | | | | | | | |
| 005  2-0700-20046-56735 | EA | | 1947635 | 1947635 | 04/30/2016 | 1.00 | 1,947,635.00 | N |
| CLIN 1, OPTION 3A- LABOR | | | | | | | | |
| 006  2-0700-20046-56735 | EA | | 1325878 | 1325878 | 04/30/2016 | 1.00 | 1,325,878.00 | N |
| CLIN 2, OPTION 1 A-LABOR & HEAT EXCHANGERS | | | | | | | | |
| 007  2-0700-20046-56735 | EA | | 87078 | 87078 | 04/30/2016 | 1.00 | 87,078.00 | N |
| CLIN 3, OPTION 1 A- MUSTANG (500 HOURS) | | | | | | | | |
| 008  2-0700-20046-56735 | EA | | 10014314 | 10014314 | 04/30/2016 | 1.00 | 10,014,314.00 | N |
| CLIN 3 OPT. 1D DESIGN ENGINEERING | | | | | | | | |

Subcontract Description on  Page 3

Dkt. 1-2 at 4 (UCA line item work) (highlighting added); *compare* Dkt. 1-4 at 20 (same UCA line items identified as "Modification[s]").   Thereafter, the Subcontract further recognizes that the UCA, including funding for UCA work and UCA modifications "prior to definitizing the subcontract agreement," are "incorporate[d]" in the Subcontract.  Dkt. 1-2 at 5.

Indeed, the entire purpose of a UCA in Government and commercial contracting is to begin performance on the *very subcontract* that is in the process of definitization.  *See, e.g.,* 48 C.F.R. § 817.7003 (FAR UCA Policy) ("Undefinitized contract actions shall—(a) Be used only when—(1) The negotiation of a definitive contract action is not possible in sufficient time to meet the Government's requirements; and (2) The Government's interest demands that the contractor be given a binding commitment so that *contract performance can begin immediately*." (emphasis added)); 48 C.F.R. § 217.7403 (DFAR UCA Policy) (same).

Moreover, the Subcontract defines the "Project" as follows:  "'Project' means the total construction required under the Contract Documents."   Dkt. 1-2 at 17, §1A(1)(i).   "Contract Documents," in turn, are defined to "mean the instrument of contracting, such as 'PO,' 'Purchase Order,' 'Subcontract' or other such type designation, ***including all referenced documents***, exhibits . . . and attachments."   *Id.* at 17, §1A(1)(e).  This too, of course, is yet another incorporation of the UCA, and is grounded entirely in Fluor's Counterclaim.

Fluor makes much of the fact that the Court cited BAE's Complaint, rather than Paragraph 89 of Fluor's Counterclaim, to illustrate the ***undisputed fact*** that Fluor performed work (i.e., provided labor, services, or materials) under the UCA prior to executing the Subcontract.  Dkt. 97 at 16–17 (citing Dkt. 94 at 28–29).  These citations, however, are immaterial to the Court's *indisputably correct* conclusion that "[p]ursuant to the UCA, Fluor provided labor, services, and materials to BAE prior to negotiating and executing the Subcontract."  Dkt. 94 at 29.

As discussed below, Fluor's argument that it is somehow material to the Court's Memorandum Opinion and Order whether Fluor performed *all* rather than *some* of the $32 million of UCA work is misguided because the only relevant issue that the Court was looking to consider for purposes of Virginia Code § 11-4.1:1 was whether Fluor provided "*any* labor, services, *or* materials" "prior to" agreeing to the Subcontract.  Fluor itself alleges in its Counterclaim that it most certainly did.  Dkt. 29, ¶ 89.  And performing such labor, services, or materials for the later-definitized Subcontract was, as a matter of law, the very purpose of the UCA.  *See, e.g.,* 48 C.F.R. § 817.7003 (FAR UCA Policy) ("Undefinitized contract actions shall . . . [b]e used . . . so that *contract performance can begin immediately*," before subcontract definitization." (emphasis added)); 48 C.F.R. § 217.7403.

