UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BAE SYSTEMS ORDNANCE SYSTEMS, INC., <br><br> *Plaintiff, Counterclaim Defendant,* <br><br> v. <br><br> FLUOR FEDERAL SOLUTIONS, LLC, <br><br> *Defendant, Counterclaim Plaintiff.* | Case No. 7:20-cv-587 |

**BAE SYSTEMS ORDNANCE SYSTEMS, INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO CONTINUE AND/OR BIFURCATE
AND FOR EXPEDITED BRIEFING AND HEARING**

BAE Systems Ordnance Systems, Inc. ("BAE"), by counsel, respectfully submits this Memorandum in Support of its Motion to Continue and/or Bifurcate, and for expedited briefing and hearing. In support thereof, BAE states as follows:

**I. INTRODUCTION**

Despite diligent efforts by the parties to advance this case and through no fault of either party, the current schedule cannot possibly accommodate the scope and volume of remaining, required discovery. As further detailed below, literally millions of pages of documents have been exchanged by the parties over the last few weeks alone and document discovery is not anticipated to be complete until at least September 30, 2022 (33 working days from the close of discovery). None of the anticipated 40-50 plus depositions[1] have yet been taken by the parties and, under the current schedule,

---

[1] The parties anticipated and agreed to 20 party depositions each, excluding third-party and expert depositions. *See* (Dkt. 55 ¶ IV(E) (Joint Rule 26(f) Report and Discovery Plan). BAE anticipates each party may depose on the order of at least five third parties.

*{2994234-1, 115568-00010-01}*

would have to be completed within the 42 working days from next Monday, September 19, 2022, and the close of fact discovery on November 16, 2022. This schedule is unworkable and cannot conceivably provide a reasonable and adequate opportunity for the parties to prepare for dispositive motions and trial on all issues in dispute. Accordingly, BAE seeks a four-month continuance or, in lieu thereof, bifurcation of contractual liability for the Lauren Design that would allow the parties to resolve a threshold issue for a majority of the claims within the timeframe of the current schedule.

Between July 29, 2022 and September 2, 2022 (the span of approximately one month), Fluor produced nearly two million pages of documents (1,847,840). At present, Fluor has produced over two million pages of documents (2,052,012), and BAE has produced a similar amount (2,366,983 pages of documents) in discovery. Approximately half of the parties' four million pages of documents have been produced within the last few weeks,[2] and both parties have remaining documents, including non-custodial documents and privilege downgrades, and privilege logs that are expected to be produced by September 30, 2022. The close of fact discovery, however, is a mere two months away, expert disclosures are less than a month away, and no depositions have been taken.[3]

Under the current schedule, initial expert disclosures are due October 7, 2022, fact discovery ends November 16, 2022, and dispositive motions are due December 19, 2022. (Dkt. 60). By any reasonable measure, this schedule does not allow time to adequately prepare for, take, and complete

---

[2] For example, Fluor produced more than one million pages of documents between August 31, 2022 and September 2, 2022. BAE's recent productions are equally voluminous, in part due to BAE's expanded scope of discovery following a hearing on August 3, 2022, in which Fluor successfully sought to require BAE to review and produce documents from Lauren's three-year period of performance before Fluor bid on the NC Project and roughly two years following the filing of the Complaint on September 30, 2020.

[3] The scope of BAE's expert reports, and BAE's analysis of who it needs to depose are evolving based on admissions and statements in documents that have been produced, but BAE's review of these millions of pages is ongoing, and time-intensive.

the necessary and agreed scope of deposition discovery—which requires evaluating the incoming document productions, addressing any gaps in these productions and potential privilege issues, and preparing for, scheduling, and taking or defending what may amount to *40-50 plus depositions within the 33 working days*.[4]  Needless to say, the current schedule is unsustainable on its face.

The only practical way the parties can maintain any semblance of the current schedule is through bifurcation.  As the Court is aware, contractual liability related to the Lauren Design is a central, and indeed threshold issue, for most of Fluor's Potential Change Notices ("PCNs"),[5] and likewise relates to BAE's claim that Fluor's delays are unexcused (that is, Fluor cannot rely on any issues in the Lauren Design for which it was responsible to excuse its failure to timely complete performance).  The significance of this threshold issue is underscored by Fluor's insistence that it needed to expand the scope of discovery related to the Lauren Design to capture Lauren's entire period of performance before Fluor even bid on the project.  This expanded scope of discovery, however, serves only to highlight the fundamental dividing line between (1) the discrete contractual interpretation and contractual liability issues related to the Lauren Design, which is a fundamental threshold issue for a majority of PCNs and related delay claims; and (2) other broad-sweeping and factually intensive disputes, including issues relating to project performance, delays, and numerous

---

[4] BAE is endeavoring to leverage its review of the documents to focus and streamline the number and content of depositions, but doing so effectively requires time not presently permitted by the schedule. Nonetheless, BAE has worked to limit discovery and costs since the Court's March 30, 2022 ruling striking claims above the damages cap and will continue to do so.

