UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

BAE SYSTEMS ORDNANCE
SYSTEMS, INC.,

                    *Plaintiff, Counterclaim
                    Defendant,*

    v.                                          Case No. 7:20-cv-587

FLUOR FEDERAL SOLUTIONS, LLC,

                    *Defendant, Counterclaim
                    Plaintiff.*

**BAE SYSTEMS ORDNANCE SYSTEMS, INC.'S
OPPOSITION TO NONPARTY THOMAS D'AGOSTINO'S MOTION TO
QUASH SUBPOENA TO TESTIFY AT A DEPOSITION OR TO
ISSUE A PROTECTIVE ORDER**

BAE Systems Ordnance Systems, Inc. ("BAE"), by counsel, submits this opposition to

Nonparty Thomas D'Agostino's Motion to Quash Subpoena to Testify at a Deposition or to Issue a

Protective Order (Dkt. No 113).

## I.  INTRODUCTION

Roughly five months after BAE first put Fluor Federal Solutions, LLC ("Fluor") on notice

that BAE intended to depose Mr. D'Agostino, President of Fluor Government Group,[1] in connection

with this case, nearly one month after his personal counsel accepted service of BAE's deposition

subpoena, and only five days before his scheduled deposition, Mr. D'Agostino has moved to quash

---

[1] Mr. D'Agostino says he is the President of Fluor Government Group (Dkt. No. 114, at 1), but Fluor says he is the President of Fluor Mission Solutions, which is apparently the new name of Fluor Government Group (Dkt. No. 116, at 1 n.1).  Based on Fluor's documents, it seems that Mr. D'Agostino was either Senior Vice President or President of Fluor Government Group with decision-making authority over Fluor's bid for and performance under the subcontract at issue between the parties.

the subpoena or, in the alternative, for a protective order.  Mr. D'Agostino contends that he is entitled to this relief because the benefits of his deposition testimony to BAE do not outweigh the burden on him if he testifies.  He advances three main arguments in support of this motion—each of which lacks merit.

First, he contends that his decision to assert his Fifth Amendment privilege against self-incrimination in response to BAE's questions justifies quashing the subpoena.  Mr. D'Agostino spins his own personal decision to plead the Fifth into an apparent issue for BAE, arguing that his deposition will offer little benefit to BAE.  But this argument improperly places the responsibility for Mr. D'Agostino's decision to invoke the Fifth onto BAE.  It also fails to support an undue burden finding as is required to quash the subpoena, because any adverse inference BAE could obtain from Mr. D'Agostino's decision to plead the Fifth would not affect Mr. D'Agostino as a nonparty in this case.  In any event, courts have been clear that the consequences that may follow from a witness's decision to invoke the Fifth during a deposition because of an ongoing criminal investigation do not warrant the cancellation of the deposition.

Second, Mr. D'Agostino insists that he qualifies as an "apex witness" without explaining what an apex witness is or why he believes he qualifies as one under the apex doctrine.  Even so, Mr. D'Agostino does not qualify as an apex witness in this case, even if he may be a high-level executive, because he has unique, personal knowledge of, and played a significant role in, the issues in this litigation arising from Fluor's work on the new nitrocellulose facility ("NC Facility") at the Radford Army Ammunition Plant that cannot be obtained through other, less burdensome means.  The apex doctrine thus does not bar BAE from deposing him at this stage of the case.

And third, Mr. D'Agostino parrots Fluor's accusations that BAE is withholding "critical" documents that impede his ability to prepare for his deposition and analyze the Fifth Amendment implications of his testimony.  BAE denies that it has withheld any critical documents to which Fluor

or Mr. D'Agostino is entitled, and neither Fluor nor Mr. D'Agostino has explained how *BAE documents* that are allegedly being withheld could be material to his deposition or his decision to plead the Fifth. BAE intends to ask Mr. D'Agostino about *Fluor documents*, which he and Fluor already have in their possession. So any alleged withholding of documents would not prejudice Mr. D'Agostino or impose an undue burden sufficient to warrant quashing BAE's deposition subpoena.

For these and the other reasons explained more fully below, and in the interests of proceeding efficiently through the large number of depositions remaining in this case, BAE respectfully requests that the Court deny the motion and allow Mr. D'Agostino's deposition to proceed without further delay.

## II.  BACKGROUND

### A.  BAE subcontracts with Fluor to design and build the NC Facility.

In 2012, BAE subcontracted with Lauren Engineers & Constructors ("Lauren") to design the NC Facility and then, in 2013, to build it. But in early 2015, it became clear that Lauren could not complete the design or construction on time, so BAE terminated its design and build subcontracts with Lauren. Then, in or around April 2015, BAE started looking for a new subcontractor to replace Lauren. Following an industry day presentation, BAE issued a request for proposal for the NC Facility to Fluor and other interested bidders in July 2015.