In essence, Fluor's Motion for Reconsideration is founded on an *immaterial* dispute as to whether the Court could have properly concluded from Fluor's Counterclaim that Fluor performed "*all*" $32 million of UCA work, even though the exact same *material* conclusion drawn by the Court (that Fluor provided "labor, services, or materials") follows, as a matter of law, from Paragraph 89 of Fluor's own Counterclaim:  "All work performed by Fluor before execution of the Subcontract on December 17, 2015 was performed under the UCA."  Dkt. 29, ¶ 89.  Fluor's focus on this immaterial issue highlights the baselessness of its motion.

## C.    FLUOR'S STATUTORY CONSTRUCTION IS FATALLY FLAWED, AND THE COURT'S REFERENCE TO THE "NC PROJECT" WAS PROPER.

As before, Fluor's statutory construction of Virginia Code § 11-4.1:1 is fundamentally and fatally flawed, and this Court's reference to the "NC Project" in its analysis of § 11-4.1:1 was indisputably correct.  As an initial matter, Fluor fails to appreciate the plain temporal language of § 11-4.1:1, which is emphasized below:

> A subcontractor as defined in § 43-1, lower-tier subcontractor, or material supplier *may not waive or diminish* his right to assert payment bond claims or his right to assert claims for demonstrated additional costs in a contract **in advance of furnishing any** *labor, services, or materials*.  A provision that waives or diminishes a subcontractor's, lower-tier

subcontractor's, or material supplier's right to assert payment bond claims or his right to assert claims for demonstrated additional costs *in a contract executed prior to providing any labor, services, or materials* is null and void.

This statute, by its plain temporal terms, contemplates an *exception* from its application where "prior to" "executing a contract" "*any* labor, services, or materials" are provided. There is absolutely no ambiguity in this regard.

This exception unquestionably applies here, and the Court's reference to the NC Project was entirely proper. Fluor admittedly performed work under the UCA. Dkt. 29, ¶ 89. The UCA work was for the same Project and the same Subcontract, which was in the process of being definitized. *Id.* ¶¶ 85, 89; Dkt. 1-4; *see also* 48 C.F.R. §§ 817.7003, 217.7403. And the UCA work, funding, and modifications were expressly incorporated into the Subcontract. *See, e.g.,* Dkt. 94 at 28–29 (citing Fluor's Counterclaim, Dkt. 29 at 33, and the UCA, Dkt. 1-4 at 2); Dkt. 1-2 at 4; Dkt. 1-2 at 5. Further, the Subcontract defined "Project" to include all work under the Contract Documents, which include the UCA. Dkt. 1-2 at 17, §1A(1)(e), (i).

There simply can be no dispute that the "labor, services, or material" that Fluor admittedly provided were *directly related* to the Subcontract, and were provided "in advance" of the "contract executed." Indeed, Fluor unequivocally admits (in accordance with the intent of a UCA under the FAR and DFAR) that the UCA was the intended precursor for work on the Subcontract "[t]o allow the Parties the time needed to negotiate the Subcontract terms and conditions." Dkt. 29 at 85; *see also* Dkt. 1-4; 48 C.F.R. §§ 817.7003, 217.7403. And the Court expressly relied on Fluor's allegations in making its determination. Dkt. 94 at 28 (citing Dkt. 29 at 33).

Fluor's arguments appear to rest on an incomprehensible and temporally impossible construction of the statute. Other than arguing that that the exception should not apply, it is unclear exactly how Fluor thinks this statute could operate differently while honoring its plain meaning. It appears, instead, that Fluor seeks to write out any exception to the statute and bar all prospective claim

waivers (which the LOD is not[6]), despite the plain statutory exception. Fluor even argues about industry practices (not present here) of phased construction where contracts are executed separately for each phase or each phase is its own mini-project, and questions how the statute will operate in those circumstances. That issue, however, is not present here. Instead, this project involves a single design/build Subcontract with a prior UCA that was expressly intended (consistent with federal contracting practices) to allow performance to begin on the Subcontract that was not yet executed, but in the process of being definitized. There was no phasing of the work into mini-projects, and Fluor's analogy is inapposite and irrelevant. When a court is confronted with such a hypothetical (and clearly distinguishable) situation, it (like this Court) should proceed based on the plain unambiguous language in the statute and determine whether a contract with a claim waiver was executed prior to providing *any* labor, services, or materials is related to the claim waiver at issue.