[5] *See, e.g.*, July 12, 2021 Letter (rejecting Fluor's Extended General Conditions and Related Change Order claims—including claims D00S3, D00U7 and D00Y0—based on Fluor's contractual design responsibilities); Fluor's Counter Claim (Dkt. 29) at ¶ 223 (seeking $73,288,696 for claims D00S3, D00U7 and D00Y0); *see also* at January 25, 2019 Letter - Disposition of Fluor Change Proposals Relating to the Lauren Design (rejecting $14,868,549.57 in change proposals based on Fluor's contractual design responsibility); and January 25, 2019 Letter - Disposition of Fluor Change Proposals Relating to SmartPlant Model (rejecting $7,318,412.45 in change proposals based on Fluor's contractual design responsibility).

PCN disputes (many of which could otherwise be addressed or disposed of by simply resolving who has contractual design responsibility or legal liability related to the Lauren Design, without further detailed factual inquiry), and damages.

Accordingly, BAE respectfully requests that this Court grant a four-month continuance of the bench trial from March 6-24, 2023 to July 2023 or the earliest three-week period thereafter available for the Court, and adjust all Scheduling Order deadlines accordingly. Alternatively, in lieu of a continuance, the Court is requested to bifurcate the threshold contractual interpretation and legal liability issues related to the Lauren Design for a one-week bench trial during the period currently reserved in March 2023, continue expert disclosure deadlines related thereto by one month, and defer resolution of all other, broad-sweeping and factually intensive disputes, including issues relating to project performance, delays, and PCN disputes (many of which would be addressed or disposed of by simply resolving who has contractual design responsibility or legal liability related to the Lauren Design), and damages, for a two-week bench trial on a date after July 2023 that is available for the Court and the parties.

Because expert disclosure deadlines and the close of fact discovery are fast-approaching, BAE respectfully requests expedited briefing and an expedited hearing on this Motion. Expert disclosure deadlines are set for October 7, 2022, less than a month away. Experts, like counsel, need the opportunity to digest information in the millions of documents recently produced, but the current schedule cannot reasonably and adequately permit such an analysis.

Counsel for BAE certifies that it has conferred with counsel for Fluor, in good faith, to obtain the relief sought herein, and the parties have been unable to agree on the path forward.

II.     **STANDARD OF REVIEW**

A motion to modify a scheduling order may be granted "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The decision to grant or deny a request to continue is a

matter left to the Court's sound discretion. *Linear Prod., Inc. v. Marotech, Inc.*, 189 F. Supp. 2d 461, 464 (W.D. Va. 2002) (citing *Cromwell Field Associates, LLP v. May Dept. Stores Co.*, 5 F. App'x 186, 189–190, 2001 WL 208501, at *3 (4th Cir. 2001); and *Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir.1995)).

As this Court has recognized, "continuances are routinely granted for nothing more compelling than the convenience of the parties or the Court." *Linear Prod., Inc.*, 189 F. Supp. 2d at 468. Here, of course, good cause goes well-beyond "convenience of the parties or the Court." As set forth herein, the current schedule, absent bifurcation, is impossible to maintain and cannot reasonably accommodate the scope and volume of remaining, required discovery (including expert disclosures).

With respect to bifurcation, Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third party claims." The court has the implicit authority to limit discovery as to any segregated issues so as to minimize and defer "costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (4th Cir. 1970).

As discussed herein, bifurcation of liability related to the Lauren Design is appropriate. To date, BAE has incurred millions of dollars in fees and costs just to get to the close of *document* discovery, which is broad-sweeping and spans many years of pre-contractual performance by Lauren, contract bidding, negotiation and execution, and post-contract performance by Fluor and its subcontractors. These inordinate litigation costs, however, can be reasonably limited and focused going forward by bifurcating the threshold issue of which party has contractual responsibility for design, and liability relating to the Lauren Design, in particular.