Fluor was the only bidder to submit a proposal. For its initial proposal submitted in August 2015, Fluor teamed up with engineering firm Burns & McDonnell ("Burns") to be the designer of record for the NC Facility project. But for its revised proposal submitted in November 2015, Fluor replaced Burns with another engineering firm, Wood Group Mustang ("Wood").

In December 2015, BAE and Fluor entered into a firm-fixed-price subcontract for the NC Facility. Under the subcontract, Fluor was required to design and build the NC Facility by July 30, 2018. As part of its design effort, Fluor agreed (by choosing to go forward with Lauren's existing

design) to "validate and complete" the design, which was described in the subcontract as "conceptual" and "preliminary" and provided "as-is" and "for reference only."  Just a few weeks after signing the subcontract, and despite what Fluor represented in its proposal, Fluor informed BAE that it could not subcontract with Wood and, as a result, would be self-performing the design work on the project. That decision proved disastrous as, contrary to its representations to BAE during the proposal period, Fluor lacked the necessary experience and expertise to validate and complete the design, which delayed the project by more than two years.

BAE has sued Fluor seeking damages incurred as a result of its failure to complete the NC Facility by July 30, 2018.  Fluor has countersued seeking damages for alleged change orders, many of which relate to Lauren's existing design.  Fluor claims that BAE misrepresented the status of the design as 85% complete when it was not.  According to Fluor, it relied on this alleged misrepresentation in preparing its bid for the project.

**B. Mr. D'Agostino participates in Fluor's bid for and performance under the NC Facility subcontract.**

First as Senior Vice President and then as President of Fluor Government Group, Mr. D'Agostino was personally involved in Fluor's bid for the NC Facility subcontract.  Among other things, Fluor's documents show that:

- He approved Fluor's teaming with Burns as the designer of record for Fluor's bid as well as Fluor's reimbursement of up to $75,000 of Burns's design costs incurred in assisting with the bid (June 30, 2015 email, FFS01142137–38, attached as **Exhibit 1**);

- He knew that Fluor was missing process piping and instrumentation and controls estimators to assist with Fluor's bid (July 10, 2015 email, FFS01978681, attached as **Exhibit 2**.)

- He knew that Thomas Moran, the Director of the Corporate Risk Group of Flour's parent company, Fluor Corp., had concerns about Fluor's bid, including the amounts of the estimate and event contingencies (Aug. 14, 2015 email, FFS01142175–78, attached as **Exhibit 3**);

- He approved the price of Fluor's initial bid (Aug. 14, 2015 email, FFS01142196, attached as **Exhibit 4**);

- He knew that Fluor Corp.'s in-house design team decided not to support Fluor's process design estimate due to apparent time constraints (Sept. 19, 2015 email, FFS00282453, attached as **Exhibit 5**);

- He knew that Burns proposed abandoning Lauren's existing design and performing a complete redesign based on issues that Burns was seeing in that design (Oct. 12, 2015 email, FFS01142234, attached as **Exhibit 6**);

- He knew that Fluor's decision to move forward with its bid was not based on any representation by BAE that Lauren's existing design was 85% complete but on Fluor's own bid for the project from four-plus years earlier (*id.*); and

- He knew that Fluor decided to replace Burns with Wood and that Mr. Moran had concerns about that decision (Oct. 15, 2015 email, FFS01142230–33, attached as **Exhibit 7**).

Mr. D'Agostino was also personally involved in Fluor's performance under the NC Facility subcontract through at least 2019.  Among other things, Fluor's documents show that:

- He knew that Fluor "desperately need[ed]" additional engineers on the project and had requested help from Fluor Corp. (Nov. 6, 2017 email, FFS01978209–10, attached as **Exhibit 8**);

- He communicated directly with BAE employees regarding Fluor's performance on the project and met with BAE and Army employees at the project site to discuss the project (Oct. 29, 2018 email, FFS01142021–24, attached as **Exhibit 9**); and

- He knew that Fluor needed to make changes in personnel on the project, "both at site and in engineering in the home office," apparently due to poor performance, and was involved in making such changes (Aug. 12, 2019 email, FFS00892135, attached as **Exhibit 10**).[2]

In short, Mr. D'Agostino is directly at the heart of the matters in dispute in this litigation, including, but not limited to, Fluor's alleged reliance on Lauren's existing design being 85% complete

---

[2] Fluor produced many more documents that show Mr. D'Agostino's personal involvement in Fluor's bid for and performance under the NC Facility subcontract, but they are marked "confidential" or "attorney's eyes only."  If Mr. D'Agostino seriously disputes that he has unique, personal knowledge of the issues in dispute in this litigation, then BAE will submit additional documents to the Court for in camera review.

in developing its bid, Fluor's decisions to replace Burns with Wood and then to self-perform the design work, and the causes of Fluor's delays on the project.