### D. FLUOR'S RECYCLED ARGUMENTS RELATING TO GENERAL PROVISION CLAUSE § I.1A.3(j) ARE BASELESS AND WERE PROPERLY REJECTED.

Fluor again asserts the same (properly rejected) argument that General Provision clause § I.1A.3(j) could somehow affect the LOD appearing elsewhere in the Subcontract, and incorrectly argues that the Court "did not harmonize" this clause with the LOD. Dkt. 97 at 9. As before, this argument is plainly erroneous because the language in § I.1A.3(j) is *expressly limited* to the clause in which it appears and cannot, under principles of contract construction, apply to the LOD. Further, contrary to Fluor's argument, the Court *expressly* (and correctly) recognized: "The court is required to harmonize the provisions of the Subcontract to reflect the parties' intent. In doing so, the court cannot agree with Fluor that the '[e]xcept as otherwise provided in this Subcontract' exempts the Changes provisions from the $30 million damages cap, particularly where nothing in the Changes

---

[6] Dkt. 50 at 18.

provisions provides any basis for such an exemption." Dkt. 94 at 28.  Again, the Court is indisputably correct, as a matter of law.

As BAE previously noted,  Fluor's argument that the LOD's boilerplate language "Except as otherwise provided in the Subcontract" somehow excludes the Changes clause from the LOD is absurd.  Neither the Changes clause nor §I.1A.3(j) in particular, expressly states (or even implies) that they are not subject to the LOD; in contrast the LOD expressly includes "all changes."  Further, "Except as otherwise provided in the Subcontract" refers, not to the Changes clause, but to other provisions in the Subcontract like the *indemnification, bond* and/or *insurance* provisions, which are plainly not subject to limitation.  *See, e.g.,* Dkt. 1-2, §I.1D.33(d);[7] *id.* §I.1D.34(a)–(b); *id.* §I.1D.35; *see also* Dkt. 50 at 11–15.

What plainly does not and cannot qualify under the LOD's "Except as otherwise provided in this Subcontract" are the Changes clauses and General Provision §I.1A.3(j), on which Fluor relies, because the LOD cannot on the one hand define $30M as "being the value including all changes," and on the other hand allow "all changes" to exceed that value.  Any such interpretation is irreconcilable.  Fluor nonetheless asks the Court (yet again) to impose that irreconcilable interpretation in the hopes of striking its own definition of $30M "being the value including all changes." Unfortunately for Fluor, its interpretation is not only irreconcilable, but it is also unsupported by §I.1A.3(j).

Subsection (j) requires Fluor, upon request, to provide BAE a "not-to-exceed" price estimate and/or a "maximum (or minimum) schedule adjustments" required for performance of a BAE-directed change.  Per Subsection (j), once agreement is reached on the not-to-exceed amount and/or

---

[7] Section I.1D.33(d) includes an obvious typographical error.  It refers to "35a.1" and "35a.2." The Subcontract does not contain a 35a.1 or 35a.2, and it is clear that these cites refer instead to 33a.1 and 33a.2.

required schedule, they become limits on the equitable adjustment to which Fluor ultimately would be entitled for the change.   The last sentence of Subsection (j), on which Fluor exclusively relies for its proposition that Subsection (j) removes "Changes" from the LOD, states:  "***Except with respect to [the agreed not-to-exceed amount and schedule] limitations***, nothing **contained herein** shall affect the right of the Parties to an equitable adjustment by reason of the change, ***pursuant to this clause***."  (Emphasis added).  Thus, by its own terms, the last sentence of Subsection (j) is expressly limited to the clause in which it is contained and refers only to the limitations defined within that clause.  *See Pronschinske Trust Dated Mar. 21, 1995 v. Kaw Valley Companies, Inc.*, 899 F.3d 470, 473 (7th Cir. 2018) (recognizing, as does Virginia law, that "the language in the contract . . . must be read in context and given its plain meaning" and finding "[t]he 'anything . . . herein' language refers to 'anything within this paragraph' not 'anything within this contract'").

There is simply no reasonable basis upon which the Court should have or could have concluded that §I.1A.3(j) or the Changes clauses generally "override[]" the LOD, and there is no way to apply Fluor's proposed construction without striking the words "being defined as the value *including all* changes" from the plain language of the LOD and rendering Fluor's own language in the LOD meaningless.