### III. A CONTINUANCE AND/OR BIFURCATION IS REQUIRED AND APPROPRIATE.

#### A. BAE Has Acted with Reasonable Diligence and the Timing And Volume of the Parties' Recent Productions Could Not Have Been Reasonably Anticipated When the Schedule Was Set

BAE has acted with reasonable diligence. BAE, and likely Fluor, has spent millions of dollars and untold hours reviewing documents for production, which have resulted in many times more documents than BAE could have originally anticipated when the Court first set the March 6–24, 2023 trial dates in this action on July 12, 2021. (Dkt. 48). In fact, when the parties' agreed to adjust subordinate dates within the schedule on October 4, 2021 (without modifying the trial date), the parties had not even exchanged or begun conferring on search terms. *See* (Dkt. 60). Thereafter, BAE made its first production to Fluor on January 29, 2022, and its subsequent productions on March 16, 2022 (2nd), June 3, 2022 (3rd), June 24, 2022 (4th), July 15, 2022 (5th), and July 28, 2022 (6th).

During a hearing on August 3, 2022, following extended meet and confers over disputed search terms and the temporal scope of BAE's document discovery, Fluor sought to expand BAE's document review and production to include Lauren's entire period of performance during the three-year period before Fluor bid on the NC Project and roughly two years following the filing of the Complaint on September 30, 2020. The Court agreed and expanded BAE's production to include approximately five additional years, resulting in a decade's worth of data for BAE's review and production.[6] Thereafter, BAE made productions on September 1, 2022 (7th), September 12, 2022 (8th), and September 15, 2022 (9th), including the expanded scope documents ordered by the Court on August 3, 2022. At present, BAE has produced well-over two million pages of documents.

---

[6] BAE originally agreed to a substantial completion date of August 31, 2022 for all documents. When BAE was required to expand the time period (and at Fluor's insistence, run additional broad search terms), BAE notified Fluor on August 19, 2022, that it would need additional time to reach substantial completion and that it was attempting to do so by September 14.

Given the evolving scope, scale, and timing of document discovery, it is plain that, despite reasonable diligence, the current scheduling circumstances could not have been reasonably anticipated in July or October of 2021, when the schedule was set or modified.

B. **THE CURRENT SCHEDULE IS IMPOSSIBLE TO MAINTAIN AND DEPRIVES BAE OF THE ABILITY TO ADEQUATELY PREPARE FOR EXPERT DISCLOSURES, DISPOSITIVE MOTIONS, AND TRIAL.**

As noted, Fluor produced nearly two million pages of documents (1,847,840) between July 29, 2022 and September 2, 2022, and more than a million of those were produced between August 31, 2022 and September 2, 2022. BAE and its experts plainly have not yet had sufficient time to digest and evaluate Fluor's production. Further, BAE understands that Fluor has not yet produced its remaining non-custodial documents (the volume of which Fluor's counsel was unable to quantify as of September 12, 2022) or privilege downgrades (which have also not been quantified and are likely to be significant). Fluor's counsel has indicated that it will endeavor to substantially complete its production of that outstanding information by September 30, 2022. BAE has made the same commitment for its outstanding non-custodial documents and privilege downgrades. Accordingly, BAE expects that the parties will complete all document productions and exchange privilege logs by September 30, 2022 (and there very well may be disputes over the parties' privilege logs that may require Court resolution). No change is being sought or requested herein with respect to the completion date for document discovery between the parties.

Neither party (nor their experts) can effectively evaluate the millions of documents exchanged within the last few weeks prior to the expert disclosure deadline. And neither party can reasonably and adequately prepare for and take 40-50 plus depositions in 33 working days. Thus, it is and should be indisputable that compliance with the current schedule is impossible. Further, the current schedule prejudices BAE in its ability to effectively prepare and defend against claims subject to the parties' damages cap and simultaneously prepare and present its claims up to the parties' damages cap.

A continuance benefits both parties. Given that the parties have spent millions of dollars and countless hours to bring document discovery to a close by September 30, 2022, it makes little sense for the parties not to afford each other the time needed to effectively evaluate the productions that the parties have expended so much time and money to compile and exchange. Further, the parties should not be deprived of the ability to address deficiencies and privilege disputes, or of a schedule that can accommodate the taking of 40-50 plus depositions, and prepare adequate presentations of issues in dispute for dispositive motions and trial. In addition, this matter will require extensive expert reports. BAE has just scratched the surface in reviewing these documents, and has already found numerous documents that belie Fluor's statements in this case, which will require BAE's experts to review and adjust their reports (currently due October 7) accordingly. This is a very significant effort.