## C. BAE notifies Fluor of BAE's intention to depose Mr. D'Agostino.

On July 21, 2022, BAE notified Fluor of BAE's intention to depose Mr. D'Agostino and asked for his availability for deposition between September 19 and October 7 and whether Fluor would produce him.  (July 21, 2022 email, attached as **Exhibit 11**.)  When BAE provided this notice, the deadline to complete fact discovery was November 16.  (Dkt. No. 60, at 1.)  In response to the notice, Fluor did not object to BAE's intention to depose Mr. D'Agostino or claim that he was an apex witness.  Nor did Fluor state that it would be unable to produce him.

## D. BAE again notifies Fluor of BAE's intention to depose Mr. D'Agostino.

When it became clear that the parties would not complete fact discovery by November 16, BAE moved to continue the trial, which was then scheduled to begin in March 2023, or, in the alternative, to proceed with the trial as scheduled but limit the issues to be tried on September 16. (Dkt. No. 102.)  Fluor opposed BAE's request for a continuance, arguing that the parties could meet the deadlines then in place, even though that would have required the parties to conduct 40 to 50 fact depositions in just 42 business days before the end of fact discovery on November 16.  Recognizing that there was not enough time for the parties to complete fact discovery under the schedule then in effect, the Court continued the trial to August 2023.

Along with continuing the trial, the Court extended the deadlines that were then in place and imposed new deadlines to keep the case on track.  (Dkt. No. 112.)  Because Fluor's counsel would be occupied in January 2023 with the trial of another case between the parties, the Court ordered the parties to conduct fact depositions in two rounds with the first round starting on November 14 and continuing until December 30.  (*Id.* at 1.)  The Court also ordered the parties to exchange lists of their anticipated deponents for the first round of fact depositions by October 20.  (*Id.*)

In accordance with the Court's order, the parties exchanged lists of their anticipated deponents for the first round of fact depositions on October 20.  BAE's list included nine current/former Fluor employees, including Mr. D'Agostino, and Fluor's list included eight current/former BAE employees, including several high-level executives.  (Oct. 20, 2022 email, attached as **Exhibit 12**.)  Both parties requested that the other provide the availability of its listed deponents for deposition.  (*Id.*)

BAE provided the availability of all its listed deponents within a matter of days.  Fluor did not.  Indeed, Fluor waited until November 7, a mere week before depositions were to begin, to inform BAE for the first time that Fluor would not produce Mr. D'Agostino, that he had retained personal counsel, and that BAE would have to subpoena him.  (Nov. 7, 2022 email, attached as **Exhibit 13**.)  In response, BAE requested that Fluor confirm whether Mr. D'Agostino was a current Fluor employee and, if so, explain why Fluor could not produce him for deposition.  (Nov. 8, 2022 email, attached as **Exhibit 14**.)  Fluor did not respond to this request.

### E.  BAE schedules Mr. D'Agostino's deposition by agreement with his personal counsel.

On November 9, BAE contacted Mr. D'Agostino's personal counsel, Stephen Cook, about Mr. D'Agostino's availability for deposition.  Mr. Cook confirmed that Mr. D'Agostino was still a Fluor employee and said that he would check on Mr. D'Agostino's availability for deposition and get back to BAE.  Mr. Cook also said that Mr. D'Agostino may invoke his Fifth Amendment privilege against self-incrimination during the deposition because of an ongoing investigation by the United States Department of Justice ("DOJ") into Fluor's actions related to the NC Facility project but did not say that Mr. D'Agostino objected to the deposition being held in November or December or that he would move to quash a deposition subpoena from BAE.  This was the first time that BAE learned that Mr. D'Agostino may plead the Fifth.