## III.   FLUOR'S EXTRINSIC EVIDENCE IS IRRELEVANT AND IMMATERIAL BECAUSE THE CAP IS UNAMBIGUOUS, BUT THAT EVIDENCE NONETHELESS *SUPPORTS* THE COURT'S CONCLUSIONS.

Fluor's extrinsic evidence is irrelevant and cannot be considered because the LODs are consistent and unambiguous.  Nonetheless, it is worth noting that Fluor's extrinsic evidence, in fact, *supports* the parties' intent to cap damages at $30 million, *including all changes*, and raises further concerns with Fluor's responsibility to make good-faith arguments to this Court.   In its Motion for Reconsideration, Fluor asserts that § 46 was specifically negotiated and the parties "deleted the term 'including all changes' from the original language."  Dkt. 97 at 2.  As noted, this representation is

misleading at best, and omits critical information that should have been included with Exhibit B to Fluor's Motion for Reconsideration, but was not.

As the Court is aware, Fluor's August 14, 2015 Cost and Technical Proposal, which is incorporated by reference in Paragraph 74 of Fluor's Counterclaim and was attached, in pertinent part, as Exhibit A to BAE's Memorandum in Support of its Motion to Strike (Dkt. 37-1 at 6, 14), unequivocally shows that Fluor (*not BAE*) initially proposed the LOD with a $30 million cap and *defined* that $30 million cap as written in the Subcontract. *See* Dkt. 37 at 2 (recognizing Fluor proposed the language and the definition of $30M).

In Exhibit B to its Motion for Reconsideration, Fluor attaches an email from Lura Lewis ("Lewis"), Director of Fluor's Government Group,[8] dated December 11, 2015.  Dkt. 97-2 at 2.  That email includes multiple attachments, including "ELP-100815-01 NC FacililityKD.pdf" and "Exhibit A BAE_Construction-ModifiedKD.pdf."  (*Id.*).  Significantly, "ELP-100815-01 NC FacililityKD.pdf" (which also contains redline revisions and comments from Fluor) was *excluded* from Exhibit B to Fluor's Motion for Reconsideration.  This omission is significant because the excluded attachment includes the same LOD language in § 2.21 that Fluor previously proposed in August of 2015 *without any revisions by the parties* thereafter:  "the applicable party's liability for damages arising under or related to this Subcontract shall be limited to $30M, $30M being defined as the value including all changes and the maximum liability for damages."  A complete copy of Lewis's December 11, 2015 email (with all attachments) is attached hereto as **Exhibit 1**.

At the same time Lewis and Fluor circulated and reiterated Fluor's LOD language defining $30 million to "include[] all changes" in § 2.21, Lewis and Fluor apparently noticed that § 46 in BAE's

---

[8] As the Court correctly noted, Lewis was Fluor's Subcontractor Contractual Point of Contact for the parties' Subcontract.  Dkt. 94 at n.5.

form terms and conditions did not contain Fluor's previously defined $30 million cap.  Lewis, therefore, struck BAE's form language limiting liability to the "Subcontract Price for the goods or services to be provided by Subcontractor, 'Subcontract Price' being defined as the ***cumulative value***[9] of Subcontract including all changes," and Fluor replaced the stricken language with comments (which were likewise excluded from Exhibit B to Fluor's Motion for Reconsideration, Dkt. 97-2) stating "$30M":[10]



Significantly, Lewis sent Fluor's change to "$30M" in the *very same* email that reiterated Fluor's definition of "$30M" "as the value including all changes and the maximum liability for damages" in § 2.21 without any revision to Fluor's previously proposed § 2.21.  Ex. 1 (ELP-100815-01 NC FacililityKD.pdf) at 10.  Further, Lewis specifically struck BAE's language referring to the "*cumulative*

---

[9] Emphasis added.