Neither party is prejudiced by a continuance. Indeed, a continuance avoids prejudice to BAE and Fluor from the impact of producing millions of pages of documents, only a month or so from the expert disclosure deadlines and with only 33-42 working days remaining before the close of fact discovery. Indeed, a continuance permits the parties to benefit from the significant resources each has dedicated to document productions to date by providing time for that information to *actually* be used in litigation. On the other hand, there is no prejudice in delaying the trial by four months. Fluor left the project last year; this case is simply about money.

Further, a continuance benefits the Court because it will provide the time minimally necessary to reasonably and adequately prepare for dispositive motions and trial, and the Court benefits from organized and streamlined presentation of issues and disputes, and the opportunity to dispose of claims for which there is no genuine material dispute of fact in advance of any trial.

Accordingly, a four-month continuance of trial and all attendant Scheduling Order deadlines is necessary and appropriate, and should be granted.

C.     BIFURCATION OF THRESHOLD CONTRACTUAL RESPONSIBILITY AND LIABILITY FOR THE LAUREN DESIGN IS THE ONLY PRACTICAL WAY TO MAINTAIN ANY SEMBLANCE OF THE CURRENT SCHEDULE AND IS NECESSARY AND APPROPRIATE TO REDUCE THE COST OF LITIGATION.

The only practical way the parties can maintain any semblance of the current schedule is by retaining one week within the currently scheduled three-week trial in March 2023 and bifurcating the threshold contractual design responsibility and liability issues relating to the Lauren Design for summary judgment and, if necessary, resolution in a shorter, focused bench trial in March 2023 (with adjustments to expert disclosure and perhaps other internal deadlines), and setting aside subordinate and fact-intensive issues with any remaining PCNs and delay claims for a two-week bench trial at a later date.

There is, as previously briefed, a principal and threshold dispute regarding which party bears *contractual* responsibility for design under the Design/Build Subcontract. And the Lauren Design is the primary focus of this dispute; namely, whether there is any contractual warranty related to the Lauren Design and whether any purported 85% complete representation is incorporated or warranted in the Design/Build Subcontract.[7]

In this Court's decision on March 30, 2022, Judge Urbanski recognized the overarching significance of this issue, and found that numerous provisions of the Subcontract and Fluor's Technical Proposal, which were before the Court on a motion to dismiss, supported BAE's interpretation that Fluor, not BAE, was contractually responsible for any issues with the Lauren Design. (Dkt. 94 at 34-35). The Court, however, found that, for purposes of a motion to dismiss, the

---

[7] In its Counterclaim, Fluor alleges that (1) BAE made misrepresentations prior to entering the Subcontract about the Lauren Design being ~85% complete, (2) Fluor reasonably relied on those representations when entering the fully integrated contract (which contains no 85% complete representation); and (3) as a result, Fluor incurred substantial cost-overruns. Fluor then argues that because it found it difficult and costly to validate, correct, and complete the Lauren Design (despite its contractual obligation to do so), Fluor is entitled to change orders for the extra costs, irrespective of the Design/Build contract's firm-fixed price. (Counterclaim ¶¶ 234, 239–45, ECF No. 29).

record "does not serve to *fully clear* the ambiguity present in the Subcontract as to whether BAE bears any responsibility … for the Lauren design." (*Id.* at 35) (emphasis added). This issue, however, can be "fully clear[ed]," with limited and targeted discovery depositions, summary judgment, and, if necessary, a short, one-week trial in March 2023 with a limited number of witnesses.

Resolution of this discrete, threshold dispute would address or dispose of a majority of this case without the parties having to continue to spend inordinate amounts of money on broad-sweeping and factually intensive deposition discovery, including deposing 40–50 or more witnesses. Indeed, much of the fact-intensive discovery underlying each PCN (such as entitlement and whether the work affected the critical path, the exact amount of delay allegedly caused and by whom, and whether the work was necessary or appropriate) will be rendered moot because many of Fluor's PCNs will fall away with dispositive motions. Resolution of this issue is equally relevant to BAE's claims because it will remove the issue of whether Fluor's purported delays based on the Lauren Design excused its untimely performance.