Five days later, on November 14, Mr. Cook informed BAE that Mr. D'Agostino was available for deposition on December 20.  (Nov. 14, 2022 email, attached as **Exhibit 15**.)  Later that same day,

BAE issued a deposition subpoena for Mr. D'Agostino for December 20 and asked Mr. Cook whether he would accept service of the subpoena on Mr. D'Agostino's behalf.  (Nov. 14, 2022 email, attached as **Exhibit 16**.)  On November 16, Mr. Cook accepted service of the deposition subpoena and told BAE that "[b]arring some unexpected development, [Mr. D'Agostino] will appear pursuant to the subpoena."  (Nov. 16, 2022 email, attached as **Exhibit 17**.)

Also on November 14, BAE issued a notice of deposition for Mr. D'Agostino for December 20 and served it on Fluor.  BAE informed Fluor that it had an obligation to produce Mr. D'Agostino for deposition in accordance with the notice under Federal Rule of Civil Procedure 30(b)(1), because he was a current officer, director, or managing agent of Fluor.  (Nov. 14, 2022 email, attached as **Exhibit 18**.)  In response, Fluor did not dispute that Mr. D'Agostino was a current officer, director, or managing agent of Fluor but nevertheless said that it would not produce him for deposition pursuant to the notice.  (Nov. 15, 2022 email, attached as **Exhibit 19**.)  Fluor did not, however, object to BAE's deposing Mr. D'Agostino on December 20 or claim that he was an apex witness that should be deposed at a later stage of the case.

**F. Fluor and Mr. D'Agostino's personal counsel inform BAE that Mr. D'Agostino will not comply with BAE's notice of deposition or deposition subpoena.**

On December 9, Fluor informed BAE that Fluor would be cancelling Mr. D'Agostino's deposition on December 20, claiming for the first time that Fluor could not adequately prepare Mr. D'Agostino for deposition because of alleged deficiencies in BAE's document production.  (Dec. 9, 2022 email, attached as **Exhibit 20**.)  On December 12, BAE responded that Fluor's claim of deficiencies in BAE's document production was a mere pretext for cancelling Mr. D'Agostino's deposition and that BAE would be going forward with the deposition, for which Mr. D'Agostino had

been properly noticed and subpoenaed.  (Dec. 12, 2022 email, attached as **Exhibit 21**.)[3]  Later that same day, Fluor informed BAE that Fluor would not be producing Mr. D'Agostino for deposition, which BAE found curious given Fluor's prior position that Fluor could not produce him and that BAE would instead have to work with his personal counsel and subpoena him.  (Dec. 12, 2022 email, attached as **Exhibit 22**.)

The next day, December 13, BAE contacted Mr. D'Agostino's personal counsel, Mr. Cook, who had accepted BAE's deposition subpoena for Mr. D'Agostino nearly a month earlier, about whether Mr. D'Agostino would comply with the subpoena and appear for deposition on December 20.  Mr. Cook informed BAE that Mr. D'Agostino would not appear, repeating Fluor's claim that alleged deficiencies in BAE's document production were preventing him from adequately preparing Mr. D'Agostino for deposition.  Mr. Cook also claimed for the first time that it would be improper for BAE to depose Mr. D'Agostino at this stage of the case because of the ongoing DOJ investigation and thus Mr. D'Agostino may have to plead the Fifth during his deposition.  Mr. Cook further claimed for the first time that it would be improper to depose Mr. D'Agostino at this stage of the case under the apex doctrine.

## III.  LAW AND ARGUMENT

### A.  To prevail on his motion, Mr. D'Agostino must show that BAE's deposition subpoena subjects him to an undue burden.

Under Federal Rule of Civil Procedure 45(d), when a party brings a timely motion, a court must quash or modify a subpoena that "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3).  "Whether a subpoena subjects a witness to undue burden . . . usually raises a question of the reasonableness of the subpoena, an analysis that requires weighing a subpoena's benefits and burdens

---

[3] Based on this same unfounded claim, Fluor unilaterally cancelled the deposition of Mr. Moran.  As it did for Mr. D'Agostino, BAE issued a valid notice of deposition for Mr. Moran.  It appears that Fluor does not want BAE to depose Mr. Moran at this time because he was critical of Fluor's bid for the NC Facility project.  BAE will seek relief from the Court for Fluor's refusal to produce Mr. Moran for deposition in a separate motion.

and considering whether the information is necessary and whether it is available from any other source." *Maxtena, Inc. v. Marks*, 289 F.R.D. 427, 439 (D. Md. 2012) (internal quotation marks and citation omitted). "[T]he ultimate question is whether the benefits of discovery to the requesting party outweigh the burdens on the recipient." *Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019). "This inquiry is highly case specific and involves an exercise of judicial discretion. The burden of proving that a subpoena is oppressive is on the party moving to quash." *Maxtena*, 289 F.R.D. at 439 (internal quotation marks and citation omitted).