[10] In the screenshot below, "LEW36083" is a reference to Lewis with what is presumably her Fluor ID number.  Similarly, another Fluor employee, perhaps one in Fluor's legal department, likewise added a sticky note that also reiterated the $30 million cap.  *See also* Dkt. 97-2 (Lewis's cover email referencing Fluor's redlines, comments, and sticky note(s)).  These comments and sticky notes from Fluor were likewise omitted from Fluor's Motion for Reconsideration.  In addition to the PDF copy of Exhibit 1 attached hereto, BAE will send a native copy of "Exhibit A BAE_Construction-ModifiedKD.pdf" that was attached to Lewis's December 11, 2015 email to the Court's ECF mailbox so that it can see the comments and sticky notes shown in the screenshot.

value of [the] Subcontract, including all changes." By striking the "*cumulative* value . . . including all changes," and replacing it with a hard, previously defined $30 million cap, the only conceivable interpretation is that Fluor intended $30 million to be defined in the same manner it was defined in the simultaneously submitted § 2.21: not $30 million subject to increases based on changes, but $30 million as a hard cap, including all changes. This, of course, is in line with other extrinsic evidence from Lewis and Fluor's legal department. *See* Dkt. 94 at 31 n.5.

On December 15, 2015, BAE responded to Lewis's December 11, 2015 email and implemented Fluor's change to § 46, by striking BAE's form language, including references to "*cumulative* value . . . including all changes" and replacing it with a hard cap of $30 million to conform with § 2.21 and § 36 in Appendix J. A copy of BAE's December 15, 2015 response, with attachments, is attached hereto as **Exhibit 2**. *See also* Dkt. 1-2 at 42 (§ 46); Dkt. 1-2 at 12 (§ 2.21); Dkt. 1-2 at 71 (§ 36).

While the above extrinsic evidence plainly *supports* the parties' intent to impose a hard cap of $30 million, *including all changes*, as the Court correctly recognized, this extrinsic evidence is ultimately irrelevant and immaterial because the Subcontract unambiguously imposes a hard cap of $30 million, including all changes (i.e., without cumulative value adjustments). The Court, therefore, properly determined *solely* "from the plain meaning of the Subcontract itself," and not in reliance on *any* extrinsic evidence, that "[t]he Subcontract unambiguously provides that BAE and Fluor agreed to limit any claim for damages, including for changes, to $30 million." Dkt. 94 at 31 n.5.

For present purposes, however, the fact remains that Fluor omitted critical information that should have been included with Exhibit B to Fluor's Motion for Reconsideration. Stated simply, Fluor's argument that the "[p]arties specifically negotiated the terms of Section 46 and deleted the term 'including all changes' from the original language," is misleading at best. Rather than "negotiating," BAE simply agreed to Fluor's hard cap of $30 million (consistent with the parties

agreement to § 2.21 and § 36 in Appendix J—and the definition of $30 million therein), and this hard cap was never contemplated as being subject to increase as shown by the fact that Fluor deleted the prior "*cumulative* value . . . including all change" language.

## IV. THE COURT'S INTERPRETATION IS REASONABLE.

In a last-ditch effort to rewrite the Subcontract, Fluor recycles its argument that a plain language construction of its LOD is unreasonable.  Dkt. 97 at 14.  Again, Fluor is mistaken.  As an initial matter, "courts [are not] at liberty to rewrite the contractual language, even if the plain language of the contract produces what some may consider a harsh result."  *Midlothian Enters., Inc. v. Owners Ins. Co.*, 439 F. Supp. 3d 737, 742 (E.D. Va. 2020) (quoting *Trex Co. v. ExxonMobil Oil Corp.*, 234 F. Supp. 2d 572, 575 (E.D. Va. 2002)).  As the Virginia Supreme Court often reiterates:  "[W]hat the parties claim they might have said, or should have said, cannot alter what they actually said."  *Wilson v. Holyfield*, 313 S.E.2d 296, 398 (Va. 1984); *see also Appalachian Reg'l Healthcare v. Cunningham*, 806 S.E.2d 380, 387 (Va. 2017).  And Fluor's reliance on extrinsic evidence—an August 20, 2017 BAE letter—that contradicts the plain meaning of the LOD is misplaced.  *See, e.g., Bentley Funding Grp.*, 609 S.E.2d at 58 ("[T]he trial court erred in deeming [a party's] post-contractual conduct as evidence of an intent contrary to the wording of the Contract. Where no 'obscurity exists . . . the acts of the parties done under the contracts' bear no weight 'as an indication of their intention.'" (quoting *Moore*, 167 S.E. at 360)).