This issue is ripe for bifurcation. Although BAE has only scratched the surface with its document review, it is plain from the evidence reviewed that the parties can easily and appropriately focus on the issue of who had responsibility for the Lauren Design, and a limited subset of documents and witnesses can be marshaled for summary judgment and, if necessary, trial in March of 2023.

As an initial matter, the Subcontract assigns **all** design responsibility relating to any reuse of the Lauren Design to Fluor. That is, for any portion of the Lauren **preliminary conceptual** design that Fluor elected to use, Fluor was required to verify it, correct it, prepare Fluor's own design from it, and then use the design that Fluor created to build the Project. The pertinent Subcontract language (including the Statement of Work, Subcontract Exhibit E) specifies Fluor's design responsibility as follows:

> **The objective of this Statement of Work (SOW) is to design, procure, and construct** (including construction checkout, and water runs) the new NC Area Acid

Tank Farm (6043), a Nitration area (6045), Stabilization area (6046), Dewater/Packout area (6047), Administration building (6048) and the supporting areas/processes required to support the new Nitrocellulose (NC) Facility at the RFAAP.

\* \* \*

2.1 **This project will design, procure, and construct the new NC facility**…The preliminary design of for *(sic)* the new NC facility has been developed and is included in this SOW. **This Conceptual Design was developed by Lauren Engineers & Constructors (LEC)** based on the Technical Design Package (TDP) prepared by the U.S. Army.

2.2 …**. The Subcontractor shall prepare their own drawings to be used for design review submittals, construction and as Record Drawings**. …

\* \* \*

2.4 …**Subcontractor shall prepare their own construction specifications to be used for design review submittals and construction**. …

2.5 It is **incumbent upon the Subcontractor to review the documents submitted and to perform their own analysis**, … **The Subcontractor shall be solely responsible for the design** and …

\* \* \*

2.7 Subcontractor will be responsible to **validate and complete all PFD's** [process flow diagrams] **and P&IDs** [piping and instrumentation diagrams]. …

\* \* \*

3.5.6.   Specifications

**Subcontractor is responsible for preparation of all Specifications.**

\* \* \*

3.7.1. Drawings

3.7.1.1. Submit drawings complete with all contract requirements incorporated into the documents to **provide a 100% design** for each package submitted.

\* \* \*

3.7.2.   Design Analyses

3.7.2.1. The designers of record [i.e., Fluor] shall **update, finalize and present design analyses** with calculations necessary to substantiate and support all design documents submitted.

(Emphasis added.)

And Fluor admitted in its Technical Proposal (TP) that it was responsible for correcting, completing, and taking ownership of the Lauren Design:

> 3.*7 Project Team*
>
> Our project team brings together Fluor Federal Solutions, LLC as the prime constructor and Wood Group Mustang (Mustang) as our engineering design subcontractor. …
>
> The Mustang scope of services includes:

- Performing Design, Engineering Construction Support Services for the NC facility including but not limited to the following:

   -**Validating the existing design status, <u>acceptance and ownership of existing design, correcting and completing existing design</u> for all aspects of the project identified in the BAE RFP.**

Further, documents produced by third parties, now show that as of July 2015, Fluor not only understood its responsibility for the design, but "**Fluor [was] assum[ing] the design [wa]s 50% complete**" (not 85% complete, the alleged principal basis for the bulk of the PCNs in its Counterclaim):

> **From:** Lancaster, Chris
> **Sent:** Monday, July 13, 2015 8:47 AM
> **To:** Sul, Sam; Jones, Clarence; Jackson, Karl; Walker, Travis; Caldwell, Ben; Dhillo, Zahir; Pearson, Bethany
> **Cc:** Goforth, Kerry; Walker, Christopher
> **Subject:** FW: Radford NC Facility Proposal Kick-off Meeting
>
> Here are a couple of messages that Wade sent out after our call with Fluor on Friday. Since Fluor will be developing the EPC price, it is important to pass along any cost savings or design misses we find in the design. Here are a few other comments from the call on Friday.
>
> - The project will be divided into sections by building. Process will be a standalone section that flows through the buildings.
> - Fluor assumes the design is 50% complete.
> - It is expected we will do a 60% and 90% reviews with BAE Systems. Previous experience shows that BAE will not do a detailed review and the comments on the reviews will be minor.
> - Fluor does not have SmartPlant capabilities. They will do a visual review of the model, but they will not use SP3D for any detailed reviews.
> - Process needs to provide a write up of SmartPlant project experience. Chris Walker is developing this write up this week.
> - We received the SP3D database last week. Kevin Tisdale is working on making the database available for our use. We should extract a bill of materials from the SP3D database and pass it along to Fluor. Angela Vawter will coordinate with Kevin to get the BOM extracted. Once extracted, it would be good to have Travis review the BOM to ensure it looks complete enough to pass along to Fluor.
>
> I have attached the files Wade referenced below.
>
> Chris Lancaster, PE \ Burns & McDonnell
> Associate Process Engineer
> o 816-349-6604 \ m Redacted \ f 816-822-3452
> clancaster@burnsmcd.com \ burnsmcd.com
> 9400 Ward Parkway \ Kansas City, MO 64114