A person from whom discovery is sought may also move for a protective order under Federal Rule of Civil Procedure 26(c). The court, "for good cause" shown, may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "To obtain a protective order under Rule 26(c), the party resisting discovery must establish that the information sought is covered by the rule and that [the party] will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998). Undue burden "encompasses situations where the request seeks information irrelevant to the case." *Bhattacharya v. Murray*, No. 3:19-cv-54, 2022 WL 1307093, at *7 (W.D. Va. May 2, 2022). "The party seeking a protective order under Rule 26(c) bears the burden to show that the requested information is not relevant to a party's claims or defenses, or is of such marginal relevance to those matters that the burden of producing the information outweighs its potential benefit." *Id.* (internal quotation marks and citation omitted). This "requires the resisting party to present a particular and specific demonstration of fact as to why a protective order should issue." *Socol v. Haas*, No. 3:18-cv-90, 2021 WL 2635847, at *4 (W.D. Va. June 25, 2021) (internal quotation marks and citation omitted).

As explained below, Mr. D'Agostino has not met his burden of establishing that BAE's deposition subpoena subjects him to the type of undue burden that would warrant quashing the subpoena or entering a protective order.

**B. Mr. D'Agostino's Fifth Amendment privilege against self-incrimination does not provide sufficient cause to quash BAE's deposition subpoena and continue his deposition to a later date.**

Mr. D'Agostino asks the Court to quash his deposition subpoena because of the ongoing DOJ investigation into Fluor.  According to Mr. D'Agostino, because he may choose to assert his Fifth Amendment privilege against self-incrimination during his deposition due to the investigation, BAE should have to wait to depose him.  Mr. D'Agostino also vaguely claims that his "Fifth Amendment concerns may be resolved independent of the matter prior to close of fact discovery" and that BAE should thus not be allowed to depose him now on the off-chance that at some point in the future he "may be able to provide substantive testimony."  (Dkt. No. 114, at 2.)  This argument is misguided for two reasons.  First, it portrays as novel a situation that is quite common—parallel civil and criminal proceedings involving the same parties.  Second, it ignores the fact that responsibility for Mr. D'Agostino's decision to plead the Fifth rests with him—not BAE.

"As recognized by several circuits, and recently recognized by the United States Court of Appeals for the Fourth Circuit, because of the frequency with which civil and regulatory laws overlap with criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of criminal proceedings."  *S.E.C. v. Woodard*, No. 2:13-cv-16, 2014 WL 61398, at *1 (E.D. Va. Jan. 6, 2014) (internal brackets, quotation marks, and citation omitted).  The frequency of parallel proceedings like these means that witnesses are often put in a position where they are simultaneously under subpoena to testify as witnesses in civil matters and the subject of ongoing criminal investigations.  "That between-a-rock-and-a-hard-place situation is not uncommon.  Even so, courts routinely require witnesses to sit in the witness chair, and make the tough decision about whether to assert the Fifth Amendment."  *Johnson v. City of Chicago*, No. 19-cv-3904, 2021 WL 1952489, at *1–2 (N.D. Ill. May 10, 2021); *see also Citibank v. Hakim*, 1993 WL 481335, at *1 (S.D.N.Y. 1993) ("Here,

defendant has argued that he will be forced to choose between testifying or asserting his Fifth Amendment privilege, and in turn, either risking self-incrimination or adverse inferences and a diminished ability to defend against the civil claims asserted against him.  Such a predicament will not alone justify a stay of civil discovery.").

Indeed, as one circuit court has explained:

> A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the Fifth Amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the Fifth Amendment in a civil proceeding.

*Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995).  Mr. D'Agostino has provided no compelling reason why this Court should treat him differently than other witnesses who are the subjects of parallel proceedings.

Rather, Mr. D'Agostino tries to point the blame at BAE by asserting that BAE's "behavior is intended to secure an adverse inference, rather than to gather new or otherwise necessary factual information."  (Dkt. No. 114, at 2.)  But the timeline of BAE's requests to depose Mr. D'Agostino refutes this claim.  BAE notified Fluor of its intention to depose Mr. D'Agostino on July 21, 2022. Nearly four months later, on November 9, BAE learned for the first time that Mr. D'Agostino may assert his Fifth Amendment privilege against self-incrimination during his deposition.  BAE issued a subpoena for Mr. D'Agostino in good faith, to depose him on his personal knowledge of the subject matter of this lawsuit.