In any event, the LOD, as written, does not produce a "harsh" or "unreasonable" result; it merely produces an *intended* result that Fluor bargained for when it negotiated the LOD and expressly imposed a mutually applicable hard cap of $30 million, including all changes.  This result is unquestionably reasonable.  As the Court held, when harmonizing the LOD and the Changes clauses, "the Subcontract does not provide for equitable adjustment to the price concerning change proposals made by Fluor to which BAE did not agree."  Dkt. 94 at 37.

Further, as BAE previously noted, Fluor's argument on this issue is a hypothetical red herring because Fluor's more than $183 million in *unapproved* "changes proposals" were never "Change Orders" at all, as Fluor argues; rather, they are nothing more than alleged damages. Accordingly, the Court correctly recognized that "Fluor's $183 million counterclaim largely consists of changes it says it was required to make to remedy the shortcomings in the Lauren design, which BAE required Fluor to use and which BAE represented was 85% complete." Dkt. 94 at 25. As such, these damages are unquestionably subject to the parties' $30 million damages cap for "all changes and [as] the maximum liability for damages' "arising under or related to [the] Subcontract."

## V. ARGUMENTS IN OPPOSITION TO THE MOTION FOR CLARIFICATION

Fluor's Motion for Clarification is likewise misguided and premature. By removing Fluor's alleged "entitlement to" and allegations "seek[ing]" damages exceeding the $30 million cap in the Subcontract, the Court *expressly* recognized that it had substantially narrowed the issues in dispute (and thereby removed the undue prejudice to BAE imposed by Fluor's attempts to avoid the parties' bargained-for cap to expand the amount in dispute by orders of magnitude). Dkt. 94 at 42 n.8.

This is undoubtedly correct. BAE no longer has to prepare and invest the time and expense it would have otherwise devoted to the case if more that $183 million were in dispute.[11] Further, the amount in dispute is a critical factor in determining the appropriate scope of discovery. Fed. R. Civ. P. Rule 26(b). This Court, of course, need not resolve all such issues with respect to the exact scope of discovery, in the abstract, and those issues can be left to the sound discretion of the Court and Magistrate Judge, when evaluating specific discovery disputes and the various factors the Court considers in such disputes, including whether the scope is "proportional to the needs of the case, considering the importance of the issues . . . , the amount in controversy," etc. *See id.*

---

[11] BAE will likewise endeavor to work toward a mutually acceptable, non-judicial resolution (if Fluor is receptive to doing so) with the proper scope of the dispute in focus.

## VI. CONCLUSION

This Court's Rule 12(f) ruling was proper, founded on the plain language of the Subcontract incorporated in Fluor's Counterclaim, and has the proper effect of avoiding the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial. For the foregoing reasons and those stated in the Court's Memorandum Opinion and Order, and in BAE's Memorandum in Support of its Motion to Strike and Reply in Support thereof, BAE respectfully requests that this Court deny, in its entirety, Fluor's Motion for Reconsideration and for Clarification, and grant BAE such other relief as is just and proper.

Dated: April 28, 2022                    Respectfully submitted,

                                         BAE SYSTEMS ORDNANCE SYSTEMS, INC.


                                         By:_  /s/Justin E. Simmons_____
                                                Of Counsel


Joshua R. Treece (VSB #79149)
Justin E. Simmons (VSB #77319)
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1800
Roanoke, VA 24011
Telephone:  (540) 983-7600
Facsimile: (540) 983-7711
jtreece@woodsrogers.com
jsimmons@woodsrogers.com

Karen M. Stemland (VSB #47167)
WOODS ROGERS PLC
123 East Main Street, 5th Floor
Charlottesville, VA 22902
Telephone: (434) 220-6826
Facsimile: (434) 566-0473
kstemland@woodsrogers.com

Todd M. Conley (VSB #89839)
Jeffrey J. Golimowski (VSB #93525)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, VA 22102
Telephone:  (703) 394-2245
todd.conley@wbd-us.com
jeff.golimowski@wbd-us.com

*Counsel for BAE Systems Ordnance Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 28, 2022, I filed the above document (with exhibits) using the

Court's CM/ECF system, which will send notification of the filing to all counsel of record.

_/s/Justin E. Simmons_____