Similarly, Burns and McDonnell ("B&McD"), Fluor's first design engineering subcontractor, shared with Fluor in September of 2015 its own opinion that the **Lauren Design was only 50% complete** and it (as Fluor's designer) was assuming the risk of validating the first 50% of design and

{2994234-1, 115568-00010-01}                    12

correcting "major issues" (which would take 25% of the time to complete, assuming there are no major issues)—and this opinion by Fluor's selected design expert was shared with Fluor *three months* prior to Fluor's entering the fully-integrated Subcontract:

> **From:** Anderson, Wade A [/O=FIRST ORGANIZATION/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=ANDERSON, WADE AB7D]
> **Sent:** 9/1/2015 11:24:20 PM
> **To:** Stephen.Showalter@Fluor.com
> **Subject:** fee/proposal status
>
> Stephen,
>
> We are scheduled for proposal signing tomorrow morning. We are currently at 27.2M for the base design. In the end, we did drop hours significantly from the previous proposal. Unfortunately, as a result of analyzing our staffing mix more carefully, rates required primarily for the process piping shifted considerably higher. This is due to the fact that the design is done in the smart plant model requiring higher level engineers doing more of the piping layout and modeling as opposed to the engineers designing and then handing off to the CAD technicians to draw. Additionally, given the large amount of piping work in a fairly condensed timeframe we will need to go out of house and utilize some contract labor to support a portion of the piping ISO generation. Going outside for this labor is at a higher premium cost and raises our overall labor rate. In the end, this increased labor rate reduced a good portion of our savings from the hour reduction.
>
> Having said that, I do offer the following analysis to explain the level of fee proposed.
>
> -We believe the overall Construction Cost for our portion of the work to be in the **330M** range including BAE purchased equipment.
> -**Full design** for a project of this nature would be approx. **10%**, **33M** for just the design, (exclusive of construction engineering support and commissioning)
> This is consistent with several similar recent projects within BMcD
> -At **27M,** we are at approx. **8%** of the 330M
> -We believe the 8% is reasonable considering the following
> > Overall **existing design** is approx. **50%**, in our opinion
> > **To verify** the existing 50% will take approx. **25%** of the effort, (assuming there are no major issues, **which is a risk for BMcD)**
> > Given the risk and nature of the project, an additional **5% built-in contingency** is reasonable
> > That **results in an 80% fee**, which is approximately what we are proposing.

In addition to the B&McD emails noted above,[8] Zapata, Fluor's mechanical and structural design contractor, likewise notified Fluor, at Fluor's request, of apparent omissions in the indisputably "Conceptual" Lauren Design *prior to* Fluor entering the Subcontract on December 17, 2015. *See* ZAPATA NC 0069875-78, attached hereto as **Exhibit 1** (Zapata providing Fluor a summary of

---

[8] Based on reasonable searches within the time since Fluor produced its latest tranches of two million pages, it appears that these emails are not contained within Fluor's production of "substantially complete" custodial email files. BAE will meet and confer with Fluor over this issue to address the matter.

Lauren "design documents [that] are missing information or where the information is complete" on December 7, 2015, nine days prior to Fluor executing the Subcontract).

Further, Zapata's Scope of Work (like Fluor's own documents that are subject to the Protective Order and would require sealing) reflect Fluor's and its Subcontractor's design responsibility, and further show that the Lauren Design was not a contract requirement, but "As Is" work product "for reference only":

**FLUOR FEDERAL SOLUTIONS, LLC.**

**ZAPATA INC.**
**STATEMENT OF WORK (SOW)**

Project Name: Radford Army Ammunition Plant
**Project ID: NITRO-CELLULOSE FACILITY**

Contract No.: BAE.01S001
Release/PO No.: BAE.03S001

…

The preliminary design of the buildings for NC facility is included in this SOW as a Conceptual Design. This Conceptual Design was developed by Lauren Engineers & Constructors (LEC) based on the Technical Design Package (TDP) prepared by the U.S. Army. Drawings and specifications provided in the appendices of this SOW were prepared by LEC and amended by BAE Systems to show additional requirements and/or corrections. These drawings are provided for **reference only**.