Moreover, any contention that BAE is acting improperly by seeking to depose Mr. D'Agostino in the first round of fact depositions rather than in the second, when the DOJ investigation may be over, is belied by the fact that BAE sought to depose him months ago and by the fact that it was Fluor that refused to extend the schedule then in place, under which fact depositions would have ended on

November 16.  It is clear that Fluor and Mr. D'Agostino knew of the ongoing DOJ investigation and the possible Fifth Amendment implications for Mr. D'Agostino at the time BAE first notified Fluor of BAE's intention to depose Mr. D'Agostino.

Fluor cannot credibly claim that Mr. D'Agostino's personal decision to plead the Fifth renders his deposition of limited benefit to BAE, is outweighed by the burden on Mr. D'Agostino, and warrants quashing the subpoena or issuing a protective order.  This Court should not construe any adverse inference that BAE could obtain against *Fluor* as a result of Mr. D'Agostino's decision to plead the Fifth, as a harm or burden on *Mr. D'Agostino* in determining whether BAE's deposition subpoena should be quashed.  As the case law recited above makes clear, Mr. D'Agostino's decision to plead the Fifth is his alone to make and any consequences that follow from that decision do not justify quashing the subpoena.

Mr. D'Agostino also argues that BAE "refuses to move his deposition, despite no discernible prejudice," but it is not BAE's burden to demonstrate that there would be any prejudice to moving the deposition.  *See Maxtena*, 289 F.R.D. at 439 ("The burden of proving that a subpoena is oppressive is on the party moving to quash."); *Bhattacharya*, 2022 WL 1307093, at *7 ("The party seeking a protective order under Rule 26(c) bears the burden to show that the requested information is not relevant to a party's claims or defenses, or is of such marginal relevance to those matters that the burden of producing the information outweighs its potential benefit.").  Even so, Fluor's attempt to block Mr. D'Agostino's deposition would prejudice BAE.  Fluor's last-minute deposition cancellations and apparent gamesmanship have already prejudiced the proceedings (and have caused BAE to incur unnecessary costs).  Fluor has consistently demanded that this case proceed quickly and opposed BAE's request to continue the trial and push back the close of fact discovery, which had been scheduled for November 16.  Between the parties, 40 to 50 witnesses will be deposed.  BAE seeks to

proceed with the schedule of depositions as agreed to by the parties in order to complete discovery expeditiously and resolve this matter efficiently.

What's more, Fluor has no right to dictate to BAE the order in which it deposes Fluor's witnesses, just as BAE has no right to dictate to Fluor the order in which it deposes BAE's witnesses. Yet, that is exactly what Fluor is trying to do here by attempting to thwart BAE's effort to depose Mr. D'Agostino.  Just like Fluor, BAE seeks to depose some of Fluor's senior employees who were involved in the NC Facility project in the first round of fact depositions because they know about Fluor's bid process and strategy, including whether Fluor relied on any representation of Lauren's existing design being 85% complete, as Fluor now claims.  Indeed, it appears from Fluor's own documents, including communications to and from Mr. D'Agostino and other senior employees, that Fluor did not rely on any such representation in bidding on the project, and that Burns proposed abandoning the existing design and performing a complete redesign.

Finally, Mr. D'Agostino claims that he will be receiving "clarity . . . from the DOJ concerning his status in their investigation over the coming months."  (Dkt. No. 114, at 4.)  But he offers no evidence that this "clarity" is imminent, would be received before the close of fact discovery in this case, or would substantively alter his testimony or cause him not to plead the Fifth.  Moreover, BAE has good cause to believe that the DOJ is not close to wrapping up its investigation of Fluor and has given Fluor notice of that good cause.  Thus, the Court should not entertain Fluor's and Mr. D'Agostino's attempts to delay discovery and push off a deposition under circumstances that likely will not change before discovery is due to end in this case.  And even if circumstances did change, which is doubtful, Fluor should not be permitted to obtain a strategic advantage by dictating the order of depositions and pushing Mr. D'Agostino's deposition off until the end of fact discovery (and it is quite possible that he would still plead the Fifth even if the DOJ closed its investigation because of a continuing risk of self-incrimination).

**C. The apex doctrine does not shield Mr. D'Agostino from deposition at this stage of the case.**

Mr. D'Agostino contends that BAE should not be allowed to depose him in the first round of fact depositions because he is "an apex witness." (Dkt. No. 114, at 4.) He raised the apex doctrine for the first time on December 13, nearly five months after BAE first informed Fluor that BAE intended to depose him and just seven days before his scheduled deposition. Mr. D'Agostino seeks the protection of the apex doctrine without providing the Court with any of the doctrine's guiding principles, which can only be because the doctrine does not support his position.