The Contractor shall prepare their own drawings and specifications to be used for design review submittals and construction and as Record Drawings. Native CADD files for these drawings will be made available to the Contractor. These drawings will be provided in their original MicroStation.dgn format. The Contractor will be responsible for conversion to the required CADD platform, Revit. The Contractor shall provide a CD to the Company with all drawings which were created or modified for this project in CAD and PDF format at the completion of the project and as requested by the Company during the project.

ZAPATA NC 0038455.

Thus, it is apparent from the evidence reviewed to date, including Fluor documents that have been reviewed but are not cited herein, that targeted discovery can address and "fully clear" any potential ambiguity regarding Fluor's contractually responsible for any issues with the Lauren Design. Accordingly, BAE respectfully requests that the Court bifurcate this issue for limited and targeted

discovery depositions, summary judgment, and, if necessary, a short, one-week trial in March 2023 with a limited number of witnesses.

Under the present scheduling circumstances, and in light of the vast amounts the parties have spent to date on broad-sweeping document discovery, including discovery spanning the entire period of Lauren's performance, it is plain that bifurcation would (1) promote greater convenience to the parties and the Court; (2) foster judicial expedition and economy; and (3) not result in any undue prejudice to any party. *See Shire LLC v. Mickle*, No. 7:10-CV-00434, 2011 WL 2959461, at *1 (W.D. Va. July 15, 2011) (bifurcating the claims was "more likely to expedite the resolution of the central, pivotal, and perhaps even dispositive question"); *see also Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir.), *opinion amended on denial of reh'g*, 272 F.3d 1289 (9th Cir. 2001) (bifurcation was "a reasonable way to promote clarity and judicial economy, because the validity of the contract directly informed the resolution of the other claims"); *Engen v. Colorado Mills Mall Ltd. P'ship*, No. 09-CV-01281-REB-KLM, 2010 WL 2232422, at *1 (D. Colo. May 28, 2010) (bifurcating tort claims from contractual indemnity claims to avoid unnecessary complication and because "depending on the jury's verdict, the indemnification claim may evanesce"); *see also Saint John's Afr. Methodist Episcopal Church v. GuideOne Specialty Mut. Ins. Co.*, 902 F. Supp. 2d 783, 787 (E.D. Va. 2012) (finding that bifurcation of request for fees and costs from breach of contract claim was appropriate); *Seneca Ins. Co. v. Shipping Boxes I. LLC*, 30 F.Supp.3d 506, 513 (E.D. Va. 2014) (granting motion to bifurcate and noting that "delaying discovery on issue of insurer's bad faith is 'expedient' where it may not even ultimately be necessary").

## IV.   CONCLUSION

For the foregoing reasons, BAE respectfully requests that this Court grant its Motion to Continue and/or Bifurcate and order expedited briefing and hearing on this Motion.

Dated: September 16, 2022

Respectfully submitted,

BAE SYSTEMS ORDNANCE SYSTEMS, INC.

By: __/s/ Joshua R. Treece_____
      Of Counsel

Joshua R. Treece (VSB #79149)
Justin E. Simmons (VSB # 77319)
WOODS ROGERS PLC
10 South Jefferson Street, Suite 1800
Roanoke, Virginia 24011
Telephone: (540) 983-7600
Facsimile: (540) 983-7711
barnhill@woodsrogers.com
jtreece@woodsrogers.com
jsimmons@woodsrogers.com

Karen M. Stemland (VSB #47167)
WOODS ROGERS PLC
123 East Main Street, 5th Floor
Charlottesville, Virginia 22902
Telephone: (434) 220-6826
Facsimile: 434-566-0473
kstemland@woodsrogers.com

Todd M. Conley (VSB #89839)
Jeffrey J. Golimowski (VSB #93525)
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, VA 22102
Telephone: (703) 394-2245
todd.conley@wbd-us.com
jeff.golimowski@wbd-us.com

*Counsel for BAE Systems Ordnance Systems, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2022, I filed the foregoing using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

       /s/ Joshua R. Treece