The apex doctrine "is an aid to ensure that the liberal rules of procedure for depositions are used only for their intended purpose and not as a litigation tactic to create undue leverage by harassing the opposition or inflating its discovery costs." *JTH Tax, Inc. v. Aime*, No. 2:16-cv-279, 2016 WL 9223926, at *5 (E.D. Va. Dec. 13, 2016) (internal quotation marks and citation omitted). The doctrine provides that a high-level executive cannot be deposed "unless the party seeking the deposition can show that (1) the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information sought have been exhausted." *Id.* (internal quotation marks and citation omitted). The executive's personal knowledge need not be substantial to be relevant; when document discovery reveals that an executive has made comments related to particular corporate decisions, the standard for unique, personal knowledge is satisfied. *See id.* (concluding that the apex doctrine did not prohibit the deposition of a senior official who made comments on a conference call related to the subject matter of the litigation, even when the full transcript of that call was available); *Intelligent Verification Sys. LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2014 WL 12544827, at *2 (E.D. Va. Jan. 9, 2014) (finding that the apex doctrine did not apply to an executive with personal knowledge of facts about the system at issue in the litigation). And courts have found that less burdensome avenues for obtaining information can be insufficient when the

executive "is the only witness who made the [subject] statements." *JTH Tax*, 2016 WL 9223926, at *5.

As detailed above, Fluor's documents establish that Mr. D'Agostino has unique, personal knowledge about the subject matter of this litigation. Among other things, he approved Fluor's teaming with Burns; approved the submission of Fluor's bid; and approved Fluor's decision to replace Burns with Wood. He also knew that Fluor Corp.'s in-house design team decided not to support Fluor's process design estimate due to apparent time constraints; knew that Burns thought that the NC Facility needed a complete redesign; and knew that Fluor's Corporate Risk Group had concerns about Fluor's bid, including the amounts of the estimate and event contingencies. All of these documents rebut Fluor's claim that Fluor proceeded with its bid because of any representation by BAE that Lauren's existing design was 85% complete. Indeed, Mr. D'Agostino directed that Fluor proceed with the bid based on Fluor's own bid for the NC Facility from four-plus years earlier.

Fluor's documents further show that Mr. D'Agostino was personally involved in Fluor's performance under the subcontract. Among other things, he corresponded directly with BAE employees regarding Fluor's performance; he met with BAE and Army employees at the project site to discuss the project; and he knew that Fluor needed to make personnel changes on the project apparently due to poor performance.

Mr. D'Agostino does not even attempt to claim that he lacks unique, personal knowledge of the subject matter of this case—nor could he credibly do so. In fact, he admits that BAE would depose him on "events surrounding a Fluor project with which he was associated." (Dkt. No. 114, at 2.) And BAE intends to depose Mr. D'Agostino on exactly that—his association with and unique, personal knowledge of and communications regarding Fluor's bid for and performance under the NC Facility subcontract. Despite admitting to his own personal knowledge and involvement in the subject

matter of this litigation, Mr. D'Agostino offers the vague assertion, without more, that he is "an apex witness." (*Id.* at 4.)

Less burdensome avenues cannot uncover the information because BAE seeks to understand Mr. D'Agostino's personal insight and decision-making on corporate decisions and communications in which he participated that relate directly to BAE's and Fluor's claims and defenses.  Only Mr. D'Agostino can explain his own mental processes and understanding.

The Court should find that BAE's subpoena is "well within the broad scope of discovery under the Federal Rules." *Id.*  BAE recognizes that the apex doctrine in this context presents the Court with an issue of "competing burdens." *Intelligent Verification Sys.*, 2014 WL 12544827, at *2.  The burden is on Mr. D'Agostino to prove that he is entitled to have his motion to quash granted, while the burden is on BAE to show that the apex doctrine does not apply in this context.  *Id.*  But in consideration of the evidence cited above, and with no more than vague assertions from Mr. D'Agostino that he is an apex witness, the Court should find that this doctrine does not preclude BAE's good-faith attempt to depose Mr. D'Agostino and question him on his unique, personal knowledge and involvement in the subject-matter of this litigation.  *See id.* ("Plaintiff seeks to depose Mr. Mattrick for a legitimate purpose, because he has personal knowledge regarding various issues that surround [the subject matter of the litigation]."); *cf. RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18-cv-66, 2020 WL 2311668, at *3 (W.D. Va. May 8, 2020) (applying the apex doctrine and finding that defendants did not show that the high-level official had unique or special knowledge when plaintiff certified that she did not have such knowledge, and defendants' only evidence to the contrary was an uncorroborated recollection of another witness).

## D. Mr. D'Agostino's claim of not having sufficient time or information to prepare for his deposition is unfounded and a mere pretext for delaying his deposition.

Mr. D'Agostino adopts the party line that BAE has allegedly "withheld" documents, that "may be directly relevant" to his testimony, that he "does not have sufficient information to prepare to

testify regarding events that occurred seven years ago," and that he is "unable to assess fully the Fifth Amendment implications associated with his examination" without seeing these "critical" documents. (Dkt. No. 114, at 2, 4.)

BAE has already explained to Fluor and Mr. D'Agostino's personal counsel why Fluor's claim that BAE is withholding important documents is a red herring, but it bears repeating that this claim is merely a pretext designed to thwart discovery efforts in this case, justify cancelling several depositions, and otherwise not comply in good faith with the Court's orders.  BAE has offered several solutions as to the allegedly withheld documents, and it has either been met with refusals or no response.  Fluor, on the other hand, has failed or refused to provide BAE with documents that Fluor has improperly redacted or withheld, despite repeated requests from BAE.[4]

In any event, Mr. D'Agostino would not be prejudiced in his deposition by any documents he does not currently have.  BAE seeks to depose Mr. D'Agostino on his *own* communications and documents from *Fluor's production*, which Mr. D'Agostino already has in his possession.  He and his personal counsel have had ample opportunity to review those communications and documents, evaluate any potential Fifth Amendment implications, and prepare for deposition.  Presumably, Mr. D'Agostino also reviewed many of these documents in connection with the DOJ investigation. Accordingly, there is no merit to his assertion that he needs to see BAE's documents first to determine how to testify truthfully or plead the Fifth.

Nevertheless, Fluor and Mr. D'Agostino have achieved their goal of delaying his deposition, which, when combined with Fluor's unilateral cancellation of the deposition of Mr. Moran, has frustrated BAE's attempt to comply with the Court's orders and complete a certain number of

---

[4] Indeed, when Fluor demanded certain slip sheeted documents before depositions, BAE provided the documents within 24 hours.  In stark contrast, and as further evidence of Fluor's unwillingness to cooperate in good faith in discovery issues, Fluor has still failed to provide BAE with the handful of documents BAE requested weeks ago, prior to Mr. Moran's deposition, despite many reminder emails to Fluor.  That Fluor then improperly canceled this deposition is no reason for Fluor to ignore BAE's repeated requests for these documents.

depositions during the first round of fact depositions.  This unjustified delay leaves both parties with an extremely challenging schedule in the second round.

## IV.  CONCLUSION

For the reasons stated above, BAE respectfully requests that this Court deny Mr. D'Agostino's motion to quash BAE's deposition subpoena, deny his request for a protective order, and compel him to appear for deposition without further delay.

Dated: December 19, 2022

Respectfully submitted,

BAE SYSTEMS ORDNANCE SYSTEMS, INC.

By: /s/ Justin E. Simmons
　　　　Of Counsel

Joshua R. Treece (VSB No. 79149)
joshua.treece@wrvblaw.com
Justin E. Simmons (VSB No. 77319)
justin.simmons@wrvblaw.com
WOODS ROGERS VANDEVENTER BLACK PLC
10 South Jefferson Street, Suite 1800
Roanoke, Virginia 24011
Telephone:  (540) 983-7600
Facsimile: (540) 983-7711

Karen M. Stemland (VSB No. 47167)
WOODS ROGERS VANDEVENTER BLACK PLC
123 East Main Street, 5th Floor
Charlottesville, Virginia 22902
Telephone: (434) 220-6826
Facsimile: 434-566-0473
karen.stemland@wrvblaw.com

Jon Hollis (VSB No. 84908)
WOODS ROGERS VANDEVENTER BLACK PLC
901 East Byrd Street, Suite 1550
Richmond, VA 23219
Telephone: (804) 343-5020
Facsimile: (804) 343-5021
jon.hollis@wrvblaw.com

Todd M. Conley (VSB No. 89839)
todd.conley@wbd-us.com
Jeffrey J. Golimowski (VSB No. 93525)
jeff.golimowski@wbd-us.com
WOMBLE BOND DICKINSON (US) LLP
8350 Broad Street, Suite 1500
Tysons, VA 22102
Telephone:  (703) 394-2245

*Counsel for BAE Systems Ordnance*
  *Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, I filed the foregoing using the Court's CM/ECF system, which will send notification of the filing to all counsel of record.

/s/Justin E. Simmons